

**KESSLERTOPAZ**
**MELTZERCHECK** LLP
ATTORNEYS AT LAW

Writer's Direct Dial: 610-822-0242
E-Mail: eciolko@ktmc.com
*Please reply to the Radnor Office*

May 24, 2013

**VIA FEDERAL EXPRESS**

13-CV-21107-FAM

Clerk of the Panel
**United States Judicial Panel on Multidistrict Litigation**
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE, Room G-255, North Lobby
Washington, DC 20002-8041

> RE:    *In Re: JPMorgan Chase LPI Hazard Litigation*
>        *MDL Docket No. _____*

Dear Madam/Sir:

In accordance with Rule 3.2(d) of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, enclosed please find a courtesy copy of the following documents that were filed by ECF today:

1. Plaintiffs' Motion and Memorandum of Law in Support of Transfer for Coordinated or Consolidated Pre-Trial Proceedings Pursuant to 28 U.S.C. § 1407;

2. Exhibit A (Schedule of Cases);

3. Service List;

4. Proof of Service.

Respectfully,

*Edward W. Ciolko*

Edward W. Ciolko

Enclosures
cc:    Counsel of Record identified on Service List. (via Email w/Attachments)

280 King of Prussia Road, Radnor, Pennsylvania 19087  T. 610-667-7706  F. 610-667-7056  info@ktmc.com
One Sansome Street, Suite 1850, San Francisco, California 94104  T. 415-400-3000  F. 415-400-3001  info@ktmc.com
WWW.KTMC.COM



**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE:  JPMORGAN CHASE LPI
HAZARD LITIGATION

MDL Docket No._____

**PLAINTIFFS' MOTION FOR TRANSFER OF RELATED ACTIONS TO THE
NORTHERN DISTRICT OF CALIFORNIA FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

Plaintiffs in *In Re JPMorgan Chase LPI Hazard Litigation*, Case No. 3:11-cv-3058-JCS

(N.D. Cal.)("Plaintiffs"), respectfully move the Judicial Panel on Multidistrict Litigation (the

"Panel") pursuant to 28 U.S.C. §1407 for an Order transferring the force-placed hazard insurance

actions pending against Defendants JPMorgan Chase Bank, N.A. and related entities

(collectively, "Chase") and Assurant, Inc. and related entities (collectively, "Assurant"), as well

as subsequently filed "Tag-Along" actions, to the United States District Court for the Northern

District of California for coordinated or consolidated pre-trial proceedings.

All of the Related Actions subject to this Motion are identified on the Schedule of

Actions attached as Exhibit A to Plaintiffs' Memorandum of Law in Support of this Motion, in

accordance with the Panel Rule of Procedure 6.1(b).  In support of this Motion, Plaintiffs state

the following, as more fully set forth in Plaintiffs' accompanying Memorandum of Law:

1.      The Related Actions should be centralized and coordinated pursuant to 28 U.S.C.

§1407 because they are substantially identical, are being pursued against the same defendants,

and challenge the same conduct.

2.      The Related Actions should also be centralized because the discovery in each will

be substantially similar and will involve largely the same documents and witnesses.  *See*

MANUAL FOR COMPLEX LITIGATION, Fourth §20.131 (2012) (transfer should "eliminate

duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts.")

3.      The Related Actions should be transferred to the United States District Court for the Northern District of California for, *inter alia*, the following reasons:  (1) *In Re JPMorgan Chase LPI Hazard Litigation* is venued in the Northern District of California and is the first filed case challenging Chase's force-placed hazard insurance practices and is the most procedurally advanced of the Related Actions; (2) 14 of the 16 Plaintiffs in the Related Actions voluntarily chose to bring their claims in the Northern District of California; (3) the Northern District of California has substantial experience with forced-placed insurance litigation as there currently are six force-placed insurance cases pending in that District and that District also has served as the venue for two settled force-placed insurance cases; (4) the Northern District of California has the resources and ability to handle this action; (5) there are multiple airports in the region that are serviced by every major airline, making access convenient for all parties, witnesses, and attorneys.

4.      The force-placed *wind* insurance claims in the Related Action *Herrick v. JPMorgan Chase Bank, N.A.*, No. No. 1:13-cv-21107 (S.D. Fla.) should be simultaneously separated and remanded back to the Southern District of Florida pursuant to 28 U.S.C. §1407(a).

WHEREFORE, for the foregoing reasons as well as those set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that the Panel order that the Related Actions, and any subsequently filed "Tag-Along" actions, be transferred to the Northern District of California for coordinated or consolidated proceedings.

Dated May 24, 2013

Respectfully submitted,

*/s/ Edward W. Ciolko*
**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
Donna Siegel Moffa
Amanda R. Trask
Jesse C. Klaproth
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: eciolko@ktmc.com
Email: pmuhic@ktmc.com
Email: dmoffa@ktmc.com
Email: atrask@ktmc.com
Email: jklaproth@ktmc.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Ramzi Abadou
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: rabadou@ktmc.com

**NIX PATTERSON & ROACH, LLP**
Brad Seidel
Christopher Johnson
3600 North Capital of Texas Highway
Building B Suite 350
Austin, TX  78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
Email: bseidel@npraustin.com
Email: cjohnson@npraustin.com

**SALPETER GITKIN, LLP**
James P. Gitkin
Eric T. Salpeter
Museum Plaza – Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301

3

Telephone: (954) 467-8622
Facsimile: (954) 467-8623
Email: eric@salpetergitkin.com
Email: jim@salpetergitkin.com

**GOLDMAN SCARLATO KARON &
PENNY, P.C.**
Brian D. Penny
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Phone: 484 342-0700
Email: penny@gskplaw.com

**BERGER & MONTAGUE, P.C.**
Michael Dell'Angelo
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215 875-3080
Facsimile:  (215)875-4604
Email: mdellangelo@bm.net
Email: sschalman-bergen@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Archana Tamoshunas
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: 212-931-0704
Facsimile: 212-931-0703
Email: atamoshunas@tcllaw.com

**GILMAN LAW LLP**
Kenneth G. Gilman
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL  34134
Telephone (239) 221-8301
Facsimile (239) 676-8224
Email: kgilman@gilmanpastor.com

**HOLLAND, GROVES, SCHNELLER &
STOLZE, LLC**
Eric D. Holland
Gerard B. Schneller
300 N Tucker, Suite 801
St. Louis, Missouri 63101

4

Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com
Email: gschneller@allfela.com

**CATES MAHONEY, LLC**
David Cates
216 West Pointe Drive, Suite A
Swansea, IL  62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

**GROSSMAN ROTH, P.A.**
Seth E. Miles
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL  33134
Telephone: 305-442-8666
Facsimile: 305-285-1668
Email   sem@grossmanroth.com

**EDELSON & ASSOCIATES, LLC**
Marc H. Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: 215-230-8043
Facsimile: 215-230-8735
Email: medelson@edelson-law.com

**LAW OFFICE OF
ANDREW BENNETT SPARK**
Andrew Bennett Spark
13911 W. Hillsborough Ave., Suite 161
Tampa, FL  33635
Telephone: 941-321-5927
Facsimile: 813-441-1117
Email: abspark@msn.com

*Attorneys for Plaintiffs*

5

### BEFORE THE UNITED STATES JUDICIAL PANEL
### ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:<br><br>**JPMORGAN CHASE LPI HAZARD LITIGATION** | MDL Docket No._____ |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO TRANSFER FOR COORDINATED OR CONSOLIDATED
### PRE-TRIAL PROCEEDINGS PURSUANT TO 28 U.S.C. § 1407 AND 28 U.S.C. §1407(a)

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), Plaintiffs in *In Re JPMorgan Chase LPI Hazard Litigation*, Case No. 3:11-cv-3058-JCS (N.D. Cal.)(the "Consolidated Action") move this Panel to transfer for centralization in the Northern District of California any related actions involving force-placed hazard insurance brought against JPMorgan Chase Bank, N.A. and related entities (collectively, "Chase") and Assurant, Inc. and related entities (collectively, "Assurant").[1]

This proposed centralization differs in every respect from the previous attempt to centralize <u>all</u> force-placed insurance cases of any stripe against multiple banks and multiple

---

[1]   Actions subject to centralization include:  *Herrick v. JPMorgan Chase Bank, N.A.*, No. No. 1:13-cv-21107 (S.D. Fla.) ("*Herrick*"), *Isom v. JPMorgan Chase N.A.*, No. 1:12-cv-05431 (S.D.N.Y.)("*Isom*") and all actions that have already been consolidated in the Northern District of California in the Consolidated Action: *McNeary-Calloway v. JPMorgan Chase Bank*, N.A., No. 3:11-cv-003058 (N.D. Cal.)("*McNeary-Calloway*"); *Leger v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-03632 (N.D. Cal.)("*Leger*"); *Brooks v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-01011 (S.D. Ill.)("*Brooks*"); *Jelks v. JPMorgan Chase Bank, N.A.*, No. 4:12-cv-01971 (S.D. Tex.)("*Jelks*"); *Yogev v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-21988 (S.D.Fla.)("*Yogev*"); and *Knox v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-21702 (S.D. Fla.)("*Knox*") (collectively the "Related Actions").

force-placed insurance providers, involving multiple types of force-placed insurance (*e.g.* hazard, flood, and wind) (the "Failed MDL Petition"). That petition was denied because "the Panel [was] not persuaded that the actions contain sufficient common questions of fact to justify centralization of this litigation." *See In Re Mort. Lender Force-Placed Ins. Litig.*, 895 F.Supp.2d 1352-53 (J.P.M.L. 2012).

Here, in stark contrast, Plaintiffs seek to centralize only force-placed **hazard** claims brought against one loan servicing bank (Chase) and one force-placed insurer (Assurant).[2] Accordingly, Plaintiffs' request is highly focused and bears no resemblance to the Failed MDL Petition. The common questions of fact and law, the efficiencies to be gained through centralized discovery, and the alleviation of the risk of inconsistent pretrial rulings all favor centralization of force-placed hazard insurance litigation against Chase and Assurant.

Plaintiffs' action, pending in the Northern District of California, is the first-filed and most procedurally advanced of the actions sought to be centralized. Plaintiffs note that the Related Action *Herrick* has apparently been stayed until July 1, 2013 to "await the outcome of a possible settlement in a related case [*Pulley v. JPMorgan Chase Bank*, N.A., No. 12-cv-60936 (S.D. Fla.)(a case involving force-placed wind insurance only)] in Florida."[3] By the time the stay in *Herrick* is lifted, Plaintiffs and Defendants will have fully briefed a second motion to dismiss involving the consolidated parties and claims pending in the Northern District of California and have already engaged in extensive formal and informal discovery as part of an approximately ten

---

[2]   As discussed *infra* at page 11 to the extent any Related Actions include claims not included in this MDL (such as force-placed flood insurance claims), this Panel may separate and remand those other claims pursuant to 28 U.S.C. §1407(a).

[3]   Nathan Hale, *Fla. Force-Placed Insurance Suits Can Proceed*, *Judge Says*, Law 360, (May 16, 2013), available at http://www.law360.com/banking/articles/442131/fla-force-placed-insurance-suits-can-proceed-judge-says (last visited May 24, 2013).

month long mediation process.  *See In Re JPMorgan Chase LPI Hazard Litigation* ECF No. 85. And, while multiple actions have already been voluntarily joined in the Consolidated Action, there remain two pending actions – *Isom* and *Herric*k – that must be transferred to the Northern District of California to achieve a full consolidation of the outstanding Chase force-placed hazard insurance actions now pending.  For all of the reasons set forth more fully below, Plaintiffs respectfully request that the Panel grant their motion and transfer *Isom* and *Herrick*[4] and any other subsequently filed "tag-along" actions against Chase/Assurant involving force-placed hazard insurance to the Northern District of California for coordinated pretrial proceedings.

## II.    BACKGROUND

### A.    Nature of the Actions

At issue in each of the actions that Plaintiffs seek to transfer for centralization are the force-placed insurance practices of one servicer (Chase) along with its exclusive force-placed insurance provider (Assurant) in connection with one kind of insurance – *hazard* insurance. Plaintiffs herein filed a Master Consolidated Complaint on April 26, 2013 pursuant to a consolidation order entered by a district court for the Northern District of California on April 19, 2013.  That Consolidated Action combined six actions asserting the same claims,[5] and, as

---

[4]    Although *Isom* and *Herrick* are separate actions, they were brought by the same attorneys, who had joined forces as co-counsel in the prior failed MDL attempt.  Those same attorneys subsequently joined efforts as co-counsel in a pseudo MDL attempt in *Hall v. Bank of Am.*, No. 1:12-cv-22700, (S.D. Fla.) ("*Hall*")(discussed *infra*).  Counsel in *Isom* is also counsel in the newly filed *Herrick* action against Chase.  As such, *Isom* and *Herrick* can be viewed as one action brought in separate *fora* by the same attorneys.

[5]    All of the Plaintiffs in *In Re JPMorgan Chase LPI Hazard Litigation* have consented to proceed before Magistrate Joseph C. Spero, *see McNeary-Calloway v. JPMorgan Chase Bank*, N.A., No. 3:11-cv-003058, ECF No. 84, Exs. B-F (N.D. Cal. April 12, 2013), as have defendants Chase and Assurant.

discussed below, was filed following nearly two years of active prosecution and mediation efforts.

In each of the Related Actions, the plaintiffs allege that Chase unlawfully exploited its authority under residential mortgage contracts, and its access to and control of borrowers' escrow accounts, to force-place exorbitantly priced and often unnecessary and otherwise improper hazard insurance policies as part of a scheme designed to maximize financial returns and unjustly enrich Chase and Assurant at the expense of the borrowers. Chase force-placed borrowers into high priced policies offered by Assurant and its subsidiaries, which had an exclusive arrangement with Chase, rather than attempt to maintain the borrowers' existing policies or purchase other policies at a commercially reasonable price.

In exchange for the exclusive arrangement with Chase, Assurant monitors or "tracks" all loans in Chase's portfolio for lapses in a borrower's voluntary hazard insurance coverage. As a result, the costs of tracking services for Chase's entire loan portfolio are unfairly borne by just the small percentage of borrowers who are force-placed into policies. In addition to portfolio tracking services, Assurant also provides a variety of other below-cost (or no-cost) services to Chase such as insurance policy issuance and servicing, and claims processing for private insurance claims. The cost of these services was bundled into the force-placed premium charged to borrowers, resulting in the small percentage of borrowers who have had coverage force-placed improperly bearing the cost of Chase's loan servicing duties. Assurant provides these services in order to ensure that it will continue to receive force-placed insurance business from Chase.

Finally, Plaintiffs also allege that Assurant entered into a reinsurance agreement with Chase's captive reinsurer which, rather than being a legitimate means of transferring risk, have served principally as a means of funneling hundreds of millions of dollars in premiums back to

4

Chase.  Given the fact that all of the Related Actions involve allegations arising out of the same conduct, and have overlapping classes, centralizing these actions in the Northern District of California, where the most procedurally advanced and vast majority of all Related Actions are pending, will promote the just and efficient conduct of the actions and will serve the convenience of the parties and witnesses.

By way of broader context, beginning in May 2012, Plaintiffs' Counsel, led by the law firms of Kessler Topaz Meltzer & Check, LLP and Nix Patterson & Roach, LLP, coordinated a global mediation in an attempt to resolve all force-placed insurance actions against Chase – separated into three *independent* tracks: hazard, flood and wind.  Consequently, in May 2012, the Plaintiffs stayed their respective actions in order to participate in extensive mediation effort.[6] Although the mediation did not result in a hazard settlement,[7] it facilitated the exchange of a voluminous number of documents, ideas, settlement approaches and information which enabled all parties to better understand the claims and defenses in this case.  The parties have not foreclosed the possibility of future mediation efforts.

### B.    Plaintiffs Work Cooperatively to Establish a Consolidated Proceeding

---

[6]    Plaintiffs and Chase took part in six full day mediation sessions in New York City during which the parties exchanged multiple mediation statements and proposals for settlement structure.  Chase produced significant documents and information as well as multiple, extensive spreadsheets detailing both aggregate and loan-level data that Plaintiffs and their consulting experts used to calculate damage scenarios.  Plaintiffs and Chase also exhaustively negotiated a Protective Order for the mediation that has now been entered in the Consolidated Action.  *See In Re JPMorgan Chase LPI Hazard Litigation* ECF No. 87.  As noted above, the documents and information produced by Chase in the mediation have been reproduced for use in the Consolidated Action, with the exception of mediation-specific data/spreadsheets.

[7]    Settlements in principle have been reached in the Flood and Wind force-placed insurance tracks.  Kessler Topaz Meltzer & Check, LLP and Nix Patterson & Roach, LLP are part of the Flood Group Plaintiff's Counsel.

The *McNeary-Calloway* action, filed on June 20, 2011, is by far the first filed action against Chase for its force-placed insurance practices. *McNeary-Calloway*, ECF No. 1. *McNeary-Calloway* has proceeded through a motion to dismiss filed by Chase on November 21, 2011 and ruled on by the Court on March 26, 2012. *McNeary-Calloway* ECF No. 62.[8]

Following the decision on the Motion to Dismiss in *McNeary-Calloway*, Interim Co-Class Counsel[9] appointed by the Court in the *McNeary-Calloway* action (*McNeary-Calloway* ECF No. 16) initiated global mediation discussions which included not only counsel for the parties in the *McNeary-Calloway* and *Leger* cases, but also, a group of Plaintiffs' counsel from *Jelks*, *Brooks*, and *Knox* who worked cooperatively together under the leadership of *McNeary-Calloway's* Interim Co-Class Counsel. Further, for a significant part of the mediation process, Interim Class Counsel worked cooperatively with *Isom* counsel and attempted to work with *Herrick* counsel on a number of occasions. Unfortunately, the Parties were unable to reach a global settlement of the force-placed hazard claims through the mediation process, despite nearly a year of effort. During this time, both the *McNeary-Calloway* and *Leger* actions were stayed by the Court. *McNeary-Calloway* ECF No.65 and *Leger* ECF No. 42. Among the obstacles to settlement were a number of crucial legal and factual issues which, the Parties concluded, required additional litigation to settle and/or narrow.

---

[8]     The Court in *McNeary-Calloway* sustained Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims, as well as their claims under the unfairness prong of California UCL §17200 and for unjust enrichment. Most importantly, the plaintiffs in *McNeary-Calloway* were able to limit the scope of a settlement reached in *Wahl v. Am. Sec. Ins. Co.*, No. 5:08-cv-00555-RS, ECF No. 189 (N.D. Cal. Sept. 30, 2011)("*Wahl*"), which the defendants argued was a bar to the plaintiffs' claims.

[9]     Kessler Topaz Meltzer & Check, LLP and Nix Patterson & Roach, LLP ("*McNeary-Calloway's* Interim Co-Class Counsel").

After the termination of the mediation proceedings, the Parties met and conferred concerning their respective views on how to efficiently litigate not only the *Leger* and *McNeary-Calloway* cases but also the other force-placed hazard insurance cases that had joined the global mediation.  The parties in *Leger* and *McNeary-Calloway* presented those views to the Court in a Joint Case Management Statement Update and Proposed Order in the *Leger* action filed on March 11, 2013, in advance of a case management conference scheduled for March 15, 2013.[10] *Leger* ECF No. 51.

The Parties proposed that the *Leger* conference be converted to a joint conference in the *Leger* and *McNeary-Calloway* actions. *Id.*  Additionally, they advised the Court of their intention to file a motion to consolidate *Leger/McNeary-Calloway* in order to file a single Master Consolidated Complaint that would include not only the *McNeary-Calloway* and *Leger* parties and claims, but also additional plaintiffs from the *Knox*, *Jelks*, *Yogev* and *Brooks* actions to proceed in the Northern District of California in a single action.[11]  Defendants in *McNeary-Calloway* and *Leger* agreed that, procedurally, the consolidation would result in a more efficient management of the actions. *Id.*   The Motion to Consolidate was filed on March 14, 2013 (*McNeary-Calloway* ECF No. 81) and was supported by additional submissions, including the proposed Master Consolidated Amended Complaint and the consents to proceed before Judge Spero that were filed by plaintiffs in the *Knox*, *Jelks*, *Yogev* and *Brooks* actions, on April 12, 2013. *McNeary-Calloway.*  ECF No. 84.

---

[10]     A Notice of Termination of Mediation Proceedings was filed by the *McNeary-Calloway* Plaintiffs on March 13, 2013.  *See In Re JPMorgan Chase LPI Hazard Litigation* ECF No. 80.

[11]     The plaintiffs in the *Knox, Jelks, Yogev* and *Brooks* actions agreed and informed the Court that  that should the Court permit the filing of a Master Consolidated Complaint, they would dismiss their actions in other jurisdictions in favor of inclusion in the Master Consolidated Amended Complaint. *See In Re JPMorgan Chase LPI Hazard Litigation* ECF Nos. 81& 84.

The Court granted the motion, the *Knox*, *Jelks*, *Yogev* and *Brooks* plaintiffs dismissed their respective actions in other jurisdictions, and, together with the *Leger* and *McNeary-Calloway* plaintiffs, filed the Master Consolidated Amended Complaint including plaintiffs and claims from all six actions[12] on April 26, 2013.  *McNeary-Calloway* ECF No. 94.  It should be noted that the allegations in the Related Actions are all covered by the claims in the Master Consolidated Amended Complaint.

C.     **In Contravention of this Panel's Ruling, Counsel from the Failed MDL Petition Manufactured an Omnibus Action to Replicate the MDL This Panel Had Denied**

Following the Panel's denial, counsel in the Failed MDL Petition have effectively attempted to create the very industry-wide litigation that this Panel rejected.  Specifically, counsel that had supported the Failed MDL Petition amended the Complaint in *Hall v. Bank of Am.*, No. 1:12-cv-22700, ECF Nos. 1 & 23 (S.D. Fla.) ("*Hall*") on July 24, 2012 – a later-filed action that initially included only flood insurance claims against Bank of America – to include flood, wind and hazard insurance related claims against separate loan servicers and insurer banks.[13]  The Defendant banks and insurers in *Hall* reacted to this maneuver by filing motions to dismiss and/or sever claims.  In ruling on defendants' motions, the Honorable Federico A. Moreno dismissed the *Hall* action as re-filed, but instructed the plaintiffs to re-file their complaints in lender-specific actions and he would then exercise his authority as Chief Judge to reassign the cases to himself.  *See Hall*, ECF No. 177.

---

12     *See* n.1, *supra*.

13     *See Hall* ECF Nos. 1 & 23.  *Hall* amended the complaint to assert FPI-related claims (including those originally asserted in *Barreto* and other similar matters) against Chase, Assurant, and Voyager, as well as a number of other mortgage servicers and force-placed insurance providers.  Defendants in the amended pleading included Bank of America; Balboa; QBE Insurance Group, HSBC Bank USA and HSBC Mortgage Corporation;  CitiMortgage, Inc. and CitiBank, N.A.; and Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc.

Counsel in *Hall*, seizing upon Chief Judge Moreno's order, subsequently re-filed five separate putative class actions against different bank servicers covering various types of force-placed insurance with different insurers. These actions were all filed on March 28, 2013.   In essence, counsel from the Failed MDL Petition have attempted to engineer their own MDL by consolidating five lender-specific actions that cover numerous types of forced-place insurance in front of Chief Judge Moreno in the Southern District of Florida, even though this precise approach was previously proffered to and rejected by the Panel. *See In Re Mort. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d at 1353, n.2.

This backdoor attempt at industry-wide litigation centralization is even less appropriate today than when the Panel rejected it last year.   As the Panel implicitly held, in the context of force-placed insurance litigation, centralization is appropriate only for actions involving a single lender/servicer and a single type of insurance. *See In re:  Mortgage Lender Force-Placed Ins. Litig.*, 895 F.Supp. 2d at 1353 n.2 (recognizing significant factual differences among different types of insurance coverages even for a single bank).   The reason that not only the specific lender/servicer (*e.g.*, Chase) but also the type of insurance coverage at issue (*e.g.,* hazard, flood or wind) is critical is because lenders use different force-placed insurers and have different contracts and agreements for hazard insurance as opposed to other perils, such as wind or flood. In addition, because the mortgage provisions and lender/servicer and insurer agreements differ depending upon the type of insurance at issue, this affects the nature of the legal violations and claims asserted by plaintiffs as well as the proofs presented.

Any such consolidation must take place in the jurisdiction where the most procedurally advanced actions are pending.   Consolidating cases based on the identities of the Defendant

banks and the type of insurance coverage at issue is the only efficient way to coordinate these proceedings.

### III.   ARGUMENT

#### A.   Transfer and Centralization is Appropriate Under 28 U.S.C §1407

This Panel is authorized to transfer civil actions pending in more than one federal district, involving one or more common questions of fact, to a single district for "coordinated and consolidated pretrial proceedings." 28 U.S.C. §1407(a).   The transfer must serve the "convenience of the parties and witnesses and promote the just and efficient conduct of such actions."   *Id.*   To that end, transfer should "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."   MANUAL FOR COMPLEX LITIGATION, Fourth §20.131 (2012).   The purpose of 28 U.S.C. §1407 "is to eliminate the potential for conflicting contemporaneous pretrial rulings by coordinate district and appellate courts in multidistrict related civil actions."   *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 491-92 (J.P.M.L. 1968).

#### 1.   The Related Actions Involve Common Questions of Fact and Law Which Could Be Efficiently Handled in a Consolidated Setting

The threshold requirement for transfer and coordination pursuant to Section 1407 is the presence of common questions of fact.   *In re Fed. Election Campaign Act Litig.*, 511 F.Supp. 821, 823 (J.P.M.L. 1979).   Although common questions must predominate, there is no need for absolute uniformity among claims.[14]   *See In re Antibiotic Drugs*, 309 F.Supp. 155, 156 (J.P.M.L.

---

[14]     This Panel has routinely transferred and centralized putative class actions stemming from "a significant number of common events, defendants, and/or witnesses."   *In re Fairfield Greenwich Grp. Sec. Litig,* 655 F.Supp.2d 1352, 1353 (J.P.M.L. 2009); *see also In re Mattel, Inc., Toy Lead Paint Prods. Liab. Litig.,* 528 F.Supp.2d 1367, 1369 (J.P.M.L. 2007) ("these eleven actions involve common questions of fact, and . . . centralization under Section 1407 in the Central District of California will serve the convenience of the parties and witnesses and

1970)("applicability of different legal principles will not prevent transfer of an action under section 1407 if the requisite common questions of fact exist").  Here, common questions predominate over individual questions of fact in each of the Related Actions.  *See In re Asbestos Sch. Prods. Liab. Litig.*, 606 F.Supp. 713, 714 (J.P.M.L. 1985).

The Related Actions share overarching common elements which show consolidation is appropriate.  Specifically, the cases all involve (1) a single loan servicer – Chase; (2) a single force-placed insurance provider – Assurant; (3) a single type of force-placed insurance—hazard; (4)  the same contracts, agreements, policies, procedures and practices of and between Chase and Assurant; and (5) the ability to calculate class wide damages utilizing the same documents and testimony from Chase and Assurant (and expert testimony related to such documents and testimony).

From these common, overarching elements flow a multitude of common questions of fact and law which go to the core of all of the Related Actions, such as: (1) whether Chase improperly exploited its authority under the borrowers' mortgage agreements to force-place hazard insurance; (2) whether Chase force-placed unnecessary or duplicative hazard coverage on borrowers' properties; (3) whether Chase's affiliate insurance company was set up to serve as a repository for unearned insurance commissions; (4) whether Chase charged force-placed borrowers for tracking Chase's entire loan portfolio; (5) whether Chase's captive reinsurer adequately shared any "real" insurance risk with the force-placed insurer; (6) whether Chase/Assurant force-placed hazard insurance for periods of time covered by borrowers' standard mortgage clauses or Lender Loss Payable Endorsement; (7) whether Chase improperly

---

promote the just and efficient conduct of this litigation"); *In re Merck & Co., Inc., Sec., Derivative & ERISA Litig.,* 360 F.Supp.2d 1375, 1376-77 (J.P.M.L. 2005); *In re Med. Waste Servs. Antitrust Litig.*, 277 F.Supp.2d 1382, 1383 (J.P.M.L. 2003).

accessed borrowers' escrow accounts to pay improper force-placed insurance charges; and (8) Assurant's knowledge of and role in Chase's allegedly improper conduct.

The impropriety of the force-placed insurance scheme will either be proven or disproven based upon the same testimony and documents from Chase and Assurant (and expert testimony relying on the same information). As such, the necessary document production and other discovery testimony will be nearly identical among the Related Actions. Due to this anticipated complete overlap in discovery, the best way to ensure consistency of pretrial rulings in the Related Actions  and promote efficiency is to transfer and centralize these actions before the same court.

### 2.   To the Extent Any Related Actions Include Claims Not Included Within the MDL, Those Claims Can Be Separated and Remanded to the Transferor Court

One of the Related Actions, *Herrick*, includes claims against Chase for both force-placed hazard and wind insurance (*See Herrick* ECF No. 1 ¶¶50-91), Plaintiffs herein seek only to transfer the claim by Plaintiff Saccoccio involving force-placed hazard insurance.

This Panel is empowered under  28 U.S.C. §1407(a) to separate the hazard claims in *Herrick* from the wind claims, which the Panel may and should remand back to the Southern District of Florida after transfer of the *Herrick* action to the Northern District of California. *See* MANUAL FOR COMPLEX LITIGATION, Fourth, §20.131 (2004); *In re: Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, No. MDL 2265, 2011 WL 3569969 (Aug. 15, 2011)(separating and simultaneously remanding claims); *In re Uranium Indus. Antitrust Litig.*, 466 F.Supp. 958, 962 (J.P.M.L. 1979)(severing antitrust counterclaim from underlying action and transferring for inclusion in MDL); *In re Nat'l Student Mktg. Litig.,* 358 F. Supp. 1303, 1304 (J.P.M.L. 1973)(same); *cf. In re Mortg. Elec. Registration Sys. (MERS) Litig.,* No. 10-CV-699, 2011 WL

1118501 at *1 (D. Ariz. Mar. 21, 2011)(noting that the Panel transferred and simultaneously separate and remanded unrelated claims that would "needless entangle the litigation in unrelated, fact-intensive issues."). Accordingly, Plaintiffs herein request that this Panel simultaneously transfer *Herrick,* separate the force-placed wind claims from the hazard claims asserted by Plaintiff Saccoccio in that Related Action, and remand the unrelated force-placed wind insurance claims back to the Southern District of Florida.

### 3. Consolidation is Necessary to Prevent Needless Duplication and Contradictory Pretrial Rulings

The Related Actions share overarching common elements and specific questions of law and fact. Six of the eight original actions are now consolidated in the Plaintiffs' case in the Northern District of California as the court, counsel and the parties recognized the efficiencies and other benefits of litigating these actions together. *See In Re JPMorgan Chase LPI Hazard Litigation* ECF No. 93. Still pending separately are *Isom* in the Southern District of New York and *Herrick* in the Southern District of Florida.

The risk of inconsistent rulings[15] and needless duplication of resources and efforts still exists if *Isom* and *Herrick* continue separately from the six consolidated actions in the Northern District of California. All of the Related Actions assert contract claims against Chase, breach of fiduciary duty claims against Chase and unjust enrichment against either Chase, Assurant, or both. *Id.* The Master Consolidated Complaint also includes claims arising under the Racketeer Influenced Corrupt Organizations Act, the California Business and Professional Code, the New Jersey Consumer Fraud Act, the Illinois Consumer Fraud and Deceptive Practices Act, the Florida Consumer Collections Practices Act, claims for aiding and abetting the breach of a

---

[15]    This is a very real risk as demonstrated by the decision involving a force-placed flood insurance case in *Gordon v. Chase Home Fin., LLC*, No. 8:11-CV-2001, 2012 WL 750608 (M.D. Fla. Mar. 7, 2012).

fiduciary duty, and claims for misappropriation of funds held in trust and, similar claims for conversion in *Isom*.  Thus, there is significant overlap of claims asserted in each of the actions that also weigh heavily in favor of consolidation.  *See In re Bridgestone/Firestone, Inc., ATX, ATXII & Wilderness Tires Prods. Liab. Litig.*, MDL 1373, 2000 U.S. Dist. LEXIS 15926, at \*7 (J.P.M.L. Oct. 24, 2000)(finding consolidation appropriate even in "the presence of additional or differing legal theories [] when the underlying actions still arise from a common factual core.").  Plaintiffs and Defendants will use common proof in all Related Actions.

Further, each case asserts a nationwide class of Chase's force-placed hazard insurance borrowers pursuant to FED. R. CIV. P. 23(b)(2) and (3).  Of course, these common claims asserted against common defendants will likely engender a host of common defenses that will be mounted in opposition to class certification.  Minimizing the risk of inconsistent rulings on class certification is another important element for this Panel to consider.  *See In re Portfolio Recovery Assoc., L.L.C.,* 846 F.Supp.2d 1380, 1381 (J.P.M.L. 2011) ("Centralization therefore will eliminate the risk of inconsistent rulings on class certification."); *see also In re H&R Block Mortg. Corp. Prescreening Litig.*, 435 F.Supp.2d 1347, 1349 (J.P.M.L. 2006)(finding consolidation appropriate when there were "three actions contain[ing] competing class allegations and involve facts of sufficient intricacy that could spawn challenging procedural questions and pose the risk of inconsistent and/or conflicting judgments."); *see also In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. at 1273 ("There is another highly persuasive reason for transferring all these actions to one district for pretrial proceedings.  We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists.").

Even with the recent consolidation of the six actions in *In Re JPMorgan Chase LPI Hazard Litigation*, there will still be three separate federal courts ruling on nearly identical issues of fact, law and pre-trial procedure if the instant petition is not granted.  As such, the risk for inconsistent application of both procedural and substantive law is very high for Defendants and the putative class alike.  Further, the needless duplication of significant efforts on behalf of counsel, the defendants, and the district courts is inevitable without the coordination requested herein.

> **4.    The Centralization Sought Herein Alleviates This Panel's Concerns From The Failed Industry-Wide Consolidation**

The Failed MDL Petition filed last year sought an industry-wide consolidation of all force-placed insurance cases, against a multitude of competing banks, multiple competing force-placed insurance providers, and involving all types of force-placed insurance (*e.g.*, hazard, flood and wind) to the Southern District of Florida.

In denying the petition, this Panel found the unwieldy nature of the proposed consolidation untenable.  *See In Re Mort. Lender Force-Placed Ins. Litig.*, 895 F.Supp.2d at 1353-54. ("The cases before us now involve not only different defendants but different lender agreements with insurers, different alleged abuses, and different mortgage loan documents. Thus, the conduct is not sufficiently uniform to justify industry-wide centralization.").  This Panel also noted complicating factors such as some matters being more procedurally advanced, confidentiality concerns as the numerous banks and insurance companies were competitors in their respective markets, and that consolidation might unwind efforts made by cooperating plaintiffs' counsel.  *Id.*  These concerns simply do not exist in the instant petition.

First, this petition seeks consolidation of a discreet and logical subset of force-placed insurance cases involving *one* lender[16] that utilizes *one* force-placed insurer for only *one* type of force-placed insurance.   Second, neither *Isom* nor *Herrick* is more procedurally advanced.[17] Only in *McNeary-Calloway*, filed in 2011, has the Court issued an opinion on a motion to dismiss.  All other cases were filed from mid-to-late 2012; even as recently as March 28, 2013. Given the relatively early stage of the *Isom* and *Herrick* actions, this is the ideal time to centralize all the Chase force-placed hazard insurance actions for coordinated discovery. *See In re Portfolio Recovery Assoc., L.L.C.*, 846 F. Supp. 2d at 1381 ("None of the actions appears to be so advanced that it cannot benefit from coordinated pretrial proceedings.").

Counsel for Plaintiffs have made significant efforts to cooperate among themselves (as well as *Isom* and *Herrick* counsel) to coordinate this litigation as evidenced by the extensive mediations efforts with defense counsel for Chase and Assurant, and the cooperative consolidation of six of the eight Related Cases in Master Consolidated Complaint.  However, given the existence of at least two additional Related Cases (and the potential for more) that are not part of the Consolidated Action in the Northern District of California, voluntary cooperation alone is insufficient and therefore consolidation in an MDL format becomes necessary and

---

[16]    The Panel has embraced this approach in the context of the nationwide actions against various lenders with a particular set of claims based on analogous fact patterns, which were centralized by lender rather than industry-wide.  *See e.g., In re JPMorgan Chase Mortg. Modification Litig.*, 818 F. Supp. 2d 1378 (J.P.M.L. 2011); *In re CitiMortgage, Inc., Home Affordable Modification Program (HAMP) Contract Litig.*, 816 F. Supp. 2d 1375 (J.P.M.L. 2011); *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 746 F. Supp. 2d 1359 (J.P.M.L. 2010).

[17]    Counsel for Plaintiffs in *McNeary-Calloway*, *Jelks*, *Knox*, *Brooks, Yogev* and *Leger* were involved in extensive mediation efforts with Chase before David Geronemus of JAMS New York.  During the extended mediation effort, all participating cases were stayed.  *Isom* was stayed for a period of time during which counsel in that participated in the mediation.

appropriate. *See, e.g., In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 588 F.Supp.2d 1374, 1375 (J.P.M.L. 2008)(applauding voluntary cooperation efforts but deciding that transfer to a single District for coordinated proceedings would be more efficient).

**B.** **The Northern District of California is the Appropriate Forum for the Related Actions.**

**1.** **The Northern District of California is the Venue of the First-Filed Action**

The Northern District of California has the resources and the ability to effectively manage the multidistrict litigation and is the most suitable forum for consolidation. Indeed, the Panel has already found that the Northern District of California is well-equipped to handle multidistrict litigation in complex cases. *See, e.g., In re Int'l Air Transp. Surcharge Antitrust Litig.,* 460 F.Supp.2d 1377, 1379 (J.P.M.L. 2006) ("the Northern District of California… is well equipped with the resources that this complex antitrust docket is likely to require"); *In re Wells Fargo Home Mort. Overtime Pay Litig.,* 435 F.Supp.2d 1338, 1338 (J.P.M.L. 2006) ("Northern District of California was appropriate transferee forum for coordinated or consolidated pretrial proceedings… and well equipped with the resources likely to be required").

Of importance, the *McNeary-Calloway* action (now entitled *In Re JPMorgan Chase LPI Hazard Litigation*), pending in the Northern District of California was the first force-placed hazard insurance case on file against Chase. This Panel has frequently stressed that it is appropriate to give "the first-filed criterion some weight in selecting a transferee district." *In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.,* 763 F.Supp.2d 1374, 1375 (J.P.M.L. 2011)(citation omitted); *see also, e.g., In re: AutoZone, Inc., Wage & Hour Emp't Practices Litig.*, 717 F.Supp.2d. 1380 (J.P.M.L. 2010)(transferring to Northern District of California; location of first-filed case).

17

### 2.    The Most Advanced Action is in the Northern District of California

Moreover, the *McNeary-Calloway* action is by far the most procedurally advanced case of all the Related Actions, as Plaintiffs have already passed the motion to dismiss stage and engaged in significant informal/formal discovery, another factor weighing heavily in favor of the Northern District of California. *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, No. 3:11-cv-3058; 863 F.Supp.2d 928 (N.D. Cal. 2012); *See In re: Bank of Am. Credit Prot. Mktg. & Sales Practices Litig.*, 804 F.Supp.2d. 1372, 1373 (J.P.M.L.  2011)(holding that the Northern District of  California was appropriate forum because it had first-filed and most procedurally advanced action); *see also In re Plastics Additives Antitrust Litig (No. II)*, 374 F.Supp.2d 1351(J.P.M.L. 2005) (taking into consideration where the first filed and most advanced actions are pending to determine most appropriate forum for transfer).  This Panel commonly transfers actions to the court where a related action is the most procedurally advanced. *See, e.g.*, *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, 626 F. Supp. 2d 1358, 1359 (J.P.M.L. 2009); *In re Okun*, 609 F. Supp. 2d 1380, 1382 (J.P.M.L. 2009).

### 3.    Most of the Pending Hazard Cases Against Chase and Assurant Already Have Been Consolidated in the Northern District of California

In addition, all Plaintiffs in the six separate actions, along with Chase and Assurant, agreed to the consolidation of claims in the Northern District of California in *In Re JPMorgan Chase LPI Hazard Litigation,* and further consented to proceed before United States Magistrate Joseph C. Spero.  The great weight of the cases already existing in one jurisdiction is another factor that weighs heavily in favor of selecting that venue for consolidation. *See In re iPhone/iPad Application Consumer Privacy Litig.*, 802 F. Supp. 2d 1363, 1364 (J.P.M.L. 2011)

(establishing an MDL in the Northern District of California because "[a]t least eight related actions are already pending there, including the first-filed actions.")

And, while the Panel admittedly cannot transfer the Related Actions directly to Magistrate Judge Spero, there are several other highly qualified and experienced jurists in the district that could serve as an excellent steward of this litigation, or would have the option to refer the Related Actions to Magistrate Spero (provided that the plaintiffs in *Isom* and *Herrick* consent to proceed before Magistrate Spero), work with Magistrate Spero as his/her designated magistrate, or build on the cases that he has overseen.

Judge H. William Alsup would be an excellent choice as he is an extremely accomplished and respected jurist, who presided over an action involving force-placed flood insurance and Chase that was ultimately settled with the assistance of Magistrate Spero. *See Hofstetter v. Chase Home Finance LLC*, No. 3:10-cv-01313-WHA (N.D. Cal.)(force-placed flood insurance). Judge Alsup is also currently presiding over a force-placed hazard insurance case involving Wells Fargo. *See Lane v. Wells Fargo Bank, N.A.*, No. 3:12-cv-4026-WHA (N.D. Cal.) This Panel has also entrusted Judge Alsup to preside over MDL actions in the past. *See e.g. In re Graphics Processing Units Antitrust Litig.*, 483 F. Supp. 2d 1356 (J.P.M.L. 2007); *In re Circular Thermostat Antitrust Litig.*, 370 F. Supp. 2d 1355, 1357 (J.P.M.L. 2005).

### 4. The Northern District of California has Particular Expertise in Force-Placed Insurance Litigation and is Well-Suited to Handle this MDL

The Northern District of California has become the focal point for much of the recent wave of force-placed insurance litigation and is well-suited for this MDL. In addition to Plaintiffs' Consolidated Chase-Assurant Hazard Action, Magistrate Judge Spero is currently presiding over four cases involving force-placed flood insurance. *See Clements v. JPMorgan Chase Bank, N.A.*, No. 3:12-cv-02179-JCS (N.D. Cal.); *Corbin v. Wells Fargo Bank, N.A.*, No.

3:13-cv-1353-JCS (N.D. Cal.); *Leghorn v. Wells Fargo Bank, N.A.* No. 3:13-cv-0708-JCS (N.D. Cal.); *McKenzie v. Wells Fargo Home Mortg., Inc.*, No. 3:11-cv-4965-JCS (N.D. Cal.). Additionally, the Northern District of California is also the venue for *Lane v. Wells Fargo Bank, N.A.*, No. 3:12-cv-4026-WHA (N.D. Cal.), a case, putatively, involving force-placed flood insurance and/or hazard insurance, and has also served as the venue for two settled cases involving force-placed insurance. *See Hofstetter v. Chase Home Finance LLC*, No. 3:10-cv-01313-WHA (N.D. Cal.)(force-placed flood insurance); and *Wahl v. American Security Insurance Co.*, No. 3:08-cv-00555-RS (N.D. Cal.)(force-placed hazard insurance). Further, the Northern District of California is convenient for the parties, witnesses and attorneys[18] as the region is served by multiple airports and all of the major airlines. Lastly, the caseload statistics for the Northern District of California, Southern District of Florida and Southern District of New York reveal a circumstance where docket volume for the respective districts (both filings and pending), the filings per judge, pending case load per judge and "weighted filings" per judge reveal some distinctions by district but with no statistical caseload profile which is clearly more appropriate for taking on a relatively modest MDL such as that proposed herein.

## IV.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that the Judicial Panel on Multidistrict Litigation Transfer the Related Actions to the Northern District of California for Coordinated or Consolidated Pre-Trial Proceedings pursuant to 28 U.S.C. § 1407 and further request that the unrelated force-placed wind insurance claims in *Herrick* be simultaneously separated and remanded to the Southern District of Florida pursuant to 28 U.S.C. §1407(a).

---

[18]    Bingham McCutchen, one of the primary law firms defending Chase in actions across the country relating to Chase's force-placed insurance practices, has five offices in California, including offices in San Francisco and Silicon Valley.

Dated May 24, 2013

Respectfully submitted,

*/s/ Edward W. Ciolko*
**KESSLER TOPAZ**
 **MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
Donna Siegel Moffa
Amanda R. Trask
Jesse C. Klaproth
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
Email: eciolko@ktmc.com
Email: pmuhic@ktmc.com
Email: dmoffa@ktmc.com
Email: atrask@ktmc.com
Email: jklaproth@ktmc.com

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Ramzi Abadou
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
Email: rabadou@ktmc.com

**NIX PATTERSON & ROACH, LLP**
Brad Seidel
Christopher Johnson
3600 North Capital of Texas Highway
Building B Suite 350
Austin, TX  78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
Email: bseidel@npraustin.com
Email: cjohnson@npraustin.com

**SALPETER GITKIN, LLP**
James P. Gitkin
Eric T. Salpeter
Museum Plaza – Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301

21

Telephone: (954) 467-8622
Facsimile: (954) 467-8623
Email: eric@salpetergitkin.com
Email: jim@salpetergitkin.com

**GOLDMAN SCARLATO KARON &
PENNY, P.C.**
Brian D. Penny
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Phone: 484 342-0700
Email: penny@gskplaw.com

**BERGER & MONTAGUE, P.C.**
Michael Dell'Angelo
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215 875-3080
Facsimile:  (215)875-4604
Email: mdellangelo@bm.net
Email: sschalman-bergen@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Archana Tamoshunas
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: 212-931-0704
Facsimile: 212-931-0703
Email: atamoshunas@tcllaw.com

**GILMAN LAW LLP**
Kenneth G. Gilman
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL  34134
Telephone (239) 221-8301
Facsimile (239) 676-8224
Email: kgilman@gilmanpastor.com

**HOLLAND, GROVES, SCHNELLER &
STOLZE, LLC**
Eric D. Holland
Gerard B. Schneller
300 N Tucker, Suite 801
St. Louis, Missouri 63101

22

Telephone: 314-241-8111
Facsimile: 314-241-5554
Email: eholland@allfela.com
Email: gschneller@allfela.com

**CATES MAHONEY, LLC**
David Cates
216 West Pointe Drive, Suite A
Swansea, IL  62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

**GROSSMAN ROTH, P.A.**
Seth E. Miles
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL  33134
Telephone: 305-442-8666
Facsimile: 305-285-1668
Email   sem@grossmanroth.com

**EDELSON & ASSOCIATES, LLC**
Marc H. Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: 215-230-8043
Facsimile: 215-230-8735
Email: medelson@edelson-law.com

**LAW OFFICE OF
ANDREW BENNETT SPARK**
Andrew Bennett Spark
13911 W. Hillsborough Ave., Suite 161
Tampa, FL  33635
Telephone: 941-321-5927
Facsimile: 813-441-1117
Email: abspark@msn.com


*Attorneys for Plaintiffs*

23

**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE:

**JPMORGAN CHASE LPI HAZARD
LITIGATION**

MDL Docket No._____

# EXHIBIT A

# SCHEDULE OF CASES

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

**MDL _____ In re: - JPMORGAN CHASE LPI HAZARD LITIGATION**

| Case Caption(s) | Court | Civil Action No. | Judge | Exhibit Number |
|---|---|---|---|---|
| **Plaintiffs:** Patricia McNeary-Calloway, Colin Mackinnon, Terrie Mackinnon, Andrea North, Sheila M. Mayko, Leamon E. Leger, Jr., Patricia A. Leger, Garry ("Mitch") Mitchell Varnes, Jr., Kathryn A. Varnes, Jr., Chad Knox, Leonard Jelks, Jr., Jack E. Brooks, Tami Brooks and Achikam Yogev<br><br>**Defendants:** JPMorgan Chase Bank, N.A., Chase Bank USA, N.A., Assurant, Inc., American Security Insurance Corp., Standard Guaranty Insurance Company and Banc One Insurance Co. | N.D. California | 3:11-03058-JCS | Honorable Joseph C. Spero, U.S.M.J. | 1 |
| **Plaintiffs:** Alfred Herrick, Sydell Herrick, Alberto Barreto, Carol Lynn Upshaw, Salvatore Saccoccio<br><br>**Defendants:** JPMorgan Chase Bank, N.A., Chase Home Finance, LLC, Chase Insurance Agency, Inc., Assurant, Inc., American Security Insurance Company, and Voyager Indemnity Insurance Company | S.D. Florida | 1:13-21107-FAM | Honorable Federico A. Moreno | 2 |
| **Plaintiff:** Edward Isom, Jr.<br><br>**Defendants:** JPMorgan Chase Bank, N.A., and Chase Bank USA, N.A. | S.D. New York | 1:12-5431-AJN | Honorable Alison J. Nathan | 3 |

## BEFORE THE UNITED STATES
## JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:

JPMORGAN CHASE LPI HAZARD
LITIGATION

MDL Docket No._____

### PROOF OF SERVICE

I, Edward W. Ciolko, counsel for Plaintiffs Patricia McNeary-Calloway, Colin MacKinnon, Terrie MacKinnon, Andrea North, Sheila M. Mayko, Patricia A. Leger, Leamon E. Leger, Jr., Garry ("Mitch") Mitchell Varnes, Kathryn A. Varnes, Chad Knox, Leonard Jelks, Jr., Jack E. Brooks, Tami Brooks and Achikam Yogev in the *In Re JPMorgan Chase LPI Hazard Litigation*, N.D. California, No. 3:11-3058, hereby certify that copies of **Plaintiffs' Motion to Transfer for Coordinated or Consolidated Pre-Trial Proceedings Pursuant to 28 U.S.C. § 1407, Memorandum of Law In Support thereof, Exhibit A (Schedule of Cases), Service List** and this **Proof of Service** were filed electronically through the CM/ECF system and are also being served this day on all parties identified on the **Service List**.

Dated: May 24, 2013

/s/ *Edward W. Ciolko*
Edward W. Ciolko
Peter A. Muhic
**Kessler Topaz Meltzer & Check, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: 610-667-7706
Fax: 610-667-7056
Email: eciolko@ktmc.com
*Counsel for Plaintiffs in the*
*In Re JPMorgan Chase LPI Hazard Litigation*
*Action*
N.D. California, No. 3:11-3058

**BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

IN RE:

**JPMORGAN CHASE LPI HAZARD
LITIGATION**

MDL Docket No._____

# SERVICE LIST

1

*Clerk of Court*
*(Sent by Federal Express)*

**Clerk, Northern District of California**
Philip Burton Federal Building & United
States Courthouse
450 Golden Gate Ave., 16th Floor
San Francisco, CA  94102

*In Re JPMorgan Chase LPI*
*Hazard Litigation*
Docket No. 3:11-cv-3058 (N.D. Cal.)

**Clerk, Southern District of Florida**
Wilkie D. Ferguson, Jr. U.S. Courthouse
400 North Miami Ave.
Miami, FL  33128

*Herrick v. JPMorgan Chase Bank, N.A., et al.*
Docket No. 1:13-cv-21107 (S.D. Fla.)

**Clerk, Southern District of New York**
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY  10007

*Isom v. JPMorgan, et al.*
Docket No. 1:12-cv-5431 (S.D.N.Y.)

*In Re JPMorgan Chase LPI Hazard*
*Litigation*
Docket No. 3:11-cv-3058 (N.D. Cal.)
*(Sent by Electronic Mail)*

Joseph H. Meltzer, Esq.
Edward W. Ciolko, Esq.
Peter A. Muhic, Esq.
Amanda R. Trask, Esq.
Donna Siegel Moffa, Esq.
**Kessler Topaz Meltzer & Check, LLP**
280 King of Prussia Road
Radnor, PA 19087
Email: jmeltzer@ktmc.com
Email: eciolko@ktmc.com
Email: pmuhic@ktmc.com
Email: atrask@ktmc.com
Email: dmoffa@ktmc.com
*Counsel for Plaintiffs:*
*Patricia McNeary-Calloway, Colin and Terrie*
*MacKinnon, Andrea North, and Sheila M.*
*Mayko*
N.D. California, No. 3:11-3058

Ramzi Abadou, Esq.
**Kessler Topaz Meltzer & Check, LLP**
One Sansome St., Suite 1850
San Francisco, CA 94104
Email: rabadou@ktmc.com
*Counsel for Plaintiffs:*
*Patricia McNeary-Calloway, Colin and Terrie*
*MacKinnon, Andrea North, and Sheila M.*
*Mayko*
N.D. California, No. 3:11-3058

Brad E. Seidel, Esq.
Jeffrey J. Angelovich, Esq.
Michael Angelovich, Esq
Christopher R. Johnson, Esq.
**Nix Patterson & Roach, LLP**
3600 N. Capital of Texas Highway
Bldg. B, Suite 350
Austin, TX 78746
Email: bseidel@npraustin.com
Email: jangelovich@npraustin.com
Email: mangelovich@npraustin.com
Email: cjohnson@npraustin.com
*Counsel for Plaintiffs:*
*Patricia McNeary-Calloway, Colin and Terrie*
*MacKinnon, Andrea North, and Sheila M.*
*Mayko*
N.D. California, No. 3:11-3058

Thomas E. Loeser, Esq.
**Hagens Berman Sobol Shapiro LLP**
1918 Eight Ave., Suite 3300
Seattle, WA 98101
Email: toml@hbsslaw.com
*Counsel for Movant:*
*Shelly A. Clements*
N.D. California, No. 3:11-3058

Brian D. Penny, Esq.
**Goldman Scarlato Karon & Penny, P.C.**
101 E. Lancaster Ave.
Suite 204
Wayne, PA  19087
Email: penny@gskplaw.com
*Counsel for Plaintiffs:*
*Patricia McNeary-Calloway, Colin and Terrie*
*MacKinnon,  Andrea North, and Sheila M.*
*Mayko*
N.D. California, No. 3:11-3058

Eric T. Salpeter, Esq.
James P. Gitkin, Esq.
**Salpeter Gitkin, LLP**
Museum Plaza, Suite 503
200 South Andrews Ave.
Ft. Lauderdale, FL  33301
Email: eric@salpetergitkin.com
Email: jim@salpetergitkin.com
*Counsel for Plaintiffs:*
*Patricia McNeary-Calloway, Colin and Terrie*
*MacKinnon,  Andrea North, and Sheila M.*
*Mayko*
N.D. California, No. 3:11-3058

Marc H. Edelson, Esq.
**Edelson & Associates, LLC**
45 West Court St.
Doylestown, PA 18901
Email: medelson@edelson-law.com
*Counsel for Plaintiffs:*
*Patricia A. Leger, Leamon E. Leger, Jr.,*
*Garry Mitchell ("Mitch") Varnes, Jr.,*
*Kathryn A. Varnes*
N.D. California, No. 3:11-cv-3058

Michael C. Dell'Angelo, IV., Esq.
Shanon J. Carson, Esq.
Patrick F. Madden, Esq.
Sarah R. Schalman-Bergen, Esq.
**Berger Montague, P.C.**
1622 Locust St.
Philadelphia, PA  19103
Email: mdellangelo@bm.net
Email: scarson@bm.net
Email: pmadden@bm.net
Email: sschalman-bergen@bm.net
*Counsel for Plaintiffs:*
*Patricia A. Leger, Leamon E. Leger, Jr.,*
*Garry Mitchell ("Mitch") Varnes, Jr.,*
*Kathryn A. Varnes*
N.D. California, No. 3:11-cv-3058

Kenneth G. Gilman, Esq.
**Gilman Law, LLP**
Beachway Professional Center Tower
8951 Bonita Beach Rd., Suite 525-405
Bonita Springs, FL  34135
Email: kgilman@gilmanpastor.com
*Counsel for Plaintiff:*
*Chad Knox*
N.D. California, No. 3:11-cv-3058

Charles E. Schaffer, Esq.
**Levin Fishbein Sedran & Berman**
510 Walnut St., Suite 500
Philadelphia, PA  19106
Email: cschaffer@lfsblaw.com
*Counsel for Plaintiffs:*
*Jack E. Brooks and Tami Brooks*
N.D. California, No. 3:11-cv-3058

David I. Cates, Esq.
**Cates Mahoney, LLC**
216 West Point Drive
Suite A
Swansea, IL  62226
Email: dcates@cateslaw.com
*Counsel for Plaintiffs:*
*Jack E. Brooks and Tami Brooks*
N.D. California, No. 3:11-cv-3058

William B. Federman, Esq.
Jennifer F. Sherrill, Esq.
**Federman Sherwood**
10205 N. Pennsylvania
Oklahoma City, OK  73102
Email: wbf@federmanlaw.com
Email: jfs@federmanlaw.com
*Counsel for Plaintiff:*
*Leonard Jelks, Jr.*
N.D. California, No. 3:11-cv-3058

Seth E. Miles, Esq.
**Grossman Roth, P.A.**
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL  33134
Email  sem@grossmanroth.com
*Counsel for Plaintiff:*
*Achikam Yogev*
N.D. California, No. 3:11-cv-3058

Eric D. Holland, Esq.
Gerard B. Schneller, Esq.
**Holland Groves Schneller & Stolze, LLC**
300 North Tucker Blvd., Suite 801
St. Louis, MO  63101
Email: eholland@allfela.com
Email: gschneller@allfela.com
*Counsel for Plaintiffs:*
*Jack E. Brooks and Tami Brooks*
N.D. California, No. 3:11-cv-3058

Archana Tamoshunas, Esq.
**Taus, Cebulash & Landau, LLP**
80 Maiden Lane, Suite 1204
New York, New York 10038
Email: atamoshunas@tcllaw.com
*Counsel for Plaintiffs:*
*Patricia A. Leger, Leamon E. Leger, Jr.,*
*Garry Mitchell ("Mitch") Varnes, Jr.,*
*Kathryn A. Varnes*
N.D. California, No. 3:11-cv-3058

Andrew B. Spark, Esq.
**Law Office of Andrew Bennett Spark**
13851 W. Hillsborough Ave., Suite 187
Tampa, FL  33635
Email: abspark@msn.com
*Counsel for Plaintiffs:*
*Patricia A. Leger, Leamon E. Leger, Jr.,*
*Garry Mitchell ("Mitch") Varnes, Jr.,*
*Kathryn A. Varnes*
N.D. California, No. 3:11-cv-3058

*In Re JPMorgan Chase LPI Hazard Litigation*
Docket No. 3:11-cv-3058 (N.D. Cal.)
*(Sent by Electronic Mail)*

Peter O. Obstler, Esq.
Zachary J. Alinder, Esq.
**Bingham McCutchen LLP**
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111
Email: peter.obstler@bingham.com
Email: zachary.alinder@bingham.com
*Counsel for Defendants:*
*JPMorgan Chase Bank, N.A., Chase Bank USA, N.A. and Banc One Insurance Company*
N.D. California, No. 3:11-3058

Frank G. Burt, Esq.
W. Glenn Merten, Esq.
Brian P. Perryman, Esq.
**Jorden Burt LLP**
1025 Thomas Jefferson Street NW
Suite 400E
Washington, DC  20007
Email: fgb@jordenusa.com
Email: wgm@jordenusa.com
Email: bpp@jordenusa.com
*Counsel for Defendants:*
*Assurant, Inc., American Security Insurance Corporation and Standard Guaranty Insurance Company*
N.D. California, No. 3:11-cv-3058

Peter S. Hecker, Esq.
**Sheppard Mullin Richter & Hampton, LLP**
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA  94111
Email: phecker@sheppardmullin.com
*Counsel for Defendants:*
*Assurant, Inc., American Security Insurance Corporation and Standard Guaranty Insurance Company*
N.D. California, No. 3:11-3058

*Herrick v. JPMorgan Chase Bank, N.A., et al.*
Docket No. 1:13-cv-21107 (S.D. Fla.)
*(Sent by Electronic Mail)*

Aaron S. Podhurst, Esq.
John Gravente, III, Esq.
Matthew Weinshall, Esq.
Peter Prieto, Esq.
**Podhurst Orseck, P.A.**
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Email: apodhurst@podhurst.com
Email: jgravante@podhurst.com
Email: mweinshall@podhurst.com
Email: pprieto@podhurst.com
*Counsel for Plaintiffs:*
*Alfred Herrick, Sydell Herrick, Albert*
*Barreto, Carol Lynn Upshaw, Salvatore*
*Saccoccio*
S.D. Florida, No. 1:13-cv-21107

Lance A. Harke, Esq.
**Harke Clasby & Bushman LLP**
9699 NE Second Avenue
Miami Shores, FL 33138
Email: lharke@harkeclasby.com
*Counsel for Plaintiffs:*
*Alfred Herrick, Sydell Herrick, Albert*
*Barreto, Carol Lynn Upshaw, Salvatore*
*Saccoccio*
S.D. Florida, No. 1:13-cv-21107

Adam M. Moskowitz, Esq.
Rachel Sullivan, Esq.
Thomas A. Tucker Ronzetti, Esq.
**Kozyak Tropin & Throckmorton**
2525 Ponce de Leon Boulevard, Suite 900
Coral Gables, FL 33134-6036
Email: AMM@kttlaw.com
Email: rs@kttlaw.com
Email: TR@kttlaw.com
*Counsel for Plaintiffs:*
*Alfred Herrick, Sydell Herrick, Albert*
*Barreto, Carol Lynn Upshaw, Salvatore*
*Saccoccio*
S.D. Florida, No. 1:13-cv-21107

7

*Herrick v. JPMorgan Chase Bank, N.A., et al.*
Docket No. 1:13-cv-21107 (S.D. Fla.)
*(Sent by Electronic Mail)*

Robert M. Brochin, Esq.
**Morgan, Lewis & Bockius, LLP**
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131
Email: rbrochin@morganlewis.com
*Counsel for Defendants:*
*JPMorgan Chase Bank, N.A., Chase Home*
*Finance, LLC and Chase Insurance Agency,*
*Inc.*
S.D. Florida, No. 1:13-cv-21107

Frank G. Burt, Esq.
Farrokh Jhabvala, Esq.
**Jorden Burt LLP**
1025 Thomas Jefferson Street NW
Suite 400E
Washington, DC  20007
Email: fgb@jordenusa.com
Email: fj@jordenusa.com
*Counsel for Defendants:*
*Assurant, Inc., American Security Insurance*
*Corporation and Voyager Indemnity Co.*
S.D. Florida, No. 1:13-cv-21107

8

***Isom v. JPMorgan, et al.***
Docket No. 1:12-cv-05431 (S.D.N.Y.)
***(Sent by Electronic Mail)***

T. Brent Walker, Esq.
**Carter Walker, PLLC**
2171 West Main St., Suite 200
P.O. Box 628
Cabot, AR  72023
Email: bwalker@walkerlawplc.com
***Counsel for Plaintiff:***
***Edward Isom, Jr.***
S.D. New York, No. 1:12-05431

Matthew S. Wild, Esq.
**Wild Law Group, PLLC**
98 Distillery Rd.
Warwick, NY  10990
Email: mwild@wildlawgroup.com
***Counsel for Plaintiff:***
***Edward Isom, Jr.***
S.D. New York, No. 1:12-05431

Max Wild, Esq.
**Law Offices of Max Wild**
98 Distillery Rd.
Warwick, NY  10990
Email: mhw311@optonline.net
***Counsel for Plaintiff:***
***Edward Isom, Jr.***
S.D. New York, No. 1:12-05431

Steven A. Owings, Esq.
**Owings Law Firm**
1400 Brookwood Dr.
Little Rock, AR  72202
Email: sowings@owingslawfirm.com
***Counsel for Plaintiff:***
***Edward Isom, Jr.***
S.D. New York, No. 1:12-05431

Jack Wagoner , III., Esq.
Angela M. Mann, Esq.
**Wagoner Law Firm, P.A**.
1320 Brookwood, Suite D
Little Rock, AR 72202
Email: jack@wagonerlawfirm.com
Email: angela@wagonerlawfirm.com
***Counsel for Plaintiff:***
***Edward Isom, Jr.***
S.D. New York, No. 1:12-05431

***Isom v. JPMorgan, et al.***
Docket No. 1:12-cv-05431 (S.D.N.Y.)
***(Sent by Electronic Mail)***

Daniel J. Horwitz, Esq.
**Dickstein Shapiro LLP**
1633 Broadway
New York, NY  10019
Email: dhorwitz@lcattorneys.com
***Counsel for Defendants:***
***JPMorgan Chase Bank, N.A. and Chase***
***Bank USA, N.A.***
S.D. New York, No. 1:12-05431

Peter O. Obstler, Esq.
Zachary J. Alinder, Esq.
**Bingham McCutchen LLP**
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111
Email: peter.obstler@bingham.com
Email: zachary.alinder@bingham.com
***Counsel for Defendants:***
***JPMorgan Chase Bank, N.A. and Chase***
***Bank USA, N.A.***
S.D. New York, No. 1:12-05431

# EXHIBIT 1

ADRMOP,CONSENT,CONSOL,E-Filing,RELATE,STAYED

**U.S. District Court**
**California Northern District (San Francisco)**
**CIVIL DOCKET FOR CASE #: 3:11-cv-03058-JCS**

McNeary-Calloway v. JPMorgan Chase Bank, N.A. et al
Assigned to: Magistrate Judge Joseph C. Spero
Relate Case Case: 3:12-cv-02179-JCS
Cause: 28:1331 Fed. Question

Date Filed: 06/20/2011
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

**Plaintiff**

**Patricia McNeary-Calloway**
*individually and on behalf of all others*
*similarly situated*

represented by **Amanda R Trask ,**
Kessler Topaz Meltzer Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
Fax:
Email: atrask@ktmc.com
*ATTORNEY TO BE NOTICED*

**Brad Edward Seidel**
Nix Patterson and Roach, LLP
3600 N. Capital of Texas Highway
Bldg B, Suite 350
Austin, TX 78746
512-328-5333
Fax: 512-328-5335
Email: bseidel@npraustin.com
*ATTORNEY TO BE NOTICED*

**Brian Douglas Penny**
Goldman Scarlato Karon and Penny,
P.C.
101 E. Lancaster Ave.
Suite 204
Wayne, PA 19087
484-342-0700
Email: penny@gskplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christopher R. Johnson**
Nix, Patterson & Roach, LLP
3600 N. Capital of Texas Highway
Building B
Suite 350
Austin, TX 78746

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Donna Siegel Moffa**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
Fax: 610-667-7056
Email: dmoffa@ktmc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Edward W. Ciolko**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: eciolko@ktmc.com
*ATTORNEY TO BE NOTICED*

**Eric T. Salpeter**
Salpeter Gitkin, LLP
Museum Plaza
Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
(954) 467-8622
Fax: (954) 467-8623
*ATTORNEY TO BE NOTICED*

**James Paul Gitkin ,**
Salpeter Gitkin, LLP
Museum Plaza
Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
(954) 467-8622
Fax: (954) 467-8623
Email: jim@salpetergitkin.com
*ATTORNEY TO BE NOTICED*

**Jeffery J. Angelovich**
3600 N. Capital of Texas Hwy
Bldg. B., Ste. 350
Austin, TX 78746
512-328-533
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Joseph H. Meltzer**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: jmeltzer@ktmc.com
*ATTORNEY TO BE NOTICED*

**Joseph A Weeden**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: jweeden@ktmc.com
*ATTORNEY TO BE NOTICED*

**Michael B. Angelovich**
Nix Patterson & Roach, LLP
205 Linda Drive
Daingerfield, TX 75638
(903) 645-7333
Fax: (903) 645-4415
*ATTORNEY TO BE NOTICED*

**Michelle Adrienne Coccagna**
Kessler Topaz Meltzer Check
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: mcoccagna@ktmc.com
*ATTORNEY TO BE NOTICED*

**Peter H LeVan , Jr.**
Kessler Topaz Meltzer Check, LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: plevan@ktmc.com
*TERMINATED: 02/27/2013*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Muhic**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

610-667-7706
Fax: 610-667-7056
Email: pmuhic@ktmc.com
*ATTORNEY TO BE NOTICED*

**Ramzi Abadou**
Kessler Topaz Meltzer & Check, LLP
One Sansome Street
Suite 1850
San Francisco, CA 94104
415-400-3000
Fax: 415-400-3001
Email: rabadou@ktmc.com
*ATTORNEY TO BE NOTICED*

**Terence Scott Ziegler**
Schiffrin Barroway Topaz & Kessler,
LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Email: tziegler@ktmc.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Colin MacKinnon**                    represented by **Edward W. Ciolko**
Kessler Topaz Meltzer & Check, LLP
280 King of Prussia
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056
Email: eciolko@ktmc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda R Trask ,**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter H LeVan , Jr.**
(See above for address)
*TERMINATED: 02/27/2013*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Muhic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Abadou**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Terrie MacKinnon**                    represented by **Edward W. Ciolko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda R Trask ,**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter H LeVan , Jr.**
(See above for address)
*TERMINATED: 02/27/2013*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Muhic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Abadou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Andrea North**                    represented by **Edward W. Ciolko**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda R Trask ,**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter H LeVan , Jr.**
(See above for address)
*TERMINATED: 02/27/2013*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Muhic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Abadou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sheila M Mayko**                    represented by **Edward W. Ciolko**

CAND-ECF

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amanda R Trask ,**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter H LeVan , Jr.**
(See above for address)
*TERMINATED: 02/27/2013*
*ATTORNEY TO BE NOTICED*

**Peter Anthony Muhic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ramzi Abadou**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Patricia A. Leger**                    represented by **Andrew Bennett Spark**
                                                        Law Office of Andrew Bennett Spark
                                                        13851 W. Hillsborough Ave.
                                                        Suite 187
                                                        Tampa, FL 33635
                                                        941-321-5927
                                                        Fax: 813-441-1117
                                                        Email: abspark@msn.com
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Leamon E. Leger, Jr.**                 represented by **Andrew Bennett Spark**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JPMorgan Chase Bank, N.A.**            represented by **Peter Obstler**
                                                        Bingham McCutchen LLP
                                                        Three Embarcadero Center, Suite 2800
                                                        San Francisco, CA 94111
                                                        415-393-2578
                                                        Fax: 415-393-2286
                                                        Email: peter.obstler@bingham.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

CAND-ECF

                                  **Zachary J. Alinder**
Bingham McCutchen, LLP
Three Embarcadero Center
San Francisco, CA 94111
(415) 393-2226
Fax: (415) 393-2286
Email: zachary.alinder@bingham.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chase Bank USA, N.A.**          represented by **Peter Obstler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

                                    **Zachary J. Alinder**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Standard Guaranty Insurance Company**      represented by **Peter S. Hecker**
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center
Seventeenth Floor
San Francisco, CA 94111-4109
(415) 434-9100
Fax: (415) 434-3947
Email: phecker@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

V.

**Movant**

**Shelly A. Clements**          represented by **Thomas Eric Loeser**
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101
206-623-7292
Fax: 206-623-0594
Email: toml@hbsslaw.com
*ATTORNEY TO BE NOTICED*

**Interested Party**

**American Security Insurance Company**    represented by **Denise A. Fee**
Jorden Burt LLP
1025 Thomas Jefferson St NW, Suite 400 East Lobby

Washington, DC 20007
202-965-8100
Fax: 202-965-8104
Email: daf@jordenusa.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter S. Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Interested Party**

**Assurant, Inc.**                    represented by **Denise A. Fee**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter S. Hecker**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/20/2011 | 1 | CLASS ACTION COMPLAINT; Jury Trial Demanded against Chase Bank USA, N.A., JPMorgan Chase Bank, N.A. (Filing fee $ 350.00, receipt number 34611061238). Filed by Patricia McNeary-Calloway. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 6/20/2011) (Additional attachment(s) added on 6/26/2011: # 2 Exhibits A through I) (gba, COURT STAFF). (Entered: 06/26/2011) |
| 06/20/2011 | 2 | Summons Issued as to Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (gba, COURT STAFF) (Filed on 6/20/2011) (Entered: 06/26/2011) |
| 06/20/2011 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 9/23/2011. Case Management Conference set for 9/30/2011 01:30 PM in Courtroom G, 15th Floor, San Francisco. (gba, COURT STAFF) (Filed on 6/20/2011) (Entered: 06/26/2011) |
| 06/20/2011 |  | CASE DESIGNATED for Electronic Filing. (gba, COURT STAFF) (Filed on 6/20/2011) (Entered: 06/26/2011) |
| 06/28/2011 | 4 | CLERKS NOTICE re: Consent or Declination. form due 7/12/11. (klhs, COURT STAFF) (Filed on 6/28/2011) (Entered: 06/28/2011) |
| 06/30/2011 | 5 | MOTION for Admission of Attorney Terence S. Ziegler Pro Hac Vice (Filing fee $ 275.00, receipt number 34611061677) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 6/30/2011) (Entered: 07/01/2011) |
| 06/30/2011 | 6 | MOTION for Admission of Attorney Edward W. Ciolko Pro Hac Vice (Filing fee $ 275.00, receipt number 34611061666) filed by Patricia McNeary- |

CAND-ECF

| | | |
|---|---|---|
| | | Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 6/30/2011) (Entered: 07/01/2011) |
| 07/05/2011 | 7 | Summons Returned Executed by Patricia McNeary-Calloway re 1 Complaint, 2 Summons Issued *upon Defendant Chase Bank USA, N.A. was served on 6/27/11* (Ciolko, Edward) (Filed on 7/5/2011) Modified on 7/5/2011 (gba, COURT STAFF). (Entered: 07/05/2011) |
| 07/06/2011 | 8 | Order, by Magistrate Judge Joseph C. Spero, signed 7/6/11, granting 5 Motion for Pro Hac Vice for Terence S. Ziegler. (Attachments: # 1 Cert Serve)(klhS, COURT STAFF) (Filed on 7/6/2011) (Entered: 07/06/2011) |
| 07/06/2011 | 9 | ORDER, by Judge Joseph C. Spero, signed 7/6/11, granting 6 Motion for Pro Hac Vice for Edward W. Ciolko. (Attachments: # 1 Cert Serve) (klhS, COURT STAFF) (Filed on 7/6/2011) (Entered: 07/06/2011) |
| 07/12/2011 | 10 | CONSENT to Proceed Before a US Magistrate Judge by Patricia McNeary-Calloway.. (Ciolko, Edward) (Filed on 7/12/2011) (Entered: 07/12/2011) |
| 07/12/2011 | 11 | CONSENT to Proceed Before a US Magistrate Judge by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A... (Alinder, Zachary) (Filed on 7/12/2011) (Entered: 07/12/2011) |
| 07/12/2011 | 12 | STIPULATION *Extending Time To Respond To Complaint* by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Alinder, Zachary) (Filed on 7/12/2011) (Entered: 07/12/2011) |
| 07/19/2011 | 13 | MOTION Plaintiff's Motion for Entry of [Proposed] Pretrial Order No. 1 Appointing Interim Class Counsel and Setting Preliminary Schedule filed by Patricia McNeary-Calloway. Motion Hearing set for 8/26/2011 09:30 AM in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. Responses due by 8/2/2011. Replies due by 8/9/2011. (Attachments: # 1 Proposed Order, # 2 Declaration Declaration of Edward W. Ciolko, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E)(Ciolko, Edward) (Filed on 7/19/2011) (Entered: 07/19/2011) |
| 07/19/2011 | 14 | STIPULATION AND ORDER EXTENDING TIME TO RESPOND TO COMPLAINT. Dfts shall have until, and including,8/19/11 to respond to complaint. Signed by Judge Joseph C. Spero on 7/19/11. (klhS, COURT STAFF) (Filed on 7/19/2011) (Entered: 07/19/2011) |
| 08/02/2011 | 15 | Statement of Non-Opposition re 13 MOTION Plaintiff's Motion for Entry of [Proposed] Pretrial Order No. 1 Appointing Interim Class Counsel and Setting Preliminary Schedule MOTION Plaintiff's Motion for Entry of [Proposed] Pretrial Order No. 1 Appointing Interim Class Counsel and Setting Preliminary Schedule MOTION Plaintiff's Motion for Entry of [Proposed] Pretrial Order No. 1 Appointing Interim Class Counsel and Setting Preliminary Schedule filed byChase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Related document(s) 13 ) (Obstler, Peter) (Filed on 8/2/2011) (Entered: 08/02/2011) |
| 08/04/2011 | 16 | Order, signed as modified, by Magistrate Judge Joseph C. Spero on 8/4/11, granting in part 13 Pretrial Order No. 1 Motion Appointing Interim Class |

CAND-ECF

| | | Counsel and Setting Preliminary Schedule.(klhS, COURT STAFF) (Filed on 8/4/2011) (Entered: 08/04/2011) |
|---|---|---|
| 08/04/2011 | 17 | MOTION for Admission of Attorney Brad E. Seidel Pro Hac Vice (Filing fee $ 275.00, receipt number 34611063112) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 8/4/2011) (Entered: 08/08/2011) |
| 08/04/2011 | 18 | MOTION for Admission of Attorney Michael B. Angelovich Pro Hac Vice (Filing fee $ 275.00, receipt number 34611063113) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 8/4/2011) (Entered: 08/08/2011) |
| 08/09/2011 | 19 | Order, by Magistrate Judge Joseph C. Spero, signed 8/9/11, granting 18 Motion for Pro Hac Vice for Michael B. Angelovich. (Attachments: # 1 Cert Serve)(klhS, COURT STAFF) (Filed on 8/9/2011) (Entered: 08/09/2011) |
| 08/09/2011 | 20 | ORDER, by Judge Joseph C. Spero, signed 8/9/11,granting 17 Motion for Pro Hac Vice for Brad Seidel. (Attachments: # 1 Cert Serve) (klhS, COURT STAFF) (Filed on 8/9/2011) (Entered: 08/09/2011) |
| 08/10/2011 | 21 | MOTION for Admission of Attorney Jeffrey J. Angelovich Pro Hac Vice (Filing fee $ 275.00, receipt number 34611063305) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 8/10/2011) (Entered: 08/12/2011) |
| 08/19/2011 | 22 | Certificate of Interested Entities by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A. (Obstler, Peter) (Filed on 8/19/2011) (Entered: 08/19/2011) |
| 08/19/2011 | 23 | MOTION to Dismiss *Plaintiff's Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. Motion Hearing set for 11/18/2011 09:30 AM in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. Responses due by 10/3/2011. Replies due by 11/2/2011. (Attachments: # 1 Request for Judicial Notice, # 2 Proposed Order)(Obstler, Peter) (Filed on 8/19/2011) (Entered: 08/19/2011) |
| 08/22/2011 | 24 | Order, by Magistrate Judge Joseph C. Spero, signed 8/22/11, granting 21 Motion for Pro Hac Vice for Jeffrey J. Angelovich.(klhS, COURT STAFF) (Filed on 8/22/2011) (Entered: 08/22/2011) |
| 09/06/2011 | 25 | AFFIDAVIT of Service for Summons and Complaint *on JPMorgan Chase Bank, c/o CT Corp. System, registered agent* served on Maria Sanchez, Agent on June 24, 2011, filed by Patricia McNeary-Calloway. (Ciolko, Edward) (Filed on 9/6/2011) (Entered: 09/06/2011) |
| 09/08/2011 | 29 | MOTION for Admission of Attorney Donna Siegel Moffa Pro Hac Vice (Filing fee $ 275.00, receipt number 34611064446) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 9/8/2011) (Entered: 09/09/2011) |
| 09/08/2011 | 30 | MOTION for Admission of Attorney Michelle A. Coccagna Pro Hac Vice (Filing fee $ 275.00, receipt number 34611064445) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 9/8/2011) (Entered: 09/09/2011) |

CAND-ECF

| 09/09/2011 | 26 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Alinder, Zachary) (Filed on 9/9/2011) (Entered: 09/09/2011) |
|---|---|---|
| 09/09/2011 | 27 | NOTICE of need for ADR Phone Conference (ADR L.R. 3-5 d) (Ziegler, Terence) (Filed on 9/9/2011) (Entered: 09/09/2011) |
| 09/09/2011 | 28 | ADR Certification (ADR L.R. 3-5 b) of discussion of ADR options (Ziegler, Terence) (Filed on 9/9/2011) (Entered: 09/09/2011) |
| 09/13/2011 | 31 | ORDER by Judge Joseph C Spero granting 29 plaintiff's Motion for attorney Donna Seigal Moffa to appear Pro Hac Vice (awb, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/13/2011) |
| 09/13/2011 | 32 | ORDER by Judge Joseph C. Spero granting 30 plaintiff's Motion for attorney Michelle A. Coccagna to appear Pro Hac Vice (awb, COURT STAFF) (Filed on 9/13/2011) (Entered: 09/13/2011) |
| 09/14/2011 | 33 | ADR Clerks Notice Setting ADR Phone Conference on 9/28/11 at 10:00 a.m. Pacific time. Please take note that at the appointed time, all parties shall call 641-715-3200 and use access code 1007836 to join the call. (sgd, COURT STAFF) (Filed on 9/14/2011) (Entered: 09/14/2011) |
| 09/19/2011 | 34 | CLERKS NOTICE Continuing Initial Case Management Conference and Motion Hearing re: 23 MOTION to Dismiss *Plaintiff's Complaint*. Joint Case Management Statement due by 12/2/2011. Case Management Conference set for 12/9/2011 09:30 AM in Courtroom G, 15th Floor, San Francisco. Motion Hearing set for 12/9/2011 09:30 AM in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. (klh, COURT STAFF) (Filed on 9/19/2011) (Entered: 09/19/2011) |
| 09/28/2011 | | ADR Remark: ADR Phone Conference held by RWS on 9/28/11. A further ADR Phone Conference has been scheduled for 12/7/11 at 10:00 a.m. Pacific time. Please note that the call-in information remains the same. (sgd, COURT STAFF) (Filed on 9/28/2011) (Entered: 09/28/2011) |
| 09/29/2011 | 35 | STIPULATION *to Extend the Time for Plaintiff to Respond to Defendants' Motion to Dismiss* by Patricia McNeary-Calloway. (Attachments: # 1 Declaration of Edward W. Ciolko, # 2 Proposed Order)(Ciolko, Edward) (Filed on 9/29/2011) (Entered: 09/29/2011) |
| 10/03/2011 | 36 | ORDER Granting re 35 Joint Stipulation to Extend The Time for Plaintiff to Respond to Defendants' Motion to Dismiss filed by Patricia McNeary-Calloway. Plaintiff's response due 10/10/11. Signed by Judge Joseph C. Spero on 10/03/11. (klhS, COURT STAFF) (Filed on 10/3/2011) (Entered: 10/03/2011) |
| 10/07/2011 | 37 | STIPULATION *to Extend the Time for Plaintiff to Respond to Defendants' Motion to Dismiss* by Patricia McNeary-Calloway. (Attachments: # 1 Declaration of Edward W. Ciolko, # 2 Proposed Order)(Ciolko, Edward) (Filed on 10/7/2011) (Entered: 10/07/2011) |
| 10/11/2011 | 38 | STIPULATION AND ORDER TO EXTEND THE TIME FOR PLAINTIFF TO RESPOND TO DEFENDANTS' to 23 MOTION to Dismiss *Plaintiff's Complaint*. Responses due by 10/17/2011. Replies due by 11/2/2011. Hearing |

CAND-ECF

| | | shall remain on calendar for 12/9/11 at 9:30 AM. Signed by Judge Joseph C. Spero on 10/11/11. (klh, COURT STAFF) (Filed on 10/11/2011) (Entered: 10/11/2011) |
|---|---|---|
| 10/17/2011 | 39 | STIPULATION *and [Proposed] Order Regarding Filing of Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(1)(B)* by Patricia McNeary-Calloway. (Attachments: # 1 Exhibit A - First Amended Class Action Complaint, # 2 Exhibit 1 to Complaint, # 3 Exhibit 2 to Complaint, # 4 Exhibit 3 to Complaint, # 5 Exhibit 4 to Complaint, # 6 Exhibit 5 to Complaint, # 7 Exhibit 6 to Complaint, # 8 Exhibit 7 to Complaint, # 9 Exhibit 8 to Complaint, # 10 Exhibit 9 to Complaint, # 11 Exhibit 10 to Complaint, # 12 Exhibit 11 to Complaint, # 13 Exhibit 12 to Complaint, # 14 Exhibit 13 to Complaint, # 15 Exhibit 14 to Complaint, # 16 Exhibit 15 to Complaint, # 17 Exhibit 16 to Complaint, # 18 Exhibit 17 to Complaint, # 19 Exhibit 18 to Complaint, # 20 Exhibit 19 to Complaint, # 21 Exhibit 20 to Complaint, # 22 Exhibit 21 to Complaint, # 23 Exhibit 22 to Complaint, # 24 Exhibit 23 to Complaint, # 25 Exhibit 24 to Complaint, # 26 Exhibit 25 to Complaint, # 27 Exhibit 26 to Complaint)(Ciolko, Edward) (Filed on 10/17/2011) (Entered: 10/17/2011) |
| 10/17/2011 | 40 | CONSENT to Proceed Before a US Magistrate Judge by Patricia McNeary-Calloway.. (Ciolko, Edward) (Filed on 10/17/2011) (Entered: 10/17/2011) |
| 10/19/2011 | 41 | STIPULATION AND ORDER REGARDING FILING OF AMENDED COMPLAINT. Motions terminated: 23 MOTION to Dismiss *Plaintiff's Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A. - VACATED AS MOOT. Defendant's response or Motion to Dismiss due by 11/21/2012. Replies due by 1/25/2012. Responses/Opposition due by 12/30/2011. Motion Hearing and Further Case Management Conference set for **3/9/2012 at 09:30 AM** in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. Signed, as modified, by Judge Joseph C. Spero on 10/19/11. See modification on page 2, line 25.(klhS, COURT STAFF) (Filed on 10/19/2011) Modified on 10/19/2011 (klhS, COURT STAFF). (Entered: 10/19/2011) |
| 10/19/2011 | | Set Deadlines/Hearings: Joint Case Management Statement due by 3/2/2011. Case Management Conference set for 3/9/2012 09:30 AM in Courtroom G, 15th Floor, San Francisco. (klhS, COURT STAFF) (Filed on 10/19/2011) (Entered: 10/19/2011) |
| 10/21/2011 | 42 | MOTION for leave to appear in Pro Hac Vice of Brian D. Penny ( Filing fee $ 275, receipt number 34611066063.) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order)(far, COURT STAFF) (Filed on 10/21/2011) (Entered: 10/21/2011) |
| 10/24/2011 | 43 | ORDER, by Judge Joseph C. Spero, signed 10/24/11,granting 42 Motion for Pro Hac Vice for Brian D. Penny. (klhS, COURT STAFF) (Filed on 10/24/2011) (Entered: 10/24/2011) |
| 10/24/2011 | 44 | MOTION for Admission of Attorney Christopher R. Johnson leave to appear in Pro Hac Vice (Filing fee $ 275.00, receipt number 34611066159) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, |

CAND-ECF

| | | COURT STAFF) (Filed on 10/24/2011) (Entered: 10/26/2011) |
|---|---|---|
| 10/31/2011 | 45 | Order, signed on 10/31/11, by Magistrate Judge Joseph C. Spero granting 44 Motion for Pro Hac Vice for Christopher Johnson.(klhS, COURT STAFF) (Filed on 10/31/2011) (Entered: 10/31/2011) |
| 10/31/2011 | 46 | MOTION for Admission of Attorney James P. Gitkin to appear in Pro Hac Vice (Filing fee $ 275.00, receipt number 34611066398) filed by Patricia McNeary-Calloway. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 10/31/2011) (Entered: 11/01/2011) |
| 11/03/2011 | 47 | Order, signed 11/3/11, by Magistrate Judge Joseph C. Spero granting 46 Motion for Pro Hac Vice for James P. Gitkin.(klhS, COURT STAFF) (Filed on 11/3/2011) (Entered: 11/03/2011) |
| 11/21/2011 | 48 | MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. Motion Hearing set for 3/9/2012 09:30 AM in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. Responses due by 12/30/2011. Replies due by 1/25/2012. (Attachments: # 1 Proposed Order)(Obstler, Peter) (Filed on 11/21/2011) (Entered: 11/21/2011) |
| 11/21/2011 | 49 | Declaration of Zachary J. Alinder in Support of 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed byChase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Related document(s) 48 ) (Alinder, Zachary) (Filed on 11/21/2011) (Entered: 11/21/2011) |
| 11/21/2011 | 50 | Request for Judicial Notice re 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed byChase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Related document (s) 48 ) (Obstler, Peter) (Filed on 11/21/2011) (Entered: 11/21/2011) |
| 12/07/2011 | | ADR Remark: ADR Phone Conference held by RWS on 12/7/11. (sgd, COURT STAFF) (Filed on 12/7/2011) (Entered: 12/07/2011) |
| 12/12/2011 | 52 | MOTION for Admission of Attorney Amanda Trask to appear in Pro Hac Vice (Filing fee $ 305.00, receipt number 34611068026) filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Proposed Order) (gba, COURT STAFF) (Filed on 12/12/2011) (Entered: 12/20/2011) |
| 12/20/2011 | 51 | STIPULATION *and [Proposed] Order Regarding Briefing Schedule on Defendants' Motion to Dismiss* by Patricia McNeary-Calloway, Colin MacKinnon, Terrie MacKinnon, Andrea North, Sheila M Mayko. (Ciolko, Edward) (Filed on 12/20/2011) (Entered: 12/20/2011) |
| 12/21/2011 | 53 | Order, signed 12/21/11, by Magistrate Judge Joseph C. Spero granting 52 Motion for Pro Hac Vice for Amanda Trask.(klhS, COURT STAFF) (Filed on 12/21/2011) (Additional attachment(s) added on 12/21/2011: # 1 Cert Serve) (klhS, COURT STAFF). (Entered: 12/21/2011) |
| 12/21/2011 | 54 | STIPULATION AND ORDER RE BRIEFING ON 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A. Replies due by 2/15/2012. Responses due by |

CAND-ECF

| | | |
|---|---|---|
| | | 1/12/2012. Hearing set for 3/9/12 at 9:30 AM. Signed by Judge Joseph C. Spero on 12/21/11. (klhS, COURT STAFF) (Filed on 12/21/2011) (Entered: 12/21/2011) |
| 01/12/2012 | 55 | RESPONSE (re 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* ) *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint* filed byColin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Ciolko, Edward) (Filed on 1/12/2012) (Entered: 01/12/2012) |
| 01/12/2012 | 56 | Request for Judicial Notice of Documents from Wahl v. American Security Ins. Co., Case No. 08-00555 RS (U.S.D.C., N.D. Cal.) by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North re 55 Opposition/Response to Motion, (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, Part 1, # 3 Exhibit 2, Part 2, # 4 Exhibit 3)(Ciolko, Edward) (Filed on 1/12/2012) Modified on 1/17/2012 (far, COURT STAFF). (Entered: 01/12/2012) |
| 02/15/2012 | 57 | REPLY (re 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* ) filed byChase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Obstler, Peter) (Filed on 2/15/2012) (Entered: 02/15/2012) |
| 03/02/2012 | 58 | JOINT CASE MANAGEMENT STATEMENT filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Alinder, Zachary) (Filed on 3/2/2012) (Entered: 03/02/2012) |
| 03/06/2012 | 59 | NOTICE by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North re 55 Opposition/Response to Motion, *Plaintiffs' Notice of Supplemental Authority in further Support of Opposition to Motion to Dismiss First Amended Complaint* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Ciolko, Edward) (Filed on 3/6/2012) (Entered: 03/06/2012) |
| 03/07/2012 | 60 | OBJECTIONS to re 59 Notice (Other), *of Supplemental Authority* by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Obstler, Peter) (Filed on 3/7/2012) (Entered: 03/07/2012) |
| 03/09/2012 | 61 | Minute Entry: Motion Hearing held on 3/9/2012 before Joseph C. Spero re 48 MOTION to Dismiss *Plaintiffs' First Amended Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., Initial Case Management Conference held on 3/9/2012 before Joseph C. Spero. (Court Reporter Kathy Wyatt.) (klhS, COURT STAFF) (Date Filed: 3/9/2012) (Entered: 03/09/2012) |
| 03/26/2012 | 62 | Order by Magistrate Judge Joseph C. Spero granting in part and denying in part 48 Motion to Dismiss.(jcslc3S, COURT STAFF) (Filed on 3/26/2012) (Entered: 03/26/2012) |
| 03/29/2012 | 63 | Transcript of Proceedings held on 3-9-12, before Judge Judge Spero. Court Reporter/Transcriber K. Wyatt, Telephone number 925-212-5224. Per General Order No. 59 and Judicial Conference policy, this transcript may be viewed only at the Clerks Office public terminal or may be purchased through the Court Reporter/Transcriber until the deadline for the Release of Transcript Restriction.After that date it may be obtained through PACER. Any Notice of |

CAND-ECF

| | | |
|---|---|---|
| | | Intent to Request Redaction, if required, is due no later than 5 business days from date of this filing. Release of Transcript Restriction set for 6/27/2012. (kpw, COURT STAFF) (Filed on 3/29/2012) (Entered: 03/29/2012) |
| 05/02/2012 | 64 | STIPULATION WITH PROPOSED ORDER *to Stay Case Pending Mediation and to Set Time to Respond to Complaint* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Declaration of Zachary Alinder in support of Joint Stipulation and [Proposed] Order to Stay Case Pending Mediation and to Set Time to Respond to Complaint)(Alinder, Zachary) (Filed on 5/2/2012) (Entered: 05/02/2012) |
| 05/03/2012 | 65 | STIPULATION AND ORDER TO STAY CASE PENDING MEDIATION AND TO SET TIME TO RESPOND TO COMPLAINT. Case stayed pending the parties' mediation. Parties' shall engage in mediatiion within 60 day of entry of this Order. Signed by Judge Joseph C. Spero on 5/3/12. (klhS, COURT STAFF) (Filed on 5/3/2012) (Entered: 05/03/2012) |
| 05/04/2012 | 66 | MOTION to Relate Case filed by Shelly A. Clements. (Attachments: # 1 Proposed Order)(Loeser, Thomas) (Filed on 5/4/2012) (Entered: 05/04/2012) |
| 05/04/2012 | 67 | Declaration of Thomas E. Loeser in Support of 66 MOTION to Relate Case filed byShelly A. Clements. (Related document(s) 66 ) (Loeser, Thomas) (Filed on 5/4/2012) (Entered: 05/04/2012) |
| 05/11/2012 | 68 | EXHIBITS re 67 Declaration in Support *Exhibit A* filed byShelly A. Clements. (Related document(s) 67 ) (Loeser, Thomas) (Filed on 5/11/2012) (Entered: 05/11/2012) |
| 05/11/2012 | 69 | RESPONSE (re 66 MOTION to Relate Case ) *Plaintiffs' Response to Administrative Motion to Consider Whether Cases Should be Related* filed byColin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Ciolko, Edward) (Filed on 5/11/2012) (Entered: 05/11/2012) |
| 05/21/2012 | 70 | ORDER RELATING CASE to C12-2179 JCS Clements v. JP Morgan Chase. Signed by Judge Joseph C. Spero on 5/18/12. (klhS, COURT STAFF) (Filed on 5/21/2012) (Entered: 05/21/2012) |
| 07/25/2012 | 71 | MOTION to Relate Case filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Proposed Order)(Abadou, Ramzi) (Filed on 7/25/2012) (Entered: 07/25/2012) |
| 07/25/2012 | 72 | Declaration of Ramzi Abadou in Support of 71 MOTION to Relate Case filed byColin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Exhibit A)(Related document(s) 71 ) (Abadou, Ramzi) (Filed on 7/25/2012) (Entered: 07/25/2012) |
| 07/31/2012 | 73 | RESPONSE (re 71 MOTION to Relate Case ) filed byAmerican Security Insurance Company, Assurant, Inc.. (Attachments: # 1 Proposed Order) (Hecker, Peter) (Filed on 7/31/2012) (Entered: 07/31/2012) |
| 08/21/2012 | 74 | MOTION for leave to appear in Pro Hac Vice *of Peter H. LeVan, Jr.* ( Filing |

CAND-ECF

| | | |
|---|---|---|
| | | fee $ 305, receipt number 0971-7060492.) filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Proposed Order)(LeVan, Peter) (Filed on 8/21/2012) (Entered: 08/21/2012) |
| 08/22/2012 | 75 | Order, signed 8/22/12, by Magistrate Judge Joseph C. Spero granting 74 Motion for Pro Hac Vice for Peter H. LeVan, Jr.(klhS, COURT STAFF) (Filed on 8/22/2012) (Entered: 08/22/2012) |
| 09/12/2012 | 76 | RELATED Case Order, signed 9/12/12, by Magistrate Judge Joseph C. Spero granting (71) Motion to Relate Case in case 3:11-cv-03058-JCS. Case related to C12-3632 Leger v. JP Morgan.Associated Cases: 3:11-cv-03058-JCS, 3:12-cv-03632-NC(klhS, COURT STAFF) (Filed on 9/12/2012) (Entered: 09/12/2012) |
| 02/26/2013 | 77 | NOTICE by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North *of Withdrawal of Counsel* (Ciolko, Edward) (Filed on 2/26/2013) (Entered: 02/26/2013) |
| 02/27/2013 | 78 | MOTION for leave to appear in Pro Hac Vice *of Peter A. Muhic* ( Filing fee $ 305, receipt number 0971-7511905.) filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Exhibit A)(Muhic, Peter) (Filed on 2/27/2013) (Entered: 02/27/2013) |
| 02/28/2013 | 79 | Order by Magistrate Judge Joseph C. Spero granting 78 Motion for Pro Hac Vice- Muhic.(knm, COURT STAFF) (Filed on 2/28/2013) (Entered: 02/28/2013) |
| 03/13/2013 | 80 | NOTICE by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North *of Termination of Mediation Proceedings* (Ciolko, Edward) (Filed on 3/13/2013) (Entered: 03/13/2013) |
| 03/14/2013 | 81 | MOTION to Consolidate Cases filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. Motion Hearing set for 4/19/2013 09:30 AM in Courtroom G, 15th Floor, San Francisco before Magistrate Judge Joseph C. Spero. Responses due by 3/28/2013. Replies due by 4/4/2013. (Attachments: # 1 Proposed Order) (Ciolko, Edward) (Filed on 3/14/2013) (Entered: 03/14/2013) |
| 03/18/2013 | 82 | CLERKS NOTICE Updated Case Management Statement due by 6/7/2013. Further Case Management Conference set for 6/14/2013 01:30 PM in Courtroom G, 15th Floor, San Francisco. **This is a text only entry. There is no document associated with this notice** . (klhS, COURT STAFF) (Filed on 3/18/2013) (Entered: 03/18/2013) |
| 04/11/2013 | 83 | STIPULATION *Joint Stipulation Providing that Documents Produced in Mediation Shall be Deemed Produced in this Action and Subject to the Protections of the Parties' Stipulated Protective Order* filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Ciolko, Edward) (Filed on 4/11/2013) (Entered: 04/11/2013) |
| | | |

CAND-ECF

| 04/12/2013 | 84 | Declaration of Edward W. Ciolko in Support of 81 MOTION to Consolidate Cases filed byColin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Attachments: # 1 Exhibit A, # 2 Exhibit 1-8, # 3 Exhibit 9-12, # 4 Exhibit 13, # 5 Exhibit 14-25, # 6 Exhibit 26-50, # 7 Exhibit 51-70, # 8 Exhibit B, # 9 Exhibit C, # 10 Exhibit D, # 11 Exhibit E, # 12 Exhibit F)(Related document(s) 81 ) (Ciolko, Edward) (Filed on 4/12/2013) (Entered: 04/12/2013) |
|---|---|---|
| 04/15/2013 | 85 | **ORDER GRANTING re 83 Stipulation that Documents Produced in Mediation Shall be Deemed Produced in this Action and Subject to the Protections of the Parties' Stipulated Protective Order filed by Sheila M Mayko, Andrea North, Terrie MacKinnon, Patricia McNeary-Calloway, Colin MacKinnon. Signed by Judge Joseph C. Spero on 4/12/13. (klhS, COURT STAFF) (Filed on 4/15/2013) (Entered: 04/15/2013)** |
| 04/15/2013 | 86 | Proposed Order *Stipulated Protective Order* by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Ciolko, Edward) (Filed on 4/15/2013) (Entered: 04/15/2013) |
| 04/16/2013 | 87 | **STIPULATED PROTECTIVE ORDER. Signed by Judge Joseph C. Spero on 4/16/13. (klhS, COURT STAFF) (Filed on 4/16/2013) (Entered: 04/16/2013)** |
| 04/17/2013 | 88 | MOTION to Appear by Telephone *of Edward Ciolko* filed by Colin MacKinnon, Terrie MacKinnon, Sheila M Mayko, Patricia McNeary-Calloway, Andrea North. (Ciolko, Edward) (Filed on 4/17/2013) (Entered: 04/17/2013) |
| 04/17/2013 | 89 | MOTION to Appear by Telephone *of Peter Obstler* filed by Chase Bank USA, N.A., JPMorgan Chase Bank, N.A.. (Obstler, Peter) (Filed on 4/17/2013) (Entered: 04/17/2013) |
| 04/18/2013 | 90 | **ORDER, signed 4/18/13, by Judge Joseph C. Spero granting (88) Motion to Appear by Telephone for Edward Ciolko on 4/19/13 at 9:30 AM in case 3:11-cv-03058-JCS; granting (67) Motion to Appear by Telephone for Edward Ciolko on 4/19/13 at 9:30 AM in case 3:12-cv-03632-JCS (klhS, COURT STAFF) (Filed on 4/18/2013) (Entered: 04/18/2013)** |
| 04/18/2013 | 91 | **ORDER, signed 4/18/13, by Judge Joseph C. Spero granting (89) Motion to Appear by Telephone for Peter Obstler on 4/19/13 at 9:30 AM in case 3:11-cv-03058-JCS; granting (66) Motion to Appear by Telephone for Peter Osbstler on 4/19/13 at 9:30 AM in case 3:12-cv-03632-JCS (klhS, COURT STAFF) (Filed on 4/18/2013) (Entered: 04/18/2013)** |
| 04/18/2013 | 92 | CLERKS NOTICE Pursuant to Civil Local Rule 7-1(b), the court finds that the Motion to Consolidate Cases, currently set for hearing on April 19, 2013, at 9:30 AM, is appropriate for decision without oral argument. Accordingly, the hearing date is hereby VACATED. The motion will be taken under submission and decided on the papers. (klhS, COURT STAFF) (Filed on 4/18/2013) (Entered: 04/18/2013) |
| 04/19/2013 | 93 | **ORDER, signed as modified on 4/18/13, by Judge Joseph C. Spero granting (81) Motion to Consolidate Cases in case 3:11-cv-03058-JCS;** |

CAND-ECF

| | | |
|---|---|---|
| | | granting (60) Motion to Consolidate Cases in case 3:12-cv-03632-JCS. (klh, COURT STAFF) (Filed on 4/19/2013) (Entered: 04/19/2013) |
| 04/26/2013 | 94 | AMENDED COMPLAINT *CONSOLIDATED* against All Defendants. Filed by Andrea North, Patricia McNeary-Calloway, Sheila M Mayko, Colin MacKinnon, Terrie MacKinnon. (Attachments: # 1 Exhibit 1-8, # 2 Exhibit 9-12, # 3 Exhibit 13, # 4 Exhibit 14-25, # 5 Exhibit 26-50, # 6 Exhibit 51-70) (Ciolko, Edward) (Filed on 4/26/2013) (Entered: 04/26/2013) |
| 05/03/2013 | 95 | MOTION for leave to appear in Pro Hac Vice *with [Proposed] Order, Attachment A, Certificate of Good Standing* ( Filing fee $ 305, receipt number 0971-7674850.) filed by American Security Insurance Company, Assurant, Inc.. (Fee, Denise) (Filed on 5/3/2013) (Entered: 05/03/2013) |
| 05/07/2013 | 96 | **Order, signed 5/7/13, by Magistrate Judge Joseph C. Spero granting 95 Motion for Pro Hac Vice for Denise A. Fee(klhS, COURT STAFF) (Filed on 5/7/2013) (Entered: 05/07/2013)** |
| 05/14/2013 | 97 | Summons Issued as to Standard Guaranty Insurance Company. (gba, COURT STAFF) (Filed on 5/14/2013) (Entered: 05/14/2013) |
| 05/15/2013 | 98 | WAIVER OF SERVICE Returned Executed filed by Andrea North, Patricia McNeary-Calloway, Sheila M Mayko, Colin MacKinnon, Terrie MacKinnon. Service waived by Standard Guaranty Insurance Company waiver sent on 5/7/2013, answer due 7/8/2013. (Muhic, Peter) (Filed on 5/15/2013) (Entered: 05/15/2013) |
| 05/17/2013 | 99 | MOTION for leave to appear in Pro Hac Vice ( Filing fee $ 305, receipt number 0971-7709864.) filed by Patricia A. Leger, Leamon E. Leger, Jr. (Attachments: # 1 Certificate of Good Standing - Florida Bar)(Spark, Andrew) (Filed on 5/17/2013) (Entered: 05/17/2013) |
| 05/20/2013 | 100 | STIPULATION WITH PROPOSED ORDER *To Exceed Page Limits* filed by American Security Insurance Company, Assurant, Inc., Standard Guaranty Insurance Company. (Hecker, Peter) (Filed on 5/20/2013) (Entered: 05/20/2013) |
| 05/20/2013 | 101 | **Order, signed 5/20/13, by Magistrate Judge Joseph C. Spero granting 99 Motion for Pro Hac Vice for Andrew Bennett Spark.(klhS, COURT STAFF) (Filed on 5/20/2013) (Entered: 05/20/2013)** |
| 05/22/2013 | 102 | **Order, signed 5/23/13 by Magistrate Judge Joseph C. Spero granting 100 Stipulation To Exceed Page Limits.(klhS, COURT STAFF) (Filed on 5/22/2013) (Entered: 05/22/2013)** |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/23/2013 09:32:40 | | |
| **PACER Login:** sb0415 | **Client Code:** 2011x038 | |
| **Description:** | Docket Report | **Search Criteria:** 3:11-cv-03058-JCS |

CAND-ECF

| Billable Pages: | 15 | Cost: | 1.50 |
|---|---|---|---|

**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
Ramzi Abadou (SBN 222567)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

- and -

Edward W. Ciolko
Peter A. Muhic
Donna Siegel Moffa
Amanda R. Trask
Jesse C. Klaproth
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Counsel for Plaintiffs*
*[Additional Counsel Listed on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| | Civil Action No. CV-11-03058-JCS |
| In Re JPMorgan Chase LPI Hazard Litigation | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

## INTRODUCTION

1.      This is a proposed class action brought by Plaintiffs Patricia McNeary-Calloway, Colin MacKinnon, Terrie MacKinnon, Andrea North, Sheila M. Mayko, Patricia A. Leger, Leamon E. Leger, Jr,, Garry ("Mitch") Mitchell Varnes, Kathryn A. Varnes, Chad Knox, Leonard Jelks, Jr., Jack E. Brooks, Tami Brooks and Achikam Yogev (herein referred to collectively as "Plaintiffs") on behalf of all persons who have or had a residential mortgage loan or line of credit originated and/or serviced by Defendants JPMorgan Chase Bank, N.A. ("JPMorgan"), Chase Bank USA, N.A. ("Chase USA"), and/or non-Defendant Chase Home Finance, LLC[1] ("Chase Home Finance") (together "JPMorgan Chase") Chase Insurance Agency, Inc. ("CIA")[2] and Banc One Insurance Co. ("BOIC") (together with JPMorgan, Chase USA and Chase Home Finance, "Chase") and, in connection therewith were required to pay for lender-placed or "force-placed" hazard insurance policies provided by Assurant, Inc. ("Assurant, Inc."), American Security Insurance Company ("ASIC"), and Standard Guaranty Insurance Company ("SGIC") (together "Assurant") and/or other force-placed insurance provider subsidiaries of Defendant Assurant, Inc. (collectively, "Defendants") (the "Class").

2.      In this action, Plaintiffs challenge, as further described herein, Chase's practice of purchasing force-placed hazard insurance from Assurant and its subsidiaries, including ASIC and SGIC, pursuant to agreements that return a financial benefit to Chase or its affiliates that is unrelated to any contractual or other bona fide interest in protecting the lender's interest in the

---

[1]      Chase Home Finance, previously a wholly-owned subsidiary of Defendant JPMorgan, has served as the primary servicing unit for loans originated and/or acquired by affiliates of ultimate parent JPMorgan Chase & Co.  On or about May 1, 2011, Chase Home Finance was merged with and into Defendant JPMorgan, with Defendant JPMorgan as the surviving entity. Accordingly, Defendant JPMorgan is named as a Defendant in this action both in its own capacity and as successor-in-interest to Chase Home Finance.

[2]      Chase Insurance Agency and JPMorgan Insurance Agency, Inc. merged on December 31, 2008.  *See* Merger Agreement attached as Exhibit 1.

1  loan, and which results in unauthorized, unjustified and unfairly inflated costs to the borrower for

2  force-placed hazard insurance in violation of law.

3      3.      Defendants acted together to exploit Chase's ability to force-place insurance to

4  reap additional, unjustified profits in the form of fees, commissions, rebates, ceded reinsurance

5  premiums and other forms of consideration at the expense of borrowers whose hazard insurance

6  was force-placed. These fees and charges were not legitimately related to the cost of the force-

7  placed insurance or to the purposes for which force-placed insurance is purchased – to protect

8  the lender's interest in the property.

9      4.      As a condition to funding borrower's loan, JPMorgan Chase requires that

10 borrowers purchase and agree to maintain hazard insurance coverage on the secured property.

11 All Plaintiffs were required to obtain and maintain hazard insurance as a condition of their

12 mortgages.   *See, e.g.*, Patricia McNeary-Calloway Deed of Trust ("McNeary-Calloway

13 Mortgage") attached as Exhibit 2; Colin and Terry MacKinnon Deed of Trust ("MacKinnon

14 Mortgage") attached as Exhibit 3;  Andrea North Deed of Trust ("North Mortgage") attached as

15 Exhibit 4; Sheila M. Mayko Mortgage ("Mayko Mortgage") attached as Exhibit 5; Leamon E.

16 Leger, Jr. and Patricia A. Leger Mortgage ("Leger Mortgage") attached as Exhibit 6; Gary

17 Mitchell Varnes, Jr. and Kathryn Varnes ("Varnes Mortgage") attached as Exhibit 7; Chad Knox

18 Mortgage ("Knox Mortgage") attached as Exhibit 8;   Leanord Jelks, Jr. Mortgage ("Jelks

19 Mortgage") attached as Exhibit 9; Jack E. Brooks and Tami J. Brooks Mortgage ("Brooks

20 Mortgage") attached as Exhibit 10; Achikam Yogev Mortgage ("Achikam Mortgage") attached

21 as Exhibit 11.

22     5.      When borrowers failed to maintain their hazard insurance policies, Defendants

23 replaced those policies with more expensive policies, known as "force-placed" or "lender-

24 placed" policies.  Assurant, Inc., by one of its subsidiaries and/or affiliates, have entered into an

25 exclusive contract that establishes that Assurant, Inc., through its subsidiaries ASIC, provides

26 these policies pursuant to an exclusive contract. *See, e.g.*, Written Testimony of Robert A.

27

28

2

1   Segnini dated May 3, 2012 submitted to NYDFS, Financial Frauds & Consumer Protection

2   Division ("Chase NYDFS Testimony") at 4 attached hereto as Exhibit 12; *See also* Assurant,

3   Inc., 2012 Annual Report (Form 10-K), at 5 (Feb. 20, 2013) ("The majority of our lender-placed

4   agreements are exclusive.") ("Assurant 2012 10-K") attached as Exhibit 13.

5       6.      Chase forces the borrowers to pay for the force-placed policies by diverting the

6   monthly mortgage payments and/or debiting the borrowers' escrow accounts.

7       7.      Such policies almost always provide less coverage and are substantially more

8   costly than the borrowers' original policies, with the additional expense being directly related to

9   perverse incentives and lucrative financial benefits that are shared between Chase and Assurant.

10      8.      In some instances borrowers are charged retroactively for coverage before the

11  borrower is notified of the force-placement of the coverage.

12      9.      Further, such policies often provide unnecessary or duplicative coverage, because

13  they are improperly backdated to collect premiums for time periods during which the mortgagor

14  has absolutely no risk of loss.

15      10.     In addition, the premiums paid by and/or assessed to Plaintiffs and Members of

16  the Classes also included amounts not attributable to the cost of providing force-placed insurance

17  but, instead, constituted expenses associated with servicing all the loans serviced by JPMorgan

18  Chase.  For example, while loan servicers are compensated for tracking and monitoring loan

19  portfolios as part of their servicing agreements, many servicers have outsourced such portfolio

20  monitoring and tracking services to force-placed insurance providers, such as the Assurant

21  Defendants, at below market rates – effectively providing kickbacks to JPMorgan Chase in the

22  form of subsidies paid by force-placed borrowers.  The small percentage of borrowers who paid

23  for force-placed insurance shouldered the costs of monitoring JPMorgan Chase's entire loan

24  portfolio – effectively providing kickbacks to JPMorgan Chase in the form of subsidies paid by

25  borrowers whose insurance was force-placed.  *See* Testimony of Birny Birnbaum of Behalf of

26

27                                        3

28                                                    Case No. CV-11-03058-JCS
                                          Consolidated Amended Class Action Complaint

1 | the Center for Economic Justice for the Florida Office of Insurance Regulation (July 3, 2012),

2 | attached hereto as Exhibit 14 ("Birnbaum Florida Testimony").

3 |       11.    Assurant, Inc. through its subsidiaries and affiliates, including ASIC and SGIC,

4 | also agrees to reinsure the hazard insurance policies that it force-placed on behalf of JPMorgan

5 | Chase with BOIC, a wholly owned subsidiary of JPMorgan Chase & Co. effectively funneling

6 | money, in the form of ceded premiums to Chase.

7 |       12.    While reinsurance can, and often does, serve a legitimate purpose, here it does

8 | not.

9 |       13.    BOIC is Assurant's exclusive provider of "reinsurance" for the insurance force-

10 | placed on JPMorgan Chase borrowers. Pursuant to this reinsurance agreement, all force-placed

11 | insurance policies assigned to JPMorgan Chase by Assurant, Inc. and/or ASIC and SGIC will be

12 | reinsured with BOIC. *See* Chase NYDFS Testimony at 4. *See* Consent Order, In the Matter of

13 | American Security Insurance Company, American Bankers Insurance Company of Florida, and

14 | Assurant, Inc. at 6 ("NYDFS Consent Order") attached as Exhibit 15.

15 |       14.    The Reinsurance Agreements provide that the Assurant provider of force-placed

16 | hazard insurance policies for JPMorgan Chase will return the lion's share - as much as 75% - of

17 | the premiums charged to borrowers for the force-placed insurance to Chase by way of ceded

18 | "reinsurance" premiums to BOIC. In effect, the ceded premiums represent a kickback to

19 | JPMorgan Chase and a method for JPMorgan Chase and Assurant, Inc. to profit from the force-

20 | placement of borrower's hazard insurance. JPMorgan Chase has earned approximately $600

21 | million nationally through this reinsurance arrangement. *Id.*

22 |       15.    However, while BOIC purportedly provided reinsurance, it did not assume any

23 | real risk, making those contracts illegitimate and designed solely for the purpose of funneling a

24 | significant portion of the force-placed insurance premiums paid by borrowers back to JPMorgan

25 | Chase.

26

27

28

16.     Borrowers have no say in the selection of the carrier or terms of the force-placed insurance policies.  Borrowers also have no opportunity to comparison-shop for force-placed insurance policies.   The terms and conditions of the insurance policy, as well as the cost of the policy, are determined by the servicer and the insurer, rather than negotiated between the borrower and the insurer.  *See* Testimony of J. Robert Hunter, of the Consumer Federation of America dated May 17, 2012 at 10 ("Hunter NYDFS Testimony") attached as Exhibit 16.

17.     For their part, servicers like JPMorgan Chase have no incentive to shop for the best rate.  Rather, servicers are financially motivated to refer borrowers to the provider that offers the best financial benefit to the servicer in terms of commission and/or ceded reinsurance premiums that are established as part of the secret arrangements between providers and affiliates. Further, because the servicer's "commission" and/or reinsurance premium is directly tied to the size of the policy, the servicer actually has an incentive to purchase the highest priced insurance, an interest diametrically opposed to that of the borrower who is being charged for the insurance. *See, e.g.*, Hunter NYDFS Testimony at 1.

18.     As noted by Birny Birnbaum

> [t]he incentives and potential for abuse in the administration of LPI are great.  Consumers do not request the insurance, but are forced to pay for it.  The cost of LPI [lender placed insurance] is much higher than a policy the borrower would purchase on his or her own.  Lenders have incentive to force-place the insurance because the premium includes a commission to the lender and, in some cases, the insurance is reinsured through a captive reinsurer of the lender, resulting in additional revenue to the lender from the force-placement of the coverage."

*See* July 28, 2011 Testimony of Birny Birnbaum, Executive Director of the Center for Economic Justice, Before the U.S. House of Representatives Subcommittee on Insurance, Housing and Community Opportunity Committee on Financial Services, attached as Exhibit 17

19.     Commonly, a mortgage loan servicer enters into an agreement with a provider, pursuant to which it refers borrowers exclusively to the provider for force-placed insurance.  For example, in its public filings, Assurant, Inc.—the nation's largest provider of force-placed

5

1   insurance policies and the parent of ASIC and SGIC—states that it establishes "long-term

2   relationships" with leading lenders and servicers and that the majority of its lender-placed

3   agreements are exclusive.  *See* Assurant 2012 10-K at 5 ("The majority of our lender-placed

4   agreements are exclusive.").

5        20.    Servicers often go so far as to actually outsource their insurance processing to the

6   force-placed insurance provider.  The provider then continuously monitors the servicer's

7   mortgage portfolio and verifies the existence of insurance on each mortgaged property.  In the

8   event that borrowers do not maintain adequate insurance coverage, the insurer promptly issues an

9   insurance certificate on the property on behalf of and for the benefit of the servicer.  Thus, where

10  these servicers receive commissions from force-placed insurance providers (which are ultimately

11  charged to borrowers), they are performing no service for the commissions they receive other

12  than simply providing the referral.  *See* Jeff Horowitz, *Ties to Insurers Could Land Mortgage*

13  *Servicers in More Trouble*, American Banker (Nov. 10, 2010, 12:00 pm),

14  http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-028474-

15  1.html (referred to herein as "Ties to Insurers") (last visited Apr. 12, 2013).

16       21.    The web of relationships among the Defendants and the arrangements between

17  them served to funnel profits to Chase, Assurant, Inc., its subsidiaries and affiliates including

18  ASIC and SGIC, which were generated through their collusive activities.  Each defendant

19  participated in the scheme with the knowledge and collusion of the other participants as

20  described in greater detail herein.

21       22.    As one journalist recently observed:

22            In the pantheon of modern-day mortgage abuses, force-placed
             insurance hasn't attracted much attention.  But it generates
23            hundreds of millions of dollars a year in fees and commissions for
             insurance companies, banks and other financial institutions.
24            Policies are sometimes backdated to cover periods that have
             already passed.
25
             In essence, critics say, high-priced insurance policies cover a time
26            when no events happened.  And often, the mortgage company and

27                                    6

28                                    Case No. CV-11-03058-JCS
                                      Consolidated Amended Class Action Complaint

the force-placed-insurance company are affiliated, with the mortgage company receiving a "service fee" in return for the business. But homeowners don't know that."

*See* Dave Lieber, *Everyone Profits Off Force-Placed Insurance, Except Homeowner*, Star-Telegram (Oct. 1, 2011) attached as Exhibit 19.

23.    These very practices have drawn the scrutiny of state and federal bodies charged with the oversight of force-placed insurance.  In October 2011, a number of mortgage servicers and insurers, including Defendants, received subpoenas from the New York Department of Financial Services ("NYDFS") with respect to lender-placed insurance activities dating back to September 2005.  Assurant 2012 10-K at 31.  In connection with these subpoenas, Defendants have produced thousands and thousands of pages to the NYDFS and provided both written and oral testimony for the NYDFS.

24.    The NYDFS conducted hearings on May 17, 18 and 21, 2012 during which the force-placed insurance practices of Defendants, their affiliates, subsidiaries and bank partners were among the topics addressed by witnesses and in written testimony.  Superintendent Benjamin Lawsky noted in his opening statement that the Department's initial inquiry uncovered "serious concerns and red flags" which included: 1) exponentially higher premiums for force-placed insurance than regular homeowners insurance; 2) extraordinarily low loss ratios; 3) harm to distressed borrowers; 4) lack of competition in the market; 5) force-placed insurance has become a major profit center for both banks and insurers; and 6) "tight relationships between banks, their subsidiaries and insurers."  As Superintendent Lawsky summarized the net result of these practices:

> Take the form of large commissions being paid by insurers to the banks for what appears to be very little. In other cases, banks have set up reinsurance subsidiaries who take over the risk from the insurance companies.  Thus, the banks pay high premiums for coverage that is highly profitable and then those profits revert right back to the banks through reinsurance agreements.
>
> *           *           *           *

7

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

> In sum, when you combine [the] close and intricate web of
> relationships between banks and insurance companies on the one
> hand, with high premiums, low loss ratios and lack of competition
> on the other hand, it raises serious issues and questions....

Opening Statement of Benjamin M. Lawsky, Superintendent of NYDFS, May 17, 2012 attached as Exhibit 20.

25.     The NYDFS heard testimony from several of the Defendants as well as noted experts in the course of its force-placed insurance investigation. *See, e.g.*, Chase NYDFS Testimony; Testimony of John Frobose, President of ASIC ("ASIC NYDFS Testimony") submitted to the NYDFS attached as Exhibit 21; Testimony of Birny Birnbaum on behalf of the Center for Economic Justice, Public Hearing on Force-Placed Insurance before the New York Department of Financial Services, May 21, 2012 ("Birnbaum NYDFS Testimony") attached as Exhibit 14.1 and Hunter NYDFS Testimony.

26.     As a result of its investigation, NYDFS found:

> that insurers and banks built a network of troubling relationships
> and payoffs that helped drive premiums sky high. Those improper
> practices created significant conflicts of interest and saddled
> homeowners, taxpayers, and investors with millions of dollars in
> unfair and unnecessary costs.
>
>                  *         *         *
>
> Indeed, even though banks and servicers are the ones who choose
> which force-placed insurance policy to purchase, the high
> premiums are ultimately charged to homeowners, and, in the event
> of foreclosure ...

*See* New York Department of Financial Services Press Release dated March 21, 2013 ("NYDFS March 21, 2013 Press Release") attached as Exhibit 22.

27.     The NYDFS investigation further found that these practices resulted in a market characterized by "reverse competition." The insurers competed by offering servicers and lenders a share in the profits, rather than by offering lower prices. *Id*

28.     As a result of the NYDFS investigation into force-placed insurance practices, the NYDFS and Assurant, Inc. and its subsidiaries ASIC and American Bankers Insurance Company

8

1  of Florida entered into a Consent Order pursuant to which Assurant, Inc. and its subsidiaries

2  agreed to make changes in their force-placed insurance practices and to reduce the rates charged

3  to Chase borrowers whose insurance was force-placed. Chase borrowers whose insurance was

4  force-placed will be entitled to restitution of a portion of the force-placed premium which they

5  paid. Assurant, Inc. and its subsidiaries also agreed to pay the sum of fourteen million dollars

6  ($14,000,000) to the NYDFS. *See* NYDFS Consent Order.

7       29.     The National Association of Insurance Commissioners ("NAIC") is the standard-

8  setting and regulatory support organization created and governed by the chief insurance

9  regulators from the 50 states, the District of Columbia and five U.S. territories.  The NAIC

10  establishes standards and best practices, conducts peer review, and coordinates regulatory

11  oversight.  Pursuant to these duties, NAIC also investigated the force-placed insurance industry

12  and found those practices so troubling that it held its own public hearings on August 9, 2012.

13  *See* NAIC Promises Greater Focus on Force-Placed Insurance as CFPB Proposes Rules attached

14  hereto as Exhibit 23.  The NAIC, like the NYDFS, found there to be enough troublesome

15  information regarding the force-placed insurance industry and its associated practices to warrant

16  its full attention.

17       30.     The NAIC includes a discussion of "reverse competition" and lender-placed

18  insurance on its website:

19           A key regulatory concern with the growing use of lender-placed
             insurance is "reverse competition," where the lender chooses the
20           coverage provider and amounts, yet the consumer is obligated to
             pay the cost of coverage. Reverse competition is a market
21           condition that tends to drive up prices to the consumers, as the
             lender is not motivated to select the lowest price for coverage since
22           the cost is born by the borrower. Normally competitive forces tend
             to drive down costs for consumers. However, in this case, the
23           lender is motivated to select coverage from an insurer looking out
             for the lender's interest rather than the borrower.
24

25  http://www.naic.org/cipr_topics/topic_lender_placed_insurance.htm  (last  visited

26  Apr. 12, 2013).

27                                                    9

28                                                              Case No. CV-11-03058-JCS
                                                     Consolidated Amended Class Action Complaint

1      31.    Throughout the Class Period, Defendants have engaged both individually and in

2    concert with one another, unlawful, abusive and unfair practices with respect to force-placed

3    insurance, including, among others and as described in further detail below: (a) force-placing

4    insurance according to pre-arranged agreements between the Defendants at a substantially higher

5    cost to the borrower than is necessary or commercially reasonable; (b) charging class members

6    unreasonably high amounts for force-placed insurance, which amounts include unreasonable

7    expenses unrelated to the provision of force-placed insurance and which result from collusion

8    among Defendants and their affiliates which are involved in the force-placed insurance and

9    "reinsurance" process; (c) receiving fees, payments, and unearned commissions in connection

10    with the provision of force-placed insurance; (d) forcing borrowers to pay for duplicative

11    insurance coverage; (e) forcing borrowers to pay for unnecessary insurance; (f) entering into

12    captive reinsurance arrangements designed to funnel premiums to Defendants rather than as a

13    vehicle to transfer risk and protect the interests of the lender; (g) improperly exploiting their

14    ability to manage and gain access to escrow funds in breach of fiduciary obligations to increase

15    profits to lenders, servicers and insurance providers; (h)  using the mail and wires to conduct a

16    scheme to defraud Plaintiffs and the Class by taking advantage of the lender's contractual

17    authority to force-place hazard insurance and to create and manage escrow funds; (i)

18    misrepresenting that Defendants were force-placing hazard insurance on Plaintiffs and Class

19    members' properties to secure their interests and failing to inform Plaintiffs and the Class that

20    they were force-placing hazard insurance on their homes to not only protect the lender's interest,

21    as contemplated by the mortgage contracts, but in such a manner as to generate an unreasonable

22    and unwarranted profit for each of the Defendants in violation of the Racketeer and Corrupt

23    Organizations Act ("RICO"), 18 U.S.C. 1962(c); and (j) conspiring to take advantage of their

24    contractual authority to force-place Plaintiffs' and Class members' hazard insurance pursuant to

25    pre-arranged agreements that return an undisclosed and improper financial benefit to each

26    Defendants, their affiliates and subsidiaries in violation of RICO, 18 U.S.C. 1962(d).  These

27

28

1    actions are not to be considered as individual, discreet actions, but rather as a part of a larger

2    scheme to extract unwarranted and improper profits from Class Members through Defendants'

3    force-placed insurance practices.

4         32.    Chase's unlawful actions executed in concert with the other defendants herein,

5    include as described in further detail below, *inter alia:* (a) designing and implementing a scheme

6    between itself and its affiliates to use its authority to force-place hazard insurance to generate

7    unjustified profits for itself and other scheme members which were not disclosed to borrowers

8    whose insurance was force-placed; (b) electing to purchase higher-priced insurance policies from

9    its exclusive force-placed insurance providers and fellow scheme member(s) for their mutual

10   benefit; (c) entering into pre-arranged collusive agreements to acquire high priced, force-placed

11   insurance from Assurant, Inc., ASIC, SGIC or their subsidiaries and/or affiliates thereby

12   diminishing any benefit to be gained by borrowers through open market or competitive

13   purchasing environment; (d) entering into pre-arranged agreements with fellow scheme members

14   designed to yield exorbitant force-placed insurance charges to class members in order to

15   maximize their own profits without any regard whatsoever for competitive pricing to the

16   detriment of borrowers; (e) working with fellow scheme members to backdate the force-placed

17   insurance policies to charge for retroactive and unnecessary coverage; (f) giving and receiving

18   "kickbacks" among scheme members in the form of purported fees, payments, unearned

19   commissions, "rebates" and/or other things of value from providers of force-placed insurance

20   (including Assurant, Inc., ASIC, SGIC and their subsidiaries and affiliates) for the procurement

21   of the force-placed policies (g) improperly exploiting their ability to manage and gain access to

22   escrow funds in breach of fiduciary obligations relating to the management of escrow funds in

23   order to increase profits to itself and fellow scheme members; (h) using and agreeing to the use

24   the mail and wires to execute a scheme to defraud borrowers through the force-placed insurance

25   scheme; (i) misrepresenting the reasons for the high cost of force-placed insurance to Plaintiffs

26   and Class members; (j) omitting to inform Plaintiffs and Class members that force-placed

27                                                  11

28

1   insurance practices did not only protect its interest in Plaintiffs' and Class members' properties
2   but also generated unwarranted profits for itself and fellow scheme members; (k)
3   misrepresenting that force-placed hazard insurance costs more because it is provided without
4   underwriting; and (l) conspiring with co-Defendants Assurant, Inc., SGIC, ASIC and their
5   subsidiaries and/or affiliates to improperly profit from Chase's right to force-place Plaintiffs and
6   Class members' hazard insurance. These actions constitute a pattern and scheme of exploitative
7   profiteering and self-dealing engaged in by Chase and its Co-Defendants, acting in concert,
8   against the interests of Plaintiffs and the Classes.

9       33.     Plaintiffs assert herein the following claims against Chase: (1) state/common law
10   claims against Chase for  breach of its contractual obligations, including its implied covenant of
11   good faith and fair dealing, owed to Plaintiffs and the other Class members; (2) state/common
12   law claims against Chase for  breach its fiduciary duties/misappropriation of escrow funds held
13   and managed by Chase for the purpose of paying Escrow Items in accordance with the terms of
14   Plaintiffs' mortgages; (3) claims for violation of the Racketeer Influenced and Corrupt
15   Organizations Act, 18 U.S.C. § 1962(c),  as further described below; (4) claims for engaging in a
16   conspiracy to defraud Plaintiffs and the Classes in violation of RICO 18 U.S.C §1962(d)(5)
17   claims for violation of California Business & Professions Code ("UCL") §§ 17200, et seq.; (6)
18   claims for violation of the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:2 et seq.; (7)
19   claims for violation of Florida Consumer Collections Practices Act ("FCCPA"); and (8) claims
20   for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS
21   505/1, et seq.; Chase was an integral part of the force-placed insurance scheme described herein
22   and was aware, at all times, of the roles and actions taken by other scheme members in pursuit of
23   the improper goal of the scheme.

24       34.     Defendants Assurant Inc., SGIC and ASIC's unlawful actions include: (a)
25   devising and colluding in Defendants' unlawful scheme to defraud Plaintiffs and the Classes; (b)
26   aiding and abetting Chase's breach of fiduciary duty pursuant to which they sold unconscionably

27                                          12
28                                                      Case No. CV-11-03058-JCS
                                        Consolidated Amended Class Action Complaint

1    high-priced, unnecessary and duplicative force-placed hazard insurance coverage and related

2    services, including tracking Chase's loan portfolio and binding and obligating Plaintiffs and

3    Class members, through the improper utilization of access to escrow funds, to pay for the

4    improper force-placed insurance to maximize Defendants' profits to the detriment of borrowers;

5    (c) using and agreeing to the use of mails and wires in furtherance of the scheme to defraud; (d)

6    misrepresenting the reasons for the high cost of force-placed insurance; (e) failing to inform

7    Plaintiffs and Class members that the scheme participants would be improperly profiting from

8    the force-placed insurance; (f) misrepresenting to Plaintiffs and Class Members that they were

9    authorized to force-place high cost, unnecessary, and duplicative insurance in the manner

10   described herein; and (g) conspiring with co-defendants BOIC and Chase Insurance Agency and

11   their subsidiaries and/or affiliates to improperly profit from Chase's right to force-place Plaintiffs

12   and Class members' hazard insurance.  Assurant, Inc., ASIC and SGIC were aware, at all times,

13   of the true nature and purpose of the scheme described herein and took action, along with all

14   other Defendants, in furtherance of the improper goal of the scheme.

15         35.    Plaintiffs herein assert the following claims against Assurant, Inc., SGIC, ASIC

16   and their subsidiaries and affiliates: (1) claims for aiding and abetting Chase's breach of

17   fiduciary duty; (2) claims for violation of California Business & Professions Code §§ 17200, *et*

18   *seq.*; (3) claims for violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:2 *et seq.* ; (4)

19   claims for violation of Florida Consumer Collections Practices Act;  and (5) claims for violation

20   of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*;

21   (6) claims for using the mail and wires to execute a scheme to defraud Plaintiffs and the Classes

22   in violation of RICO, 18 U.S.C. § 1962 (c) and claims under 18 U.S.C. §  1962(d) for conspiring

23   with Chase to devise and execute a scheme to defraud Plaintiffs and the Classes; and (7)

24   Sate/common law claims for restitution/unjust enrichment and disgorgement and declaratory

25   relief.  Assurant, Inc. SGIC and ASIC knowingly participated in the scheme described herein

26

27                                          13

28                                                           Case No. CV-11-03058-JCS
                                                   Consolidated Amended Class Action Complaint

1   and, along with all other Defendants, and took action in furtherance of the improper goal of the

2   scheme.

3       36.     In this action, Plaintiffs do not challenge the rates of their force-placed hazard

4   insurance as excessive. Rather, Plaintiffs challenge, among other things, and as further described

5   herein, Defendants' *decision to purchase* force-placed hazard insurance from insurers that

6   provide a financial benefit to Defendants and/or their affiliates and at rates that far exceed

7   borrower-purchased hazard insurance (while providing substantially less coverage) and seek

8   statutory and compensatory damages, as well as restitution/disgorgement for Defendants' unjust

9   enrichment.

10      37.     Defendants' scheme required the participation, knowledge and cooperation of

11  each of the Defendants. The task of each individual Defendant was streamlined due to the close

12  relationship of each of the Defendants and each task was calculated to effectuate the scheme in

13  an efficient manner, maximizing the benefits that could be achieved through the scheme.

14  Further, each Defendant affirmatively acted to conceal the true nature and purpose of the scheme

15  from borrowers and regulators alike, while also purposefully choosing not to act when such

16  action would expose the true nature and purpose of the scheme to borrowers and regulators.

17      38.     In all respects, this conduct attributable to all Defendants herein is without

18  justification, serving only to enrich Defendants at a significant cost to the borrowers who were

19  required to purchase force-placed insurance.

20                              **JURISDICTION AND VENUE**

21      39.     This Court has jurisdiction over the subject matter of this action pursuant to 18.

22  U.S.C. §§ 1961, 1962 and 1964. This Court has original diversity jurisdiction pursuant to the

23  Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA"). Plaintiffs are citizens of different

24  states. Defendants are citizens of different states. The amount in controversy in this action

25  exceeds $5,000,000, and there are more than 100 members in the Classes.

26

27                                            14

28                                                        Case No. CV-11-03058-JCS
                                              Consolidated Amended Class Action Complaint

40.    This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

41.    Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 2614 because the real property involved in Plaintiff McNeary-Calloway's mortgage loan transaction is located in this district, Plaintiff McNeary-Calloway resides in this district, Defendants regularly conduct business in this district, and/or a substantial part of the events giving rise to the claims occurred in this district.

<strong>PARTIES</strong>

<u>Plaintiffs</u>

**Patricia McNeary-Calloway**

42.    Plaintiff Patricia McNeary-Calloway resides in Oakland, CA.   On or about September 13, 2007, Ms. McNeary-Calloway and her husband, James B. Calloway, Jr., obtained a $540,000 refinance mortgage loan from Chase Bank, secured by their primary residence. *See* McNeary-Calloway Mortgage.

43.    In connection with their mortgage loan, Ms. McNeary-Calloway and her husband obtained a hazard insurance policy from California Casualty with an annual premium of $1,640.00.   The policy provided the following coverage: (a) dwelling--$341,000; (b) other structures--$34,100; (c) personal property--$170,500; (d) loss of use--$102,300. *See* Exhibit 24.

**Ms. McNeary-Calloway's First Force-Placed Insurance Policy**

44.    On July 4, 2009, Mr. Calloway passed away due to complications from a serious illness.   During Mr. Calloway's illness and following his death, Ms. McNeary-Calloway faced financial difficulties and had trouble making her homeowner's insurance payment. Consequently, her hazard insurance policy lapsed effective August 26, 2009.

45.    Subsequently, on or about January 8, 2010, Chase Home Finance purchased a one-year insurance policy with ASIC, backdated to August 26, 2009, with an annual premium of $4,233 that was charged to Ms. McNeary-Calloway's escrow account.   The policy was

15

1   backdated, despite the fact that there was no damage to the property or claims arising out of the

2   property for the lapse period.

3       46.     Notably, while the premium for the force-placed insurance policy was 2 and ½

4   times the amount of her prior premium, the policy provided substantially less coverage, in that it

5   covered only the structure of the home.

6       47.     Chase Home Finance then established for Ms. McNeary-Calloway an escrow

7   account with an initial balance of negative $4,233.   Additionally, Chase Home Finance added

8   $887 to Ms. McNeary-Calloway's monthly payment, raising it from $2,716 to approximately

9   $3600 per month.

10   **Ms. McNeary-Calloway's Second Force-Placed Insurance Policy**

11       48.     In September 2010, Ms. McNeary-Calloway received from Chase Home Finance

12   "Insurance Processing Center" a letter dated September 5, 2010, entitled "Notice of Placement of

13   Insurance," a copy of which is attached as Exhibit 25.   The letter stated that, effective August 26,

14   2010, Chase Home Finance had renewed the force-placed insurance policy with ASIC for

15   another year, with a premium of $4,233, again charged to Ms. McNeary-Calloway's escrow

16   account. A copy of the force-placed insurance policy is attached as Exhibit 26.

17       49.     Following receipt of the September 5, 2010 letter entitled "Notice of Placement of

18   Insurance," Ms. McNeary-Calloway obtained her own insurance policy from Farmers Insurance

19   Group with an annual premium of $1,103.   The Farmers policy provided the following coverage:

20   (a) dwelling--$341,000; (b) other structures--$34,100; (c) personal property--$255,750; (d) loss

21   of use--$136,400; (e) medical payment to others--$1,000/person; (f) personal liability--

22   $300,000/occurrence; (g) extended replacement cost--$85,250; and (h) identify fraud--$30,000.

23   The policy's effective date is September 1, 2010. *See* Exhibit 27.

24       50.     After receiving notice of this policy, Chase Home Finance sent a letter to Ms.

25   McNeary-Calloway, stating that it had canceled the force-placed insurance policy effective

26   September 1, 2010, but charged Ms. McNeary-Calloway's escrow account for the lapse period of

27                                                        16

28                                          Case No. CV-11-03058-JCS
                                          Consolidated Amended Class Action Complaint

1  August 26, 2010 (date the first force-placed policy expired) to September 1, 2010 (date Ms.

2  McNeary-Calloway's policy began). *See* Exhibit 28.

3  **Colin and Terrie MacKinnon**

4      51.    Plaintiffs Colin and Terrie MacKinnon, husband and wife (the "MacKinnons"),

5  reside in San Diego, California.  The MacKinnons purchased their home in 1994 with a loan

6  from Royal Bank of Canada.  In July 2005, they refinanced through an online mortgage broker

7  and Chase Home Finance purchased the loan very shortly after closing.  *See* the Mackinnon

8  Mortgage.  The MacKinnons had a homeowners' insurance policy through AAA with

9  Interinsurance Exchange of the Automobile Club with an annual premium of $440. *See* Exhibit

10  29.

11      52.    Unbeknownst to them, the MacKinnons' homeowners' insurance policy lapsed on

12  July 20, 2008.  The MacKinnons believe that the lapse was due to a computer error on the part of

13  AAA.

14      53.    On November 5, 2010, Chase Home Finance sent to the MacKinnons a document

15  entitled "Notice of Placement of Hazard Insurance."  The notice stated that a lender-placed

16  policy had been purchased from ASIC with an annual premium of $1,782, backdated to cover the

17  period between August 18, 2009 and August 18, 2010.  A copy of the policy was included.  *See*

18  Exhibit 30.

19      54.    While the MacKinnons do not recall seeing this notice at the time, they

20  discovered the lapse in their homeowners' insurance in December 2010 when they visited a local

21  AAA branch office to address an issue with one of their automobiles.  Once they discovered the

22  lapse in their insurance coverage in December 2010, they immediately reinstated their policy,

23  effective December 10, 2010.

24      55.    In January 2011, the MacKinnons noticed two substantial charges to their escrow

25  account for force-placed homeowners' insurance.  Specifically, on October 27, 2010, Chase

26  Home Finance charged the MacKinnons a premium of $1,782 for a force-placed insurance policy

27                    17

28

1  backdated to cover the period from August 18, 2009 to August 18, 2010. Just three days later, on

2  October 30, 2010, Chase Home Finance charged the MacKinnons a premium of $1,782 for a

3  force-placed insurance policy backdated to cover the period from August 18, 2010 to August 18,

4  2011. *See* Exhibit 31.

5         56.    Once Chase Home Finance received proof of the MacKinnons' insurance policy,

6  reinstated as of December 10, 2010, it provided a pro-rated refund of $1,226.00 for the period of

7  December 10, 2010 through August 18, 2011. *See* correspondence dated March 9, 2011,

8  attached as Exhibit 32. Accordingly, the MacKinnons were charged a total of at least $2,338 for

9  force-placed insurance policies – the great majority of which was retroactive coverage for a

10  period Defendants knew or should have known resulted in no damage from which a claim would

11  be made.

12         57.    After being charged for the force-placed insurance policies, the MacKinnons fell

13  behind on their mortgage. After unsuccessfully attempting to obtain a suitable loan modification

14  from Chase Home Finance, the MacKinnons eventually paid Chase Home Finance by obtaining

15  a reverse mortgage through MetLife.

16         **Andrea North**

17         58.    Plaintiff Andrea North resides in Yorba Linda, CA. On or about April 3, 2008,

18  Ms. North obtained a loan from JPMorgan for the purchase of her home.[3] Ms. North obtained a

19  homeowner's insurance policy from State National Insurance Co. with an annual premium of

20  $1,084. However, after Ms. North became seriously ill in 2009, her homeowner's insurance

21  policy was canceled effective April 23, 2009 for non-payment of the premium. *See* Exhibit 33.

22         59.    On December 8, 2009, Chase Home Finance charged Ms. Woo and Ms. North

23  $5,377 (*see* Exhibit 34) for a force-placed insurance policy from ASIC, backdated to April 23,

24  _____

25  [3]    Ms. North's mother, Helen Woo, was a co-signer on the note, but was not a party to the

26  mortgage contract.

27                                              18

28                                                        Case No. CV-11-03058-JCS
                                                   Consolidated Amended Class Action Complaint

1  2009. Ms. North's force-placed insurance policy was backdated, despite the fact that there was
2  no damage to the property or claims arising out of the property for the lapse period.

3      60.    On May 2, 2010, Chase Home Finance sent to Ms. Woo and Ms. North a letter
4  stating that it had renewed the policy for another $5,377, effective April 23, 2010. *See* Exhibit
5  35.

6      61.    Subsequently, Ms. Woo and Ms. North obtained their own insurance policy from
7  Towers Select Insurance Co., effective as of June 8, 2010, for an annual premium of $1,134 (*see*
8  Exhibit 36) and refinanced their loan with JPMorgan.

9      62.    Chase Home Finance canceled the second force-placed policy effective June 8,
10  2010, but did not refund the initial $5,377 for the first force-placed policy or the amount charged
11  for the second force-placed policy in effect from April 23, 2010 until June 8, 2010. *See* Exhibit
12  37. On or about January 21, 2011, Ms. North refinanced her JPMorgan loan with American
13  Internet Mortgage, Inc. and paid to JPMorgan the outstanding balance of her loan, including the
14  amounts charged for force-placed insurance.

15  **Sheila M. Mayko**

16      63.    Plaintiff Sheila M. Mayko resides in Riverside, NJ. On or about January 11,
17  2002, Mayko and her husband at that time, James Nichols, purchased a residence in Riverside,
18  NJ with a loan obtained from Chase Manhattan Mortgage Corporation. On or about June 30,
19  2003, Mayko and Nichols obtained a $135,209.00 refinance loan with Chase Bank secured by
20  their property. *See* Mayko Mortgage.

21      64.    On August 10, 2009, Ms. Mayko and Nichols stopped making principal, interest
22  and escrow payments on their mortgage.

23      65.    When the 2010 hazard insurance premium payment of $1,064.00 became due in
24  January 2010, Ms. Mayko's escrow account had a negative balance. Thus, the insurance
25  premium payment was not made from the escrow account.

26

27  19

28

66. On January 19, 2010, Ms. Mayko's hazard insurance company (Preferred Mutual Insurance Company) sent a notice of cancellation stating that the policy would be cancelled effective February 23, 2010 if payment was not made. *See* Mayko Cancellation Notice, attached as Exhibit 38.

67. On January 26, 2010, Chase paid Mayko's annual premium of $1064.00 to Preferred Mutual from Mayko's escrow account, leaving that account with a negative balance. *See* Mayko Account Statement, attached as Exhibit 39. The Preferred Mutual policy provided $328,000 of coverage on Mayko's dwelling, $32,000 on other structures, $229,600 of coverage on Mayko's personal property and $300,000 in personal liability insurance, among other items. *See* Preferred Mutual Homeowners Declaration, attached as Exhibit 40.

68. Chase Home Finance was the servicer of Ms. Mayko's loan.

69. Nonetheless, although the property was already adequately insured, sometime in April 2010 Chase force-placed coverage with its preferred carrier.

70. On July 23, 2010, Chase Home Finance sent to Ms. Mayko a letter informing her that it had force-placed a one-year home owner's insurance policy on her property with ASIC with a premium of $3,177.34, a cost nearly three times the premium of the prior insurance. The insurance premium payment was charged against Ms. Mayko's escrow account. *See* Mayko Force-Placed Notice, attached at Exhibit 41.

71. Notably, while the premium for the force-placed insurance policy was three times Ms. Mayko's prior premium, the policy provided substantially less coverage, because it only protected Chase Home Finance and only covered the structure of the home.

72. Additionally, Mayko's dwelling was insured for precisely the same amount under the force-placed policy as it was under Mayko's existing policy ($328,000). This fact alone confirms that the prior insurance coverage was adequate to protect Chase and the mortgage holder, while at the same time suggesting that ASIC did nothing to evaluate its risk, aside from continuing the same coverage on the structure at three times the price.

20

1    73.    Moreover, although the policy was not purchased until July 23, 2010, it was

2    backdated to May 13, 2010, notwithstanding the fact that there was no damage to the property or

3    claims arising out of the property for that period.

4    74.    In an attempt to save her home from foreclosure, Mayko began the process of

5    seeking a home loan modification.  By December 2010, Mayko completed a loan modification

6    application with Chase Home Finance.

7    75.    On or about February 14, 2011, while the loan modification application was

8    pending, Nichols transferred his ownership in 200 Heulings Avenue to Ms. Mayko via a

9    quitclaim deed. *See* Quitclaim Deed, attached as Exhibit 42.

10    76.    On March 4, 2011, Chase informed Ms. Mayko that her application for a loan

11    modification had been accepted and sent Ms. Mayko a loan modification agreement.  Under the

12    loan modification agreement, the unpaid principal was stated as $123,122.31.

13    77.    The modification also added to that unpaid principal balance roughly $11,754.51

14    for advances from her escrow fund.  The escrow account advances included $3,177.34 that was

15    paid by Chase for the force-placed insurance premium on July 17, 2010.

16    **Patricia and Leamon Leger**

17    78.    Plaintiffs Patricia A. Leger and Leamon E. Leger, Jr. are husband and wife "(the

18    Legers"), and reside in the State of Florida.

19    79.    On or about June 15, 2007, the Legers obtained a $100,000 mortgage loan from

20    Chase. *See* the Leger mortgage.

21    80.    As required by their mortgage loan, the Legers maintained a hazard insurance

22    policy that was eventually canceled and which provided dwelling coverage, as well as coverage

23    for personal property, loss of use, personal liability, and medical payments.

24    81.    Subsequently, on or about September 27, 2009, Chase Home Finance purchased a

25    one-year insurance policy with ASIC, backdated to January 14, 2009, with an annual premium of

26    $3,808.76 charged to the Legers' escrow account.  The policy was backdated despite the fact that

27                                                    21

28

1  there was no damage to the property and/or claims arising out of the property for the lapse
2  period.

3    82.    Notably, while the premium for the force-placed insurance policy was nearly
4  double the Legers' prior premium, the policy provided substantially less coverage, in that it
5  covered only the structure of the home.

6    83.    Chase Home Finance amortized the premium, raising the Legers' monthly
7  payment.

8    84.    On January 19, 2010, Chase Home Finance renewed the force-placed insurance
9  policy with ASIC for another year, with another premium of $3,808.26, and again charged to the
10  Legers' escrow account.

11    85.    The Legers had been paying their mortgage through ACH, which debited the
12  payments out of a bank account the Legers had with Wachovia Bank.  As of August 4, 2009, the
13  ACH debits were in the amount of $719.03.  However, on April 5, 2010, Defendants debited
14  $1,735.48 out of Plaintiffs' Wachovia Bank account.

15    86.    On July 28, 2010, the Collection Department of Chase Home Finance wrote to the
16  Legers stating that they were in default, they would have to pay $3,569.51 by September 2, 2010
17  in order to cure the default, and that it would accelerate the maturity of the loan, declare all sums
18  secured immediately due and payable, and commence foreclosure proceedings without further
19  notice, which would also entitle it to collect expenses, including foreclosure/attorney fees.  A
20  copy of the July 28, 2010 letter is attached as Exhibit 43.

21    87.    On August 4, 2010, the Collection Department of Chase Home Finance again
22  wrote to the Legers stating that they were in default, demanding $3,569.51.  A copy of the
23  August 4, 2010 letter is attached as Exhibit 44.

24    88.    On January 18, 2011, Chase Home Finance renewed the force-placed insurance
25  policy with ASIC for another year with a premium of $4,031.57 charged to the Legers' escrow
26  account.  A copy of the declarations page for the policy is attached as Exhibit 45.

27

28

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

89.    On August 17, 2011, Plaintiff Patricia Leger went to a Chase branch to make a payment toward the mortgage note, but not one of Defendants' representatives told her that Defendants would not accept the payment and that she would have to deal with attorneys representing Defendants in order to obtain a reinstatement amount.

90.    Defendants' attorneys subsequently told Ms. Leger that the Legers owed $9,577.90 plus attorneys' fees and late fees of $1,349.80, for a total of $10,927.70.

91.    Through written correspondence from counsel on counsel's letterhead containing counsel's name, address, and other contact information, the Legers disputed the charges directly with Defendants, but Defendants have nonetheless persisted in repeatedly initiating collection calls to the Legers, despite neither having consent from the Legers' attorney nor having first tried contacting the Legers through their attorney.

92.    In January 2012, the Legers received a letter dated January 19, 2012 and titled "Notice of Placement/Renewal of Hazard Insurance" from JPMorgan "Insurance Center," a copy of which is attached as Exhibit 46. The letter stated that, effective January 14, 2012, JPMorgan had renewed the force-placed insurance policy with ASIC for another year, with a premium of $3,988.68, again charged to the Legers' escrow account. A copy of the force-placed insurance policy is attached as Exhibit 47.

**Mitch and Kathryn Varnes**

93.    Plaintiffs Garry ("Mitch") Mitchell Varnes, Jr. and Kathryn A. Varnes are husband and wife ("the Varneses"), and reside in the State of Florida.

94.    On or about March 16, 2004, the Varneses obtained a $430,000 construction mortgage loan from The Bank Brevard. *See* the Varnes mortgage.

95.    On January 4, 2005, upon completion of the construction of their home, the Varneses entered into a Loan Modification and Extension Agreement with JPMorgan Chase Bank, N.A., amending and supplementing the March 16, 2004 mortgage in the amount of

23

1    $430,000 and incorporating the terms of the Varneses' mortgage loan.  A copy of the Loan

2    Modification and Extension Agreement is attached as Exhibit 48.

3         96.     On January 31, 2006, the Varneses took out a second lien mortgage which was

4    later modified on July 20, 2006.  That loan has been paid in full.

5         97.     As required by the terms of their mortgage loan, the Varneses maintained a hazard

6    insurance policy on the property secured by their mortgage, but eventually experienced a lapse in

7    hazard insurance coverage.  Immediately prior to the lapse, the Varneses had a policy with

8    Frontline Homeowner's Insurance for the period covering February 11, 2010 – February 11,

9    2011. A copy of the declaration page for the policy is attached as Exhibit 49.  The total annual

10   premium for this policy was $1,607.  *Id.*  That policy provided coverage for the Varneses' home,

11   its contents, loss of use, personal liability and medical payments to others.

12        98.     On February 21, 2012 and again on March 22, 2012, JPMorgan Chase (through

13   the Chase Insurance Processing Center) notified the Varneses that it had not received evidence of

14   homeowner's insurance for the period beginning February 11, 2011 (almost a year after the date

15   of the lapse) and that it had purchased homeowner's insurance on their behalf for the period of

16   February 17, 2011 through February 17, 2012 for an annual premium of $9,866.50, a premium

17   approximately six times more than that of their Frontline policy.[4]  A copy of the May 2, 2012

18   letter is attached as Exhibit 50.

19        99.     On May 3, 2012, JPMorgan Chase sent the Varneses a Notice of Replacement

20   Hazard Insurance, notifying them that it had force-placed insurance on their property effective

21   February 17, 2011, and had charged the premium to their escrow account.[5]  This letter also

22   _____

23   [4]     The correspondence sent to the Varneses referenced a First Protective Insurance Policy.
     Frontline Homeowners Insurance is a member of a group of independent insurance companies
24   that insures homeowners in the coastal areas of the southeastern United States and provides
     insurance through First Protective.
25   [5]     The Varneses did not have an escrow account prior to JPMorgan Chase's force-
26   placement of their hazard insurance.  It established an account for the purpose of paying the

27                                                    24

28                                                              Case No. CV-11-03058-JCS
                                                   Consolidated Amended Class Action Complaint

1   stated that their force-placed hazard insurance would be reinsured with a Chase affiliate. A copy
2   of the May 3, 2012 letter is attached as Exhibit 51.

3        100.   The force-placed policy for the period February 17, 2011 – February 17, 2012
4   obtained by JPMorgan Chase was issued on May 3, 2012 by ASIC. A copy of the declarations
5   page is attached as Exhibit 52.

6        101.   The policy was backdated despite the fact that there was no damage to the
7   property and/or claims arising out of the property for the lapse period.

8        102.   Notably, while the premium for the force-placed insurance policy was nearly six
9   times the Varneses' prior premium, the policy provided substantially less coverage in that it
10   covered only the structure of the home.

11       103.   Assurant, Inc.'s subsidiary, ASIC, issued a renewal policy on May 14, 2012 for
12   the period covering February 17, 2012 – February 17, 2013, for an annual premium of $9,763.51.
13   A copy of the declarations page is attached as Exhibit 53. This policy, too, was backdated,
14   despite the fact that there was no damage to the property.

15       104.   By letter dated May 14, 2012, JPMorgan Chase notified the Varneses that their
16   escrow account was charged for the full amount of the premium. A copy of the May 14, 2012
17   letter is attached as Exhibit 54.

18       105.   The Varneses provided proof of hazard insurance coverage to JPMorgan Chase,
19   supplying it with evidence of their hazard insurance policy with Citizens Property Insurance for
20   the period covering March 30, 2012 – March 30, 2013. The annual premium for that policy was
21   $3,468. A copy of the Citizens Homeowners Application is attached as Exhibit 55.

22       106.   By letter dated May 14, 2012, JPMorgan Chase acknowledged receipt of proof of
23   evidence of hazard insurance coverage. JPMorgan Chase refunded a portion of the premium
24   charged to the Varneses' escrow account, $1,123.25, representing the cost of coverage for the

25

26   force-placed insurance premiums.

27                       25

1  period from February 17, 2012 – March 30, 2012.  A copy of the May 14, 2012 letter is attached

2  as Exhibit 56.

3      107.    As a result of the force-placement of their hazard insurance, the Varneses were

4  charged a total of $10,991.75.  A copy of the May 28, 2012 Annual Escrow Statement is attached

5  as Exhibit 57.

6      **Chad Knox**

7      108.    Plaintiff Chad Knox obtained a mortgage from Washington Mutual Bank secured

8  by a parcel of real property in Brevard County, Florida. The loan was serviced by JPMorgan and

9  Chase Bank who are also the successor in interest and/or assign of the mortgage. *See* the Knox

10  Mortgage.

11      109.    Mr. Knox maintained in full force and effect the insurance required by the

12  mortgage contract.  As his current policy was approaching its termination date, Mr. Knox began

13  shopping for new insurance coverage.  A short time later, Mr. Knox, after a diligent effort to do

14  so, secured new hazard insurance for the property.  However, in December 2010, there was a

15  brief 14-day gap in coverage.

16      110.    Defendants, without seeking competitive bids on the open market or attempting to

17  re-establish Mr. Knox's prior insurance with funds that were presently held in Mr. Knox's

18  escrow account specifically for this purpose, capriciously exercised their discretion in choosing

19  an insurance policy and contracted with Assurant to obtain surplus-line, force-placed, insurance

20  for Mr. Knox's property and take advantage of the scheme of kickbacks and commissions

21  described herein.

22      111.    On January 3, 2011, Chase notified Mr. Knox that it was force-placing an

23  insurance policy on him for a period starting on December 21, 2010.  The cost of the force-

24  placed policy from December 21, 2010 through the date of the letter was $583.54. *See* Letter

25  from Chase Home Finance, LLC dated January 3, 2011 attached as Exhibit 58.

26

27                              26

28                              Case No. CV-11-03058-JCS
                              Consolidated Amended Class Action Complaint

112.    Despite being purchased in January 2011, the insurance policy - secured from Assurant, Inc. subsidiary, ASIC - was backdated notwithstanding the fact that there was no damage to the property or claims arising out of Mr. Knox's property for that period.

113.    Defendants JPMorgan Chase notified Mr. Knox that the force-placed insurance policy had been secured and retroactively placed.

114.    The cost of the annual premium of the force-placed insurance policy through Assurant, Inc. subsidiary ASIC totaled $2,411. This is nearly five times the amount of the premium now paid by Mr. Knox.

115.    On or around December 21, 2010, on January 3, 2011, Chase created an "escrow/impound account . . . for payment of future renewals of [Mr. Knox's] policy" as a result of Chase having to force-place insurance due to the 14-day lapse period.

116.    Mr. Knox faithfully paid, and continues to faithfully pay, his mortgage payment, including his escrow payment, to Defendants.

117.    On February 29, 2012, Mr. Knox received another letter from Defendants stating that Mr. Knox's hazard insurance had expired on December 21, 2011.  Instead of using Mr. Knox's escrow money that Defendants' had been collecting throughout 2011 "for future renewals of [Mr. Knox's] policy," Defendants chose, in bad faith, to again force-place their own insurance policy for Mr. Knox's property and increase Mr. Knox's mortgage payment as a result thereof.

118.    The premiums charged to Mr. Knox were exorbitant and illegal due to the Defendants' practices as described herein.

119.    Upon filing this lawsuit, Mr. Knox has now encountered multiple obstacles created by Chase as a result of the force-placement which include difficulty making his mortgage payments.

27

1    **Leonard Jelks, Jr**

2       120.   On or around November 1992, Mr. Jelks obtained a mortgage secured by a parcel

3 of real property in Spring, Texas. *See* Jelks' Mortgage. The servicing rights to the Jelks

4 Mortgage were ultimately transferred to JP Morgan.

5       121.   Mr. Jelks obtained homeowner's insurance policy with State Farm Fire and

6 Casualty Company ("State Farm"). This policy included coverage in the amount of $190,000.

7       122.   JPMorgan Chase force-placed homeowner's insurance on Mr. Jelk's home for the

8 period beginning on October 29, 2004 with successive annual renewals through May 11, 2012.

9 In connection with the force-placement of his homeowner's insurance, JPMorgan sent

10 correspondence relating to the force-placement of his insurance. These communications were

11 essentially the same for this period of time. As an example, in November 2011, Mr. Jelks

12 received a notice purportedly from JP Morgan that informed him that insurance had been

13 unilaterally purchased on his behalf and retroactively placed on his property. This force-placed

14 insurance policy was issued by SGIC and had a one-year policy period from October 29, 2011 to

15 October, 29, 2012. *See* Exhibit 59, Letter dated November 2, 2011 from JPMorgan Chase to

16 Leonard Jelks.

17       123.   The annual cost of the insurance purchased by JP Morgan was $2,440.91, which

18 far-exceeded the annual cost of the State Farm policy that Mr. Jelks historically paid.

19       124.   Despite the extraordinary cost of this force-placed insurance policy, the policy

20 actually insured far less than the State Farm policy.

21       125.   JP Morgan never disclosed that the premium's excessive price included costs for

22 the kickbacks and unearned commissions, the offset of administrative costs performed by the

23 vendor, and the captive reinsurance arrangement. Indeed, the form letters and other documents

24 sent to Mr. Jelks that JPMorgan had (i) purchased bona fide reinsurance, when it did not; and (ii)

25 represented that the policy obtained and the premium paid was for insurance in the amount of

26 $116, 400 when the premium paid included amounts representing improper kickbacks to Chase

27                           28

28

1   in the form of sham reinsurance, commissions, hidden arrangements between Chase and

2   Assurant and for duplicative, unnecessary and back dated coverage.

3       126.    The charges for the force-placed insurance were unilaterally charged to Mr. Jelks'

4   escrow account and added to his monthly mortgage statement thereby increasing his monthly

5   payment. Mr. Jelks was required to pay these charges, otherwise his loan would be considered in

6   default.

7       127.    Subsequently, on or around May 2012, Mr. Jelks' home was destroyed by a fire.

8   Mr. Jelks previous homeowners' insurance policy included coverage in the amount of $190,000,

9   the estimated replacement value of the home. Even though the premium for JP Morgan's force-

10   placed insurance policy far exceeds the price of Mr. Jelks' previous homeowner's insurance

11   policy, JP Morgan refused to provide Mr. Jelks with the funds adequate to rebuild his home, or

12   comparable to the coverage historically provided under his own policy.

13    **Jack E. Brooks and Tami Brooks**

14       128.    Plaintiffs, Jack E. Brooks and Tami Brooks ("Plaintiffs") reside in Cahokia,

15   Illinois. On or about August 28, 2009, Plaintiffs obtained a mortgage loan in the amount of

16   $68,000 from Mortgagee Electronic Registration Systems, Inc., secured by their primary

17   residence. *See* Brooks Mortgage.

18       129.    This mortgage loan or the servicing rights with respect to the mortgage were

19   subsequently sold to Chase.

20       130.    As required by their mortgage loan, Plaintiffs maintained a hazard insurance

21   policy from Foremost Insurance Co. to protect the dwelling as well as other structures, personal

22   property and liability. That policy had an annual premium of $1,194.00 for the period November

23   2006 through October 2007. *See e.g.*, Exhibit 60, Foremost Insurance Company Policy.

24   Plaintiffs thereafter received notice from Foremost Insurance Co. that their policy would not be

25   renewed and would expire.

26

27                             29

28                                       Case No. CV-11-03058-JCS

131.    Chase subsequently force-placed a hazard insurance policy in or around October 31, 2010 and Plaintiffs have been paying the premiums on that force-placed policy ever since.

132.    Most recently, Chase, has force-placed a hazard insurance policy issued by ASIC, effective from October 31, 2011 through October 31, 2012, with an annual premium of $1,980.00. *See* American Security Insurance Policy provided to the Brookses Exhibit 61.

**Achikam Yogev**

133.    Plaintiff Achikam Yogev obtained a mortgage from Washington Mutual Bank secured by a parcel of real property in Miami-Dade County, Florida.  The loan was serviced by JPMorgan and Chase Bank who are also the successor in interest and/or assign of the mortgage. *See* Achikam Mortgage.

134.    As required by the terms of his mortgage loan, Yogev maintained a hazard insurance policy on the property secured by his mortgage, but eventually experienced a lapse in hazard insurance coverage.  Immediately prior to the lapse, Yogev had a policy with Citizens Property Insurance Company ("Citizens") for the period covering February 2010 through February 2011.  That policy provided coverage for Yogev's' home, its contents, loss of use, personal liability, and medical payments to others.

135.    On February 17, 2011, JPMorgan Chase (through the Chase Insurance Processing Center) notified Yogev that it had not received evidence of homeowner's insurance for the period beginning May 15, 2010 through August 8, 2010, and that it had purchased homeowner's insurance on his behalf for that time period for a premium of $2,767.91.  Exhibit 62.

136.    The force-placed policy was backdated despite the fact that there was no damage to the property and/or claims arising out of the property for the lapse period.

137.    Notably, while the premium for the force-placed insurance policy was Yogev's prior premium, the policy provided substantially less coverage in that it covered only the structure of the home.

1   138.    By letter dated February 17, 2011, JPMorgan Chase notified Yogev that his
2   escrow account was charged for the full amount of the premium. *Id.*

3   139.    As a result of the force-placement of his hazard insurance, Yogev was charged a
4   total of $2,767.91.

5   **Defendants**

6   140.    Defendant JPMorgan Chase Bank, National Association, the principal bank
7   subsidiary of JPMorgan Chase & Co., conducts business in California and throughout the United
8   States.

9   141.    Chase Home Finance, LLC ("Chase Home Finance") is a Delaware limited
10  liability company that, during the relevant time period, served as the primary servicing unit for
11  loans originated and/or acquired by affiliates of ultimate parent, JPMorgan Chase & Co.  On or
12  about May 1, 2011, Chase Home Finance was merged with and into Defendant JPMorgan, with
13  Defendant JPMorgan as the surviving entity.  Accordingly, Defendant JPMorgan is named as a
14  Defendant in this action both in its own capacity and as successor-in-interest to Chase Home
15  Finance.

16  142.    In all of its actions described herein, Chase Home Finance acted on its own behalf
17  and as the duly authorized agent of Defendants JPMorgan and Chase Bank or other owners of the
18  underlying notes and mortgage agreements.  Defendants were contractually obligated to service
19  the loans at issue according to the terms of the mortgage agreements.

20  143.    Defendant Chase Bank USA, National Association, is a subsidiary of JPMorgan
21  Chase & Co., and conducts business in the State of California and throughout the United States.

22  144.    Defendant Banc One Insurance Company is an active Vermont Corporation and a
23  subsidiary of JPMorgan Chase & Co.  It reinsures hazard policies placed on properties serviced
24  by JPMorgan Chase.

25  145.    Defendant Chase Insurance Agency, Inc. is a subsidiary of JPMorgan Chase &
26  Co. and conducts business in the State of California and throughout the United States. While a

27                                         31
28                                                            Case No. CV-11-03058-JCS
                                                    Consolidated Amended Class Action Complaint

1   representative of CIA has testified that CIA "provides insurance agency services in connection

2   with LPI (Chase NYDFS Testimony at 1), CIA did not provide such services or earn

3   commissions or other value paid to it for such services in connection with the force-placement of

4   Plaintiffs and Class Members force-placed insurance.

5       146.   Defendant Assurant, Inc., a Delaware corporation, "is a provider of specialized

6   insurance products and related services in North America and selects worldwide markets."

7   Assurant, Inc. has four operating segments—Assurant Solutions, Assurant Specialty Property,

8   Assurant Health, and Assurant Employee Benefits.  Assurant, Inc. is a provider of specialized

9   insurance products including "lender-placed" homeowners insurance or FORCE-PLACED

10  INSURANCE. According to Assurant 2012 10-K at 5, "the majority of [Assurant Inc.'s] lender-

11  placed agreements are exclusive" and those agreements require the Assurant Defendants to

12  "automatically issue these policies when a borrower's insurance coverage is not maintained."

13  Assurant, Inc. has four operating segments – Assurant Solutions, Assurant Specialty Property,

14  Assurant Health, and Assurant Employee Benefits.

15      147.   Assurant Specialty Property is the Assurant, Inc. division which deals with the

16  force-placement of borrower's homeowner's insurance, including specifically, hazard insurance.

17  Assurant, Inc. "offers" lender placed homeowner's insurance.   Assurant 2012 10-K at 3.

18  Assurant, Inc. offers its force-placed ("lender-placed") insurance products through the Assurant

19  Specialty Property segment.   "The largest product line within Assurant Specialty Property is

20  homeowners insurance, consisting principally of fire and dwelling hazard insurance offered

21  through [Assurant's] lender-placed programs." *Id.* at 4. Assurant uses "a proprietary insurance-

22  tracking administration system linked with the administrative systems of our clients to

23  continuously monitor the clients' mortgage portfolios to verify the existence of insurance on

24  each mortgaged property and identify those that are uninsured" and when a lapse is confirmed,

25  "a lender-placed policy is procured by the lender." *Id. See also,* Chase NYDFS Testimony at 4,

26  n.4.

27                                          32

28

1       148.    Assurant, Inc. is one of the two dominant providers of force placed insurance in

2   the United States. NYDFS Consent Order at 3.

3       149.    Defendant ASIC is a Delaware corporation with its principal place of business in

4   Atlanta, Georgia and is a subsidiary of Assurant, Inc. that does business throughout the United

5   States. Assurant 2012 10-K at Exhibit 21.1. ASIC writes force-placed insurance policies in all

6   fifty states and the District of Columbia.  Upon information and belief, ASIC provides services

7   to Chase in relation to its force-placed insurance practices, including, but not limited to:  (1)

8   tracking borrower's loans to determine the existence of hazard insurance; (2) placing force-

9   placed insurance for JPMorgan Chase when there has been a lapse, and (3) handling all customer

10  service duties related to force-placed insurance. Plaintiffs' force-placed insurance policies were

11  issued by ASIC (with the exception of the Mr. Jelks whose force-placed insurance was provided

12  by SGIC, an Assurant, Inc. subsidiary.

13      150.    Defendant Standard Guaranty Insurance Company , a Delaware corporation is a

14  wholly-owned subsidiary of Defendant American Security Insurance Company, who, in turn, is

15  wholly-owned by Interfinancial, Inc., a Georgia corporation, who, in turn is owned by Defendant

16  Assurant, Inc., a Delaware corporation and the ultimate parent of SGIC. *See* 2012 Assurant, 10-

17  K.  SGIC provided force-placed insurance to Plaintiff Leonard Jelks from October 29, 20005 to

18  October 29, 2012.

19      151.    Upon information and belief, Chase and Assurant Inc. have a significant financial

20  stake in ASIC, a company that issues force-placed flood insurance policies.  Specifically, ASIC

21  is a wholly-owned subsidiary of Assurant, Inc. *See* Assurant, Inc., Annual Report (Form 10-K),

22  Exhibit 21 (February 23, 2011).  As of January 19, 2010, JPMorgan Chase & Co. (the parent

23  company of each of the Defendants) held 3,829,722 shares in Assurant, Inc. through JPMorgan

24  and other affiliates.   *See*  JPMorgan Chase & Co., Statement of Acquisition of Beneficial

25  Ownership (Schedule 13G/A) (January 19, 2010).

26

27                                              33

28                                                      Case No. CV-11-03058-JCS
                                            Consolidated Amended Class Action Complaint

152.    The Doe Defendants 1-10 represent those yet unidentified entities and individuals who were active participants in the improper scheme and practices alleged herein.

153.    The insurance policies that were forced placed by JPMorgan Chase through Assurant, Inc., ASIC and SGIC named the lender or servicer as the named insured under the force-placed policies and did not include the borrower as a named insured.

## FACTUAL ALLEGATIONS

### Defendants' Improper Force-Placed Insurance Scheme

#### Defendants' Force-Placed Insurance Operations

154.    JPMorgan Chase describes itself as a leading global financial services firm and one of the largest banking institutions in the United States of America. *See* JP Morgan Chase & Co. form 10-k for the year ending December 31, 2011 available at http://www.sec.gov/Archives/edgar/data/19617/000001961712000163/corp10k2011.htm.    (last visited Apr. 12, 2013). JPMorgan Chase is one of the largest mortgage originators in the United States with approximately $150 billion of mortgage originations annually.    Each such loan (origination) is secured by a deed of trust on the underlying property.    JPMorgan Chase also services more than 8 million mortgages and home equity loans. *Id.*

155.    JPMorgan Chase operates 5,500 bank branches (third largest nationally) and more than 17,200 ATMs (second largest nationally), as well as online and mobile banking around the clock.    Some 33,500 branch salespeople are available to assist customers with checking and savings accounts, mortgages, home equity and business loans.

156.    Chase conducts business "across the 23-state footprint from New York and Florida to California." *Id.*

157.    Assurant, Inc., ASIC, and their subsidiaries and affiliates acted together as the force-placed insurance providers for JPMorgan Chase pursuant to the scheme described herein. *See* Exhibit 14, ASIC NYDFS Testimony at 2.

158.    Assurant, Inc. plays a crucial role in the Defendants' force-placement activities as it admits in its filings, and as evidenced by its role in the NYDFS investigation which ultimately resulted in the entry of a Consent Order to which it was a party.

159.    Assurant has been JPMorgan Chase's exclusive provider of force-placed insurance since 2005. *See* Exhibit 13, Chase NYDFS Testimony at 4, n.4.

160.    Assurant and Chase have entered into contracts relating to all aspects of the force-placement of hazard insurance for borrowers whose loans are serviced by Chase. Chase NYDFS Testimony at 4-7.

**Defendants Abused Force-Placed Insurance Mortgage Clauses to Generate Hidden and Unearned Profits**

161.    Each loan serviced by JPMorgan Chase is secured by a mortgage or deed of trust on the underlying property.

162.    In order to ensure that the mortgagee's interest in the secured property is protected, mortgage loan contracts typically allow the lender or third-party servicer discretion to "force-place insurance" when the homeowner fails to maintain the insurance. Plaintiffs' and Class members' mortgage loan contracts contain such provisions affording JPMorgan Chase the authority to force-place insurance in the event of a lapse. The failure of a borrower to maintain hazard insurance was clearly contemplated by the mortgage contract and such a failure by the borrower does not result in a material failure to perform under the mortgage contract.

163.    The discretion afforded Defendants, however, to force-place insurance is limited by the bounds of reasonable conduct and by the express terms of the mortgage itself. Chase routinely exceeds the bounds of reasonableness and the spirit, intent and letter of the mortgage contract by force-placing insurance in a manner and in amounts that are not required to protect the lender's interest in the property in an effort to reap profits from the borrower which are not required nor contemplated by the mortgage contract and through other conduct described herein with respect to the force placement of insurance.    The typical mortgage contract does not disclose that the lender or other servicer will receive a financial benefit in connection with the

35

1   force-placed insurance policy. Instead, the contract misrepresents to borrowers that the cost

2   passed on to them is for the purpose of protecting the lender's interest in the secured property.

3   *See, e.g.*, Exhibits 2-11.

4        164.   These lender-placed or "force-placed" insurance policies are almost always more

5   expensive than standard insurance coverage, as evidenced by Plaintiffs' policies. Such policies

6   can cost as much as ten times more than standard policies. NYDFS March 21, 2013 Press

7   Release; NYDFS Consent Order.

8        165.   While the force-placed insurance policy is for the benefit of the lender, the cost is

9   passed on to the borrower. *Id.*

10       166.   Once a lender and/or servicer receives evidence that a borrower has obtained

11   his/her own insurance policy, the forced placed coverage should be fully or partially canceled.

12   **Mortgage Loan Servicers Commonly Have Undisclosed Lucrative Pre-Arranged**
     **Agreements to Refer Borrowers to Certain Force-Placed Insurance Providers**

13

14       167.   The force-placement of insurance policies is a very lucrative business for

15   servicers and insurance carriers as a result of the scheme described herein. Here, JPMorgan

16   force-placed Plaintiffs' insurance with Assurant, Inc.'s subsidiaries, ASIC and SGIC, in

17   accordance with a pre-arranged agreement and in such a way as to receive and maximize its

18   financial benefit. JPMorgan benefited because it placed the Plaintiffs' force-placed insurance

19   policies with Assurant, which had already agreed to share revenue with Chase in the form of a

20   direct commission payment, below cost tracking services and "reinsurance" premiums ceded to

21   BOIC (a "captive reinsurance arrangement"). Indeed, as Birny Birnbaum of the Center for

22   Economic Justice, another experienced and noted expert in the area of force-placed insurance

23   stated:

24           [s]ervicers have financial incentives to force-place the insurance
             because the premiums include commissions and other
25           considerations for the servicer. With some servicers, the insurance
             is reinsured through captive reinsurer of the servicer, resulting in
26           additional revenue to the servicer from the force-placement
             coverage.

27                                                36

28                                                        Case No. CV-11-03058-JCS
                                                          Consolidated Amended Class Action Complaint

1  *See* Birnbaum NYDFS Testimony at 15.

2  168.  JPMorgan and Assurant profited from the ability to exploit their authority to

3  force-place insurance in several ways, including through commission arrangements and

4  reinsurance deals as depicted in the following graphic from *American Banker*:

# Sharing in the Profits
How servicers make money arranging force-placed coverage

## Commissions

To replace lapsed homeowners coverage, the servicer, working through a subsidiary, buys policy from insurer

Servicer advances premiums to insurer

Insurer pays portion of premium back to subsidiary as a commission

Servicer bills borrower for the policy

If borrower defaults, cost of insurance is subtracted from proceeds to investors from foreclosure sale

## Reinsurance

To replace lapsed coverage, servicer buys policy on home from insurer

Servicer advances premiums to insurer

Subsidiary of servicer reinsures part of the policy, gets a cut of premiums

If necessary, subsidiary buys letter of credit from another party

Servicer bills borrower for the policy

If borrower defaults, cost of insurance is subtracted from proceeds to investors from foreclosure sale





**Defendants' Improper Reinsurance Arrangements**

169.  As Assurant, Inc. readily admits in its 2012 Form 10-k, it has entered into a quota

share reinsurance arrangement as a mechanism to "share profits." Assurant 2012 10-K at 53.

170.  In a typical quota share reinsurance arrangement, the reinsurer agrees to assume a

fixed percentage of all the insurer's insured losses. Thus, if the insurer experiences losses, the

1   reinsurer is expected to experience losses in the percentage agreed upon in the reinsurance

2   contract – each party will pay a specified percentage of every claim.

3        171.   Pursuant to the terms of the Defendants' captive reinsurance agreement, Assurant

4   agrees to cede 75% of the premiums it collects from JPMorgan Chase borrowers to BOIC,

5   JPMorgan's captive reinsurer.  Thus the assets held by BOIC consist almost entirely of

6   premiums paid by JPMorgan Chase borrowers.

7        172.   In order for any reinsurance arrangement to be deemed legitimate, it must transfer

8   risk.

9        173.   Defendants claim that their reinsurance scheme is legitimate because it is a quota

10   share arrangement (purportedly splitting the liability 75/25 for every claim made) and therefore

11   must inevitably transfer risk.

12        174.   Defendants' purported quota share reinsurance arrangement is not legitimate

13   because, while it facially appears to share the risk associated with the insurance force-placed on

14   JPMorgan's borrowers, it does not because the Defendants have built in arrangements that vitiate

15   any possibility of risk transfer and therefore must be analyzed pursuant to accepted, accounting

16   and actuarial risk transfer analysis as set forth below.

17        175.   The arrangement shields JPMorgan Chase because Defendants have put in place

18   several additional layers of reinsurance coverage which makes it mathematically impossible for

19   JPMorgan Chase to be exposed to any risk or for any of its assets to be subject to payment of

20   claims.

21        176.   Here in addition to the "reinsurance" provided by BOIC, Assurant purchased two

22   additional insurance policies – a catastrophic reinsurance policy and an additional third-party

23   policy.

24        177.   Assurant's loss ratios for the years 2006-2011 never exceeded 24.7 percent and in

25   2008 the loss ratio was only 17.3 percent.  In contrast, the loss ratio for voluntary homeowners

26   insurance has traditionally been around 63%.  Hunter NYDFS Testimony.

27                             38

28                                          Case No. CV-11-03058-JCS
                                    Consolidated Amended Class Action Complaint

178.    As a result of the interplay amongst all these policies, coupled with the low loss ratios experienced by Assurant, JPMorgan Chase is exposed to *no* real reinsurance risk. *See* Hunter NYDFS Testimony; NYDFS Consent Order at 6-7. That is, JPMorgan Chase will never have to contribute to the payment of any claims and is not risking any of its own assets.

179.    Because Defendants must be subjected to the risk transfer tests set forth below, Defendants cannot shield themselves from liability simply because the reinsurance arrangement is a quota share arrangement.

180.    These arrangements do not pass muster under the accepted risk transfer tests.

181.    Because there is no possibility that JPMorgan Chase will ever pay any claims, the transfer of 75% of borrower premiums to BOIC is nothing more than a kickback or rebate.

182.    A quota share reinsurance that does not expose the reinsurer to any real possibility that it may be required to contribute its own money when called upon to pay for its share of claims, is a sham.[6] This is exactly the situation in this case. BOIC is a vehicle established for the sole purpose of receiving reinsurance premiums ceded to it by Assurant, Inc. and its subsidiaries. It did not engage in any reinsurance activities and due to the double layer of insurance, BOIC did not take on any risk with respect to the so-called reinsurance arrangement because it will never be called on to pay any claims. The ceded premiums are simply kickbacks and rebates paid by the Assurant entities to JPMorgan Chase.

---

[6] As noted by the American Academy of Actuaries:

> straight quota share contracts are typically exempted from risk transfer requirements under the paragraph 11 exception of FAS 113. However, *the introduction of risk limiting features* to a quota share contract, such as a loss ratio cap . . . a loss retention corridor, or a sliding scale commission, often prevents the contract from qualifying for the exception.

Available at http://www.actuary.org/files/publications/pc_risk_jan2007.pdf (last visited on Apr. 12, 2012).

183.   Under accepted accounting and actuarial principles, for a contract to be treated as "real," risk-transferring reinsurance, the reinsurer must assume significant insurance risk and it must be "reasonably possible that the reinsurer may realize a significant loss." *See generally* Statement of Financial Accounting Standards No. 113, "Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration Contracts," (December 1992) at 7, available http://www.fasb.org/cs/BlobServer?blobkey=id&blobwhere=1175820919754&blobheader=appli cation%2Fpdf&blobcol=urldata&blobtable=MungoBlob (last visited Apr. 12, 2013).

184.   Insurers and reinsurers are subject to two sets of accounting standards in the United States: "(1) statutory accounting principles (SAP) and (2) generally accepted accounting principles (GAAP)." *See* Robert W. Klein & Shaun Wang, *Catastrophe Risk Financing in the US and the EU: A Comparative Analysis of Alternative Regulatory Approaches*, The Journal of Risk and Insurance, 2009, Vol. 76, No. 3, 609, available at http://www.google.com/url?sa=t&rct=j&q=&esrc=s&frm=1&source=web&cd=2&ved=0CDwQ FjAB&url=http%3A%2F%2Fwww.researchgate.net%2Fpublication%2F228640123_Catastroph e_risk_financing_in_the_us_and_the_eu_A_comparative_analysis_of_alternative_regulatory_ap proaches%2Ffile%2Fd912f508fe3fa5eccf.pdf&ei=Vy9oUZihDrHI4APT04D4BA&usg=AFQjC NHTVaSitA4QE0LF-m2gA5ZXICBx4A&sig2=wLQ-

YVSWNdcrSHBOOAk9yw&bvm=bv.45175338,d.dmg: (last visited April 12, 2013).

185.   SAP rules are determined by state insurance regulators through the NAIC, and insurers are required to file detailed financial statements and other reports in accordance with SAP. *Id.* GAAP rules are "determined by the Financial Accounting Standards Board (FASB), and insurers are required to follow GAAP in their non-regulatory financial statements and Securities and Exchange Commission (SEC) reports." *Id.*

186.   FASB 113 or "FAS 113" was "implemented in 1993 to prevent, among other things, abuses in GAAP accounting for contracts that have the formal appearance of reinsurance but do not transfer significant insurance risk and thus should not be eligible for reinsurance

1    accounting. SSAP 62 [or SAP 62, now SAP 62R], which largely incorporates the same language

2    as FAS 113, was implemented shortly thereafter to address the same issues with respect to

3    statutory accounting." *CAS Research Working Party on Risk Transfer Testing, Risk Transfer*

4    *Testing of Reinsurance Contracts: Analysis and Recommendations, Casualty Actuarial Society*

5    *Forum,      Winter      2006      at      282,      available      at*

6    http://www.casact.org/pubs/forum/06wforum/06w281.pdf (last visited on April 12, 2013).

7        187.    That is, FAS 133 was implemented to prevent reinsurance accounting for

8    contracts, such as those at issue in this litigation, which do not transfer risk.

9        188.    Under FAS 113, "in order for a contract to qualify for reinsurance accounting

10    treatment [as real, risk-transferring reinsurance] . . . it must transfer insurance risk from an

11    insurer to a reinsurer. To meet the risk transfer requirement, a reinsurance contract must satisfy

12    one of two conditions:

13            1.    It must be evident that 'the reinsurer has assumed
14                      substantially all of the insurance risk relating to the
                              reinsured portion of the underlying insurance contracts'
15                      (paragraph 11), or

16            2.    The reinsurer must 'assume significant insurance risk under
                              the reinsured portions of the underlying insurance
17                      contracts' (paragraph 9a) and it must be 'reasonably
                              possible that the reinsurer may realize a significant loss
18                      from the transaction' (paragraph 9b)."

19

20    *Id.* at 283; *See generally* Statement of Financial Accounting Standards No. 113, "Accounting and

    Reporting for Reinsurance of Short-Duration and Long-Duration Contracts," (December 1992) at

21    7,                                     available                             at

22    http://www.fasb.org/cs/BlobServer?blobkey=id&blobwhere=1175820919754&blobheader=appli

23    cation%2Fpdf&blobcol=urldata&blobtable=MungoBlob (last visited Apr. 12, 2013). Given

24    Defendants' reinsurance arrangements, only the second test identified by FAS 113 is relevant

25    here. Indeed, the first test is viewed as an exception to the second. *CAS Research Working*

26    *Party on Risk Transfer Testing, Risk Transfer Testing of Reinsurance Contracts: Analysis and*

27                                           41

28                                          Case No. CV-11-03058-JCS
                                   Consolidated Amended Class Action Complaint

1    *Recommendations, Casualty Actuarial Society Forum, Winter 2006* at 283, available at

2    http://www.casact.org/pubs/forum/06wforum/06w281.pdf (last visited on April 12, 2013).  The

3    "primary" test can be more fully and formally stated as mandating that real transfer of insurance

4    risk is passed to a reinsurer only if:

   a.   The reinsurer assumes **significant** insurance risk under the
        reinsured portions of the underlying reinsurance contracts,
        and

   b.   It is reasonably possible that the reinsurer may realize a
        significant loss from the transaction.

9    *See* Statement of Financial Accounting Standards No. 113, "Accounting and Reporting for

10   Reinsurance of Short-Duration and Long-Duration Contracts," (December 1992) at 7, available

11   at

12   http://www.fasb.org/cs/BlobServer?blobkey=id&blobwhere=1175820919754&blobheader=appli

13   cation%2Fpdf&blobcol=urldata&blobtable=MungoBlob (last visited Apr. 12, 2013).

14       189.   Further, FAS 113 provides the blueprint for how to structure a "real risk transfer"

15   analysis:

   The ceding enterprises' evaluation of whether it is reasonably
   possible for a reinsurer to realize a significant loss from the
   transaction shall be based on the present value of all cash flows
   between the ceding and assuming enterprises under reasonably
   possible outcomes, without regard to how the individual cash flows
   are characterized.  The same interest rate shall be used to compute
   the present value of cash flows for each reasonably possible
   outcome tested.

   Significance of loss shall be evaluated by comparing the present
   value of all cash flows . . . with the present value of the amounts
   paid . . . to the reinsurer.

23   *Id.* at 7.

42

190.   SSAP 62R's test for whether real risk transfer is found in a reinsurance contract is substantively identical:[7]

  1.   The reinsurer assumes significant insurance risk under the reinsured portions of the underlying insurance agreements; and

  2.   It is reasonably possible that the reinsurer may realize a significant loss from the transaction.

*See* NAIC Accounting Practices & Procedures Manual, March 2010, Statement of Statutory Accounting Principles No. 62R, Property and Casualty Reinsurance, Exhibit A "Implementation Questions and Answers").[8]

Reinsurance "[c]ontracts that do not result in the reasonable possibility that the reinsurer may realize a significant loss from the insurance risk assumed generally do not meet the conditions for reinsurance accounting and are to be accounted for as deposits." *See* Statement of Financial Accounting Standards No. 113, "Accounting and Reporting for Reinsurance of Short-Duration and Long-Duration Contracts," (December 1992) at 4, available at http://www.fasb.org/cs/BlobServer?blobkey=id&blobwhere=1175820919754&blobheader=appli cation%2Fpdf&blobcol=urldata&blobtable=MungoBlob (last visited Apr. 12, 2013); *see generally* Section AICPA Technical Practice Aids, Section 10,760, Statement of Position 98-7 Deposit Accounting: Accounting for Insurance and Reinsurance Contracts that Do Not Transfer

---

[7]    "The above provisions of SSAP 62 are essentially the same as those in FAS 113." *See* American Academy of Actuaries, Committee on Property and Liability Financial Reporting, Risk Transfer in P&C Reinsurance: Report to the Casualty Actuarial Task Force of the National Association of Insurance Commissioners, August 2005 at 6, http://www.actuary.org/pdf/casualty/risk_transfer.pdf.

[8]    *See also id.* at paragraph 15, 62R-6 ("The ceding entity's evaluation of whether it is reasonably possible for a reinsurer to realize a significant loss from the transaction shall be based on the present value of all cash flows between the ceding and assuming companies under reasonably possible outcomes . . . . An outcome is reasonably possible if its probability is more than remote.").

43

1   Insurance Risk, October 19, 1998).

2       191.    The absence of any likelihood that the BOIC (or its parent JPMorgan Chase) will

3   ever experience any real losses, in turn, reveals the reinsurance agreement between BOIC and

4   Assurant to be a sham.   Such an arrangement does not constitute real, risk-transferring or

5   commensurately priced reinsurance

6       192.    Moreover, this kind of reinsurance arrangement creates an incentive for servicers

7   like JPMorgan Chase to force-place insurance at the greatest possible premium because it will

8   ultimately receive a large portion of the premium in the form of ceded reinsurance premium.

9   NYDFS Testimony at 20; NYDFS Consent Order at 6-7.

10      193.    JPMorgan Chase has made approximately 600 million dollars nationally since

11  2006 through reinsurance of insurance it force-placed on homes securing Chase's mortgage loan

12  portfolio.  *Id.*  The NYDFS recognized that this practice resulted in inflated premiums.   The

13  NYDFS Consent Order bans this practice in the future with respect to force-placed policies

14  provided for Chase borrowers in New York.  NYDFS Consent Order at 3.

15      194.    Assurant reports huge profits from this line of business and it is its most profitable

16  business segment.  Assurant 2012 10-K.

17      195.    There is no justification for Assurant to cede such a significant portion of its

18  premiums to BOIC, an entity with no real reinsurance experience or any certificates or

19  authorization to engage in reinsurance activities in any other fora.

20      196.    Amounts paid to lenders as unlawful kickbacks have become a part of the cost of

21  doing business that is borne by borrowers whose insurance is force-placed and results in higher

22  premiums for consumers.

23  **Defendants' Profit Making Commission Arrangements**

24      197.    Under the commission arrangement, the provider of the force-placed insurance

25  policy pays a commission either directly to the servicer or to a subsidiary posing as an insurance

26  "agent."  Typically, under such an arrangement, commissions are paid to a "licensed insurance

27                                      44

28                                                  Case No. CV-11-03058-JCS
                                              Consolidated Amended Class Action Complaint

1  agency" that is simply an affiliate or subsidiary of the servicer and exists only to collect the

2  kickbacks or commissions collected from the force-placed insurance provider.

3      198.   CIA purportedly "manages" the relationship between Chase and Assurant. *Id.*

4  CIA does not act as an insurance agent or broker for Chase with regard to its force-placed

5  insurance program. As such, its true purpose is to provide a conduit for the receipt of kickbacks,

6  commissions, rebates, earnouts and other consideration to Chase derived from the premiums paid

7  by Plaintiffs and other borrowers whose insurance was force-placed. Upon information and

8  belief, CIA received commissions or other consideration in connection with the force-placement

9  of borrowers' hazard insurance despite having done little to nothing to earn the consideration

10  paid. Thus, CIA knowingly plays an active and integral role in the force-placed insurance

11  scheme.

12      199.   ASIC has acknowledged that it pays commissions in connection with force-placed

13  insurance:

14      **Commissions to Agencies and Expense Reimbursements to**
**Servicers:** This category consists of commissions paid to licensed

15  insurance agencies and payments to servicers or their affiliates for
reimbursement of placement-related expenses, typically up to a

16  capped amount. Commissions paid to servicer-affiliated agencies
have historically been comparable to those in the standard

17  homeowners market

18  ASIC NYDFS Testimony at 10.

19      200.   CIA, however, did not perform "the customary tasks that would justify a

20  commission. *See* Birnbaum NYDFS Testimony; NYDFS Consent Order.

21      201.   J. Robert Hunter of the Consumer Federation described these practices in his

22  testimony before the NYDFS in connection with the Department's inquiry into force-placed

23  insurance practices:

24      [i]n some instances, lenders use [force-placed] insurance as a profit
center by collecting commissions from insurers through lender-

25  affiliated agents or broker or by receiving below-cost or free
services (such as tracking of loans) from insurers, and/or using

26  "fronting" primary insurers to direct the coverage to lender-

27                        45

28

1     affiliated captive reinsurers. Lenders often receive free or below
    cost service from affiliated service providers.

2   *See* Hunter NYDFS Testimony at 1.

3       202.    Assurant agreed to cease paying these commissions in the NYDFS Consent

4   Order. *See* NYDFS Consent Order at 9.

5   **Chase Improperly Passed on Servicing Costs to Borrowers Who Were Required to Pay for**
  **Force-Placed Insurance**

6

7       203.    Moreover, JPMorgan Chase used its own affiliate, CIA, in coordination with

8   Assurant, to perform its servicing functions. In so doing, Chase transferred the cost of servicing

9   to CIA and Assurant. As a result, these servicing costs were included in the force-placed

10   insurance premiums paid by Plaintiffs and Class members. Because Assurant was returning a

11   large percentage of the borrowers' premiums to Chase, this arrangement functioned as an

12   undisclosed kickback to Chase.

13       204.    Industry insiders acknowledge that force-placed insurance premiums are "a lot

14   more expensive than other alternatives" because the administrative costs "are bundled into the

15   costs of the premium." *See* Testimony of Joseph Marcowicz (PRP Claims), Public Hearing on

16   Private Lender-Placed Insurance, Property and Casualty Insurance (C) Committee Market

17   Regulation and Consumer Affairs (D) Committee, National Association of Insurance

18   Commissioners, August 9, 2012, ("Markowicz Testimony") attached as Exhibit 63. Mr.

19   Markowicz also confirmed that administrative costs "tend to keep premium costs high" because

20   expenses "which include the administrative work of the letter campaigns and tracking services

21   provided to the loan servicer" are bundled into the premium." *Id.* In effect, Assurant is providing

22   below cost administrative services to servicers like JPMorgan Chase, and recouping those costs

23   from borrowers whose insurance is force-placed. Moreover, Chase makes an additional profit

24   when a significant portion of the inflated premium is returned to it in the form of a ceded

25   reinsurance premium. Through this arrangement, Chase receives a kickback each time it places

26   force-placed insurance with its exclusive, high-priced provider, Assurant.

27                         46

28

205.   The NYDFS recognized that this practice has resulted in inflated premiums.  The NYDFS Consent Order bans this practice in the future with respect to force-placed policies provided for Chase borrowers in New York. *See* NYDFS Consent Order at 3.

**Defendants Cannot Justify the High Cost of Force-Placed Insurance**

206.   Servicer explanations for the high cost of force-placed insurance are "unsupported by any evidence." *See* Birnbaum NYDFS Testimony at 1.

207.   Servicers also attempt to blame the exorbitant cost of force-placed insurance on the fact that the policy is issued without the benefit of a prior inspection of the property.  However, according to the National Consumer Law Center, as a general matter, insurers do not routinely inspect residential properties in the course of underwriting. *Id.*

208.   Force-placed insurance policies are not underwritten on an individual policy basis.  Rather, servicers' contracts with force-placed insurance providers require, or at least permit, the insurer to automatically issue these policies when a borrower's insurance coverage is not maintained.

209.   As J. Robert Hunter in his recent testimony before the NYDFS argued, "lack of underwriting should also result in much lower acquisition expenses for FPI insurers, since no sales force is required to place the insurance." *See* Hunter NYDFS Testimony at 5.  Yet it does not.  Instead, as a result of the arrangements between those participating in monitoring, placing and administering force-placed insurance, consumers are gouged.

210.   Force-placed insurer subsidiaries are highly profitable businesses.  "Among a published ranking of companies with the strongest operating insurance subsidiaries, several bank holding companies stand out . . . . Companies with insurance subsidiaries providing force-placed property insurance were at the top of the list.  These included Assurant Inc. and Bank of America." *See* http://www.mainstreet.com/print/18604.

47

211.    Servicers commonly attempt to justify the high price of force-placed insurance policies by pointing to the higher risk associated with the lack of individual policy underwriting. However, as *American Banker* noted:

> [t]hough part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry—even after accounting for the generous commissions and other payments that servicers demand.

*See* Ties to Insurers.

212.    Birny Birnbaum, in his testimony before the New York Department of Financial Services, also presented statistics collected by the NAIC reflecting nationwide loss ratios for LPI hazard insurance during the 2004-2011 period as being, on average, more than 35 percentage points lower than the ratios for commercially available homeowners policies. *See* Birnbaum NYDFS Testimony at 9.  When confined to the period from 2007-2011, the disparity between LPI hazard insurance loss ratios and those of commercially available homeowners policies was nearly 42 percentage points. *Id.*

213.    Moreover, because the policies are not individually underwritten, the force-placed insurer is spared the costs associated with individual underwriting.    *See* Birnbaum NYDFS Testimony at 26.

**As Servicer, Chase's Interest In The Force-Placed Insurance Is The Kickbacks, Commissions And Fees It Receives**

214.    Although it may appear that servicers such as JPMorgan Chase force-place hazard insurance on mortgaged properties to protect against their risk of losing any amounts in the event of damage to the collateral, such "risk" is illusory.

215.    While lenders originate mortgages, these mortgages are frequently packaged into securities and sold to investors.  Thereafter, a servicing affiliate of the originating lender often continues to service those mortgages for a fee on behalf of the purchaser of the mortgages, often Fannie Mae or Freddie Mac, but neither the originating lender nor its servicing affiliate bears the

1  risk that the mortgagees will default on the loan or that the collateral on the loan will become

2  impaired. Rather, that risk is borne by the borrower and/or the current lender/owner of the loan.

3        216.  Such servicers, including Chase, thus receive kickbacks and commissions for

4  force-placed insurance policies at the expense of their customers, but with no risk to their own

5  "investment."

6  **Defendants Routinely Require Redundant or Otherwise Unnecessary Insurance**

7        217.  Chase has routinely required borrowers to pay for unnecessary insurance coverage

8  through Assurant. Such examples include, without limitation: (a) requiring borrowers to pay for

9  insurance coverage that exceeds the amount necessary to protect the mortgagee's interest in the

10  secured property; (b) backdating force-placed insurance policies, thus requiring borrowers to pay

11  for retroactive coverage despite the fact that the time has lapsed and no risk of loss exists for

12  such period; and (c) requiring borrowers to pay for force-placed insurance policies despite the

13  existence of a Lender's Loss Payable Endorsement that already protects the lender's interest in

14  the property.

15        218.  Force-placed hazard insurance policies should not be backdated. The National

16  Association of Insurance Commissioners ("NAIC") has indicated that insurance is "prospective

17  in nature." Requiring borrowers to pay for backdated insurance coverage to cover time periods

18  during which there is already no risk of loss is improper. *See, e.g.*, Ties to Insurers ("'[Insurance

19  policies] should not be back-dated to collect premiums for a time period that has already

20  passed'" (quoting the NAIC)).

21        219.  Moreover, many hazard insurance policies contain a Lender's Loss Payable

22  Endorsement. This endorsement typically protects the lender for a period of at least ten days

23  after the termination of the insurance policy. Accordingly, force-placing insurance policies

24  effective immediately following the termination of the borrower's policy and charging borrowers

25

26

27                              49

28                                      Case No. CV-11-03058-JCS

1   expensive premiums for such insurance is unlawful and unfair because borrowers are charged for

2   needless and duplicative insurance coverage.[9]

3   **Defendants' Practices Improperly Inflate Premiums for Force-Placed Insurance Charges to Borrowers**

4        220.    As American Banker observed, "[w]hile servicers that partner with force-placed

5   insurers customarily perform little of the work in monitoring their portfolios for lapses and

6   writing policies, payments to them are simply a cost of doing force-placed business."  *See*

7   Exhibit 53, *supra*.  These costs are ultimately paid by the borrowers and serve to unjustly enrich

8   all Defendants, including those with whom the borrower has no contractual relationship, such as

9   Defendants Assurant, Inc., ASIC, SGIC, CIA and BOIC.

10       221.    By retaining a commission or participating in a captive reinsurance arrangement,

11  the servicer forces the borrower to pay for both the actual cost of the insurance policy and the

12  cost of the kickback.  As American Banker observed, "[w]hile servicers that partner with force-

13  placed insurers customarily perform little of the work in monitoring their portfolios for lapses

14  and writing policies, payments to them are simply a cost of doing force-placed business." *See*

15  Ties to Insurers; *See also* NYDFS March 21, 2013 Press Release at 2.

16       222.    Thus, Defendants' kickback arrangements with force-placed insurance providers

17  tend to keep premiums for force-placed insurance artificially inflated over time because a

18  percentage of borrowers' premiums are not actually being paid to cover actual risk, but are

19  simply funding illegal kickbacks to lenders.  Amounts paid to servicers as sham reinsurance

20  premiums and commissions have become a part of the cost of doing business for force-placed

21  insurance providers.  As a result, force-placed insurance premiums incorporate the payment of

22  such kickbacks—to the detriment of consumers.

23

24  _____

25  [9]     For example, the MacKinnons' hazard insurance policy included a Lender's Loss Payable

26  Endorsement.

27                                          50

28                                                      Case No. CV-11-03058-JCS
                                                Consolidated Amended Class Action Complaint

223.    While forced-placed insurers and servicers often attempt to justify the amounts charged to borrowers for force-placed insurance by arguing that force-placed insurance rates in certain states are filed with the respective state's insurance regulator, and are thus not subject to challenge, this defense is wholly inapplicable to Plaintiffs' claims.

224.    In those states where force-placed insurance rates are filed with state insurance regulators, the filed rate only encompasses rates charged between insurer and lender/servicers – not the reasonableness of rates charged by the lender/servicers to borrowers. The state insurance departments do not decide the premiums which would be reasonable as between a lender and its borrowers.

225.    The rates provided to the state insurance departments by insurers like the Assurant entities are inflated and are not truly related to the cost of services. Borrowers pay a premium bloated with commissions, ceded reinsurance premiums, and charges unrelated to the cost of force-placing their insurance while the premium paid JPMorgan Chase is discounted by the improper commissions, ceded reinsurance premiums, subsidized services and other improper kickbacks.

**Government Response**

226.    As discussed above, force-placed insurance practices of mortgage lenders and servicers, insurance providers and insurance producers are currently the subject of a number of government investigations prompted by concerns that consumers are being gouged when they are force-placed in insurance following a lapse in their policies.

227.    Thus, state attorneys general are cognizant of and have taken action concerning servicers' abusive practices concerning force-placed insurance. Recently, a coalition of forty-nine (49) state attorneys general entered into an historic joint state-federal settlement agreement with the country's five largest loan servicers, including JPMorgan Chase ("National Mortgage Settlement") to address numerous problems that have surfaced during the foreclosure crisis. *See* www.nationalmortgagesettlement.com/ (official website established by the government relating

51

1   to the settlement);  *see also* Jeff Horowitz, *Attorneys General Draw a Bead on Banks' Force-*

2   *Placed   Insurance   Policies*,   American   Banker   (Mar.   10,   2011,   12:25   PM),

3   http://www.americanbanker.com/issues/176_48/ags-force-placed-insurance-034213-1.html   (last

4   visited Apr. 12, 2013).

5          228.    Among other terms, the settlement essentially prohibits servicers from profiting

6   from force-placed insurance.  Specifically, under the settlement, mortgage servicers: (a) shall not

7   obtain force-placed insurance unless there is a reasonable basis to believe the borrower has not

8   paid for property insurance; (b) cannot force-place insurance that is in excess of the replacement

9   cost of the improvements on the secured property; (c) must work with the borrower to continue

10  or reestablish the existing homeowner's policy; (d) shall continue to make payments if there is a

11  lapse in payment and the payments are escrowed regardless of homeowner payment; and (e)

12  must purchase the force-placed insurance at a commercially reasonable price.  *See* Consent

13  Judgment, *United States of America v. Bank of America Corp.*, No. 1:12-cv-00361-RMC (D.D.C.

14  Apr. 14, 2012) (ECF No. 14 Section VII).

15         229.    The Consumer Financial Protection Bureau issued two notices on proposed rules

16  "to protect homeowners from surprises and costly mistakes by their mortgage servicers," which

17  included specific provisions for "avoiding costly force-placed insurance."  *See* Consumer

18  Financial Protection Bureau Proposes Rules to Protect Mortgage Borrowers" available at

19  http://www.consumerfinance.gov/pressreleases/consumer-financial-protection-bureau-proposes-

20  rules-to-protect-mortgage-borrowers/ (last visited Apr. 12, 2013).

21         230.    These rules became final on January 17, 2013.  The new regulations prohibit

22  servicers of federally regulated mortgage loans from force-placing insurance unless a servicer

23  has a reasonable basis to believe that the borrowers insurance has lapsed.  Servicers must provide

24  notice of force-placement three times at 45, 30 and 15 days in advance of issuing a policy.

25  Moreover the charge for any service that was actually performed must "bear a reasonable

26  relationship to the servicers cost of providing the service.   A servicer cannot force-place

27                                              52

28                                                          Case No. CV-11-03058-JCS
                                                 Consolidated Amended Class Action Complaint

1  insurance if the borrower has an existing escrow account if the servicer can continue the existing

2  insurance, even if the servicer must advance the funds for the insurance." *See* Summary of Final

3  Mortgage   Servicing   Rules   dated   January   17,   2013   available   at

4  http://www.consumerfinance.gov/pressreleases/consumer-financial-protection-bureau-proposes-

5  rules-to-protect-mortgage-borrowers (last visited Apr. 12, 2013). *See also*, 12 CFR 1024.

6      231.   On March 6, 2012, Fannie Mae issued a Request for Proposal ("RFP") relating to

7  lender-placed insurance. In its RFP, Fannie Mae stated that it had conducted an "extensive

8  internal review" of the lender-placed insurance process, and found that the process "can be

9  improved through unit price reductions and fee transparency to the benefit of both the taxpayers

10  and homeowners." In particular, Fannie Mae made the following observations:

11      ☐ "Lender Placed Insurers often pay commissions/fees to Servicers for placing
        business with them. The cost of such commissions/fees is recovered in part or
12      in whole by the Lender Placed Insurer from the premiums[.]"

13      ☐ "The existing system may encourage Servicers to purchase Lender Placed
14      Insurance from Providers that pay high commissions/fees to the Servicers and
        provide tracking, rather than those that offer the best pricing and terms . . . .
15      Thus, the Lender Placed Insurers and Servicers have little incentive to hold
        premium costs down."
16

17      ☐ "[M]uch of the current lender placed insurance cost borne by Fannie Mae
        results from an incentive arrangement between Lender Placed Insurers and
18      Servicers that disadvantages Fannie Mae and the homeowner."

19  *See*, Fannie Mae Request For Proposal dated March 6, 2012 attached as Exhibit 64.

20      232.   Fannie Mae stated that it sought to "[r]estructure the business model to align

21  Servicer incentives with the best interest of Fannie Mae and homeowners." Among other things,

22  Fannie Mae sought to "[e]liminate the ability of Servicers to pass on the cost of

23  commissions/fees to Fannie Mae" and to "[s]eparate the commissions and fees for Insurance

24  Tracking Services from the fees for Lender Placed Insurance to ensure transparency and

25  accountability." *Id.* at 3.

26

27                                        53

28                                              Case No. CV-11-03058-JCS
                                    Consolidated Amended Class Action Complaint

233.   On March 26, 2013, the Federal Housing Finance Agency ("FHFA") issued a Notice regarding Lender Placed Insurance.   This Notice "sets forth an approach to address certain practices relating to lender placed insurance that the [FHFA] considers contrary to prudent business practices [and] to appropriate administration of Fannie Mae and Freddie Mac (the Enterprises) guaranteed loans," and which result in "litigation and reputational risks." *See* Federal Housing Finance Agency, No. 2013-05 Lender Placed Insurance, Terms and Conditions attached as Exhibit 65.

234.   FHFA prohibits:

Certain Sales Commissions.   The Enterprises shall prohibit sellers and servicers from receiving, directly or indirectly, remuneration associated with placing coverage with or maintaining placement with particular insurance providers.

235.   The FHFA acknowledged:

☐   "Reportedly, premiums for lender placed insurance are generally double those for voluntary insurance and, in certain instances, significantly higher." *Id.* at 2.

☐   "[T]he multiples involved may not reflect claims experience..." *Id.*

☐   "Loss ratios for lender placed insurance are significantly below those for voluntary hazard insurance and some states have required or have considered rate reductions of 30 percent or more." *Id.*

☐   "Concerns about lender placed insurance costs, compensation and practices have been raised by the National Association of Insurance Commissioners, state regulators, the Consumer Financial Protection Bureau, state attorneys general and consumer organizations.   Generally, the focus has centered on excessive rates and costs passed on to borrowers, as well as commissions and other compensation paid to servicers by carriers.   In order to keep lender placed insurance costs to the Enterprises as low as possible, practices that provide incentives for and do not deter higher costs should be avoided." *Id.* at 3.

## RICO ALLEGATIONS

### The Chase Force-Placed Insurance Enterprise

236.   Plaintiffs, Class members and Defendants are "persons" within the meaning of 18 U.S.C. § 1961(3).

54

237.   Based on Plaintiffs' current knowledge, the following persons constitute a group of associated persons who constitute a RICO enterprise that is referred to herein as the "Chase Force-Placed Insurance Enterprise." JPMorgan Chase Bank, N.A. Chase Bank USA, N.A., non-Defendant Chase Home Finance, LLC, Chase Insurance Agency, Inc., Banc One Insurance Co., Assurant, Inc., American Security Insurance Company, Standard Guaranty Insurance Company and/or other force-placed insurance provider subsidiaries of Defendant Assurant, Inc. and other entities involved in force-placing insurance on behalf of Chase not named as defendants herein who assist the named Defendants in effectuating their scheme to defraud Plaintiffs and other borrowers who were required by Chase to pay for force-placed hazard insurance.

238.   The Chase Force-Placed Insurance Enterprise is an ongoing organization that engages in, and whose activities effect, interstate commerce.

239.   While each of the Defendants participated in and are members of the Chase Force-Placed Insurance Enterprise, they also have an existence separate and distinct from the Enterprise. The structure of the Enterprise is reflected in the allegations herein. In particular, Chase implemented a plan to exploit JPMorgan Chase's ability, as a loan servicer acting on behalf of the mortgagees who owned Plaintiffs' and Class members' mortgages, to force-place hazard insurance to protect its interest in Plaintiffs' and Class members' mortgaged properties, to purchase high-priced insurance from its exclusive providers, Assurant, Inc., ASIC, SGIC and/or their subsidiaries and affiliates, enriching the Enterprise as a whole by funneling improper kickbacks in the form of fees, commissions, "rebates" and other consideration to BOIC and CIA, thereby generating improper profits for Chase and the other Enterprise participants at Plaintiffs' and other borrowers' expense. These actions by all Enterprise participants caused injury to Plaintiffs' and borrowers' business or property.

**Conduct of the RICO Enterprise**

240.   As members of the Chase Force-Placed Insurance Enterprise, Defendants engaged in the following conduct in furtherance of aims and objectives of the enterprise:

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

1          (a)      JPMorgan Chase exercised (and abused) the authority granted it under the

2    terms of the mortgage contracts for lenders for whom they serviced mortgage loans to force-

3    place Plaintiffs and other borrowers with hazard insurance.  Rather than renewing Plaintiffs' and

4    other borrowers existing policies or obtaining the insurance at a commercially reasonable price,

5    Chase force-placed the insurance with its exclusive providers, thus choosing a more expensive

6    policy to enrich itself at Plaintiffs' and Class members' expense.

7          (b)      Assurant, its affiliates and subsidiaries, including ASIC and SGIC, in

8    coordination with Chase, provided and administered excessively priced policies charging

9    Plaintiffs and other borrowers not only for the cost of their force-placed insurance, but also

10   charging them for the costs of kickbacks, fees, commissions and other consideration in the form

11   of force-placed insurance premiums which were either charged directly to Plaintiffs and other

12   borrowers, added to Plaintiffs' existing mortgage loan balances or charged to their escrow

13   accounts.

14         (c)      JPMorgan Chase entered into exclusive deals with Assurant Inc., ASIC,

15   SGIC and/or subsidiaries and affiliates to force-place hazard insurance on terms incorporating or

16   requiring ancillary services and arrangements designed to generate additional profits which were

17   steered to fellow scheme members.

18         (d)      JPMorgan Chase paid fees, commissions, rebates, "earnouts" and other

19   consideration to its own affiliates, including BOIC and CIA as well as Assurant , purportedly for

20   their role as "insurance producers" or providers of "insurance agency services" in connection

21   with the provision of force-placed insurance when they did not, in fact, produce any insurance

22   business for JPMorgan Chase or provide legitimate insurance agency services as at all times

23   relevant to this complaint, JPMorgan Chase had entered into exclusive agreements with

24   Assurant.  In effect, Chase used these arrangements to establish conduits to funnel a portion of

25   Plaintiffs' and Class members' premiums back to it.  Assurant served as JPMorgan Chase's

26

27                                          56

1   exclusive provider of force-placed hazard insurance and CIA and BOIC served as conduits

2   through which as any premiums earned redounded to the benefit of its corporate parent.

3          (e)     Defendants colluded to include in the premiums - paid by the small

4   number of borrowers whose insurance was force-placed - the costs of servicing Chase's entire

5   portfolio of loans (*i.e.*, for portfolio monitoring, tracking and related administrative functions) in

6   addition to the costs directly attributable to force-placing the insurance. This practice operated

7   as a subsidy to JPMorgan Chase, the loan servicer. The structure created between Chase,

8   Assurant and their affiliates operated to funnel the profits thus derived directly to Chase. *See*

9   *e.g.*, Birnbaum NYDFS Testimony at 16-18, Exhibit 15.

10         (f)     Defendants colluded to establish an arrangement whereby in exchange for

11  JPMorgan Chase using Assurant as it sole provider of force-placed insurance, Assurant agreed to

12  cede a substantial portion of the premiums for such insurance to Chase's captive reinsurer BOIC;

13         (g)     Assurant performed JPMorgan Chase's tracking and outsourcing, for little

14  or no charge.

15  **Defendants' Misrepresentations and Omissions**

16      241.    As set forth herein, Defendants made numerous misrepresentations, omissions

17  and half-truths truths to borrowers and others in furtherance of their fraudulent scheme. These

18  misrepresentations, omissions and half-truths created a false impression that Defendants were

19  operating within the bounds of their contractual authority. The intricate and secretive operations

20  of the force-placed insurance scheme are of the type that ordinary consumers and borrowers

21  would not be aware of. Therefore, Defendants would have the obligation to fully disclose *all* the

22  relevant facts surrounding their force-placed insurance practices and related transactions to avoid

23  misrepresentations, omissions and half-truths. Instead, Defendants kept the true nature of their

24  activities concealed and borrowers were harmed as a result.

25      242.    In order for Defendants' fraudulent force-placed insurance scheme to be

26  successful, Defendants intentionally maintained the appearance of traditional provision of

27

28

1  insurance disguising the improper provision of high cost, duplicative and unnecessary force-
2  placed insurance as an unremarkable and legitimate transaction when it was not.  In order to
3  maintain the illusion of propriety, Defendants deceived Plaintiffs and Class members by failing
4  to disclose the true nature of their self-dealing, profit-making venture.

5        243.    The cycle letters sent to Plaintiffs and Class members affirmatively
6  misrepresented the true nature of Defendants' force-placed insurance arrangements.  The letters
7  misrepresent the real reason for the increased cost of force-placed insurance.  While
8  acknowledging that force-placed insurance is more expensive than a voluntary policy, the
9  notifications state that "the higher cost is because the insurance we purchase is issued
10  automatically without evaluating the risk of insuring your property." *See e.g.* Exhibits 25; 41;
11  56; and 59; Notice of Placement of Hazard Insurance sent to Colin and Terrie Mackinnon dated
12  November 5, 2010 attached as Exhibit 66; Notice of Placement of Hazard Insurance sent to
13  Andrea North dated May 2, 2010 attached as Exhibit 67; Notice of Placement of Hazard
14  Insurance sent to Leamon and Patricia Leger dated January 19, 2012 attached as Exhibit 68;
15  Notice of Placement of Hazard Insurance sent to Chad Knox dated February 29, 2012 attached as
16  Exhibit 69; Second Notice of Placement of Insurance Binder sent to Achikam Yogev dated June
17  21, 2010 attached as Exhibit 70.   In reality, the higher cost of the force-placed insurance policy
18  is the result of Defendants' improper practices which inflate the premium to account for
19  kickbacks, improper fees and other hidden arrangements between the Defendants designed to
20  heap additional burden on borrowers.

21  **Predicate Acts of Mail and Wire Fraud:  18 U.S.C. §§ 1341 and 1343.**

22        244.    Section 1961(1) of RICO provides that "racketeering activity" includes any act
23  indictable under 18 U.SC. § 1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire
24  fraud).  As set forth below, Defendants have engaged in conduct violating both of these laws to
25  effectuate their scheme.

26

27                                           58

28                                                    Case No. CV-11-03058-JCS
                                           Consolidated Amended Class Action Complaint

245.    For the purpose of executing or attempting to execute the above described scheme to obtain money by means of false or fraudulent pretenses, representations or promises, each of the Defendants, in violation of 18 U.S.C. § 1341, on two more or occasions throughout the Class period and up to and including the present, either caused papers to be delivered by the Postal Service or by private commercial interstate carriers or knew and agreed that papers would be delivered by the Postal Service or by private or commercial interstate carriers, including, as described in greater detail below, loan documents, correspondence relating to the provision of force-placed hazard insurance, such as applications, agreements, checks or money orders, notices, correspondence to Plaintiffs and Class members and correspondence and memoranda to and among each other.

246.    For the purpose of executing and/or attempting to execute the above described scheme to obtain money by means of false or fraudulent pretenses, representations or promises, each of the Defendants, in violation of 18 U.S.C. § 1343, on two more or occasions throughout the Class period and up to and including the present, transmitted and received by wire, matter and things, including transfers of money, correspondence, reports, memoranda, manuals, applications and agreements over the telephone, FAX, electronic mail and internet.

247.    Each of the Defendants sent matter and things via the postal service, private or commercial carrier, wire or other interstate media, *inter alia,* as described in the foregoing incorporated paragraphs and set forh with specificity below, in furtherance of their scheme to force-place high-cost, unnecessary and duplicative force-placed insurance.

248.    These notices, telephone calls, correspondence and other communications allowed Defendants to execute their plan and were used to perpetuate the misrepresentations and omissions that lay at the core of Defendants' scheme. While providing an outward appearance of legitimacy, they omitted material details of their scheme and misrepresented the nature and extent of Chase's authority to force-place insurance and misrepresented that Defendants were force-placing insurance to protect the lender's interest in the secured property and failed to

1   inform Plaintiffs and Class Members that Defendants were engaging in a self-dealing, profit
2   making enterprise at their expense, and included:

3           (a)    notices sent by Chase, and Assurant and ASIC or their subsidiaries, as
4   exclusive force-placed insurance providers for Chase, with Chase's knowledge and consent, to
5   Plaintiffs and Class members informing them of their authority to force-place hazard insurance.
6   A series of these notices, often referred to as cycle letters, were sent to Plaintiffs and each Class
7   members amounting to hundreds of thousands mailings in furtherance of the Defendants'
8   scheme. Chase NYDFS Testimony at 4-5; ASIC NYDFS Testimony at 3-5.  Plaintiffs each
9   received such notices. *See* Exhibits 25, 41, 56, 59, 66-70.

10          (b)    Chase, Assurant, Inc., ASIC and SGIC either in their own capacities, or
11  through their subsidiaries and/or affiliates communicated with borrowers who its systems
12  identified as having lapsed insurance, on multiple occasions by written and verbal (telephone)
13  communications. *See* Exhibit 14, ASIC NYDFS Testimony at 3-5.  *See also*, cycle letters sent
14  to Plaintiffs. *See* Exhibits 20, 25, 39, 41, 46, 47.  These mailings contained false information,
15  half-truths and/or omitted information necessary for borrowers to understand the nature of the
16  force-placed insurance scheme they were being subjected to by Defendants.

17          (c)    Assurant and CIA used the wires to monitor and track Chase's loan
18  servicing portfolio and to identify borrowers whose insurance had lapsed. This monitoring and
19  tracking function was done pursuant to the scheme and was used for the specific purpose of
20  finding additional scheme victims.

21          (d)    Chase, Assurant, Inc., ASIC and SGIC mailed policies and declarations to
22  Plaintiffs and Class members.  These policies and declarations were known to contain half truths,
23  misinformation and omitted critical information needed by borrowers to protect themselves from
24  the scheme.

25
26
27
28

60

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

(e)     Chase communicated to Plaintiffs and Class members through the mail, email, and on the internet.   These communications were in furtherance of the force-placed insurance scheme.

(f)     Chase maintains a website through which Plaintiffs and Class members could pay for the fraudulently placed force-placed insurance premiums and obtain information regarding their escrow accounts. *See* https://www.chase.com/online/services/bill-pay.htm.

(g)     Chase's website did not contain information necessary for borrowers to understand the true nature and purpose of the force-placed insurance scheme.

(h)     Chase, Assurant, Inc., ASIC and SGIC used the wires to establish and manage Plaintiffs' and Class members' escrow accounts, including funding and transferring money which should not have been funded or transferred from the escrow accounts to themselves.

(i)     Defendants accepted the improperly-gained payment of money from Plaintiffs and Class members through the mail and by computer transfer/payment of funds.

**Pattern of Racketeering Activity**

249.   The Defendants have engaged in a "pattern of racketeering activity," as defined by 18 U.S.C. § 1961(5) by committing at least two acts of racketeering, *i.e,*. indictable violations of 18 U.S.C. §§ 1341 and 1343 as described herein, during the class period.   Indeed, Defendants have committed thousands of such acts in connection with the hundreds of thousands of loans for which they force-placed insurance.

250.   The multiple acts of racketeering activity that Defendants committed and/or conspired to commit were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

251.   Defendants' predicate acts were related, because they reflected the same purpose or goal (to obtain money from Plaintiffs and Class members for the economic benefit of

1  Defendants and members of the enterprise); results (obtaining such money); victims (Plaintiffs'

2  and the Class); and methods of commission (the Scheme and other acts described in the

3  Complaint).   The acts were interrelated and not isolated events since they were carried out

4  continuously for the same purposes over a substantial period of time

5  **Defendants' Conduct Caused Direct Injury**

6       252.   Plaintiffs and Class members suffered direct and proximate harm as a result of

7  Defendants' misrepresentations, omissions, deceptions and acts of concealment and were caused

8  to suffer injury to their property and/or business in the following ways:

9       (a)   Defendants force-placed Plaintiffs and Class members into overpriced

10  policies which resulted in unearned profit to Defendants rather than renewing Plaintiffs' and

11  Class members' existing policies or purchasing policies at a commercially reasonable price;

12       (b)   Defendants charged the premiums for high cost, unnecessary and

13  duplicative force-placed insurance to Plaintiffs' and Class members' escrow accounts;

14       (c)   Defendants added amounts equaling unpaid force-placed insurance

15  premiums to the balance of Plaintiffs' and Class Members' loans adding to their debt and

16  reducing their equity in their homes;

17       (d)   Defendants imposed additional costs and debt obligations;[10] and

18       (e)   Defendants charged for unnecessary and duplicative force-placed

19  insurance.

20  **Conspiracy Allegations**

21       253.   In violation of 18 U.S.C. 1962 (d), Defendants have, as set forth above, conspired

22  to violate 18 U.S.C. 1962(c).   The object of the conspiracy was to generate secret profits for

23  Defendants through the Defendants' improper and unlawful abuse of JPMorgan Chase's

24  _____

25  [10]   *See* Fannie Mae Servicing Guide Announcement SVC-2012-04, available at
26  https://www.efanniemae.com/sf/guides/ssg/2012annlenltr.jsp (last visited Apr. 12, 2013).

27           62

28

1    authority to force-place hazard insurance for borrowers whose hazard insurance had lapsed.

2    Instead of providing reasonably priced insurance, Defendants provided unnecessarily high priced

3    policies for unnecessary, duplicative and back dated force-placed insurance.  Defendants acted

4    together and misrepresented the reasons for the high cost of the insurance and omitted to inform

5    Plaintiffs and the Class that they were making a substantial profit from the provision of force-

6    placed insurance in a manner inconsistent with their duties and authority granted them under

7    Plaintiffs' and Class members' mortgage contracts.

8         254.    As set forth above, each of the Defendants knowingly, willfully and unlawfully

9    agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs

10   and activities of the Chase Force-Placed Insurance Enterprise through a pattern of racketeering

11   activity, including indictable acts under 18 U.S.C. §§ 1341 and 1343 in violation of 18 U.S.C.

12   1962(c).

13        255.    Each of the Defendants received illicit compensation flowing from the scheme to

14   defraud including, *inter alia*:

15             (a)    JPMorgan Chase received free or discounted tracking services in return for

16   its agreement to exclusively use Assurant Inc.'s force-placed insurance products;

17             (b)    CIA received unearned commission payments from Assurant for each

18   force-placed policy;

19             (c)    BOIC received overpriced reinsurance premiums in light of the fact that

20   BOIC had little to no risk of paying out any money in the form of claims;

21             (d)    ASIC received illicit profits from its overpriced insurance products and the

22   exclusive arrangement between Assurant and Chase;

23             (e)    SGIC received illicit profits from its overpriced insurance products and the

24   exclusive arrangement between Assurant and Chase; and

25             (f)    Assurant, Inc. received monies flowing from the profits received from its

26   wholly owned insurance subsidiaries including ASIC.

27                                      63

28                                                  Case No. CV-11-03058-JCS
                                                    Consolidated Amended Class Action Complaint

256.   The agreement between and among the Defendants to act in concert to defraud Plaintiffs and the Class is evident from the conduct in which each engaged that supported and was used by each to implement the improper, deceptive and misleading fraudulent scheme.

257.   Each of the Defendants engaged in multiple overt acts in furtherance of the conspiracy to defraud borrowers who were required by Chase to pay for force-placed insurance, including misrepresenting the true reasons for the high cost of force-placed insurance and omitting to inform borrowers that they were profiting from the transaction at their expense.

(a)   Chase through its exclusive providers of force placed insurance and their affiliates and subsidiaries developed and forwarded misleading notices to Plaintiffs and the Class which failed to disclose that Chase was earning money from the transaction.

(b)   By entering into exclusive deals whereby the force-placed insurance providers, Assurant, Inc., ASIC, SGIC and their affiliates and subsidiaries not only charged for the cost of providing force-placed insurance but also improperly recouped general servicing costs by charging the small subset of borrowers' whose insurance was force-placed for the costs of servicing Chase's loan  portfolio, including such portfolio-wide administrative activities  as tracking and monitoring, the costs of which were not properly included in Plaintiffs' and other borrowers' force-place insurance premiums. *See* Birnbaum NYDFS Testimony at 17.

(c)   Paying fees, commissions or other consideration to subsidiaries and affiliates (BOIC and CIA) for ***producing*** insurance business or functioning as an insurance agency for Chase when they do not perform the traditional role of an insurance broker and do not and did not, in fact, ***produce*** any insurance or provide insurance agency services in the traditional sense as Chase entered into exclusive deals with Assurant under which they provided all force-placed insurance for Chase.  Indeed, CIA, Assurant, Inc., ASIC  or SGIC did not perform any of the traditional duties of insurance producer, such as evaluating the individual needs of the policy holder or seeking the most competitive price for the borrower. *See* Birnbaum NYDFS Testimony at 18.

## CLASS ACTION ALLEGATIONS

258.   Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Classes: [11]

> a nationwide class consisting of all persons who have or had a residential mortgage loan or line of credit with JPMorgan, Chase Bank or Chase Home Finance and had hazard insurance force-placed upon the secured property by JPMorgan, Chase Bank or Chase Home Finance, between June 20, 2007, and the date of final disposition of this action;

> a California subclass consisting of all persons who have or had a residential mortgage loan or line of credit with JPMorgan, Chase Bank or Chase Home Finance secured by property located in the State of California and had hazard insurance force-placed upon the secured property by JPMorgan, Chase Bank or Chase Home Finance between June 20, 2007, and the date of final disposition of this action. (the "California Subclass");

> a New Jersey subclass consisting of all persons who have or had a residential mortgage loan or line of credit with JPMorgan, Chase Bank or Chase Home Finance secured by property located in the State of New Jersey and had hazard insurance force-placed upon the secured property by JPMorgan, Chase Bank or Chase Home Finance between October 17, 2005 and the date of final disposition of this action. (the "New Jersey Subclass"); and

> a Florida subclass consisting of all persons who have or had a residential mortgage loan or line of credit originated and/or serviced by JPMorgan, Chase Bank or Chase Home Finance, that was secured by real property located in the State of Florida, and between October 17, 2005 and the date of final disposition of this action, were required to pay for a "forced-placed" hazard insurance policy, and who were contacted by or on behalf of Defendants knowing that such persons were represented by attorneys at the time with respect to debts in contravention of s. 559.72(18), Fla. Stat., between June 20, 2007 and the date of the final disposition of this action (the "Florida Subclass").

---

[11]   Plaintiffs reserve the right to seek modification of the Class Period definitions for the class and subclasses in the likely event that further investigation/discovery reveals a more appropriate and broader time period.

an Illinois subclass consisting of all persons who have or had a residential mortgage loan or line of credit owned, originated or serviced by JPMorgan Chase Bank, N.A. or Chase Home Finance, LLC secured by property located in the State of Illinois and, in connection therewith, were required to pay for "force-placed" hazard insurance on the secured property (the "Illinois Class") (collectively, the "Classes").

259.   The Classes exclude Defendants and any entity in which Defendants have a controlling interest, and their officers, directors, legal representatives, successors and assigns. The Classes also exclude government entities and judicial officers that have any role in adjudicating this matter.

260.   The Classes are so numerous that joinder of all members is impracticable.

261.   A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

262.   Plaintiffs' claims are typical of the claims of the Classes.

263.   There are questions of law and fact common to the Classes, including but not limited to:

(a)   The nature, scope and implementation of Defendants' unlawful, improper and fraudulent acts;

(b)   Whether Defendants conspired in furtherance of the unlawful acts alleged herein;

(c)   Whether Defendants have engaged in mail and wire fraud;

(d)   Whether Defendants have engaged in a pattern of racketeering activity;

(e)   Whether the Chase Force-Placed Insurance Enterprise is an enterprise within the meaning of 18 U.S.C. § 1961(4);

(f)   Whether Defendants conducted or participated in the affairs of the Chase Force-Placed Insurance Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c);

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

(g)     Whether Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or direct acts in violation of 18 U.S.C. § 1962(c) proximately caused injury to Plaintiffs' and Class members' business or property;

(h)     Whether Defendants misrepresented the reason for the high cost of force-placed insurance;

(i)     Whether Defendants misrepresented that the Plaintiffs' and Class members mortgage contracts authorized them to force-place insurance in the manner they did;

(j)     Whether Defendants fraudulently concealed their scheme;

(k)     Whether Defendants maintained a policy of referring force-placed insurance business to insurers pursuant to pre-arranged agreements;

(l)     Whether Chase maintained a policy of referring force-placed insurance business to Assurant;

(m)     Whether JPMorgan Chase breached the terms of Plaintiffs' and Class members' mortgages or loan contracts;

(n)     Whether Defendants had captive reinsurance arrangements with force-placed insurance providers;

(o)     Whether Defendants maintained a policy of referring force-placed insurance business to insurers pursuant to pre-arranged agreements;

(p)     Whether Defendants received commission payments from force-placed insurance providers;

(q)     Whether subsidiaries or affiliates of Defendants received reinsurance premium payments from force-placed insurance providers;

(r)     Whether Defendants' force-placed insurance policies were provided by an affiliated entity;

(s)     Whether Defendants or their affiliates participated in arrangements that involved kickbacks;

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

1        (t)    Whether Defendants received financial benefits from the force-placed

2 insurance provider in the form of insurance monitoring, tracking and processing services;

3        (u)    Whether Defendants received unauthorized and illicit payments in

4 connection with force-placed insurance that were unrelated to a *bona fide* service in connection

5 with the force-placed insurance and its purpose;

6        (v)    Whether Defendants received payments in connection with force-placed

7 insurance that exceeded the value of any services actually performed or that were otherwise

8 commercially unreasonable;

9        (w)    Whether Defendants wrongfully backdated force-placed insurance

10 policies;

11        (x)    Whether Defendants required unnecessary or duplicative force-placed

12 insurance;

13        (y)    Whether Defendants violated their implied covenant of good faith and fair

14 dealing;

15        (z)    Whether Defendants breached the implied covenant of good faith and fair

16 dealing in Plaintiffs' and Class Members' mortgages or loan contracts;

17        (aa)    Whether Defendants breached the terms of Plaintiffs' and Class members'

18 mortgages or loan contracts;

19        (bb)    Whether JPMorgan Chase breached its fiduciary duty to Plaintiffs and

20 members of the Class;

21        (cc)    Whether Assurant, Inc., ASIC and SGIC induced and/or participated in

22 JPMorgan Chase's breach of fiduciary duties;

23        (dd)    Whether Defendants have been unjustly enriched; and

24        (ee)    Whether Defendants are liable to Plaintiffs and the Class (and Subclass)

25 for damages and, if so, the measure of such damages.

26

27                    68

28                                                  Case No. CV-11-03058-JCS

264. These and other questions of law and/or fact are common to the Classes and predominate over any questions affecting only individual Classes members.

265. The same common issues predominate with respect to all Class members, regardless of whether their loans were originated by or merely serviced by Defendants.

266. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes. Plaintiffs have no claims antagonistic to those of the Classes. Plaintiffs have retained counsel competent and experienced in complex nationwide class actions, including all aspects of litigation. Plaintiffs' counsel will fairly, adequately and vigorously protect the interests of the Classes.

267. Class action status is warranted under Rule 23(b)(1)(A) because the prosecution of separate actions by or against individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants.

268. Class action status is also warranted under Rule 23(b)(1)(B) because the prosecution of separate actions by or against individual members of the Classes would create a risk of adjudication with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

269. Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

270. Class action status is also warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

# CLAIMS FOR RELIEF

## COUNT ONE

### BREACH OF CONTRACT
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH
### AND FAIR DEALING ON BEHALF OF THE NATIONWIDE CLASS AGAINST
### DEFENDANTS JPMORGAN CHASE BANK, N.A. CHASE BANK USA, N.A.)

271.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

272.    Every contract contains an implied covenant of good faith and fair dealing.

273.    The mortgage contracts of Plaintiffs and the other Class members contained an implied covenant of good faith and fair dealing, pursuant to which Defendants were bound to perform their obligations in good faith and to deal fairly with Plaintiffs and the other Class members.

274.    To the extent that the mortgage contracts of Plaintiffs and the Class members permitted Defendants to unilaterally "force-place" insurance, Defendants were obligated not to exercise their discretion to do so capriciously and in bad faith (for their own financial gain for the purposes of maximizing profits at borrowers' expense).

275.    Defendants breached their duties of good faith and fair dealing in at least the following respects, among others:

        (a)      Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead—for the sole purpose of maximizing their own profits—forcing borrowers to pay for insurance policies from providers chosen by Defendants. These policies needlessly came with substantially greater premiums, while providing less coverage than borrowers' existing policies;

        (b)      Using their discretion to choose a force-placed insurance provider and a policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing borrowers to pay for both (i) the actual cost of protecting the mortgagee's interest in the

70

1    property and (ii) the cost of the commissions/reinsurance premiums Defendants accepted from

2    the force-placed insurance provider;

3             (c)       Failing to seek competitive bids on the open market or otherwise making

4    good faith efforts to reasonably exercise their discretion and instead selecting force-placed

5    insurance providers according to pre-arranged secret deals whereby the insurance policies are

6    continually purchased at excessive costs through the same companies in order to produce

7    additional profits for Defendants;

8             (d)       Assessing excessive, unreasonable, and unnecessary insurance policy

9    premiums against Plaintiffs and the Class while misrepresenting the reason for the cost of the

10    policies;

11             (e)       Collecting a percentage of the force-placed premiums charged to Plaintiffs

12    and the Class and not passing that percentage on to the borrower, thereby creating the incentive

13    to seek the highest-priced premiums possible;

14             (f)       Accepting purported reinsurance premiums and/or commissions in return

15    for placing borrowers with force-placed insurance providers, despite the fact that Defendants

16    actually incur little, if any, expense because: (i) the force-placed insurance policies are

17    automatically issued pursuant to pre-arranged agreements with providers; and/or (b) Defendants'

18    captive reinsurance agreements provide for little or no actual transfer of risk;

19             (g)       Backdating force-placed insurance policies to cover time periods which

20    have already passed and for which there was already absolutely no risk of loss;

21             (h)       Misrepresenting in their force-placed insurance notices that borrowers

22    were obligated to pay for backdated insurance coverage for periods during which the lender had

23    no risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss

24    Payable Endorsement;

25             (i)       Procuring force-placed insurance policies to cover time periods during

26    which the mortgagee is already covered pursuant to a Lender's Loss Payable Endorsement; and

27                                             71

28                                                   Case No. CV-11-03058-JCS
<br>                                              Consolidated Amended Class Action Complaint

1         (j)     Failing to provide borrowers with any opportunity to opt out of having
2 their force-placed insurance policies provided by an insurer with whom Defendants had a
3 commission and/or captive reinsurance arrangement.

4      276.   As a direct, proximate, and legal result of the aforementioned breaches of the
5 covenant of good faith and fair dealing, Plaintiffs and the other Class members have suffered
6 damages.

7      277.   Plaintiffs and the other Class members have been damaged as a direct and
8 proximate result of Defendants' breach and are entitled to damages.

9 **COUNT TWO**

10 **BREACH OF CONTRACT**

11 **(ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS JPMORGAN CHASE BANK, N.A. , CHASE BANK USA, N.A.)**

12
13      278.   Plaintiffs hereby incorporate by reference the preceding paragraphs as if they
were fully set forth herein.

14
15      279.   Defendants have serviced loans evidenced by substantially similar standard form
16 notes and mortgage contracts.

17      280.   To the extent that the mortgage contracts of Plaintiffs and the Class permitted
Defendants to unilaterally "force-place" insurance, Defendants were contractually obligated to
18 exercise their discretion to do so in a reasonable manner.

19
20      281.   Nonetheless, Defendants have imposed or collected amounts that exceeded the
21 amounts necessary to protect the mortgagee's interest in the policy.   Such practices have
22 included, without limitation: (a) requiring borrowers to pay amounts for insurance coverage that
23 exceed the amounts necessary to protect the mortgagee's interest in the secured property; (b)
24 backdating force-placed insurance policies, thus requiring borrowers to pay for retroactive
25 coverage despite the fact that the time has lapsed and no loss occurred during the lapsed period;
26 and (c) requiring borrowers to pay for force-placed insurance policies despite the existence of a
27 Lender's Loss Payable Endorsement that already protects the lender's interest in the property.

72

28 Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

282.   Defendants have thus breached the mortgage contracts of Plaintiffs and the other Class members.

283.   Plaintiffs and the other Class members have been damaged as a direct and proximate result of Defendants' breach and are entitled to damages.

## COUNT THREE

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 § U.S.C. 1962(C) – RICO

### (ON BEHALF OF THE NATIONWIDE CLASS AGAINST ALL DEFENDANTS)
0

284.   Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

285.   This claim for relief arises under 18 U.S.C. § 1962(c).

286.   Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

287.   As set forth above and in the succeeding paragraphs (and particularly ¶¶ 151-169), Defendants have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the Chase Force-Placed Insurance Enterprise, through a pattern of racketeering acts indictable under 18 U.S.C. §§ 1341 and 1343 which resulted in injury to Plaintiffs and the Class.

288.   As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by predicate acts which make up the Defendants' pattern of racketeering activity as described herein.

**COUNT FOUR**

**VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(d) – RICO)**

**(ON BEHALF OF THE NATIONWIDE CLASS AGAINST ALL DEFENDANTS)**

289.   Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

290.   This claim for relief arises under 18 U.S.C. § 1962(c).

291.   In violation of 18 U.S.C. § 1962(d), Defendants have, as set forth above (and particularly ¶¶ 151-169), conspired to violate 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the affairs of the Chase Force-Placed Insurance Enterprise.

292.   As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by predicate acts which make up the Defendants' pattern of racketeering activity as described herein.

**COUNT FIVE**

**BREACH OF FIDUCIARY DUTY/MISAPPROPRIATION OF FUNDS HELD IN TRUST**

**(ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS JPMORGAN CHASE BANK, N.A., CHASE BANK USA, N.A.)**

293.   Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

294.   JPMorgan Chase holds and/or controls funds in escrow; controls the establishment, funding requirements and maintenance of escrow accounts for the purposes of paying taxes, assessments, insurance premiums and other items set forth in borrowers'

74

1   mortgages, *see* Exhibits 2-9 at ¶ 3, and is obligated under the mortgages to return any excess

2   funds in accordance with the terms of the mortgages.

3       295.   Since the time that JPMorgan Chase began servicing the Plaintiffs' mortgages,

4   JPMorgan Chase has required payment of and accepted monies from the Plaintiffs for escrow

5   items identified in their mortgage on a monthly basis, held them in escrow and charged the cost

6   of the premiums to Plaintiffs' escrow, pursuant to the terms of Plaintiffs' mortgages.

7       296.   JPMorgan Chase was obliged to hold, manage and control these escrow funds in

8   trust, and owed Plaintiffs and members of the Class the highest fiduciary duty with respect to the

9   handling of such funds.

10      297.   JPMorgan Chase breached its fiduciary duty to Plaintiffs and the members of the

11   Class by, *inter alia*: (a) unilaterally using escrow funds to purchase force-placed insurance at a

12   cost and in amounts that were inflated solely in order to generate additional profits for

13   Defendants; (b) profiting from unnecessary and excessive force-placed insurance policies that

14   were purchased from escrow funds at the expense of Plaintiffs and the Class members; (c)

15   unilaterally utilizing the escrow funds to pay for unnecessary and duplicative insurance for

16   purposes of increasing Defendants' profits; and (d) improperly depleting the escrow funds for

17   unnecessary, unauthorized and duplicative hazard insurance resulting in additional costs and

18   injury to Plaintiffs and members of the Class.

19      298.   These actions were undertaken by JPMorgan Chase in bad faith solely for the

20   benefit of Defendants and were not intended to benefit Plaintiffs or other borrowers.

21      299.   As a direct result of JPMorgan Chase's actions and subversion of Plaintiffs'

22   interest to Defendants' own interests in reaping additional, extravagant and unauthorized fees

23   and profits, Plaintiffs and the Class have suffered injuries in the form of unnecessary and

24   excessive escrow charges, unnecessary and improper depletion of escrow funds intended for and

25   properly allocated to other Escrow Items, a loss of funds from their escrow accounts and/or loss

26

27

28

1  of equity in the property due to increases in the amounts due under the mortgage to cover escrow

2  shortfalls.

3      300.    Plaintiffs and the Class are entitled to all damages resulting from JPMorgan

4  Chase's breach of its fiduciary obligations and misappropriation of escrow funds.  In addition,

5  Plaintiffs and the Class are entitled to punitive damages because JPMorgan Chase acted in bad

6  faith in deliberate and/or reckless disregard of their rights and JPMorgan Chase's obligation to

7  hold their escrow funds in trust.

8                              **COUNT SIX**

9              **AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY**

10             **(ON BEHALF OF THE NATIONWIDE CLASS AGAINST DEFENDANTS**
                 **ASSURANT, INC., AMERICAN SECURITY INSURANCE**
11           **COMPANY, STANDARD GUARANTY INSURANCE COMPANY, CHASE**
                 **INSURANCE AGENCY, INC. AND BANC ONE INSURANCE COMPANY)**
12

13     301.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they

14  were fully set forth herein.

15     302.    JPMorgan Chase breached its fiduciary duties to Plaintiffs and the Class as set

16  forth herein above, including specifically as set forth in Count Three.

17     303.    Assurant, Inc., ASIC, SGIC CIA and BOIC actively induced and/or participated

18  in JPMorgan Chase's breach of fiduciary duties through the conduct described herein, including,

19  but not limited to, offering JPMorgan Chase the opportunity to reap additional profits through a

20  scheme to force-place borrowers serviced by JPMorgan Chase in unnecessary, duplicative and

21  exorbitantly priced force-placed insurance and tracking services sold by ASIC, SGIC and other

22  Assurant, Inc. subsidiaries, in exchange for kickbacks, sham commissions, fees for sham services

23  and "rebates" paid to Chase.

24     304.    Assurant, Inc. ASIC and SGIC actively induced and/or participated in JPMorgan

25  Chase's breach of fiduciary duties through the provision of tracking services that identified and

26  implemented the force-placement of Plaintiffs and Class members in unnecessary, duplicative

27                              76

1  and exorbitantly priced hazard insurance and facilitated the billing and payment for such

2  insurance.

3       305.    BOIC induced and/or participated in JPMorgan Chase's breach of fiduciary duties

4  through the acceptance of ceded reinsurance premiums that were nothing more than kickbacks to

5  JPMorgan Chase and which were improperly included in the force-placed hazard insurance

6  premiums paid by Plaintiffs and Class members.

7       306.    CIA induced and/or participated in JPMorgan Chase's breach of fiduciary duties

8  through the facilitation of Chase's scheme by participating in the selection of Chase's exclusive

9  force-placed insurance provider.

10      307.    As a result of the breach of fiduciary duties to Plaintiffs and members of the Class

11  by JPMorgan Chase that Assurant Inc., ASIC, SGIC, CIA and BOIC induced and/or participated

12  in with full knowledge as herein described, Plaintiffs and members of the Class suffered

13  damages in the form of unnecessary and excessive escrow charges, unnecessary and improper

14  depletion of escrow funds intended for and properly allocated to other Escrow Items, a loss of

15  funds from their escrow accounts and/or loss of equity in the property due to increases in the

16  amounts due under the mortgage to cover escrow shortfalls.

17      308.    Plaintiffs and the Class are entitled to all damages resulting from JPMorgan

18  Chase's breach of their fiduciary obligations and misappropriation of escrow funds. BOIC, CIA

19  and the Assurant defendants are liable for these damages by virtue of Assurant's aiding and

20  abetting JPMorgan Chase's conduct.

21                              **COUNT SEVEN**

22                **VIOLATION OF CALIFORNIA BUSINESS AND**
                    **PROFESSIONAL CODE §§ 17200 ET SEQ.**
23
          **(ON BEHALF OF THE CALIFORNIA SUBCLASS AGAINST ALL DEFENDANTS)**
24

25      309.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they

26  were fully set forth herein.

27                                    77

28                                              Case No. CV-11-03058-JCS
                                           Consolidated Amended Class Action Complaint

310.   Throughout the Class Period, Defendants have regularly conducted business throughout the State of California.

311.   California Business & Professions Code §§ 17200 *et seq.* prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

312.   Defendants engaged in unfair and unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, *et seq.*, in that: (a) Defendants' conduct is an unlawful violation of RICO; (b) Defendants' practices and conduct are immoral, unethical, oppressive and substantially harmful to Plaintiffs and the members of the Class; (c) the justification for Defendants' practices and conduct is outweighed by the gravity of the injury to Plaintiffs and the Class; (d) Defendants' practices constitute unfair, untrue or misleading actions in that such conduct is likely to deceive and, in fact, did deceive members of the public.

313.   Defendants' unlawful, unfair, and/or fraudulent business practices are described herein and include, without limitation:

(a)   Failing to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead—for the sole purpose of maximizing their own profits—forcing borrowers to pay for insurance policies from providers of Defendants' choice.  These policies needlessly came with substantially greater premiums, while providing less coverage than borrowers' existing policies;

(b)   Using their discretion to choose a force-placed insurance provider and policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully forcing borrowers to pay for both (i) the actual cost of protecting the mortgagee's interest in the property and (ii) the cost of the commissions/reinsurance premiums Defendants accepted from the force-placed insurance provider;

(c)   Failing to seek competitive bids on the open market and instead selecting force-placed insurance providers according to pre-arranged secret deals whereby the insurance policies are continually purchased through the same companies;

78

1          (d)     Assessing excessive, unreasonable, and unnecessary insurance policy
2 premiums against Plaintiffs and the Class and misrepresenting the reason for the cost of the
3 policies;

4          (e)     Collecting a percentage of the force-placed premiums charged to Plaintiffs
5 and the Class and not passing that percentage on to the borrower, thereby creating the incentive
6 to seek the highest-priced premiums possible;

7          (f)     Accepting purported reinsurance premiums and/or commissions in return
8 for placing borrowers with force-placed insurance providers, despite the fact that Defendants
9 actually incur little, if any, expense because: (i) the force-placed insurance policies are
10 automatically issued pursuant to pre-arranged agreements with providers; and/or (b) Defendants'
11 captive reinsurance agreements provide for little or no actual transfer of risk;

12          (g)     Backdating force-placed insurance policies to cover time periods which
13 have already passed and for which there is absolutely no risk of loss;

14          (h)     Procuring force-placed insurance policies to cover time periods during the
15 mortgagee is already covered pursuant to a Lender's Loss Payable Endorsement;

16          (i)     Misrepresenting in their force-placed insurance notices that borrowers
17 were obligated to pay for backdated insurance coverage for periods during which the lender had
18 no risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss
19 Payable Endorsement;

20          (j)     Purchasing force-placed insurance coverage through and/or from related
21 entities at inflated premiums instead of through disinterested brokers and/or insurance carriers,
22 thereby depriving borrowers of the benefit of price competition;

23          (k)     Failing to provide borrowers with any opportunity to opt out of having
24 their force-placed insurance policies provided by an insurer with whom Defendants had a
25 commission and/or captive reinsurance arrangement; and

26

27                 79

28                                           Case No. CV-11-03058-JCS
                                     Consolidated Amended Class Action Complaint

1         (l)    Engaging in other unfair and/or unlawful conduct as described in this

2 complaint.

3        314.    The foregoing acts and practices have detrimentally impacted competition and

4 caused substantial harm to Plaintiffs and to members of the Class. Plaintiffs have suffered

5 injuries in fact and have lost money or property as a result of Defendants' conduct.

6        315.    By reason of the foregoing, Defendants should be required to pay damages in an

7 amount to be proven at trial; disgorge their illicit profits and/or make restitution to Plaintiffs, the

8 general public, and the other members of the Class; and/or be enjoined from continuing in such

9 practices pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

10 **COUNT EIGHT**

11 **VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**

12 **(ON BEHALF OF THE NEW JERSEY SUBCLASS AGAINST ALL DEFENDANTS)**

13        316.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they

14 were fully set forth herein.

15        317.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2 (2006), provides

16 that:

17       [t]he act, use or employment by any person of any unconscionable
commercial practice, deception, fraud, false pretense, false

18 promise, misrepresentation, or the knowing, [sic] concealment,
suppression, or omission of any material fact with intent that others

19 rely upon such concealment, suppression or omission, in
connection with the sale or advertisement of any merchandise or

20 real estate, or with the subsequent performance of such person as
aforesaid, whether or not any person has in fact been misled,

21 deceived or damaged thereby, is declared to be an unlawful
practice; ...

22

23        318.    Defendants' violated this section in that: (a) Defendants' conduct in violation of

24 RICO constitutes a *per se* violation of the NJCFA; (b) Defendants' practices are unconscionable

25 in that they are unethical, immoral, oppressive and harmful and depart from the standard of good

26 faith, honesty in fact and fair dealing established under the NJCFA; and (c) Defendants conduct

27 80

28 Case No. CV-11-03058-JCS<br>Consolidated Amended Class Action Complaint

1   was deceptive and fraudulent, concealing numerous material facts and misrepresenting others

2   all with the result of causing Plaintiffs and Class members to suffer ascertainable losses of

3   money or property

4       319.   These unconscionable acts and practices include, but are not limited to, the

5   following:

6           (a)   Failing to make any effort to maintain home owners' existing insurance

7   policies and, instead, forcing home owners to pay for exorbitantly priced insurance policies from

8   providers of Defendants' choice and from whom Defendants received unlawful kickbacks;

9           (b)   Using their discretion to choose a force-placed insurance provider and

10  policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully

11  forcing borrowers to pay for both insurance and kickbacks/commissions to Defendants;

12          (c)   Failing to seek competitive bids on the open market or otherwise force-

13  place insurance at commercially reasonable rates;

14          (d)   Force-placing excessive, unreasonable, and unnecessary insurance policy

15  premiums against Plaintiffs and the other Class members while misrepresenting the reason for

16  the excessive cost of the policies;

17          (e)   Collecting a percentage of the force-placed insurance policy premiums as

18  a commission and not passing that percentage on to the borrower, thereby creating an incentive

19  to seek the highest-priced premiums possible;

20          (f)   Accepting commissions or kickbacks in return for force-placing home

21  owner's insurance on Plaintiff Mayko's and the other New Jersey Subclass members' properties,

22  despite the fact that Defendants actually incur virtually no costs in placing the insurance because

23  force-placed insurance carriers like Assurant, Inc., ASIC and SGIC monitor Defendants' loan

24  portfolio's and agree to place insurance when existing policies lapse; all at no cost to Defendants.

25

26

27                                    81

28                                                      Case No. CV-11-03058-JCS
                                                        Consolidated Amended Class Action Complaint

1        (g)     Backdating force-placed insurance policies to cover periods of time during
2 which there were no claims or loss on the properties, thus charging for insurance with zero risk
3 of loss;

4        (h)     Misrepresenting in their force-placed insurance notices that borrowers
5 were obligated to pay for backdated insurance coverage for periods during which the lender had
6 no risk of loss due to the passing of time or the lender's coverage under a Lender's Loss Payable
7 Endorsement;

8        (i)     Purchasing force-placed insurance coverage through related entities at
9 inflated premiums instead of on the open market at commercially reasonable prices;

10        (j)     Failing to provide home owners with any opportunity to choose any
11 insurance provider other than one with whom Defendants had a commission or kickback
12 reinsurance arrangement.

13        (k)     Engaging in other unfair, deceptive, unreasonable or unconscionable
14 conduct described herein.

15     320.    These are unconscionable commercial practices, including acts of deception,
16 fraud, false promises and misrepresentations, which constitute multiple, separate violations of
17 N.J. Stat. Ann. § 56:8-2 (2006).

18     321.    Defendants' unlawful conduct set forth in this Complaint has the capacity to
19 mislead or deceive consumers, including Plaintiff Mayko and the other members of the New
20 Jersey Subclass.

21     322.    Defendants' business practices, including their misrepresentations and omissions,
22 set forth in this Complaint are material in that they relate to matters which reasonable persons,
23 including Plaintiff Mayko and the other members of the New Jersey Subclass, would attach
24 importance to in their conduct regarding Defendants' products.

25

26

27                  82

28                              Case No. CV-11-03058-JCS

323. Plaintiff Mayko and the other members of the New Jersey Subclass have suffered ascertainable losses of money and/or property as a result of Defendants' employment of the unlawful acts and practices set forth in this Complaint.

324. Plaintiff Mayko and the other members of the New Jersey Subclass seek damages, treble damages, injunctive relief and other appropriate legal or equitable relief, including restitution, filing fees, costs and attorneys' fees, pursuant to N. J. Stat. Ann. § 56:8-19 (2006), and a refund of all monies acquired by Defendants by means of Defendants' unlawful conduct as set forth in this Complaint, pursuant to N.J. Stat. Ann. §§ 56:8-2.11 and 56:8-2.12 (2006).

## COUNT NINE

## VIOLATION OF THE FLORIDA CONSUMER COLLECTIONS PRACTICES ACT (VIOLATION OF § 559.72, FLA. STAT.)

### (ON BEHALF OF THE FLORIDA SUBCLASS AGAINST ALL DEFENDANTS)

325. Plaintiffs herby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

326. The Florida Consumer Collections Practices Act ("FCCPA"), as per § 559.72, Fla. Stat., provides:

327. In collecting consumer debts, no person shall:

> (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.

> * * *

> (18) Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

328. Pursuant to § 559.55(1), Fla. Stat.:

'debt' or 'consumer debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

329.   Pursuant to § 559.55(2), Fla. Stat., "'Debtor' or 'consumer' means any natural person obligated or allegedly obligated to pay any debt."

330.   The alleged debt represented by Plaintiffs Leger and Varnes' notes and mortgages arose out of a transaction in which the money, property, and insurance that are the subject of the mortgage were primarily for personal, family, or household purposes, to wit: shelter and shelter-related expenses for Plaintiffs Leger and Varnes' respective families.

331.   Defendants' charging and collection in connection with the mortgage note, including for force-placed insurance, is the collection of consumer debts and regulated by the FCCPA.

332.   In charging for force-placed insurance and pursuing collection thereof, including threatened foreclosure, Defendants claimed, attempted, and threatened to enforce a debt when they had full knowledge that the debt was not legitimate, and asserted the existence of the legal right to charge and collect excessive amounts for force-placed insurance when they had knowledge that the rights did not exist, and thereby violated the FCCPA.

333.   By communicating with debtors with full knowledge that the debtors are represented by attorneys with respect to such debts in contravention of the FCCPA, Defendants violated the FCCPA.

334.   Pursuant to the FCCPA, § 559.77, Fla. Stat., Defendants are liable for actual damages and for additional statutory damages of up to $1,000 for Plaintiffs Leger and Varnes, and an aggregate award of additional statutory damages up to the lesser of $500,000 or 1 percent of Defendants' net worth for all remaining class member, so long as the aggregate award does not provide an individual class member with additional statutory damages in excess of $1,000.

335.    In accordance with the FCCPA, § 559.77, Fla. Stat., Plaintiffs Leger and Varnes also seek court costs and reasonable attorneys' fees, as well as punitive damages and such other equitable relief as this court deems necessary or proper, including enjoining Defendants from further violations of the FCCPA.

**COUNT TEN**

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *ET SEQ.***

**(ON BEHALF OF THE ILLINOIS SUBCLASS AGAINST ALL DEFENDANTS)**

336.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

337.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* provides, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact ... in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damage thereby...." *See* 815 ILCS 505/2.

338.    Defendants' business practices alleged herein are deceptive acts or practices and, thus, constitute multiple, separate and independent violations of 815 ILCS 505/1, *et seq.* These deceptive acts and practices include, without limitation:

(a)    Failing to make any effort to maintain borrowers' existing insurance policies and, instead, for the sole purpose of maximizing their own financial gain, purchasing and charging borrowers for force-placed insurance policies from providers of Defendants' choice, such as ASIC and SGIC. These policies needlessly came with substantially greater premiums, while providing less coverage than borrowers' existing policies;

1        (b)     Choosing a force-placed insurance provider and policy in bad faith and in
2   contravention of the parties' reasonable expectations, by purposefully forcing borrowers to pay
3   for more than the cost of protecting the lender's interest in the secured property;

4        (c)     Selecting force-placed insurance providers according to pre-arranged
5   secret deals whereby the insurance policies are continually purchased through the same
6   companies;

7        (d)     Assessing excessive, unreasonable and unnecessary insurance policy
8   premiums against Plaintiffs and the Illinois Class and misrepresenting the reason for the cost of
9   the policies;

10        (e)     Backdating force-placed insurance policies to cover time periods which
11   have already passed and for which there was already absolutely no risk of loss;

12        (f)     Misrepresenting in force-placed insurance notices that borrowers were
13   obligated to pay for backdated insurance coverage for periods during which the lender had no
14   risk of loss due to the passing of time and/or the lender's coverage under a Lender's Loss
15   Payable Endorsement or standard mortgage clause;

16        (g)     Procuring force-placed insurance policies to cover time periods during
17   which the mortgagee is already covered pursuant to a Lender's Loss Payable Endorsement or
18   standard mortgage clause;

19        (h)     Failing to provide borrowers with any opportunity to opt out of having
20   their force-placed insurance policies provided by an insurer with whom Defendant had a
21   kickback arrangement;

22        (i)     Misrepresenting that the charges imposed for force-placed insurance were
23   to protect the borrowers' and Defendants' "mutual interests in the property" and that any
24   portions of the premiums returned to Defendants were for expense incurred in connection with
25   forced-placing insurance; and

26

27                        86

28                                  Case No. CV-11-03058-JCS

1          (j)      Engaging in other unfair or unlawful conduct as described in this
2   Complaint.

3          339.    Defendants engaged in these deceptive acts or practices in the conduct of
4   business, trade or commerce in the State of Illinois.

5          340.    Defendants' communications with Plaintiffs and the Illinois Class members in
6   which they notify mortgagees that force-placed insurance has been or will be purchased on the
7   mortgaged property and communications or documents which purport to describe or proscribe
8   Defendants' practices of force-placed insurance are directed to consumers as that term is defined
9   under Illinois Law.

10         341.    Defendants' deceptive acts or practices alleged herein are likely to mislead
11  reasonable consumers acting reasonably under the circumstances, including Plaintiffs and
12  members of the Illinois Class.

13         342.    Defendants' deceptive acts or practices alleged herein constitute consumer-
14  oriented conduct in that Defendants' deceptive acts or practices were directed to, and affected,
15  consumers of mortgage and home insurance products, including Plaintiffs and the Illinois Class
16  members.

17         343.    Defendants' deceptive acts or practices alleged herein have a broad, adverse
18  impact on consumers, including Plaintiffs and the Illinois Class members.

19         344.    Defendants' deceptive acts or practices alleged herein are part of a pattern of
20  conduct by Defendants to defraud consumers, are ongoing and are likely to continue to harm the
21  public and frustrate the public interest in commercially reasonable and non-deceptive insurance
22  and mortgage servicing practices between Defendant and the residents of Illinois whose
23  mortgages they service.

24         345.    Defendants' deceptive acts or practices alleged herein have been furthered, in
25  part, through a pattern of standard written communications disseminated broadly by or on behalf
26  of Defendants to thousands of Illinois residents whose mortgages they service.

27                                               87

28                                                            Case No. CV-11-03058-JCS
                                                    Consolidated Amended Class Action Complaint

346.    Defendants' deceptive acts or practices alleged herein are material in that they relate to matters that would reasonably be expected to be important to a reasonable consumer in making his or their decision whether to do business with Defendant.

347.    Plaintiffs and the Illinois Class members suffered injuries as a direct or proximate result of Defendants' deceptive acts or practices set forth in this Complaint.   Defendants' deceptive acts or practices caused injury and damages to Plaintiffs and the Illinois Class members in an amount to be proven at trial, including paying excessive and commercially unreasonable premiums for homeowners insurance.

348.    Plaintiffs and the Illinois Class members seek to recover their actual damages, injunctive relief, costs and reasonable attorneys' fees, pursuant to 815 ILCS 505/1, *et seq*.

## COUNT ELEVEN

### UNJUST ENRICHMENT/DISGORGEMENT
### (ON BEHALF OF THE NATIONWIDE CLASS AGAINST ASSURANT, INC, ASIC, SGIC, CIA AND/OR BOIC)

349.    Plaintiffs hereby incorporate by reference the preceding paragraphs as if they were fully set forth herein.

350.    Neither Plaintiffs nor other Class Members entered into a contract with Defendants Assurant, Inc., ASIC, SGIC, CIA and/or BOIC as a result of the imposition of force-placed insurance.   As a result of the explicit absence of a contractual relationship between Plaintiffs/Class Members and Defendants Assurant, Inc., ASIC, SGIC, CIA and/or BOIC there is no adequate remedy at law to compensate Plaintiffs and Class Members for the money improperly taken from them and retained by Assurant through the scheme described herein.

351.    Plaintiffs and the members of the Class have conferred a substantial benefit upon Defendants which has been appreciated by Defendants.   During the Class Period, Defendants have wrongfully collected millions of dollars in unearned commission payments and purported reinsurance premiums and derived from the force-placed insurance premiums paid by Plaintiffs and the putative Class members.

88

352.   The reason Plaintiffs and Class Members were required to pay the unreasonable amounts charged for unnecessary, backdated and/or duplicative force-placed insurance is because of the scheme designed and perpetrated between Defendants described herein.  These improper payments were accepted and retained by Defendants Assurant, Inc., ASIC, SGIC, CIA and/or BOIC under circumstances such that it would be inequitable for those Defendants to retain the benefit without payment to Plaintiffs and the Classes.

353.   These payments were accepted and retained by Defendants under circumstances such that it would be inequitable for Defendants to retain the benefit without payment to Plaintiffs and the members of the Class.

354.   Additionally, Chase improperly received late fees, interest and other income based upon Plaintiffs' and members of the Class' failure to pay for the insurance premiums that Defendants illegally charged.

355.   As a result of Defendants' unjust enrichment, Plaintiffs and the respective Class have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged above.

356.   Plaintiffs and the Class also seek restitution and disgorgement of profits realized by Defendants as a result of their unfair, unlawful and/or deceptive practices.

357.   Defendants received from Plaintiffs and Class Members a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overreaching and self-dealing.

358.   Defendants entered into an agreement where Assurant, Inc. and/or ASIC and/or SGIC would provide force-placed insurance policies to Plaintiffs and the Class, which policies were paid for at prices that were far higher than the market rates for similar policies.  Defendants knew that the charges for these policies were excessive and not the result of good faith practices.

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

359.    Assurant, Inc. and/or ASIC and SGIC paid significant monies in illegal kickbacks, commissions, and referral fees directly to Defendants in order to be able to exclusively provide force-placed insurance policies at unreasonable rates.

360.    BOIC received sham reinsurance premiums.

361.    CIA received improper fees, consideration and commissions.

362.    Further, Plaintiffs and the Class, individually and on behalf of the public, seek restitution and disgorgement of profits realized by Defendants as a result of their unfair, unlawful and/or deceptive practices.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against Defendants and in favor of Plaintiffs and the Classes and award the following relief:

A.    That this action be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.    That the conduct alleged herein be declared, adjudged and decreed to be unlawful;

C.    Plaintiffs and the Classes be awarded treble the amount of damages suffered by Plaintiffs and members of the Class as proven at trial plus interest and attorneys' fees and expenses pursuant to RICO, 18 U.S.C. §§ 1962 (c) and (d); § 8(d)(2);

D.    Compensatory, consequential, and general damages in an amount to be determined at trial;

E.    Costs and disbursements of the action;

F.    Restitution and/or disgorgement of Defendants' ill-gotten gains, and the imposition of an equitable constructive trust over all such amounts for the benefit of the Classes;

G.    Pre- and post-judgment interest;

H.    Reasonable attorneys' fees; and

I.    That Defendants be enjoined from the conduct challenged herein; and

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

1      J.      Such monetary, injunctive other relief to each of the subclasses that is provided

2   for by the state statutes pursuant to Counts Eight –Ten; and

3      K.      Such other and further relief as this Court may deem just and proper.

4                           **DEMAND FOR JURY TRIAL**

5      Plaintiffs hereby demand a trial by jury as to all claims in this action.

6   Dated April 26, 2013                      Respectfully submitted,

7
                                             */s/ Edward W. Ciolko*
8                                            **KESSLER TOPAZ**
                                               **MELTZER & CHECK, LLP**
9                                            Ramzi Abadou (SBN 222567)
                                             One Sansome Street, Suite 1850
10                                           San Francisco, CA 94104
                                             Telephone: (415) 400-3000
11                                           Facsimile: (415) 400-3001

12                                           **KESSLER TOPAZ**
                                               **MELTZER & CHECK, LLP**
13                                           Edward W. Ciolko
                                             Peter A. Muhic
14                                           Donna Siegel Moffa
15                                           Amanda R. Trask
                                             Jesse C. Klaproth
16                                           280 King of Prussia Road
                                             Radnor, PA  19087
17                                           Telephone: (610) 667-7706
                                             Facsimile: (610) 667-7056
18                                           eciolko@ktmc.com
19                                           pmuhic@ktmc.com
                                             dmoffa@ktmc.com
20                                           atrask@ktmc.com
                                             jklaproth@ktmc.com
21
22                                           **NIX PATTERSON & ROACH, LLP**
                                             Brad Seidel
23                                           Christopher Johnson
                                             3600 North Capital of Texas Highway
24                                           Building B Suite 350
25                                           Austin, TX  78746
                                             Telephone: (512) 328-5333
26                                           Facsimile: (512) 328-5335

27                              91

28                                               Case No. CV-11-03058-JCS
                                    Consolidated Amended Class Action Complaint

**SALPETER GITKIN, LLP**
James P. Gitkin
Eric T. Salpeter
Museum Plaza – Suite 503
200 South Andrews Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 467-8622
Facsimile: (954) 467-8623
Email: jim@salpetergitkin.com
Email: eric@salpetergitkin.com

**GOLDMAN SCARLATO KARON &**
**PENNY, P.C.**
Brian D. Penny
101 E. Lancaster Avenue, Suite 204
Wayne, PA 19087
Phone: 484 342-0700
Email: penny@gskplaw.com

**BERGER & MONTAGUE, P.C.**
Michael Dell'Angelo
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215 875-3080
Facsimile: (215)875-4604
Email: mdellangelo@bm.net
Email: sschalman-bergen@bm.net

**TAUS, CEBULASH & LANDAU, LLP**
Archana Tamoshunas
80 Maiden Lane, Suite 1204
New York, New York 10038
Telephone: 212-931-0704
Fax: 212-931-0703
Email: atamoshunas@tcllaw.com

**GILMAN LAW LLP**
Kenneth G. Gilman, FBN #0340758
Beachway Professional Center Tower
3301 Bonita Beach Road, Suite 307
Bonita Springs, FL  34134
Telephone (239) 221-8301
Facsimile (239) 676-8224
Email: kgilman@gilmanpastor.com

92

**HOLLAND, GROVES, SCHNELLER & STOLZE, LLC**
Eric D. Holland
Gerard B. Schneller
300 N Tucker, Suite 801
St. Louis, Missouri 63101
Telephone: 314.241.8111
Facsimile: 314.241.5554
Email: eholland@allfela.com
Email: gschneller@allfela.com

**CATES MAHONEY, LLC**
David Cates
216 West Pointe Drive, Suite A
Swansea, IL  62226
Telephone: 618-277-3644
Facsimile: 618-277-7882
Email: dcates@cateslaw.com

**GROSSMAN ROTH, P.A.**
Seth E. Miles
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, FL  33134
Telephone: 305.442.8666
Facsimile: 305.285.1668
Email  sem@grossmanroth.com

**EDELSON & ASSOCIATES, LLC**
Marc H. Edelson
45 West Court Street
Doylestown, PA  18901
Telephone: 215.230.8043
Facsimile: 215.230.8735
Email: medelson@edelson-law.com

**LAW OFFICE OF
ANDREW BENNETT SPARK**
Andrew Bennett Spark
13911 W. Hillsborough Ave., Suite 161
Tampa, FL  33635
Telephone: 941.321.5927
Facsimile: 813.441.1117
Email: abspark@msn.com

*Attorneys for Plaintiffs*

93

Case No. CV-11-03058-JCS
Consolidated Amended Class Action Complaint

# EXHIBIT 2

CM/ECF - Live Database - flsd

AOR,MEDREQ

## U.S. District Court
## Southern District of Florida (Miami)
## CIVIL DOCKET FOR CASE #: 1:13-cv-21107-FAM

Herrick et al v. JPMorgan Chase Bank, N.A. et al       Date Filed: 03/28/2013
Assigned to: Chief Judge Federico A. Moreno              Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Breach of Contract              Nature of Suit: 190 Contract: Other
                                                         Jurisdiction: Diversity

**Plaintiff**

**Alfred Herrick**                    represented by  **Aaron Samuel Podhurst**
                                                      Podhurst Orseck Josefsberg et al
                                                      City National Bank Building
                                                      25 W Flagler Street
                                                      Suite 800
                                                      Miami, FL 33130-1780
                                                      305-358-2800
                                                      Fax: 305-358-2382
                                                      Email: apodhurst@podhurst.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **John Gravante , III**
                                                      Podhurst Orseck, P.A.
                                                      25 West Flagler Street
                                                      Suite 800
                                                      Miami, FL 33130
                                                      305-358-2800
                                                      Fax: 305-358-2382
                                                      Email: jgravante@podhurst.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Matthew Weinshall**
                                                      Podhurst Orseck
                                                      25 West Flagler Street
                                                      Suite 800
                                                      Miami, FL 33130
                                                      305-358-2800
                                                      Email: mweinshall@podhurst.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Rachel Sullivan**
                                                      305-728-2969
                                                      Fax: 305-961-1033
                                                      Email: rs@kttlaw.com

CM/ECF - Live Database - flsd

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J Neary**
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon Blvd
9th Floor
Coral Gables, FL 33134
(305) 372-1800
Fax: (305) 372-3508
Email: rn@kttlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A. Tucker Ronzetti**
Kozyak Tropin & Throckmorton
2525 Ponce de Leon Boulevard
Suite 900
Coral Gables, FL 33134-6036
305-372-1800
Fax: 372-3508
Email: TR@kttlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lance August Harke**
Harke Clasby & Bushman LLP
9699 NE Second Avenue
Miami Shores, FL 33138
305-536-8222
Fax: 305-536-8229
Email: lharke@harkeclasby.com
*ATTORNEY TO BE NOTICED*

**Peter Prieto**
Podhurst Orseck, P.A.
25 West Flagler Street
Suite 800
Miami, FL 33130
305-358-2800
Fax: 305-358-2382
Email: pprieto@podhurst.com
*ATTORNEY TO BE NOTICED*

**Adam M. Moskowitz**
Kozyak Tropin & Throckmorton
2525 Ponce de Leon Boulevard
Suite 900
Coral Gables, FL 33134-6036
305-372-1800

CM/ECF - Live Database - flsd

Fax: 372-3508
Email: AMM@kttlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sydell Herrick**                          represented by **Aaron Samuel Podhurst**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **John Gravante , III**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Matthew Weinshall**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Rachel Sullivan**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Robert J Neary**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Thomas A. Tucker Ronzetti**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **Lance August Harke**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Peter Prieto**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

                                            **Adam M. Moskowitz**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Alberto Barreto**                         represented by **Aaron Samuel Podhurst**
                                            (See above for address)

CM/ECF - Live Database - flsd

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Gravante , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Weinshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Sullivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J Neary**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A. Tucker Ronzetti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lance August Harke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Prieto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Adam M. Moskowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Carol Lynn Upshaw**        represented by **Matthew Weinshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Sullivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

CM/ECF - Live Database - flsd

**Robert J Neary**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A. Tucker Ronzetti**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lance August Harke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Prieto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Adam M. Moskowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Salvatore Saccoccio**
*on behalf of themselves and all others
similarly situated*

represented by **Aaron Samuel Podhurst**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Gravante , III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Weinshall**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rachel Sullivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert J Neary**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas A. Tucker Ronzetti**

CM/ECF - Live Database - flsd

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lance August Harke**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Prieto**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Adam M. Moskowitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JPMorgan Chase Bank, N.A.**
*individually and as successor in interest
to Chase Home Finance, LLC*

represented by **Robert Mark Brochin**
Morgan Lewis & Bockius
200 S Biscayne Boulevard
Suite 5300 Wachovia Financial Center
Miami, FL 33131-2339
305-415-3456
Fax: 305-415-3001
Email: rbrochin@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chase Home Finance, LLC**

represented by **Robert Mark Brochin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chase Insurance Agency, Inc.**

represented by **Robert Mark Brochin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Assurant, Inc.**

represented by **Franklin G. Burt**
Jorden Burt LLP
777 Brickell Avenue
Suite 500
Miami, FL 33131-2803
305-347-6833

CM/ECF - Live Database - flsd

Fax: 372-9928
Email: fgb@jordenusa.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Farrokh Jhabvala**
Jorden Burt LLP
777 Brickell Avenue
Suite 500
Miami, FL 33131-2803
305-347-6845
Fax: 305-372-9928
Email: fj@jordenusa.com
*ATTORNEY TO BE NOTICED*

**Landon King Clayman**
Jorden Burt LLP
777 Brickell Avenue
Suite 500
Miami, FL 33131-2803
305-371-2600
Email: lkc@jordenusa.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**American Security Insurance Co.**          represented by  **Franklin G. Burt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Farrokh Jhabvala**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Landon King Clayman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Voyager Indemnity Insurance Co.**          represented by  **Franklin G. Burt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Farrokh Jhabvala**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Landon King Clayman**
(See above for address)

CM/ECF - Live Database - flsd

ATTORNEY TO BE NOTICED

| Date Filed | # | Docket Text |
|---|---|---|
| 03/28/2013 | 1 | COMPLAINT against American Security Insurance Co., Assurant, Inc., Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A., Voyager Indemnity Insurance Co.. Filing fee $ 350.00 receipt number 113C-5587373, filed by Alberto Barreto, Sydell Herrick, Alfred Herrick, Carol Lynn Upshaw, Salvatore Saccoccio. (Attachments: # 1 Civil Cover Sheet) (Moskowitz, Adam) (Entered: 03/28/2013) |
| 03/28/2013 | 2 | Judge Assignment to Judge Marcia G. Cooke (vjk) (Entered: 03/29/2013) |
| 04/01/2013 | 3 | NOTICE of Attorney Appearance by Franklin G. Burt on behalf of American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. (Burt, Franklin) (Entered: 04/01/2013) |
| 04/01/2013 | 4 | WAIVER OF SERVICE Returned Executed by Alberto Barreto, Sydell Herrick, Alfred Herrick, Carol Lynn Upshaw, Salvatore Saccoccio. American Security Insurance Co. waiver sent on 3/29/2013, answer due 5/28/2013; Assurant, Inc. waiver sent on 3/29/2013, answer due 5/28/2013. (Sullivan, Rachel) (Entered: 04/01/2013) |
| 04/01/2013 | 5 | WAIVER OF SERVICE Returned Executed by Alberto Barreto, Sydell Herrick, Alfred Herrick, Carol Lynn Upshaw, Salvatore Saccoccio. Voyager Indemnity Insurance Co. waiver sent on 3/29/2013, answer due 5/28/2013. (Sullivan, Rachel) (Entered: 04/01/2013) |
| 04/12/2013 | 6 | WAIVER OF SERVICE Returned Executed by Alberto Barreto, Sydell Herrick, Alfred Herrick, Carol Lynn Upshaw, Salvatore Saccoccio. Chase Home Finance, LLC waiver sent on 4/5/2013, answer due 6/4/2013; Chase Insurance Agency, Inc. waiver sent on 4/5/2013, answer due 6/4/2013; JPMorgan Chase Bank, N.A. waiver sent on 4/5/2013, answer due 6/4/2013. (Sullivan, Rachel) (Entered: 04/12/2013) |
| 04/15/2013 | 7 | ORDER of Reassignment. Case reassigned to Chief Judge Federico A. Moreno for all further proceedings. Judge Marcia G. Cooke no longer assigned to case. Signed by Chief Judge Federico A. Moreno on 04/15/13. (prs) (Entered: 04/15/2013) |
| 04/17/2013 | 8 | SCHEDULING REPORT - **Rule 16.1** by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Neary, Robert) (Entered: 04/17/2013) |
| 04/18/2013 | 9 | NOTICE of Attorney Appearance by Lance August Harke on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Harke, Lance) (Entered: 04/18/2013) |
| 04/19/2013 | 10 | MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, ( Responses due by 5/6/2013) by Assurant, Inc.. (Attachments: # 1 Exhibit Declaration Stephen Gauster)(Burt, Franklin) (Entered: 04/19/2013) |
| | | |

CM/ECF - Live Database - flsd

| 04/19/2013 | 11 | MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM , MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, ( Responses due by 5/6/2013) by American Security Insurance Co.. (Attachments: # 1 Exhibit Declaration of Ronald K. Wilson, # 2 Exhibit Declaration of Rebecca H. Voyles, # 3 Exhibit Certified Mortgage Documents)(Burt, Franklin) (Entered: 04/19/2013) |
|---|---|---|
| 04/19/2013 | 12 | MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM by Voyager Indemnity Insurance Co.. Responses due by 5/6/2013 (Attachments: # 1 Exhibit Mortgage Documents (Herrick), # 2 Exhibit Mortgage Documents (Barreto), # 3 Exhibit Mortgage Documents (Upshaw), # 4 Exhibit Declaration of Ronald K. Wilson (re Herrick), # 5 Exhibit Declaration of Ronald K. Wilson (re Barreto), # 6 Exhibit Declaration of Ronald K. Wilson (re Upshaw))(Burt, Franklin) (Entered: 04/19/2013) |
| 04/22/2013 | 13 | SCHEDULING ORDER: ( Trial set for 10/21/2013 in Miami Division before Chief Judge Federico A. Moreno., Calendar Call set for 10/15/2013 02:00 PM in Miami Division before Chief Judge Federico A. Moreno., Amended Pleadings due by 5/17/2013., Discovery due by 6/17/2013., Joinder of Parties due by 5/17/2013., In Limine Motions due by 8/19/2013., Dispositive Motions due by 7/1/2013., Motions due by 8/19/2013., Pretrial Stipulation due by 10/8/2013.), ORDER REFERRING CASE to Mediation. Mediation Deadline 8/19/2013. Signed by Chief Judge Federico A. Moreno on 4/19/2013. (lh) (Entered: 04/22/2013) |
| 04/22/2013 | 14 | NOTICE of Attorney Appearance by Farrokh Jhabvala on behalf of American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. (Jhabvala, Farrokh) (Entered: 04/22/2013) |
| 04/22/2013 | 15 | NOTICE of Attorney Appearance by Rachel Sullivan on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Sullivan, Rachel) (Entered: 04/22/2013) |
| 04/23/2013 | 16 | Corporate Disclosure Statement by American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. identifying Other Affiliate Interfinancial, Inc. for American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. (Burt, Franklin) (Entered: 04/23/2013) |
| 04/26/2013 | 17 | Corporate Disclosure Statement by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A. identifying Corporate Parent JP Morgan Insurance Holdings LLC for Chase Insurance Agency, Inc.; Corporate Parent JP Morgan Chase & Co. for Chase Home Finance, LLC, JPMorgan Chase Bank, N.A. (Brochin, Robert) (Entered: 04/26/2013) |
| 04/26/2013 | 18 | NOTICE by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A. *of Class-Wide Settlement in Related First-Filed Action* (Attachments: # 1 Exhibit A (Pulley Action, Apr. 4, 2013 Order)) (Brochin, Robert) (Entered: 04/26/2013) |
| 04/26/2013 | 19 | MOTION to Stay *Discovery and, in the Alternative for a* ( Responses due by 5/13/2013), MOTION for Protective Order *as to Plaintiffs' Rule 30(b)(6) Deposition notice* by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, |

CM/ECF - Live Database - flsd

| | | |
|---|---|---|
| | | # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Brochin, Robert) (Entered: 04/26/2013) |
| 04/26/2013 | 20 | MOTION to Dismiss 1 Complaint, ( Responses due by 5/13/2013), MOTION to Stay ( Responses due by 5/13/2013), MOTION and/or Transfer all Claims *and*, MOTION for Extension of Time to file a Rule 12(b) Motion and Memorandum of Law ( Responses due by 5/13/2013) by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A.. (Attachments: # 1 Appendix A, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G)(Brochin, Robert) (Entered: 04/26/2013) |
| 04/29/2013 | 21 | Unopposed MOTION for Extension of Time to respond to re 10 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, , 11 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, , 12 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. Responses due by 5/16/2013 (Attachments: # 1 Text of Proposed Order)(Prieto, Peter) (Entered: 04/29/2013) |
| 04/29/2013 | 22 | NOTICE of Attorney Appearance by Peter Prieto on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Prieto, Peter) (Entered: 04/29/2013) |
| 04/29/2013 | 23 | NOTICE of Attorney Appearance by Matthew Weinshall on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Weinshall, Matthew) (Entered: 04/29/2013) |
| 04/29/2013 | 24 | NOTICE of Attorney Appearance by John Gravante, III on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio (Gravante, John) (Entered: 04/29/2013) |
| 04/29/2013 | 25 | NOTICE of Attorney Appearance by Aaron Samuel Podhurst on behalf of Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio (Podhurst, Aaron) (Entered: 04/29/2013) |
| 04/30/2013 | 26 | Notice of Adoption by American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. Related document: 20 MOTION to Dismiss 1 Complaint, MOTION to Stay MOTION and/or Transfer all Claims *and* MOTION for Extension of Time to file a Rule 12(b) Motion and Memorandum of Law filed by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A., 19 MOTION to Stay *Discovery and, in the Alternative for a* MOTION for Protective Order *as to Plaintiffs' Rule 30(b)(6) Deposition notice* filed by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A. (Burt, Franklin) (Entered: 04/30/2013) |
| 04/30/2013 | 27 | RESPONSE in Opposition re 20 MOTION to Dismiss 1 Complaint, MOTION to Stay MOTION and/or Transfer all Claims *and* MOTION for Extension of Time to file a Rule 12(b) Motion and Memorandum of Law - *Objection to Motion for Extension of Time* filed by Alberto Barreto, Alfred Herrick, Sydell |

CM/ECF - Live Database - flsd

| | | Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Sullivan, Rachel) (Entered: 04/30/2013) |
|---|---|---|
| 05/02/2013 | 28 | ENDORSED ORDER granting 21 Plaintiffs' Unopposed Motion for Extension of Time to Respond to 10 11 12 Motions to Dismiss Filed by the Defendants Assurant, Inc., American Security Insurance Company, and Voyager Indemnity Insurance Company. Responses due by 05/13/13. Signed by Chief Judge Federico A. Moreno on 05/02/2013. (prs) (Entered: 05/02/2013) |
| 05/02/2013 | 29 | SCHEDULING REPORT - **Rule 16.1** by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw (Neary, Robert) (Entered: 05/02/2013) |
| 05/02/2013 | 30 | MOTION to Continue *Pretrial Deadlines And To Amend The Court's April 22, 2013 Scheduling Order* by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A.. Responses due by 5/20/2013 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Brochin, Robert) (Entered: 05/02/2013) |
| 05/03/2013 | 31 | Notice of Adoption by American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. Related document: 30 MOTION to Continue *Pretrial Deadlines And To Amend The Court's April 22, 2013 Scheduling Order* filed by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A. (Burt, Franklin) (Entered: 05/03/2013) |
| 05/03/2013 | 32 | NOTICE of Attorney Appearance by Landon King Clayman on behalf of American Security Insurance Co., Assurant, Inc., Voyager Indemnity Insurance Co. (Clayman, Landon) (Entered: 05/03/2013) |
| 05/03/2013 | 33 | REPLY to Response to Motion re 20 MOTION to Dismiss 1 Complaint, MOTION to Stay MOTION and/or Transfer all Claims *and* MOTION for Extension of Time to file a Rule 12(b) Motion and Memorandum of Law *Reply Brief In Support Of Motion For Enlargement Of Time To File A Rule 12(b) Motion* filed by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A.. (Brochin, Robert) (Entered: 05/03/2013) |
| 05/06/2013 | | Set/Reset Deadlines as per DE 28 re 12 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM , 11 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, , 10 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint. Responses due by 5/13/2013 (lk) (Entered: 05/06/2013) |
| 05/06/2013 | 34 | ORDER Rescheduling Hearing of 5/14/2013. Hearing rescheduled for 5/16/2013 02:30 PM in Miami Division before Chief Judge Federico A. Moreno. Signed by Chief Judge Federico A. Moreno on 05/06/13. (prs) (Entered: 05/06/2013) |
| 05/10/2013 | 35 | MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM by Chase Home Finance, LLC, Chase Insurance Agency, Inc., JPMorgan Chase Bank, N.A.. Responses due by 5/28/2013 (Attachments: # 1 Exhibit A, # 2 |

CM/ECF - Live Database - flsd

| | | |
|---|---|---|
| | | Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Brochin, Robert) (Entered: 05/10/2013) |
| 05/13/2013 | 36 | RESPONSE in Opposition re 30 MOTION to Continue *Pretrial Deadlines And To Amend The Court's April 22, 2013 Scheduling Order* filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Attachments: # 1 Exhibit A - email, # 2 Exhibit B - email, # 3 Exhibit C - email, # 4 Exhibit D - email, # 5 Exhibit E - email, # 6 Exhibit F - email, # 7 Exhibit G - email)(Neary, Robert) (Entered: 05/13/2013) |
| 05/13/2013 | 37 | RESPONSE in Opposition re 20 MOTION to Dismiss 1 Complaint, MOTION to Stay MOTION and/or Transfer all Claims *and* MOTION for Extension of Time to file a Rule 12(b) Motion and Memorandum of Law filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Sullivan, Rachel) (Entered: 05/13/2013) |
| 05/13/2013 | 38 | RESPONSE in Opposition re 19 MOTION to Stay *Discovery and, in the Alternative for a* MOTION for Protective Order *as to Plaintiffs' Rule 30(b)(6) Deposition notice* filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Sullivan, Rachel) (Entered: 05/13/2013) |
| 05/13/2013 | 39 | RESPONSE in Opposition re 10 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Prieto, Peter) (Entered: 05/13/2013) |
| 05/13/2013 | 40 | RESPONSE in Opposition re 11 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM MOTION to Dismiss for Lack of Jurisdiction 1 Complaint, filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Prieto, Peter) (Entered: 05/13/2013) |
| 05/13/2013 | 41 | RESPONSE in Opposition re 12 MOTION TO DISMISS 1 Complaint, FOR FAILURE TO STATE A CLAIM filed by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw. (Prieto, Peter) (Entered: 05/13/2013) |
| 05/14/2013 | 42 | NOTICE by Alberto Barreto, Alfred Herrick, Sydell Herrick, Salvatore Saccoccio, Carol Lynn Upshaw re 39 Response in Opposition to Motion, *by Assurant* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C part 1, # 4 Exhibit C part 2, # 5 Exhibit C part 3, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F)(Prieto, Peter) (Entered: 05/14/2013) |
| 05/16/2013 | 43 | Minute Entry for proceedings held before Chief Judge Federico A. Moreno: Miscellaneous Hearing held on 5/16/2013. Court Reporter: Gilda Pastor-Hernandez, 305-523-5118 / Gilda_Pastor-Hernandez@flsd.uscourts.gov (sc) (Entered: 05/16/2013) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
| |

CM/ECF - Live Database - flsd

| 05/23/2013 12:34:25 | | | |
|---|---|---|---|
| PACER Login: | sb0415 | Client Code: | 2011x038 |
| Description: | Docket Report | Search Criteria: | 1:13-cv-21107-FAM |
| Billable Pages: | 11 | Cost: | 1.10 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

ALFRED HERRICK, SYDELL HERRICK,
ALBERTO BARRETO, CAROL LYNN UPSHAW,
SALVATORE SACCOCCIO, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

                                                **CLASS ACTION**
v.                                          **JURY DEMAND**

JP MORGAN CHASE BANK, N.A.,
individually and as successor in interest to CHASE
HOME FINANCE, LLC; CHASE HOME FINANCE,
LLC; CHASE INSURANCE AGENCY, INC.;
ASSURANT, INC.; AMERICAN SECURITY
INSURANCE COMPANY; and VOYAGER
INDEMNITY INSURANCE COMPANY,

        Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiffs ALFRED HERRICK, SYDELL HERRICK, ALBERTO BARRETO, CAROL

LYNN UPSHAW, and SALVATORE SACCOCCIO file this class action complaint on behalf of

themselves and all others similarly situated against JP MORGAN CHASE BANK, N.A.,

individually ("Chase Bank"); JP MORGAN CHASE BANK, N.A., as successor-in-interest to

CHASE HOME FINANCE, LLC ("Chase/CHF");[1] CHASE HOME FINANCE, LLC ("Chase

Home Finance")[2]; CHASE INSURANCE AGENCY, INC. ("Chase Insurance"); ASSURANT,

INC. ("Assurant"); AMERICAN SECURITY INSURANCE COMPANY ("American Security"

_____

[1] Chase Home Finance, LLC merged into JP Morgan Chase Bank, N.A. on May 1, 2011.

[2] The Chase lender and servicer defendants, Chase Bank, Chase/CHF, and Chase Home Finance,
will together be referenced as the "Chase Defendants." Assurant, ASIC, and Voyager may be
referenced together as the "Assurant Defendants."

or "ASIC"); and VOYAGER INDEMNITY INSURANCE COMPANY ("Voyager").

## INTRODUCTION

### The Force-Placed Insurance Industry

1.      On November 10, 2010, *American Banker* published an article describing major mortgage lenders' and servicers' questionable and often illegal practices related to force-placed insurance.   The article revealed for the first time the exceptionally profitable exclusive relationships, collusive activities, and circular arrangements among the mortgage lenders and servicers, their affiliates, and their cooperating insurers.

2.      Lenders and servicers force place insurance when a borrower fails to obtain or maintain proper hazard, flood, or wind insurance coverage on property that secures a loan. Under the typical mortgage agreement, if the insurance policy lapses or provides insufficient coverage, the lender has the right to "force place" a new policy on the property and then charge the premiums to the borrower.

3.      The arrangements revealed by *American Banker* comprise an extremely lucrative profit-making scheme that reaps hundreds of millions of dollars annually for its participants. There are just two insurance companies that control the entire market for forced-placed policies in the country—Assurant and QBE.   Assurant works through its subsidiaries Voyager and American Security. These companies and their affiliates enter into exclusive relationships with the major mortgage lenders and servicers to provide the policies.   To maintain their exclusive relationships with these lenders, the insurers pay them unearned "kickbacks" of a percentage of the force-placed premiums ultimately charged to the borrower, offer them subsidized administrative services, and/or enter into lucrative captive reinsurance deals with them.

4.      The money to finance the force-place insurance schemes comes from

2

unsuspecting borrowers who are charged inflated force-placed insurance premiums by lenders. In many instances, borrowers are required to pay for backdated insurance coverage to cover periods during which no claims were made, or coverage that exceeds the legal requirements, and are charged additional improper fees.

5. The Defendants' force-placed insurance scheme takes advantage of the broad discretion afforded the lenders and/or servicers in standard form mortgage agreements. The agreements typically require the borrower to carry hazard insurance sufficient to cover the lender's interest in the property against fire and other perils. Some mortgage agreements also require borrowers to maintain flood insurance on their properties sufficient to cover the lender's risk from flood damage. If a homeowner's "voluntary" policy lapses, the mortgage agreement allows the lender to "force place" a new policy on the property at the borrower's expense.

6. Although force-placed insurance is designed to protect the lender's interest in the property that secures the loan and thus should not exceed that interest, lenders often purchase coverage from their exclusive insurers in excess of that required to cover their own risk. And, as a matter of practice, the major lenders and servicers collude with the two major force-placed insurers to manipulate the force-placed insurance market, which leads to artificially inflated premiums that are charged to consumers, resulting in premiums up to *ten times* greater than those available to the consumer in the open market. *American Banker* reported that "[t]hough part of the extra expense can be explained by the higher risks associated with insuring the homes of delinquent borrowers, force-placed policies generate profit margins unheard of elsewhere in the insurance industry—even after accounting for the generous commissions and other payments that servicers demand." *See* J. Horowitz, *Ties to Insurers Could Land Mortgage Servicers in More Trouble*, AM. BANKER, Nov. 10, 2010, *available at,*

http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-1028474-1.html.  Lenders, servicers, and force-placed insurers reap these unconscionable profits entirely at the expense of the unsuspecting borrower.

7.   At a recent hearing on force-placed insurance held by the National Association of Insurance Commissioners ("NAIC"), Birny Birnbaum, the foremost expert on the force-placed insurance market, illustrated the staggering growth in profits that Defendants' schemes have reaped in recent years:[3]

### LPI Premiums Have Quadrupled Since 2004

| Year | Gross Written Premium ($ Millions) | Net Written Premium ($ Millions) |
|---|---|---|
| 2004 | $1,485 | $796 |
| 2005 | $1,832 | $919 |
| 2006 | $2,163 | $1,074 |
| 2007 | $3,058 | $1,647 |
| 2008 | $4,000 | $2,209 |
| 2009 | $5,181 | $3,049 |
| 2010 | $5,915 | $3,223 |
| 2011 | $5,692 | $3,450 |
| 2004– 2011 | $29,326 | $16,368 |

2009-2011 GWP Understated, Reporting Errors by QBE

CEJ LPI Presentation to NAIC                    13                    August 9, 2012

8.   Assurant, a named defendant in this action, is one of the two major insurance companies (the other is QBE) that control virtually the entire market for force-placed insurance. As shown below, Assurant held 58.6% of the nationwide market share for force-placed insurance

---

[3] The following graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at: http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance_presentation_birnbaum.pdf.

in 2011.[4]  Together, Assurant and QBE/Balboa controlled 99.7% of the market in the same year,

and held no less than 96.1% of the market between 2004 and 2011.  Large mortgage lenders and

servicers sustain the insurers' monopoly by agreeing to purchase all force-placed insurance from

the two insurers in exchange for kickbacks disguised as commissions and other benefits.[5]

### Assurant and QBE Are the Market for LPI:
### Countrywide Market Share

| Year | Assurant | QBE/Balboa | Assurant + QBE/Balboa |
|------|----------|------------|------------------------|
| 2004 | 68.2%    | 29.8%      | 98.0%                  |
| 2005 | 69.7%    | 26.4%      | 96.1%                  |
| 2006 | 79.2%    | 19.5%      | 98.7%                  |
| 2007 | 74.0%    | 25.4%      | 99.4%                  |
| 2008 | 74.2%    | 25.5%      | 99.7%                  |
| 2009 | 57.2%    | 42.4%      | 99.7%                  |
| 2010 | 56.2%    | 43.5%      | 99.7%                  |
| 2011 | 58.6%    | 41.1%      | 99.7%                  |

CEJ LPI Presentation to NAIC                                18                                August 9, 2012

9.  It is no surprise that these Defendants' practices have come under increased scrutiny

in recent years by the government and regulators.  For example:[6]

_____

[4] This graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at:
http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance_presentation_birnbaum.pdf

[5] This graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at:
http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance_presentation_birnbaum.pdf.

[6] The Defendants' practices have also come under increased scrutiny by the courts.  This Court has already certified a Florida class against Wells Fargo Bank, N.A. and Wells Fargo Insurance, Inc. (as well as their exclusive force-placed insurance carrier, QBE) – on the same practices described here. *See Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233, 280 F.R.D. 665 (S.D.

- On March 21, 2013, the New York Department of Financial Services' ("NYDFS"), investigation into force-placed insurance practices "produced a major settlement with the country's largest 'force-placed' insurer, Assurant, Inc. . . . [The settlement] includes restitution for homeowners who were harmed, a $14 million penalty paid to the State of New York, and industry-leading reforms that will save homeowners, taxpayers, and investors millions of dollars going forward through lower rates."[7] Further, under the Consent Order entered, Assurant and its subsidiaries (including ASIC), are prohibited from paying commissions to any servicers or entity affiliated with a servicer on force-placed insurance policies obtained by the servicer.  *See* Assurant & NYDFS Consent Order, Mar. 21, 2013, at 9.

- At NYDFS hearings on May 17, 2012 related to the force-placed insurance market, the Superintendent of Financial Services, Benjamin Lawsky, stated that the Department's initial inquiry uncovered "serious concerns and red flags" which included: 1) exponentially higher premiums, 2) extraordinarily low loss ratios, 3) lack of competition in the market, and 4) tight relationships between the banks, their subsidiaries, and insurers.  He went on to state:

    > In sum when you combine [the] close and intricate web of relationships between the banks and insurance companies on the one hand, with high premiums, low loss ratios, and lack of competition on the other hand, it raises serious questions . . . .

- After the August 2012 NAIC hearings, the state regulator from Louisiana, James Donelon, referred to the force-placed insurance market as a "monopoly" and stated that stricter regulations may be needed.[8]

10. Florida has now become the epicenter for these force-placed insurance schemes.  In his presentation to the NAIC, Mr. Birnbaum illustrated the astounding rise in force-placed

---

Fla. 2012).

[7] *See Cuomo Administration Settles with Country's Largest Force-Placed Insurer, Leading Nationwide Reform Effort and Saving Homeowners, Taxpayers, and Investors Millions of Dollars*, Dep't of Fin. Servs., Mar. 21, 2013, *available at,* http://www.dfs.ny.gov/about/press2013/pr1303211.htm.

[8] *See* Z. Tracer & D. Beasley, *U.S. Regulators to Examine Forced-Place Insurance.* BLOOMBERG BUSINESSWEEK, Aug. 10, 2012, *available at,* http://www.bloomberg.com/news/2012-08-10/u-s-regulators-to-examine-forced-place-insurance.html.

insurance policies in Florida:[9]

## LPI Premium by State:  Florida Has Become Ground Zero

|     | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 |
|-----|------|------|------|------|------|------|------|------|
| FL  | 10.6% | 10.8% | 13.3% | 17.9% | 22.9% | 34.3% | 36.7% | 35.1% |
| CA  | 20.8% | 19.3% | 21.2% | 23.5% | 24.3% | 14.0% | 11.1% | 10.2% |
| TX  | 10.6% | 10.7% | 8.8% | 8.7% | 7.0% | 5.6% | 5.6% | 6.1% |
| NY  | 3.6% | 3.6% | 4.5% | 4.4% | 4.3% | 4.7% | 5.4% | 5.6% |
| IL  | 3.0% | 3.3% | 3.9% | 3.7% | 3.9% | 4.4% | 4.1% | 4.6% |
| NJ  | 2.9% | 2.7% | 2.9% | 2.7% | 2.7% | 2.9% | 3.4% | 4.0% |
| MI  | 4.2% | 4.4% | 4.4% | 5.8% | 3.6% | 2.7% | 2.2% | 2.0% |
| OH  | 3.6% | 3.8% | 3.5% | 2.7% | 2.4% | 2.2% | 2.3% | 2.9% |
| GA  | 3.4% | 3.2% | 3.2% | 2.4% | 2.3% | 2.3% | 2.3% | 2.3% |
| PA  | 2.6% | 2.6% | 2.7% | 1.8% | 1.8% | 1.8% | 1.7% | 1.8% |

CEJ LPI Presentation to NAIC                    15                                        August 9, 2012

11.    Defendants' self-dealing and collusion in the force-placed insurance market has caused substantial harm to the named Plaintiffs and the proposed class they seek to represent. This class action seeks to redress that harm on behalf of these classes of consumers and to recover all improper costs they have incurred related to the forced placement of insurance by the Chase Bank, Chase/CHF, Chase Home Finance, Chase Insurance, Assurant, ASIC, and Voyager.

## PARTIES

### Plaintiffs

12.    Plaintiff ALFRED HERRICK is a citizen of the State of Florida.  He is a natural person over the age of 21 and otherwise *sui juris*.

---

[9] This graph is taken from Mr. Birnbaum's presentation to the NAIC on August 9, 2012.  The presentation is available at:
http://www.naic.org/documents/committees_c_120809_public_hearing_lender_placed_insurance_presentation_birnbaum.pdf.

13.     Plaintiff SYDELL HERRICK is a citizen of the State of Florida.  She is a natural person over the age of 21 and otherwise *sui juris*.

14.     Plaintiff ALBERTO BARRETO is a citizen of the State of Florida.  He is a natural person over the age of 21 and otherwise *sui juris*.

15.     Plaintiff CAROL LYNN UPSHAW is a citizen of the State of Georgia.  She is a natural person over the age of 21 and otherwise *sui juris*.

16.     Plaintiff SALVATORE SACCOCCIO is a citizen of the State of Florida.  He is a natural person over the age of 21 and otherwise *sui juris*.

**Defendants**

17.     Defendant ASSURANT, INC. is a Delaware corporation with its principal office in New York, New York.  Assurant participates in the force-placed insurance market through its trade name, Assurant Specialty Property, and its business strategy "is to pursue long term growth in lender placed homeowner's insurance . . . . The largest product line within Assurant Specialty Property is homeowners insurance consisting principally of fire and dwelling hazard insurance offered through [Assurant's] lender placed program." [10]

18.     Upon information and belief, Assurant owns the "Assurant Specialty Property" trade name and allows its subsidiaries (including ASIC and Voyager) to operate their force-placed insurance business under that name.

19.     Defendant AMERICAN SECURITY INSURANCE COMPANY is a Delaware corporation and an indirect subsidiary of Assurant, writing force-placed insurance policies in all fifty states and the District of Columbia with its principal address in Atlanta, Georgia.  American Security often operates under the trade name "Assurant Specialty Property."  American Security

---

[10] *See* Assurant Form 10-K for the fiscal year ending December 31, 2011, at 5, *available at,* http://www.sec.gov/Archives/edgar/data/1267238/000119312512075371/d257568d10k.htm.

contracts with the lenders to act as a force-placed insurance vendor.  Its duties include, but are not limited to, tracking loans in their mortgage portfolio, handling all customer service duties related to force-placed insurance, and securing force-placed insurance policies on properties when a borrower's insurance has lapsed.

20.     Upon information and belief, American Security passes much of its profits from force-placed insurance to its corporate parent, Assurant.

21.     Defendant VOYAGER INDEMNITY INSURANCE COMPANY is a surplus-line insurance company writing force-placed insurance policies in the State of Florida, with its principal address in Atlanta, Georgia.  It is an indirect affiliate of Assurant and often markets its services under the Assurant Specialty Property service mark.  Upon information and belief, Voyager passes much of its profits from force-placed insurance to its corporate parent, Assurant.

22.     Defendant CHASE HOME FINANCE, LLC was a Delaware limited liability company that serviced mortgage loans originated or owned by Chase Bank including residential mortgage loans.  Chase Home Finance was registered to do business in the State of Florida as a foreign corporation.  On May 17, 2011, it filed an Application for Withdrawal of Authority to Transact Business in Florida.  By doing so, it authorized the Florida Department of State, as its agent, to accept service with respect to any cause of action arising during the time it was authorized to operate in Florida.  On or about May 1, 2011, Chase Home Finance merged into Chase Bank.  Notwithstanding this merger, this suit is brought directly against Chase Home Finance, LLC (through its successor in interest – Chase/CHF) pursuant to section 607.1106(1)(c) and (d), Florida Statutes.[11]

---

[11] Section 607.1106(1), Florida Statutes, provides, *inter alia*, that: "When a merger becomes effective:
(c)   The surviving corporation shall thenceforth be responsible and liable for all the

23.     Defendant JP MORGAN CHASE BANK, N.A. is a national banking association insured by the Federal Deposit Insurance Corporation ("FDIC"), and is a direct, wholly-owned subsidiary of JP Morgan Chase & Company – a financial holding company headquartered in New York City, New York.   The cause of action for a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") contained herein is not alleged against Chase Bank, individually.   The FDUTPA claim is alleged against Chase/CHF, as successor in interest to Chase Home Finance.

24.     Chase Home Finance violated FDUTPA and the common law of Florida, and is named as a Defendant because the claims arose prior to its merger with Chase Bank, as alleged below.

25.     As a result of the merger, pursuant to section 607.1106(1), Florida Statutes, Chase/CHF is liable for the conduct of Chase Home Finance at issue in this Complaint. Chase/CHF is named in its capacity as a "successor in interest" to Chase Home Finance.   The claims made against Chase/CHF as successor in interest are not claims made against Chase Bank individually.

26.     Defendant CHASE INSURANCE AGENCY, INC. is an affiliate of Chase Bank. Chase Insurance provides broker services only for Chase Bank and its affiliates, and consequently is the captive insurance broker for Chase Bank.   Upon information and belief, Chase Insurance performs no functions related to the procurement of force-placed insurance coverage for individual borrowers and yet collects a "commission" tied to a percentage of the cost of each force-placed insurance premium.

---

liabilities and obligations of each corporation party to the merger;
    (d)  Any claim existing or action or proceeding pending by or against any corporation party to the merger may be continued as if the merger did not occur or the surviving corporation may be substituted in the proceeding for the corporation which ceased existence . . . ."

## JURISDICTION AND VENUE

27.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.).

28.     Plaintiffs are citizens of the states of Florida and Georgia.  Defendants are citizens of various other states but are registered to do business in the aforementioned states. The amount in controversy exceeds $5,000,000 and there are at least one hundred members of the putative class.

29.     This Court has subject-matter jurisdiction over Plaintiffs' claims arising under the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq.*, according to the statute's jurisdictional statement, 12 U.S.C. § 1975.

30.     This Court has jurisdiction over Defendants because they are foreign corporations authorized to conduct business in Florida, are doing business in Florida and have registered with the Florida Secretary of State, or do sufficient business in Florida, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and service of mortgages or other lending services and insurance policies in Florida.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

31.     In addition, this Court has subject-matter jurisdiction under CAFA because the amount in controversy exceeds $5 million and diversity exists between the Plaintiffs and the Defendants. 28 U.S.C. § 1332(d)(2). Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class

11

members are aggregated.  28 U.S.C. § 1332(d)(6).

32.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendants transact business and may be found in this District.  Venue is also proper here because at all times relevant hereto, most Plaintiffs resided in the Southern District of Florida and a substantial portion of the practices complained of herein occurred in the Southern District of Florida.

33.     All conditions precedent to this action have occurred, been performed, or have been waived.

## FACTUAL ALLEGATIONS

34.     Permitting a lender to forcibly place insurance on a mortgaged property and charge the borrower the full cost of the premium is neither a new concept nor a term undisclosed to borrowers in mortgage agreements.  The standard form mortgage agreements used by Chase Bank, Chase/CHF, and Chase Home Finance include a provision requiring the borrower to maintain hazard insurance coverage, flood insurance coverage if the property is located in a Special Flood Hazard Area as determined by the Federal Emergency Management Agency, and wind insurance on the property securing the loan, and in the event the insurance lapses, permit the lender to obtain force-placed coverage and charge the premiums to the borrower rather than declare the borrow in default.

35.     What is unknown to borrowers and not disclosed in the mortgage agreements is that the Chase Defendants have exclusive arrangements with Assurant and its affiliates, ASIC and Voyager, to manipulate the force-placed insurance market and artificially inflate premiums.  The premiums are inflated to provide Chase Insurance (and subsequently the Chase Defendants) with kickbacks disguised as "commissions" or to provide the lender or servicer with lucrative reinsurance arrangements as well as to include unmerited charges.  The borrower is then forced

to pay the inflated premiums.

### The Force-Placed Insurance Scheme

36.     The Assurant Defendants have exclusive arrangements with the Chase Defendants to monitor their mortgage portfolios and provide force-placed insurance.  In addition to the subsidized mortgage services they receive from the Assurant Defendants, the Chase Defendants and/or Chase Insurance are kicked back a percentage of the force-placed premium.  The Chase Defendants receive additional compensation through captive reinsurance arrangements.

37.     The scheme works as follows.   The Chase Defendants purchase master or "umbrella" insurance policies that cover the entire Chase portfolio of mortgage loans.   In exchange, the Assurant Defendants are given the exclusive right to force insurance on property securing a loan within the portfolio when the borrower's insurance lapses or the lender determines the borrower's existing insurance is inadequate.  Assurant and its affiliates monitor the Chase Defendants' entire loan portfolio for lapses in borrowers' insurance coverage.  Once a lapse is identified, either ASIC or Voyager sends notice to the borrower that insurance will be "purchased" and force-placed if the voluntary coverage is not continued.  If a lapse continues, the insurer notifies the borrower that insurance is being force-placed at his or her expense.

38.     No individualized underwriting ever takes place for the force-placed coverage. Insurance is automatically placed on the property and the premium charged to the borrower.  In many instances, the insurance lapse is not discovered for months or even years after the fact. Despite the absence of any claim or damage to the property during the period of lapse, retroactive coverage is placed on the property and the past premiums charged to the borrower.

39.     Once coverage is forced on the property, the Chase Defendants charge the borrower for the insurance premiums, which are either deducted from the borrower's mortgage

13

escrow account by Chase's exclusive force-placed insurance vendors, or added to the balance of the borrower's loan.[12] The borrower's escrow account is depleted irrespective of whether other escrow charges, such as property taxes, are also due and owing.

40.     The Chase Defendants pay the premiums to the insurers who then kick back a set percentage to Chase Insurance as a "commission."   Upon information and belief, Chase Insurance then shares a percentage of that payment with the lender or servicer, sometimes in the form of "soft dollar" credits.

41.     The money paid back to Chase Insurance is not given in exchange for any services provided by it; it is simply grease paid to keep the force-placed machine moving.  In an attempt to mask the kickback as legitimate, the insurer discloses to the borrower that Chase Insurance may receive compensation in connection with the force-placed policy.  In reality, however, no work is ever done by Chase Insurance to procure insurance for that particular borrower because the coverage comes through the master or umbrella policy already in place.

42.     Under this highly profitable force-placed insurance scheme, the Chase Defendants are incentivized to purchase and force place insurance policies with artificially inflated premiums on a borrowers' properties because the higher the cost of the insurance policy, the higher the kickback.

43.     The Assurant and Chase Defendants also enter into agreements for ASIC or Voyager to provide servicing activities on the Chase Defendants' entire loan portfolio at below cost.  The servicing costs are added into the force-placed premiums which are then passed on to the borrower.  The insurers are able to provide these services at below cost because of the enormous profits they make from the hyper-inflated premiums charged for force-placed

---

[12] On some occasions, when a borrower does not have an escrow account, the lender creates an escrow account with a negative balance and charges the borrower to bring the balance to zero.

insurance. However, because insurance-lapsed mortgaged property comprises only 1-2% of the lenders' total mortgage portfolio, the borrowers who pay these premiums unfairly bear the entire cost to service the entire loan portfolio.

44.     In addition, the Assurant Defendants enter into essentially riskless "captive reinsurance arrangements" with the Chase Defendants to "reinsure" the property insurance force-placed on borrowers. A recent *American Banker* article explained this reinsurance problem:

> JPMorgan and other mortgage servicers reinsure the property insurance they buy on behalf of mortgage borrowers who have stopped paying for their own coverage. In JPMorgan's case, 75% of the total force-placed premiums cycle back to the bank through a reinsurance affiliate. This has raised further questions about the force-placed market's arrangements. . . .
>
> Over the last five years, Chase has received $660 million in reinsurance payments and commissions on force-placed policies, according to New York's DFS. . . .
>
> Of every hundred dollars in premiums that JPMorgan Chase borrowers pay to Assurant, the bank ends up keeping $58 in profit, DFS staff asserted. The agency suggested the bank's stake in force-placed insurance may encourage it to accept unjustifiably high prices by Assurant and to avoid filing claims on behalf of borrowers, since that would lower its reinsurer's returns.
>
> The DFS staff also questioned the lack of competition in the industry, noting that Assurant and QBE have undertaken acquisitions that give them long-term control of 90% of the market. Further limiting competition are the companies' tendency to file identical rates in many states, Lawsky and his staff argue.

J. Horwitz, *Chase Reinsurance Deals Draw New York Regulator's Attacks*, AM. BANKER, May 18, 2012, *available at* http://www.americanbanker.com/issues/177_97/chase-reinsurance-deals-regulator-attack-1049460-1.html.

45.     Indeed, Banc One Insurance Company, a captive reinsurance affiliate of Chase Bank, has "made approximately $600 million nationally since 2006 through reinsuring the insurance ASIC placed on homes securing JP Morgan Chase's mortgage loan portfolio. These

reinsurance agreements could reincentivize higher premium rates." *See* Assurant & NYDFS Consent Order, Mar. 21, 2013, at 6.

46.     The Chase Defendants may also overcharge borrowers by disregarding the Standard Mortgage Clause or the Lender's Loss Payable Endorsement ("LLPE") in the standard form mortgage agreement. Either of these clauses typically protects the lender for a period of at least ten days after the termination of the homeowner's voluntary insurance policy. Force-placed policies, however, take effect on the date of termination, and "double-cover" the property unnecessarily during the period covered by the LLPE or Standard Mortgage Clause. This means the borrower is charged for coverage for which the lender or servicer has no exposure.

47.     Ultimately, it is the unsuspecting borrower who suffers the consequences of these unconscionable practices.[13]

**The Plaintiffs**

48.     The actions and practices described above are unconscionable and undertaken in bad faith with the sole objective to maximize profits. Borrowers who for whatever reason have stopped paying for insurance or are under-insured on mortgaged property are charged hyper-inflated and illegitimate noncompetitive "premiums" for force-placed insurance. These premiums are inflated to include undisclosed kickbacks to the Defendants or their affiliates (who, as described above, perform little to no functions related to the force-placement of the individual policies), as well as the cost of captive reinsurance arrangements and administrative services.

49.     Plaintiffs here do not challenge the Chase Defendants' right to force place insurance in the first instance. They challenge Defendants' manipulation of the force-placed

---

[13] Furthermore, when the cost of the high-priced premium is added by the Defendants to a homeowner's mortgage balance, it thereby increases the interest paid over the life of the loan by the homeowner to the lender.

insurance market with an eye toward artificially inflating premiums and placing unnecessary coverage, which the Chase Defendants purchase from the Assurant Defendants and then choose to pass on to the borrower.   This action is brought to put an end to Defendants' exclusive, collusive, and uncompetitive arrangements, and to recover for Plaintiffs the excess amounts charged to them beyond the true cost of insurance coverage.

### A. Plaintiffs Alfred and Sydell Herrick

50.     On May 23, 2008, Alfred and Sydell Herrick obtained a $372,000.00 loan from Chase Bank, secured by a mortgage on real property located in Golden Beach, Florida.

51.     The Herricks' mortgage agreement provides:

> **5. Property Insurance.**   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which the Lender requires insurance.   The insurance shall be maintained in the amounts … and for the periods that Lender requires.
>
> \*\*\*
>
> If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.   Lender is under no obligation to purchase any particular type or amount of coverage.   Therefore, such coverage shall cover Lender, but might or might not protect Borrower … against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.    Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained.

52.     From the inception of the mortgage until in or around October 2011, the Herricks maintained in full force and effect the insurance required by the mortgage contract with Tower Hill Insurance Group.

53.     On October 13, 2011, two years after entering the mortgage contract, the Herricks received a notice purportedly from Chase Bank indicating it did not have current proof of the Herricks' windstorm insurance.   The notice stated that Chase Bank would purchase wind

insurance for the Herricks' property, charge their escrow account for the premiums,[14] and increase their monthly mortgage payments.  This notice also indicated that an "affiliate of Chase" would receive an economic benefit as a result of the forced placement of the insurance.

54.     Chase Bank forced a surplus-line wind insurance policy issued by Voyager that had a one-year policy period beginning on August 8, 2011.  The annual cost of the insurance purchased by Chase Bank was $54,142.56, almost eleven times the amount of the Citizens Property Insurance ("Citizens") policy that the Herricks ultimately obtained.  At the time Chase Bank force-placed the policy, the Herricks owed approximately $352,000 on the mortgage.  The wind insurance policy provided coverage in the amount of $1,435,000.00.

55.     In November 2011, the Herricks obtained voluntary wind insurance with Citizens and provided proof thereof to Chase Bank.  The annual premium for the Citizens wind insurance policy was $5,007.00.

56.     On December 12, 2011, the Herricks received a notice from Chase Bank charging $15,106.00 for the approximate three-month "lapse" in wind insurance.  The charges for the force-placed insurance were added to the Herricks' principal mortgage balance as an "Escrow Advanced Balance" and increased their monthly mortgage payment.  The Chase Defendants maintain that the Herricks currently owe these charges.

57.     Chase Bank never disclosed that the premium's price included costs for kickbacks and unearned commissions, the offset of administrative costs performed by the vendor, and a captive reinsurance arrangement.

58.     There are no material differences between these Defendants' actions and practices directed to the Herricks and their actions and practices directed to the Class.

---

[14] The notice also indicated Chase Bank would unilaterally open an escrow account if the borrower did not have one.

**B.**   **Plaintiff Alberto Barreto**

59.     In 2004, Plaintiff Alberto Barreto obtained a loan from Chase Manhattan Mortgage Corporation secured by a mortgage on real property in Florida.   Chase Manhattan Mortgage Corporation merged with Chase Home Finance in 2005, and all loans and assets in the name of Chase Manhattan Mortgage Corporation were transferred to Chase Home Finance at that time.   The mortgage loan was serviced by Chase Home Finance.

60.     Mr. Barreto's mortgage agreement included the same language as was set forth in the Herricks' agreement, which is quoted above in paragraph 51 of this complaint.

61.     From the inception of the mortgage until in or around September 2010, Mr. Barreto maintained in full force and effect the insurance required by the mortgage contract.   In August 2010, Mr. Barreto's insurance company at that time, Citizens, inspected Mr. Barreto's home and noted that the roof had a "rusty valley."   Citizens requested that Mr. Barreto have the valley fixed and provide them documentation upon completion.   Mr. Barreto immediately began looking for a contractor to fix his roof.

62.     In September 2010, Mr. Barreto's insurance policy with Citizens expired, and Citizens chose not to renew the policy because the valley had not yet been fixed.

63.     Mr. Barreto continued his attempts at having his roof fixed and the project was ultimately completed in December 2010.

64.     On October 8, 2010, Mr. Barreto received a notice purportedly from Chase Home Finance indicating that it did not have current proof of Mr. Barreto's wind insurance.

65.     On November 7, 2010, Mr. Barreto received a second notice informing him that if he did not provide proof of his wind insurance, Chase Home Finance would purchase wind insurance for his home and charge the premium to his escrow account or increase his monthly

19

mortgage payments. This notice also indicated that an "affiliate of Chase" would receive an economic benefit as a result of the force-placement of the insurance.

66.     On December 7, 2010, Mr. Barreto's roof repairs were completed and he signed a new wind insurance policy with Citizens effective December 26, 2010. The total annual premium for that policy was approximately $2,400. Mr. Barreto's wind insurance had lapsed for approximately three months.

67.     On December 17, 2010, Mr. Barreto received a third notice purportedly from Chase Home Finance that informed him that insurance had been purchased for him and retroactively placed. Accompanying this letter was a wind insurance policy from surplus-line insurer, Voyager. The force-placed wind policy covered a one-year period from September 20, 2010 to September 20, 2011.

68.     The annual cost of the insurance purchased by Chase Home Finance was approximately $11,100, nearly five times the amount of the Citizens policy that Mr. Barreto had just acquired. Moreover, at the time Mr. Barreto's mortgage balance was approximately $81,000 – the cost of the force-placed insurance policy added to his mortgage equaled nearly 14% of his remaining principal balance.[15]

69.     Chase Home Finance represented to Mr. Barreto that the force-placed insurance's high cost was due to it having been issued automatically without evaluating the risk of his property, despite knowing at that time that there had been no claims made by Mr. Barreto for damage to the property within that three-month time period.

70.     Chase Home Finance never disclosed that the premium's price included costs for the kickbacks and unearned "commissions," the offset of administrative costs performed by the

---

[15] In addition, the wind coverage amount that was purchased for Mr. Barreto was for over $295,000, despite Mr. Barreto only owing the approximate $81,000 on his mortgage balance.

vendor, and/or a captive reinsurance arrangement.

71.     Mr. Barreto provided proof to Chase Home Finance of his Citizens wind insurance policy and was ultimately charged almost $2,800 for the approximate three-month lapse.

72.     The charges for the force-placed insurance were added to Mr. Barreto's monthly mortgage statement and increased his payment.  Mr. Barreto paid these charges.

73.     There are no material differences between these Defendants' actions and practices directed to Mr. Barreto and their actions and practices directed to the Class.

**C.     Plaintiff Carol Lynn Upshaw**

74.     In 2006, Plaintiff Carol Lynn Upshaw obtained a loan secured by a mortgage on real property in Seacrest, Florida from Primary Capital Advisors LC.

75.     The mortgage loan was serviced by Chase Home Finance and the mortgage has been assigned to Chase Bank.

76.     Ms. Upshaw's mortgage agreement included the same language as was set forth in the Herricks' agreement, which is quoted above in paragraph 51 of this complaint.

77.     In May 2011, the Chase Defendants forced surplus-line wind insurance upon Ms. Upshaw's property.  The force-placed wind policy issued by Voyager was retroactive for a one-year period from February 16, 2010 to February 16, 2011.  The policy premium was $24,493.88.

78.     In June 2011, the Chase Defendants forced another wind insurance policy upon Ms. Upshaw's property.  The force-placed policy issued by Voyager was retroactive for a one-year period from February 16, 2011 to February 16, 2012.  The policy premium was $24,562.24.

79.     Ms. Upshaw did not receive any of the notices associated with the force-placed insurance until June 2011, at which time she immediately procured a policy from Citizens at an annual premium of approximately $1,800.

80.     The annual cost of the Voyager wind insurance policy purchased by the Chase Defendants was approximately ten times the amount of the Citizens policy that Ms. Upshaw acquired.

81.     The Chase Defendants never disclosed that the premium's price included costs for the kickbacks and unearned "commissions," the offset of administrative costs performed by the vendor, and the captive reinsurance arrangement.

82.     The charges for the force-placed insurance were added to Ms. Upshaw's monthly mortgage statement and resulted in an escrow deficiency.  The Chase Defendants maintain that Ms. Upshaw currently still owes these charges and is currently requiring her to repay them.

83.     There are no material differences between these Defendants' actions and practices directed to Ms. Upshaw and their actions and practices directed to the Class.

**D.      Plaintiff Salvatore Saccoccio**

84.     In 1997, Plaintiff Salvatore Saccoccio obtained a loan from Great Western Bank secured by a mortgage on real property in Florida. Great Western Bank was purchased by Washington Mutual Bank, which, in turn, was purchased by Chase Bank.

85.     Mr. Saccoccio's mortgage agreement provides as follows:

> **5. Hazard or Property Insurance**.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards, including floods or flooding, for which Lender requires insurance.  This insurance shall be maintained in the amounts and for the periods that Lender requires … If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with Paragraph 7.

***

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property ... then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.

86.     In July 2011, Mr. Saccoccio received a notice purportedly from Chase Bank that informed him that hazard insurance had been purchased and retroactively placed on his property. The force-placed policy issued by American Security had a one-year policy period from May 5, 2011 to May 5, 2012.

87.     The annual cost of the insurance purchased by Chase Bank was $7,011.55, approximately five times the amount of the Citizens' policy that Mr. Saccoccio ultimately obtained. Moreover, at the time Mr. Saccoccio's mortgage balance was approximately $27,000 – the cost of the annual force-placed insurance policy equaled over 25% of his remaining principal balance.

88.     Chase Bank never disclosed that the premium's price included costs for the kickbacks and unearned commissions, the offset of administrative costs performed by the vendor, and a captive reinsurance arrangement.

89.     Mr. Saccoccio obtained insurance from Citizens and provided proof thereof to Chase Bank and was ultimately charged $1,339.04 for the approximate two-month "lapse."

90.     The charges for the force-placed insurance were added to Mr. Saccoccio's monthly mortgage statement and increased his payment. Mr. Saccoccio has paid and continues to pay these charges or would otherwise be in default.

91.     There are no material differences between these Defendants' actions and practices directed to Mr. Saccoccio and their actions and practices directed to the Class.

## CLASS ALLEGATIONS

### A.    Class Definitions

92.    Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal

Rules of Civil Procedure on behalf of themselves and all other persons similarly situated.

Plaintiffs seek to represent the following classes:

Nationwide class:

> All borrowers who, within the applicable statutes of limitation,
> were charged for a force-placed hazard and/or wind insurance
> policy placed on property through the Chase Defendants and/or
> these companies' affiliates, entities, or subsidiaries.   Excluded
> from this class are Defendants, their affiliates, subsidiaries, agents,
> board members, directors, officers, and/or employees

Florida Subclass as to Count V – Florida Deceptive and Unfair Practices Act:

> All borrowers who, within the applicable statutes of limitation,
> were charged for a force-placed hazard and/or wind insurance
> policy placed on property located within the State of Florida,
> through the Chase Defendants and/or these companies' affiliates,
> entities, or subsidiaries. Excluded from this class are Defendants,
> their affiliates, subsidiaries, agents, board members, directors,
> officers, and/or employees.

93.    Plaintiffs reserve the right to modify or amend the definitions of the proposed

classes before the Court determines whether certification is appropriate.

94.    Defendants subjected Plaintiffs and the respective Class members to the same

unfair, unlawful, and deceptive practices and harmed them in the same manner.

### B.    Numerosity

95.    The proposed classes are so numerous that joinder of all members would be

impracticable.  Defendants sell and service millions of mortgage loans and insurance policies in

the state of Florida, as well as nationwide.  The individual class members are ascertainable, as

the names and addresses of all class members can be identified in the business records

maintained by Defendants.  The precise number of class members for each class numbers at least

in the thousands and can only be obtained through discovery, but the numbers are clearly more

than can be consolidated in one complaint such that it would be impractical for each member to

bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the

action as a class action.

### C.   <u>Commonality</u>

96.    There are questions of law and fact that are common to all Plaintiffs' and class

members' claims.  These common questions predominate over any questions that go particularly

to any individual member of the Class.  Among such common questions of law and fact are the

following:

- a.  Whether Defendants charged borrowers for unnecessary insurance coverage including, but not limited to, insurance coverage that exceeded the amount required by law or the borrowers' mortgages and/or backdated coverage that covered periods of time for which Defendants had no risk of loss;

- b.  Whether the Chase Defendants breached the mortgage contracts with Plaintiffs and the Classes by charging them for force-placed insurance that included illegal kickbacks (including unwarranted commissions and reinsurance payments) and by charging Plaintiffs and the Class for servicing their loans;

- c.  Whether Defendants have been unjustly enriched at the expense of the Plaintiffs and the Class;

- d.  Whether the Chase Defendants breached the implied covenant of good faith and fair dealing by entering into exclusive arrangements with selected insurers and/or their affiliates, which resulted in inflated insurance premiums being charged to Plaintiffs and the Class;

- e.  Whether Defendants manipulated forced-placed mortgage purchases in order to maximize their profits to the detriment of Plaintiffs and the Class;

- f.  Whether Chase Insurance performs any work or services in exchange for the "commissions" or other "compensation" they collect;

- g.  Whether the premiums charged are inflated to include kickbacks and

unwarranted "commissions;"

h.  Whether the premiums charged are inflated to include charges for bundled administrative services that the vendors provide to the lenders or mortgage servicers, and which are not chargeable to Plaintiffs and the Class under the terms of their mortgages;

i.  Whether the premiums charged are inflated to include the cost of a captive reinsurance arrangement;

j.  Whether the Chase Defendants violated the federal Truth in Lending Act ("TILA") by conditioning their extensions of credit on the purchase of insurance through an affiliate, in direct contravention of the anti-coercion disclosures included in borrowers' mortgages;

k.  Whether the Chase Defendants violated TILA by failing to disclose kickbacks charged to class members in their mortgages;

l.  Whether the Chase Bank violated the anti-tying provisions of the federal Bank Company Holding Act ("BHCA") by tying their agreement to purchase insurance on behalf of class members, and their continuing extensions of credit, on class members agreeing that they could purchase insurance through their affiliate;

m.  Whether an objective consumer would be deceived by Chase Bank's and Chase Home Finance's arrangement, which incentivizes Defendants to charge inflated and unnecessary fees for force-placed insurance, and therefore violates FDUTPA;

n.  Whether the Assurant, ASIC, and Voyager intentionally and unjustifiably interfered with the Plaintiffs' and the Class's rights under the mortgage contracts by paying kickbacks to the lenders/mortgage servicers or their affiliates and by charging for administering the loan portfolio; and

o.  Whether Plaintiffs and the Class Members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

**D.    Typicality**

97.    Each Plaintiff is a member the Class he or she seeks to represent.  Plaintiffs'

claims are typical of the respective classes' claims because of the similarity, uniformity, and

common purpose of the Defendants' unlawful conduct.  Each class member has sustained, and

will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants'

wrongful conduct.

### E.   Adequacy of Representation

98.     Each Plaintiff is an adequate representative of the class he or she seeks to represent and will fairly and adequately protect the interests of that class.   Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.   There is no hostility between Plaintiffs and the unnamed class members.   Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

99.     To prosecute this case, Plaintiffs have chosen the undersigned law firms, which are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

### F.   Requirements of Fed. R. Civ. P. 23(b)(3)

100.     The questions of law or fact common to Plaintiffs' and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.   All claims by Plaintiffs and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

101.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

102.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.**   **Superiority**

103.   A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

      (a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

      (b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.  As a result, individual class members have no interest in prosecuting and controlling separate actions;

      (c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

      (d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

      (e) Individual suits would not be cost effective or economically maintainable as individual actions; and

      (f) The action is manageable as a class action.

**H.**   **Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

104.   Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

105.   Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**COUNT I**

**BREACH OF CONTRACT**
**(Against the Chase Defendants)**

106.   Plaintiffs Alberto Barreto, Carol Lynn Upshaw, Salvatore Saccoccio, Alfred

Herrick, and Sydell Herrick, re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

107.   Plaintiffs and all similarly situated class members have mortgages that are owned and/or serviced by the Chase Defendants.

108.   Plaintiffs and these class members' mortgages are written on uniform mortgage forms and contain substantially similar provisions regarding force-placed insurance requirements and its placement by the Chase Defendants.   The force-placed provisions from Plaintiffs' mortgages are set forth above in paragraphs 51 and 85.

109.   Plaintiffs' mortgages require that they maintain insurance on their properties and provide that if they fail to do so, then the lender may obtain insurance coverage to protect its interest in the property, "force place" the coverage, and charge the borrower the cost.

110.   The Chase Defendants charge borrowers premiums that include unearned "commissions" or kickbacks, reinsurance premiums, as well as bundled administrative and other impermissible costs.   These costs are not costs of coverage, and are not applied to protecting the Chase Defendants' rights or risk in the collateral for borrowers' mortgage loans.   The Chase Defendants breached the mortgage agreements by, among other things, charging Plaintiffs and class members the amounts beyond the actual cost of coverage.

111.   The Chase Defendants have also breached Plaintiffs' and the Class members' mortgage agreements by charging Plaintiffs and the Class for excess and unnecessary force-placed insurance coverage, including retroactive coverage, as such coverage does not protect the Chase Defendants' rights in their collateral or cover their risk.

112.   Plaintiffs and the Class members have suffered damages as a result of the Chase Defendants' breaches of contract.

29

**WHEREFORE**, Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks, on behalf of themselves and all similarly situated Class members, seek compensatory damages resulting from the Chase Defendants' breach of contract, as well as injunctive relief preventing it from further violating the terms of the mortgages.  Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against the Chase Defendants)

113.   Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

114.   A covenant of good faith and fair dealing is implied in every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

115.   Where an agreement affords one party the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

116.   Plaintiffs' and the Class Members' mortgage contracts allow the Chase Defendants to force place insurance coverage on the borrower in the event of a lapse in coverage, but do not define standards for selecting an insurer or procuring an insurance policy.

117.   The Chase Defendants are afforded substantial discretion in force-placing insurance coverage.  They are permitted to unilaterally choose the company from which they purchase force-placed insurance and negotiate a price for the coverage they procure.  The servicers have an obligation to exercise the discretion afforded them in good faith, and not capriciously or in bad faith.  Plaintiffs do not seek to vary the express terms of the mortgage

contract, but only to insure that the Defendants exercise their discretion in good faith.

118.    The Chase Defendants breached the implied covenant of good faith and fair dealing by, among other things:

> (a)   Manipulating the force-placed insurance market by selecting insurers (here, Assurant and its affiliates) that will artificially inflate premiums to include kickbacks to Chase Insurance and issue excess insurance coverage not necessary to cover the Chase Defendants' risk, and by failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby insurance coverage is routinely purchased from Assurant and its affiliates without seeking a competitive price;

> (b)   Exercising their discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting force-placed insurance policies with artificially inflated premiums to maximize their own profits;

> (c)   Assessing inflated and unnecessary insurance policy premiums against Plaintiffs and the Class and misrepresenting the reason for the cost of the policies;

> (d)    Allowing Chase Insurance to collect a percentage of the premiums charged to Plaintiffs and the Class as a kickback and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

> (e)   Charging Plaintiffs and the Class for commissions when the insurance is prearranged and no commission is due;

> (f)   Charging Plaintiffs and the Class the cost of having the vendor perform its obligation of administering its mortgage portfolio, which is not properly chargeable to Plaintiffs or the Class;

> (g)   Force placing insurance coverage in excess of what is required by law or borrowers' mortgage agreements;

> (h)   Force placing insurance coverage in excess of that required to cover the lender's interest in the property, or the balance owed on the loan; and

> (i)   Charging Plaintiffs and the Class an inflated premium due to the captive reinsurance arrangement.

119.    As a direct, proximate, and legal result of the aforementioned breaches of the

covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.

**WHEREFORE**, Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks, on behalf of themselves and similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.   Plaintiffs also seek compensatory damages resulting from the Chase Defendants' breaches of their duties.   Plaintiffs further seek all relief deemed appropriate by this Court, including attorneys' fees and costs.

## COUNT III

### UNJUST ENRICHMENT
### (All Plaintiffs against the Chase Defendants and Chase Insurance)[16]

120.   Plaintiffs re-allege and incorporate paragraphs 1-105 above as if fully set forth herein and further allege as follows.

121.   The Chase Defendants and Chase Insurance received from Plaintiffs and Class members benefits in the form of inflated insurance premiums related to force-placed insurance policies, unwarranted kickbacks and commissions, captive reinsurance arrangements, and subsidized loan servicing costs.

122.   These Defendants entered into an agreement whereby the insurance vendor— here, Assurant's subsidiaries, American Security and Voyager—would provide force-placed insurance policies to the Chase Defendants for the portfolio of loans monitored on behalf of the Chase Defendants.  The Chase Defendants would then charge Plaintiffs and the Class premiums that had been artificially inflated to include costs not properly chargeable to the borrower.  The force-placed policies imposed on borrowers were therefore far more expensive than those available to borrowers in the open market that provide even more coverage.

---

[16] Plaintiffs plead their unjust enrichment claim against the Chase Defendants in the alternative to their contractual claims against them.

123.   These Defendants also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' mortgage agreement, and in excess of that required to protect the lender's interest in its collateral.

124.   The Assurant Defendants paid and collected significant monies in premiums, kickbacks, commissions, and reinsurance tied directly to the cost of the force-placed insurance premium (as a percentage).  Commissions or kickbacks were paid directly to Chase Insurance and/or the Chase Defendants in order to be able to exclusively provide force-placed insurance policies.  The Assurant Defendants were mere conduits for the delivery of the kickbacks, "commissions," and other charges to Chase Insurance and the Chase Defendants.

125.   These payments directly benefitted Chase Insurance and the Chase Defendants and were taken to the detriment of the borrower.  The kickbacks and commissions, reinsurance arrangements, and subsidized costs were subsumed into the price of the insurance premium and ultimately paid by the borrower.  Therefore, these Defendants had the incentive to charge and collect unreasonably inflated prices for the force-placed policies.

126.   Further, the Chase Defendants received financial benefits in the form of increased interest income, duplicative insurance based upon the Lender Loss Payable Endorsement or the Standard Mortgage Clause, and/or "soft-dollar" credits.

127.   As a result, Plaintiffs and the Class have conferred a benefit on the Chase Defendants.

128.   These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

129.   These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which these

Defendants were unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, demand an award against Chase Insurance and the Chase Defendants in the amounts by which these Defendants have been unjustly enriched at Plaintiffs' and the Class Members' expense, and such other relief as this Court deems just and proper.

## COUNT IV

### UNJUST ENRICHMENT
### (All Plaintiffs against Assurant and American Security)

130.    Plaintiffs re-allege and incorporate paragraphs 1-105 above as if fully set forth herein and further allege as follows.

131.    The Assurant Defendants received from Plaintiffs and Class members benefits in the form of insurance premiums related to force-placed insurance policies.

132.    The Assurant Defendants paid significant monies to the Chase Defendants in kickbacks, commissions, and reinsurance tied directly to the cost of the force-placed insurance premium (as a percentage).    Commissions or kickbacks were paid directly to the Chase Defendants in order to be able to exclusively provide force-placed insurance policies and receive the corresponding insurance premiums.

133.    The Chase Defendants also collected premiums on force-placed policies that provided coverage in excess of that required by law or the borrowers' mortgage agreement, and in excess of that required to protect the lender's interest in its collateral.

134.    On information and belief, the Assurant Defendants deducted the excess premiums directly from borrowers' escrow accounts.    In the alternative, the Chase Defendants were mere conduits for the delivery of insurance premiums to the Assurant Defendants.

135.    As a result, Plaintiffs and the Class have conferred a benefit on the Assurant

Defendants.

136.   These Defendants had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

137.   These Defendants will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which these Defendants were unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated Class members, demand an award against the Assurant Defendants in the amounts by which these Defendants have been unjustly enriched at Plaintiff's and the Class Members' expense, and such other relief as this Court deems just and proper.

**COUNT V**

**VIOLATION OF THE FLORIDA DECEPTIVE
AND UNFAIR TRADE PRACTICES ACT
(Against Chase Home Finance and Chase/CHF)**

138.   Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

139.   FDUTPA, section 501.201, *et seq.*, Florida Statutes, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204, Fla. Stat.

140.   Plaintiffs and the Florida Subclass are "consumers" as that term is defined in section 501.203(7), Florida Statutes.

141.   Chase Home Finance and/or Chase/CHF have engaged in, and continue to engage in, unconscionable acts or practices and have engaged in unfair or deceptive acts in the conduct of their trade and/or commerce in the State of Florida.

142.   The policies, acts, and practices alleged herein were intended to result and did

35

result in the payment of inflated premiums for force-placed insurance by the above-named Plaintiffs and the Florida Subclass, which in turn were intended to generate unlawful or unfair compensation for Chase Home Finance and/or Chase/CHF.

143.    Specifically, Chase Home Finance and/or Chase/CHF had an exclusive relationship with its vendor and preferred insurance carrier, whereby it would pay unreasonable and inflated premiums for force-placed insurance policies, charge that amount to Plaintiffs and the Florida Subclass, and then receive compensation through either kickback or captive reinsurance arrangements based on a percentage of the insurance policy's premium.

144.    Chase Home Finance's and/or Chase/CHF's conduct of charging an inflated premium for their force-placed insurance to Plaintiffs and members of the Florida Subclass violates FDUTPA and was conceived, devised, planned, implemented, approved, and executed within the State of Florida, which has an interest in prohibiting violations of FDUTPA.

145.    These Defendants are not banks or savings and loan associations regulated by the Florida Office of Financial Regulation of the Financial Services Commission.  Further, neither entity is a bank or savings and loan association regulated by federal agencies.

146.    Plaintiffs and the Florida Subclass have sustained damages as a direct and proximate result of Chase Home Finance's and/or Chase/CHF's unfair and unconscionable practices.  Section 501.211(2), Florida Statutes, provides Plaintiffs and the Florida Subclass a private right of action against these Defendants and entitles them to recover their actual damages, plus attorneys' fees and costs.

147.    Plaintiffs and the Florida Subclass have suffered and will continue to suffer irreparable harm if these Defendants continue to engage in such deceptive, unfair, and unreasonable practices.

**WHEREFORE,** Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks on behalf of themselves and the Florida Subclass, demand judgment against Chase Home Finance and/or Chase/CHF for compensatory damages, pre and post judgment interest, attorneys' fees, injunctive and declaratory relief, costs incurred in bringing this action, and any other relief as this Court deems just and proper.

**COUNT VI**
**VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, _et seq._**
**(Against the Chase Defendants)**

148.    Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

149.    Plaintiffs' and the Class Members' mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of TILA, 15 U.S.C. § 1601, _et seq._, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

150.    The Chase Defendants are "creditors" as defined by TILA because they owned Plaintiffs' mortgages and changed the terms of the mortgages so as to create a new mortgage obligation, of which the Chase Defendants were the creditors.

151.    Pursuant to TILA, the Chase Defendants were required to accurately and fully disclose the terms of the legal obligations between the parties. _See_ 12 C.F.R. § 226.17(c).

152.    The Chase Defendants violated TILA, specifically 12 C.F.R. § 226.17(c), when they: (i) added force-placed insurance to Plaintiffs' mortgage obligations and failed to provide new disclosures; and (ii) failed at all times to disclose the amount and nature of the kickback, reinsurance, discount loan monitoring, and/or other profiteering involving the Chase Defendants and/or their affiliates as a result of the purchase of force-placed insurance.

37

153.    When the Chase Defendants changed the terms of Plaintiffs' mortgages to allow previously unauthorized kickbacks and insurance amounts in excess of the Chase Defendants' interests in the property, they changed the finance charge and the total amount of indebtedness, extended new and additional credit through force-placed insurance premiums, and thus created a new debt obligation.  Under TILA, the Chase Defendants were then required to provide a new set of disclosures showing the amount of the insurance premiums (*i.e.* finance charges) and all components thereof.  On information and belief, the Chase Defendants increased the principal amount under Plaintiffs' mortgages when they force-placed the insurance, which was a new debt obligation for which new disclosures were required.

154.    The Chase Defendants adversely changed the terms of Plaintiffs' loans after origination in order to allow their affiliate to receive a kickback on force-placed insurance premiums.  These kickbacks are not authorized in the mortgage in any clear and unambiguous way.    The Chase Defendants have never disclosed to borrowers the amount of the "commissions" or other unearned profits paid to their affiliate.

155.    The Chase Defendants also violated TILA by adversely changing the terms of Plaintiffs' loans after origination by requiring and threatening to force-place more insurance than necessary to protect their interest in the property securing the mortgages.

156.    Acts constituting violations of TILA occurred within one year prior to the filing of this Complaint, or are subject to equitable tolling because the Chase Defendants' kickback, reinsurance, and other unearned revenue-generating scheme was the subject of secret agreements among the Chase Defendants and their affiliates and was concealed from borrowers.

157.    Plaintiffs and Class Members have been injured and have suffered a monetary loss arising from the Chase Defendants' violations of TILA.

158.   As a result of the Chase Defendants' TILA violations, Plaintiffs and Class Members are entitled to recover actual damages and a penalty of $500,000.00 or 1% of these Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

159.   Plaintiffs and Class Members are also entitled to recovery of attorneys' fees and costs to be paid by the Chase Defendants, as provided by 15 U.S.C. § 1640(a)(3).

**WHEREFORE**, Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks, on behalf of all Class members similarly situated, seek a judgment in their favor against the Chase Defendants awarding actual damages and a penalty of $500,000.00 or 1% of the Chase Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), as well as of attorneys' fees and costs to be paid by the Chase Defendants, as provided by 15 U.S.C. § 1640(a)(3).

## COUNT VII

### TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Against Assurant, ASIC and Voyager)

160.   Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

161.   Plaintiffs and the Class members have advantageous business and contractual relationships with the Chase Defendants pursuant to the mortgage contracts.  Plaintiffs and the Class have legal rights under these mortgage contracts.  For example, Plaintiffs and the Class have a right not to be charged exorbitant premiums in bad faith for forced-place insurance.

162.   Assurant and its subsidiaries, ASIC and Voyager, have knowledge of the mortgage contracts and the advantageous business and contractual relationships between these Plaintiffs and the Chase Defendants.  Assurant, ASIC, and Voyager are not parties to the mortgage contracts, nor are they third-party beneficiaries of the mortgage contracts.  Further, Assurant, ASIC and Voyager do not have any beneficial or economic interest in the mortgage

contracts.

163.    Assurant, ASIC, and Voyager intentionally and unjustifiably interfered with Plaintiffs' and the Class's rights under the mortgage contracts, as described above, by, *inter alia*, entering into an exclusive relationship with the  Chase Defendants and their affiliate, Chase Insurance, whereby they provide compensation (kickbacks, reinsurance, and low cost services) to the Chase Defendants and Chase Insurance in exchange for the exclusive right to force-place inflated and unnecessary premiums which are purposefully and knowingly charged to Plaintiffs and the Class.

164.    Plaintiffs and the Class have been damaged as a result of the Assurant's, ASIC's, and Voyager's interference with their mortgage contracts by being charged bad faith, exorbitant, and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

**WHEREFORE**, Plaintiffs Barreto, Upshaw, Saccoccio, the Herricks, and all Class Members similarly situated seek a judgment in their favor against the Assurant, ASIC, and Voyager for the actual damages suffered by them as a result of their tortious interference. Plaintiffs also seek all costs of litigating this action, including attorneys' fees.

## COUNT VIII

### BREACH OF FIDUCIARY DUTY
### (Against the Chase Defendants)

165.    Plaintiffs Barreto, Upshaw, Saccoccio, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

166.    The Chase Defendants holds funds in escrow on behalf of borrowers whose mortgages they service.  These funds are designated for the purpose of paying insurance premiums as they come due, and any excess funds are to be returned to Plaintiffs and members

of the Class under the terms of the mortgage agreements.

167.    The Chase Defendants are in a fiduciary relationship with Plaintiffs because the Chase Defendants receive a greater economic benefit from these transactions than they would from a typical escrow transaction.  Specifically, the debtor-creditor relationship transformed into a fiduciary relationship when the Chase Defendants took it upon themselves to manage borrowers' escrow accounts and then withdrew money from borrowers' escrow accounts to pay force-placed insurance premiums.  The Chase Defendants violated their fiduciary duties when they arranged to receive unlawful kickbacks or other compensation under the kickback scheme, which is clearly a greater economic benefit than what was contemplated under the mortgages.

168.    The Chase Defendants breached their fiduciary duties to Plaintiffs and other members of the proposed class by: (1) not acting in borrowers' best interest when they profited from force-placed insurance policies that were purchased using escrow funds they held for the benefit of these Plaintiffs and Class members at the expense of Plaintiffs and Class members; and (2) not disclosing the kickback scheme to Plaintiffs and Class Members.

169.    These actions were undertaken by the Chase Defendants in bad faith for their own benefit and were not intended to benefit these Plaintiffs or other proposed Class members.

170.    As a direct result of the Chase Defendants' actions and subversion of Plaintiffs' interest to their own in reaping extravagant and outrageous fees, Plaintiffs and all others similarly situated have suffered injury in the form of unnecessary and inflated escrow charges and a loss of funds from their escrow accounts.

**WHEREFORE**, Plaintiffs and the proposed class are entitled to damages for the Chase Defendants' breaches of their fiduciary obligations and misappropriation of escrow funds.  In addition, Plaintiffs and the proposed class are entitled to punitive damages because the Chase

Defendants acted in bad faith in deliberate or reckless disregard of both their rights and the Chase Defendants' obligation to hold their escrow funds in trust.

## COUNT IX

### VIOLATION OF THE ANTI-TYING PROVISIONS OF THE BANK HOLDING COMPANY ACT, 12 U.S.C. §1972, *et seq.* (Against Chase Bank)

171.   Plaintiffs Barreto, Saccoccio, Upshaw, and the Herricks re-allege and incorporate paragraphs 1-105, above as if fully set forth herein and further allege as follows.

172.   Chase Bank's kickback scheme violates the anti-tying provisions of the BHCA, 12 U.S.C. § 1972, *et seq.*

173.   The BHCA, 12 U.S.C. § 1972(b), states that "a bank shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement . . . (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company."

174.   Chase Insurance is affiliated with Chase Bank.

175.   Chase Bank's purchase of insurance on borrowers' behalf is a service that Chase Bank offers to its borrowers.  To accept this service, borrowers must agree to pay commissions to Chase Insurance for unidentified services.

176.   Upon information and belief, Chase Bank, Chase Insurance, and Assurant and its subsidiaries entered into contractual arrangements under which Chase Insurance would act as the "broker" or "agent" for 100% of force-placed insurance policies purchased on behalf of Chase Bank's borrowers.  Under these agreements, Chase Insurance received a guaranteed commission

for every force-placed insurance policy procured on behalf of Chase Bank's borrowers equal to a set percentage of the premium for each policy.

177.   Chase Insurance does not engage in any insurance broker or agent services.  For example, it does not seek out competitive insurance policies from different insurance providers, but refers all force-placed insurance business to Assurant and its subsidiaries, including ASIC and Voyager.

178.   This is an unusual banking practice.   Chase Bank's exclusive agreement with Assurant and its subsidiaries obviates any opportunity for Chase Insurance to earn a commission.

179.   These practices are anti-competitive:

a.      Chase Bank refers all force-placed insurance business to Chase Insurance and guarantees Chase Insurance's commissions. The commissions paid are based on contracts between Chase Bank and Assurant and its subsidiaries - not on any services actually provided to Plaintiffs by Chase Insurance. Chase Insurance has no competitive incentive to provide any services for borrowers.

b.      Chase Bank sets the commission amount that Chase Insurance will receive. The substantial revenue that Assurant and its subsidiaries also receive in premiums from Chase Bank borrowers gives Assurant and its subsidiaries an incentive to agree to any commission rate that Chase Bank demands.

c.      Chase Bank's tying arrangement results in artificially inflated commissions. The commissions are a percentage of Assurant's and its subsidiaries' premiums.   Assurant and its subsidiaries provide more limited insurance policies than borrowers can obtain on the open market, but cost significantly more than other policies the borrowers would obtain on the open market.  Chase Bank's agreements allow Chase Insurance to receive more than twice the commission any other insurance agent could receive for procuring more limited insurance than any other insurance agent would procure.

d.      Unlike regular insurance agency arrangements, Chase Bank utilizes its power as borrowers' mortgage lender and/or servicer to guarantee payment of commissions.  Chase Bank withdraws insurance premiums and commissions directly from borrowers' escrow accounts to pay commissions to Chase Insurance.  If borrowers refuse to make increased

           payments to their escrow account, Chase Bank coerces them into doing so with negative credit reporting and, potentially, foreclosing on their homes. Thus, Chase Bank uses its power as borrowers' bank to steer commissions to itself through Chase Insurance.

       e.     Chase Bank's force-placed insurance arrangement usurps market share from other insurance agencies in favor of its own subsidiary, Chase Insurance. Force-placed insurance may be a more costly option than purchasing insurance on the open market, but it is a significantly easier and less demanding option. Hundreds of thousands of homeowners in the United States have allowed Chase Bank to purchase force-placed insurance on their property since 2008 alone, resulting in tens of millions of dollars in commissions being paid to Chase Insurance.

       f.     Chase Bank's exclusive purchase arrangement and kickback scheme artificially inflates the price of force-placed insurance and artificially increases commissions paid to Chase Bank's captive insurance agent. The artificially inflated price of Assurant's and its subsidiaries' force-placed insurance is only possible because Chase Bank refers 100% of its force-placed insurance business to them.   As one of the nation's largest mortgagees and mortgage servicers, Chase Bank's exclusive force-placed insurance referrals can and do substantially affect competitive incentives to reduce prices. This guarantees distorted commissions to Chase Insurance, whose commissions are a percentage of Assurant's and its subsidiaries' inflated premiums.

     180.    The "tied product" in this arrangement is Chase Insurance's "service" of acting as an insurance agent for force-placed insurance.

     181.    The "tying product" is Chase Bank's purchase of force-placed insurance for borrowers.  Chase Bank also ties its continued extension of credit to Plaintiffs' agreement to pay Chase Insurance's commissions.   Chase Bank would foreclose on Plaintiffs' homes if they refused to pay Chase Insurance's commissions after Chase Bank charged them to Plaintiffs' escrow accounts.

     182.    Chase Bank ties the procurement of insurance on borrowers' behalf to Chase Insurance's "service" as alleged above.

183.    Chase Bank benefits directly and indirectly from this tying arrangement. Chase Bank's own subsidiary, Chase Insurance, receives commissions on all force-placed insurance. Chase Insurance remits its profits to Chase Bank, whether through direct money transfers, indirect money transfers through Chase Bank's holding company, or "soft dollar" transfers.

184.    Plaintiffs and all others similarly situated have been damaged by Chase Bank's anti-competitive tying arrangement in that they have paid unwarranted commissions to Chase Bank through Chase Insurance.

**WHEREFORE**, Plaintiffs and the proposed class are entitled to three times the amount of damages sustained, and the cost of bringing this suit, including reasonable attorneys' fees pursuant to 12 U.S.C. § 1975.   Plaintiffs and the proposed class are further entitled to an injunction barring Chase Bank from continuing its unlawful conduct, including its exclusive purchasing arrangement with Assurant and its subsidiaries, as well as the kickback scheme with them.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs on behalf of themselves and all similarly situated individuals demand judgment against Defendants as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the Class and the Florida Subclass;

(2)    Enjoining Defendants from continuing the acts and practices described above;

(3)    Awarding damages sustained by Plaintiffs and the Class as a result of the Chase Defendants' breaches of the subject mortgage contracts and the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(4)      Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiffs and the Class, together with pre-judgment interest;

(5)      Awarding Plaintiffs and the Class costs and disbursements and reasonable allowances for the fees of Plaintiffs' and the Class's counsel and experts, and reimbursement of expenses;

(6)      Awarding Plaintiffs and the Florida Subclass damages, injunctive relief, declaratory relief, attorneys' fees, and costs under FDUTPA;

(7)      Awarding damages sustained by Plaintiffs and the Class as a result of Assurant's, ASIC's, and Voyager's tortious interference;

(8)      Awarding Plaintiffs and the Class three times the amount of damages sustained, and the cost of suit, including a reasonable attorney's fee pursuant to the Bank Holding Company Act, 12 U.S.C. § 1975;

(9)      Awarding actual damages and a penalty of $500,000.00 or 1% of Chase Bank's and Chase Home Finance's  net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), and attorneys' fees and costs, as provided by 15 U.S.C. § 1640(a)(3); and

(10)     Awarding such other and further relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

Respectfully submitted this 28th day of March 2013.

By: /s/ Adam M. Moskowitz

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Rachel Sullivan, Esq.<br>rs@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>**KOZYAK, TROPIN, &**<br>**THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone:  (305) 372-1800<br>Facsimile:    (305) 372-3508<br>*Counsel for Plaintiffs* | Aaron S. Podhurst, Esq.<br>apodhurst@podhurst.com<br>Peter Prieto, Esq.<br>pprieto@podhurst.com<br>Stephen F. Rosenthal<br>srosenthal@podhurst.com<br>John Gravante, III, Esq.<br>jgravante@podhurst.com<br>Matthew Weinshall<br>mweinshall@podhurst.com<br>**PODHURST ORSECK, P.A.**<br>City National Bank Building<br>25 West Flagler Street, Suite 800<br>Miami, Florida 33130<br>Telephone: 305-358-2800<br>Facsimile: 305-358-2382<br>*Counsel for Plaintiffs* |
| Lance A. Harke, P.A.<br>lharke@harkeclasby.com<br>Sarah Engel, Esq.<br>sengel@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone:    (305) 536-8220<br>Facsimile:    (305) 536-8229<br>*Counsel for Plaintiffs* | Jack Wagoner, III, Esq.<br>**WAGONER LAW FIRM, P.A.**<br>1320 Brookwood, Suite E<br>Little Rock, AR 72202<br>Telephone: (501) 663-5225<br>Facsimile: (501) 660-4030<br>jack@wagonerlawfirm.com<br>*Counsel for Plaintiffs* |

| | |
|---|---|
| Alexander P. Owings, Esq.<br>apowings@owingslawfirm.com<br>Steven A. Owings, Esq.<br>sowings@owingslawfirm.com<br>**OWINGS LAW FIRM**<br>1400 Brookwood Drive<br>Little Rock, AR 72202<br>Telephone: (501) 661-9999<br>Facsimile: (501) 661-8393<br>*Counsel for Plaintiffs* | Brent Walker, Esq.<br>Russell D. Carter, III<br>**CARTER WALKER PLLC**<br>2171 West Main, Suite 200<br>P.O. Box 628<br>Cabot, AR 72023<br>Telephone: (501) 605-1346<br>Facsimile: (501) 605-1348<br>bwalker@carterwalkerlaw.com<br>dcarter@carterwalkerlaw.com<br>*Counsel for Plaintiffs* |
| Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>*Counsel for Plaintiffs* | Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N.**<br>**GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiffs* |
| Roy E. Barnes, Esq.<br>John R. Bevis, Esq.<br>bevis@barneslawgroup.com<br>**BARNES LAW GROUP, LLC**<br>31 Atlanta Street<br>Marietta, GA 30060<br>Telephone: 770-227-6375<br>Facsimile: 770-227-6373<br>*Counsel for Plaintiffs* | Catherine E. Anderson, Esq.<br>canderson@gslawny.com<br>Oren Giskan, Esq.<br>ogiskan@gslawny.com<br>**GISKAN SOLOTAROFF ANDERSON**<br>**& STEWART LLP**<br>11 Broadway Suite 2150<br>New York, New York 10004<br>Telephone: 212-847-8315 |
| Albert L. Frevola, Jr., Esq.<br>afrevola@conradscherer.com<br>Gary B. Englander, Esq.<br>genglander@conradscherer.com<br>Ivan J. Kopas, Esq.<br>ikopas@conradscherer.com<br>Matthew Seth Sarelson, Esq.<br>msarelson@conradscherer.com<br>**CONRAD & SCHERER, LLP**<br>P. O. Box 14723<br>Fort Lauderdale, Florida 33302 | Brian J. Stack, Esq.<br>bstack@stackfernandez.com<br>Sammy Epelbaum, Esq.<br>sepelbaum@stackfernandez.com<br>**STACK FERNANDEZ ANDERSON &**<br>**HARRIS, P.A.**<br>1200 Brickell Avenue, Suite 950<br>Miami, Florida 33131<br>Tel. (305) 371-0001<br>Fax: (305) 371-0002<br>*Counsel for Plaintiffs* |

| Telephone:      (954) 462-5500<br>Facsimile:      (954) 463-9244<br>*Counsel for Plaintiffs* | |
|---|---|
| Guido Saveri, Esq.  (Cal. Bar No. 22349)<br>guido@saveri.com<br>R. Alexander Saveri, Esq. (Cal. Bar No. 173102)<br>rick@saveri.com<br>Cadio Zirpoli, Esq.  (Cal. Bar No. 179108)<br>cadio@saveri.com<br>**SAVERI & SAVERI, INC.**<br>706 Sansome Street<br>San Francisco, CA  94111<br>Telephone:  (415) 217-6810<br>Facsimile:   (415) 217-6813<br>*Counsel for Plaintiffs* | Michael L. Addicott, Esq.<br>mlaesq@addicottlaw.com<br>**ADDICOTT & ADDICOTT, P.A.**<br>900 N. Federal Hwy.<br>Ste. 201<br>Hallandale Beach, FL 33009<br>Telephone: 954-454-2605<br>*Counsel for Plaintiffs* |

344585.2

# EXHIBIT 3

SDNY CM/ECF Version 4.2

COMPLEX-CSMGMT, ECF

**U.S. District Court**
**Southern District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE #: 1:12-cv-05431-AJN**

Isom Jr. v JPMorgan Chase Bank N.A. et al                    Date Filed: 07/13/2012
Assigned to: Judge Alison J. Nathan                          Jury Demand: Plaintiff
Cause: 28:1331 Fed. Question: Other                          Nature of Suit: 430 Banks and Banking
                                                             Jurisdiction: Federal Question

**Plaintiff**

**Edward Isom Jr.**                          represented by **Jack Wagoner , III**
*individually and on behalf of all others*                  Wagoner Law Firm, P.A.
*similarly situated*                                         1320 Brookwood, Suite D
                                                             Little Rock, AR 72202
                                                             (501)-663-5225
                                                             Fax: (501)-660-4030
                                                             Email: jack@wagonerlawfirm.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Angela M. Mann**
                                                             Wagoner Law Firm, P.A.
                                                             1320 Brookwood, Suite D
                                                             Little Rock, AR 72202
                                                             (501)-663-5225
                                                             Fax: (501)-660-4030
                                                             Email: angela@wagonerlawfirm.com
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Brent Walker**
                                                             Carter Walker, P.L.L.C.
                                                             2171 West Main, Ste. 200
                                                             P.O. Box 628
                                                             Cabot, AR 72023
                                                             (501)605-1346
                                                             Fax: (501)605-1348
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Matthew S. Wild**
                                                             Wild Law Group PLLC
                                                             98 Distillery Road
                                                             Warwick, NY 10990
                                                             (914) 630-7500
                                                             Email: mwild@wildlawgroup.com

SDNY CM/ECF Version 4.2

*ATTORNEY TO BE NOTICED*

**Max Wild**
Law Offices of Max Wild
98 Distillery Road
Warwick, NY 10990
(845) 986-6931
Fax: (845) 986-6990
Email: mhw311@optonline.net
*ATTORNEY TO BE NOTICED*

**Steven A Owings**
Owings Law Firm
1400 Brookwood Drive
Littlerock, AR 72202
(501) 661-9999
Fax: (501)-661-8393
Email: sowings@owingslawfirm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**T. Brent Walker**
Walker Law, Plc
P.O. Box 287
Cabot, AR 72023
501-605-1346
Fax: (888)-571-0319
Email: bwalker@walkerlawplc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**JPMorgan Chase Bank N.A.**           represented by **Daniel James Horwitz**
Dickstein Shapiro LLP (NYC)
1633 Broadway
New York, NY 10019-6708
(212)835-1400
Fax: (212)997-9880
Email: dhorwitz@lcattorneys.com
*ATTORNEY TO BE NOTICED*

**Peter Obstler**
Bingham McCutchen LLP
Three Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415)-393-2578
Fax: (415)-393-2286
Email: peter.obstler@bingham.com

SDNY CM/ECF Version 4.2

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Zachary J. Alinder**
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111
(415)-393-2226
Fax: (415)-393-2286
Email: zachary.alinder@bingham.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Chase Bank USA N.A.**                    represented by **Daniel James Horwitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Obstler**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Zachary J. Alinder**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/13/2012 | 1 | COMPLAINT against Chase Bank USA N.A., JPMorgan Chase Bank N.A. (Filing Fee $ 350.00, Receipt Number 46501043588)Document filed by Edward Isom Jr.(js) (mqu). (Entered: 07/19/2012) |
| 07/13/2012 | | SUMMONS ISSUED as to Chase Bank USA N.A., JPMorgan Chase Bank N.A. (js) (Entered: 07/19/2012) |
| 07/13/2012 | | Magistrate Judge Ronald L. Ellis is so designated. (js) (Entered: 07/19/2012) |
| 07/13/2012 | | Case Designated ECF. (js) (Entered: 07/19/2012) |
| 07/19/2012 | 2 | STANDING ORDER IN RE PILOT PROJECT REGARDING CASE MANAGEMENT TECHNIQUES FOR COMPLEX CIVIL CASES IN THE SOUTHERN DISTRICT OF NEW YORK (See M-10-468 Order filed November 1, 2011). This case is hereby designated for inclusion in the Pilot Project Regarding Case Management Techniques for Complex Civil Cases in the Southern District of New York (the Pilot Project), unless the judge to whom this case is assigned determines otherwise. This case is designated for inclusion in the Pilot Project because it is a class action, an MDL action, or is in one of the following Nature of Suit categories: 160, 245, 315, 355, 365, 385, 410, 830, 840, 850, 893, or 950. The presiding judge in a case that does not |

SDNY CM/ECF Version 4.2

| | | otherwise qualify for inclusion in the Pilot Project may nevertheless designate the case for inclusion in the Pilot Project by issuing an order directing that the case be included in the Pilot Project. The description of the Pilot Project, including procedures to be followed, is attached to this Order. (Signed by Judge Loretta A. Preska on 10/31/2011) (js) (Entered: 07/19/2012) |
|---|---|---|
| 09/07/2012 | 3 | NOTICE OF APPEARANCE by Daniel James Horwitz on behalf of Chase Bank USA N.A., JPMorgan Chase Bank N.A. (Horwitz, Daniel) (Entered: 09/07/2012) |
| 09/07/2012 | 4 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. Identifying Corporate Parent JPMorgan Chase & Co., Corporate Parent CMC Holding Delaware Inc., Corporate Parent JPMorgan Equity Holdings, Inc. for Chase Bank USA N.A.; Corporate Parent JPMorgan Chase & Co. for JPMorgan Chase Bank N.A.. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A..(Horwitz, Daniel) (Entered: 09/07/2012) |
| 09/18/2012 | 5 | JOINT STIPULATION AND ORDER TO STAY CASE PENDING MEDIATION AND TO SET TIME TO RESPOND TO COMPLIANT: IT IS HEREBY STIPULATED AND AGREED, AND RESPECTFULLY REQUESTED AS FOLLOWS: The case shall be stayed pending the Parties' mediation. The Parties shall continue to engage in the ongoing mediation, including the currently scheduled October 19th and 26th dates, in front of David Geronemus. If any Party and/or the selected mediator files a written notice with the Court, stating that the mediation was unsuccessful and has been terminated, Defendants shall file their answer to Plaintiff's complaint on or before 30 days after the filing of such a termination notice with the Court. The parties shall submit a status letter on 11/2/12. The Court may not permit a further stay even if mediation continues. (Signed by Judge Alison J. Nathan on 9/18/2012) (jfe) (Entered: 09/18/2012) |
| 09/18/2012 | | Case Stayed (jfe) (Entered: 09/18/2012) |
| 11/06/2012 | 6 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Daniel J. Horwitz dated 11/2/2012 re: The Parties therefore respectfully request that the Court allow the stay of this action to continue at least through the end of January 2013. ENDORSEMENT: Request denied. The stay in this matter is lifted. The parties are free to continue mediation; however, the Court will schedule an initial pretrial conference and the parties are expected to proceed with this litigation. Plaintiff is further directed to e-mail a PDF copy of his Complaint to case open ings@nysd. uscourts.gov (Signed by Judge Alison J. Nathan on 11/6/2012) (djc) (Entered: 11/07/2012) |
| 11/06/2012 | 7 | NOTICE OF INITIAL PRETRIAL CONFERENCE: Initial Conference set for 1/11/2013 at 03:15 PM in Courtroom 17B, 500 Pearl Street, New York, NY 10007 before Judge Alison J. Nathan. Parties ordered to submit via email proposed case management plan and joint letter nine days before conference. (Signed by Judge Alison J. Nathan on 11/6/2012) (cd) (Entered: 11/08/2012) |
| 11/28/2012 | 8 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Daniel J. Horwitz dated 11/26/2012 re: Based on the considerations set forth above, the Parties propose the following schedule: December 21, 2012 - Deadline for |

SDNY CM/ECF Version 4.2

| | | |
|---|---|---|
| | | Chase to file Motion to Dismiss; January 25, 2013 - Deadline for Plaintiff to file opposition to Motion to Dismiss; February 15, 2013 - Deadline for Chase to file reply in support of Motion to Dismiss. ENDORSEMENT: So ordered., (Motions due by 12/21/2012., Responses due by 1/25/2013., Replies due by 2/15/2013.) (Signed by Judge Alison J. Nathan on 11/28/2012) (lmb) (Entered: 11/28/2012) |
| 11/29/2012 | 9 | WAIVER OF SERVICE RETURNED EXECUTED. Chase Bank USA N.A. waiver sent on 8/7/2012, answer due 12/21/2012; JPMorgan Chase Bank N.A. waiver sent on 8/7/2012, answer due 12/21/2012. Document filed by Edward Isom Jr.. (Wild, Matthew) (Entered: 11/29/2012) |
| 12/21/2012 | 10 | MOTION to Dismiss *Class Action Complaint*. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. Responses due by 1/25/2013 (Horwitz, Daniel) (Entered: 12/21/2012) |
| 12/21/2012 | 11 | MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss *Class Action Complaint*.. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Horwitz, Daniel) (Entered: 12/21/2012) |
| 12/21/2012 | 12 | NOTICE of Request for Judicial Notice in Support of Motion to Dismiss Class Action Complaint re: 10 MOTION to Dismiss *Class Action Complaint*.. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Horwitz, Daniel) (Entered: 12/21/2012) |
| 01/07/2013 | 13 | ENDORSED LETTER addressed to Judge Alison J. Nathan from Daniel J. Horwitz dated 1/2/2013 re: Counsel for defendant writes After consultation with counsel for Plaintiff Edward Isom, Jr. ("Plaintiff"), the parties jointly submit this letter respectfully requesting that the initial pretrial conference be continued from January 11, 2013 to either January 18, 2013, January 25, 2013 or February 1, 2013. ENDORSEMENT: Initial pretrial conference adjourned to January 25, 2013 at 10:45 am. (Signed by Judge Alison J. Nathan on 1/4/2013) (js) (Entered: 01/07/2013) |
| 01/10/2013 | 14 | MOTION for Peter Obstler to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8132636. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Obstler, Peter) (Entered: 01/10/2013) |
| 01/10/2013 | 15 | MOTION for Zachary J. Alinder to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8132707. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Attachments: # 1 Exhibit Certificate of Good Standing, # 2 Text of Proposed Order)(Alinder, Zachary) (Entered: 01/10/2013) |
| 01/11/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 15 MOTION for Zachary J. Alinder to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8132707. Motion and supporting papers to be reviewed by Clerk's Office staff., 14 MOTION for Peter Obstler to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number** |

SDNY CM/ECF Version 4.2

| | | |
|---|---|---|
| | | 0208-8132636. **Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 01/11/2013) |
| 01/15/2013 | 16 | ORDER granting 14 Motion for Peter Obstler to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 01/15/2013) |
| 01/15/2013 | 17 | ORDER granting 15 Motion for Zachary J. Alinder to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 01/15/2013) |
| 01/23/2013 | 18 | MOTION for T. Brent Walker to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8165555. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Edward Isom Jr.. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Walker, T.) (Entered: 01/23/2013) |
| 01/23/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 18 MOTION for T. Brent Walker to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8165555. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bwa)** (Entered: 01/23/2013) |
| 01/25/2013 | 19 | ORDER granting 18 Motion for T. Brent Walker to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 01/25/2013) |
| 01/25/2013 | | Minute Entry for proceedings held before Judge Alison J. Nathan: Initial Pretrial Conference held on 1/25/2013. (snu) (Entered: 01/25/2013) |
| 01/25/2013 | 20 | MEMORANDUM OF LAW in Opposition re: 10 MOTION to Dismiss *Class Action Complaint.*. Document filed by Edward Isom Jr.. (Walker, T.) (Entered: 01/25/2013) |
| 01/28/2013 | 21 | ORDER: The parties in the above-captioned case are ORDERED to submit, by February 8, 2013, a revised joint proposed schedule per the Court's instructions during the initial pretrial conference on January 25, 2013. (Signed by Judge Alison J. Nathan on 1/28/2013) (mro) (Entered: 01/28/2013) |
| 02/08/2013 | 22 | MOTION for STEVEN ADOLPH OWINGS to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8220802. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Edward Isom Jr.. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Owings, Steven) (Entered: 02/08/2013) |
| 02/08/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 22 MOTION for STEVEN ADOLPH OWINGS to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8220802. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 02/08/2013) |
| 02/13/2013 | 23 | ORDER granting 22 Motion for STEVEN ADOLPH OWINGS to Appear Pro |

SDNY CM/ECF Version 4.2

| | | Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 02/13/2013) |
|---|---|---|
| 02/15/2013 | 24 | REPLY MEMORANDUM OF LAW in Support re: 10 MOTION to Dismiss *Class Action Complaint*.. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Obstler, Peter) (Entered: 02/15/2013) |
| 02/15/2013 | 25 | NOTICE of Request for Judicial Notice In Support of Reply Memorandum re: 24 Reply Memorandum of Law in Support of Motion. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Attachments: # 1 Exhibit G)(Obstler, Peter) (Entered: 02/15/2013) |
| 02/15/2013 | 26 | CERTIFICATE OF SERVICE of Reply Memorandum; Request for Judicial Notice served on Brent Walker on 02/15/2013. Service was made by Mail. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.. (Obstler, Peter) (Entered: 02/15/2013) |
| 02/15/2013 | 27 | CIVIL CASE MANAGEMENT PLAN AND SCHEDULING ORDER: Pursuant to the Court's instructions during the initial pretrial conference on January 25, 2013, Plaintiff Edward Isom, Jr. ("Plaintiff or "Isom ")and Defendants JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A. (together "Chase") (collectively the "Parties")hereby jointly submit the following proposed schedule: 1. The Parties do not consent to conducting all further proceedings before a United States Magistrate Judge, including motions and trial. 2. Settlement discussions have taken place. Motions due by 8/22/2014. Responses due by 9/30/2014 Replies due by 8/28/2014. Deposition due by 3/10/2014. Fact Discovery due by 3/31/2014. Expert Discovery due by 6/16/2014. (Signed by Judge Alison J. Nathan on 2/15/2013) (js) Modified on 2/19/2013 (js). (Entered: 02/19/2013) |
| 03/19/2013 | | **Please be advised that Judge Nathans Courtroom and Chambers have been moved to the Thurgood Marshall United States Courthouse located at 40 Foley Square, New York, New York 10007. Effective immediately, all proceedings before the Court will take place in Courtroom 906, and the Courts Chambers located in Room 2102, of 40 Foley Square. The Courts other contact information, as set forth in the Courts Individual Rules and Practices, available at http://www.nysd.uscourts.gov/judge/Nathan, remains the same.**(snu) (Entered: 03/19/2013) |
| 03/28/2013 | 28 | Letter addressed to Judge Alison J. Nathan from Peter Obstler dated 3/27/2013 re: Given the dispositive nature of the filed rate doctrine, and other arguments raised in this Motion Chase respectfully requests an oral argument on the Motion. Document filed by Chase Bank USA N.A., JPMorgan Chase Bank N.A.(cd) (Entered: 03/28/2013) |
| 04/03/2013 | 29 | Letter addressed to Judge Alison J. Nathan from Steven A. Owings dated 4/2/2013 re: Plaintiffs believe that Defendants' untimely request for a hearing is primarily to delay the case further. Plaintiffs respectfully request that the Court rule upon the pending Motion to Dismiss without a hearing. Document filed by Edward Isom Jr.(cd) (Entered: 04/03/2013) |
| 04/29/2013 | 30 | MOTION for Angela Mann to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8462575. **Motion and supporting papers to be** |

SDNY CM/ECF Version 4.2

| | | |
|---|---|---|
| | | reviewed by Clerk's Office staff. Document filed by Edward Isom Jr..(Mann, Angela) (Entered: 04/29/2013) |
| 04/29/2013 | 31 | MOTION for Jack Wagoner III to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8462824. **Motion and supporting papers to be reviewed by Clerk's Office staff.** Document filed by Edward Isom Jr.. (Wagoner, Jack) (Entered: 04/29/2013) |
| 04/29/2013 | | **>>>NOTICE REGARDING PRO HAC VICE MOTION. Regarding Document No. 30 MOTION for Angela Mann to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8462575. Motion and supporting papers to be reviewed by Clerk's Office staff., 31 MOTION for Jack Wagoner III to Appear Pro Hac Vice. Filing fee $ 200.00, receipt number 0208-8462824. Motion and supporting papers to be reviewed by Clerk's Office staff.. The document has been reviewed and there are no deficiencies. (bcu)** (Entered: 04/29/2013) |
| 05/01/2013 | 32 | ORDER granting 30 Motion for Angela Mann to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 05/01/2013) |
| 05/01/2013 | 33 | ORDER granting 31 Motion for Jack Wagoner III to Appear Pro Hac Vice (HEREBY ORDERED by Judge Alison J. Nathan)(Text Only Order) (Nathan, Alison) (Entered: 05/01/2013) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/23/2013 12:36:20 | | |
| **PACER Login:** | sb0415 | **Client Code:** | 2011x038 |
| **Description:** | Docket Report | **Search Criteria:** | 1:12-cv-05431-AJN |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 12 CIV 5431

-----------------------------------------------------x

EDWARD ISOM, JR.,
individually and on behalf of all others
similarly situated

               Plaintiff

        -against-

JPMORGAN CHASE BANK, N.A. and
CHASE BANK USA, N.A.,

               Defendants.

-----------------------------------------------------x

12 Civ. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

*[Stamp: RECEIVED JUL 13 2012 U.S.D.C. S.D.N.Y. CASHIERS]*

     Plaintiff, Edward Isom, Jr., acting individually and on behalf of all other persons similarly situated, for his Class Action Complaint and demand for jury trial, states and alleges as follows:

## I.    INTRODUCTION AND GENERAL ALLEGATIONS

    1.    JPMorgan Chase Bank, N.A. (JPM), and Chase Bank USA, N.A. ("Chase Bank") are among the country's largest residential mortgage lenders and loan servicers. JPM and Chase Bank use their control over Plaintiff and Class Members' mortgage accounts to reap vast unearned profits from force-placed insurance.

    2.    The mortgages that Defendants (collectively "Chase") own and service require borrowers to maintain various forms of homeowners' insurance. When a borrower does not purchase or maintain a specific amount of coverage that Chase requires, Chase purchases insurance for the borrower. This practice is called "force-placement."

    3.    Force-placing insurance is standard and appropriate, and is authorized by borrowers' mortgage contracts. However, what is not standard or appropriate is Chase's

manipulation of the force-placed insurance market, whereby Chase engages in exploitative and self-dealing practices for its benefit and to borrowers' detriment.

4.      Chase entered into a series of contracts with American Security Insurance Company (ASIC). Under these contracts, Chase agreed to purchase every force-placed insurance policy for its borrowers from ASIC. ASIC, in turn, agreed to pay a kickback equal to a percentage of the premium for every force-placed insurance policy to Chase or its affiliate, and to exclusively purchase reinsurance on its portfolio of Chase force-placed insurance policies from Chase or its affiliate.

5.      ASIC's force-placed insurance policies cost two to twenty times the market rate for similar insurance, and provide less coverage than borrowers could obtain on the open market. Chase does not seek competitive bids for force-placed insurance, but instead entered agreements with ASIC guaranteeing ASIC 100% of Chase borrowers' force-placed insurance premium dollars, so Chase can receive a cut of force-placed premiums.

6.      Throughout the Class Period, Defendants have engaged in unlawful, abusive, and unfair practices with respect to force-placed hazard insurance, including, but not limited to: (a) receiving fees, payments, commissions, improper reinsurance premiums, and other things of value from its affiliates and ASIC; (b) providing force-placed insurance from ASIC at substantially high cost to the borrower for the purpose of receiving so-called "commissions"; and (c) forcing borrowers to pay for unnecessary insurance.

7.      Chase also entered into a captive reinsurance scheme with ASIC in violation of the Real Estate Settlement Procedures Act of 1974 (RESPA), whereby (a) illegal referral payments, disguised as purported reinsurance premiums, are paid by force-placed providers to

Defendants' affiliate; and (b) Defendants receive an unlawful split of insurance premiums paid by borrowers.

8.      Plaintiff Edward Isom, Jr. and Class Members are mortgage borrowers who have or had residential mortgage loans owned or serviced by JPM, Chase Bank, or non-defendant Chase Home Finance, LLC (CHF)[1] during the applicable statute of limitations (the "Class Period") and whom Chase required to pay for force-placed hazard insurance policies.

9.      Defendants' hazard insurance practices constitute (1) violation of RESPA; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) unjust enrichment; (5) breach of fiduciary duty; and (6) conversion. Plaintiff and Class Members seek compensatory damages, restitution for Defendants' unjust enrichment, and declaratory and injunctive relief as a result of Defendants' actions alleged herein.

## II.  PARTIES

### A.      *Plaintiff Edward Isom, Jr.*

10.      Plaintiff Edward Isom, Jr. is a resident of Greene County, Arkansas. He owns his home in Paragould, Arkansas. On or about December 29, 2008, Mr. Isom obtained a mortgage from The Mortgage Source for $40,248.00. Mr. Isom's mortgage is written on an Arkansas Fannie Mae/Freddie Mac Uniform Instrument. A copy of the mortgage and promissory note are attached as **Exhibits 1 and 2**.

11.      Chase now services Mr. Isom's mortgage.

12.      On August 8, 2011, Chase sent Mr. Isom a notice indicating that his hazard insurance coverage was insufficient. Chase sent another notice on September 7, 2011. On

---

[1] JPM and CHF merged effective May 1, 2011. JPM is named as a defendant in its individual capacity and in its capacity as successor in interest to CHF. Due to the merger, CHF is not named as a separate defendant.

3

October 11, 2011, Chase sent a letter to Mr. Isom stating that it had force-placed hazard insurance on Mr. Isom's property.

13.    Chase purchased Mr. Isom's force-placed hazard insurance policy from ASIC. Although Chase purchased the policy in October of 2011, it was backdated to cover the period from July of 2011 through July of 2012. The premium for the force-placed policy was $580.00.

B.    *Defendants*

14.    Defendant JPMorgan Chase Bank, N.A. is a subsidiary of JPMorgan Chase & Co. JPMorgan Chase Bank is a national banking association that conducts business in all states throughout the United States and has its principal offices in New York and Chicago.

15.    Non-defendant Chase Home Finance, LLC is a Delaware Limited Liability Company, which served as the primary servicing unit for loans owned by JPMorgan Chase & Co., its affiliates, or its subsidiaries. On May 1, 2011, CHF merged with JPM, leaving JPM as the successor in interest to CHF. Accordingly, CHF is not named as a separate Defendant. JPM is named as a Defendant both in its individual capacity and in its capacity as successor in interest to CHF. JPM is liable for the conduct of CHF because of the merger.

16.    Defendant Chase Bank is also a subsidiary of JPMorgan Chase & Co. and is also a national banking association that conducts business in all states throughout the United States.

17.    In all actions described herein, CHF acted on its own behalf and as the duly authorized agent of Defendants JPM and Chase Bank or other owners of the underlying mortgage agreements and notes. Defendants were contractually obligated to service the loans at issue pursuant to the terms of the mortgage contracts.

### III.  JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367 and 12 U.S.C. § 2614. The Court has subject matter jurisdiction over Plaintiff's RESPA claim pursuant to 12 U.S.C. § 2614 and 28 U.S.C. § 1331. Plaintiff's state law claims arose out of the same transaction and occurrence as his RESPA claim and are so related to Plaintiff's RESPA claims that they form part of the same case or controversy.

19.     Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(CAFA). Plaintiff is a citizen of the State of Arkansas. Defendants are citizens of New York and Illinois, because Defendants' main offices are located in New York and Chicago. The amount in controversy exceeds $5,000,000 and there are more than 100 members in Plaintiff's Proposed Class.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District, where Defendants have their principal offices.

### IV.  FACTUAL ALLEGATIONS

#### A.  *Defendants' Operations*

##### 1.  **Force-Placed Insurance**

21.     Defendants JPM and Chase Bank originate mortgage loans, acquire mortgage loans, and service mortgage loans on behalf of others. Each loan is secured by a deed of trust on the underlying property. Prior to its merger with JPM, CHF acted as servicer for all of these loans.

22.     JPM, Chase Bank, and their affiliates are engaged in a scheme designed to unfairly and deceptively reap excessive and unconscionable fees from borrowers in connection with force-placed insurance.

23.     Defendants purchase all force-placed insurance from ASIC. Assurant, Inc. is ASIC's parent company. *See* (Assurant, Inc., Annual Report (Form 10-K)(Feb. 23, 2011)). Upon information and belief, Defendants own a substantial indirect financial stake in ASIC. As of January 19, 2010, JPMorgan Chase & Co.—Defendants' parent company—owned 3,829,722 shares of Assurant, Inc. ("Assurant") through JPM and other affiliates. *See* (JPMorgan Chase & Co., Statement of Acquisition of Beneficial Ownership, (Schedule 13G/A)(Jan. 19, 2010)).

24.     Chase Insurance Agency ("CIA") is a wholly owned subsidiary of JPM's parent company JPMorgan Chase & Co. CIA was the agent of Chase with respect to all actions complained of herein and Chase exercised substantial control and influence over the operation of CIA. Upon information and belief, CIA exists solely for the purpose of effectuating Chase's insurance kickback scheme.

25.     Beginning January 1, 2007, and continuing through the present, Chase has been a party to a series of contracts with ASIC. These contracts provide that ASIC is the exclusive company for issuing all force-placed insurance in connection with loans serviced or owned by Chase, and that Chase Insurance is an agent for ASIC.

26.     Upon information and belief, in exchange for Chase agreeing to use ASIC exclusively for all force-placed policies, ASIC pays CIA a "commission" of ten to twenty percent of the policy premiums for every force-placed insurance policy.

27.     CIA does nothing to earn this "commission." It does not seek competitively priced insurance policies or perform any other acts to "earn" a commission. Rather, in exchange

6

for Chase agreeing to refer all of its force-placed insurance policies to ASIC, CIA receives a rebate of a portion of the premium cost. This is a kickback. CIA is set up merely to serve as a conduit for Chase to receive this kickback.

28.     The arrangement between CIA and ASIC is such that a competitively priced insurance policy is not actually "found" for any given property. Rather, there is a pre-set arrangement where Chase binds itself to purchase all force-placed insurance from ASIC. The cost of the insurance bears no relation to each homeowner's individual home; rather, it is predetermined based on Chase's entire portfolio of mortgages.

29.     Force-placed insurance policies are not written on an individual basis. Instead, pursuant to the prearranged contracts, ASIC automatically issues force-placed policies when a borrower's insurance coverage is not obtained or maintained according to Chase's requirements.

30.     CIA has no role whatsoever in the purchase of force-placed insurance and provides no services directly to borrowers during the purchase of force-placed insurance. Because the secret contracts between CIA and ASIC predetermine the cost and rate of insurance, rather than the market, CIA performs no "agent" services to earn any "commission" on the force-placed insurance.

31.     In fact, Chase outsources any insurance agency services CIA might otherwise perform to ASIC. ASIC continuously monitors Chase's mortgage portfolio and verifies the existence of insurance and the amount of coverage for each mortgaged property. When a borrower does not maintain adequate insurance coverage, ASIC sends letters on Chase letterhead notifying the borrower that he does not maintain adequate insurance according to Chase's requirements. If the borrower does not purchase insurance satisfactory to Chase, ASIC automatically issues a force-placed policy on the property on behalf of and for the benefit of

Chase. CIA receives a "commission" for providing "agent" services that are actually performed by ASIC.

32.     Although Plaintiff's mortgage loan contract allows Chase to force-place insurance if he fails to maintain adequate insurance, his mortgage does not allow self-dealing and profiteering through the force-placement process.

33.     Plaintiff's mortgage does not disclose that the lender or servicer will receive a commission or reinsurance premium on the force-placed insurance policy from the force-placed insurance provider as a result of this force-placed insurance practice. The mortgage contract also does not disclose that CIA's so-called commission will be based upon a percentage of the cost of the force-placed insurance premium. Instead, Plaintiff's mortgage represents that the cost of force-placed insurance will be limited to the cost necessary to protect the lender's interest in the property.

34.     The force-placed insurance business is extremely lucrative for mortgage servicers, generating very high profit margins. Mortgage servicers commonly receive kickbacks, disguised as commissions, from insurance companies just for force-placing insurance with that provider. ASIC's parent company, Assurant, Inc., collected $2.7 billion in premiums in 2010 through its force-placed insurance division. Assurant paid out only 36% of this revenue for claims on force-placed policies, whereas a 70% claims-to-premiums ratio is the norm in the industry.

35.     Assurant, Inc.—ASIC's parent company—states in its Annual Report that it has established "long-term relationships" with leading lenders and servicers and that "[t]he majority of our lender-placed agreements are exclusive." *See* Assurant, Inc., Annual Report (Form 10-K), at 5 (Feb. 25, 2010). Chase is one of these "exclusive" arrangements.

36.     As a result of force-placed insurance practices like those described herein, premiums for force-placed insurance are artificially inflated. Defendants force borrowers to pay for both the actual cost of force-placed insurance policies and the cost of the kickbacks when it retains commissions and/or participates in a captive reinsurance arrangement.

37.     Assurant's public filings indicate that approximately 40% of its force-placed insurance division's revenue is allocated to pay "general expenses," which includes commissions paid to lenders.

38.     Defendants' kickback arrangement with ASIC keeps force-placed insurance premiums artificially inflated because a substantial percentage of the borrowers' premiums are actually used to fund the illegal kickbacks rather than to cover the actual risk.

39.     Defendants' conduct has stifled competition in the force-placed insurance industry.

### 2.     Reinsurance

40.     Under Chase's captive reinsurance agreement with ASIC, ASIC agrees to "reinsure" force-placed insurance policies with a subsidiary or "captive reinsurer" owned by Chase or its parent company. In return, ASIC returns a portion of the premiums received for the reinsurance policy back Chase or its affiliate. For example, Assurant, Inc., the nation's largest provider of force-placed insurance, has admitted that its force-placed insurance division "writes business produced by clients, such as mortgage lenders and servicers and financial institutions, and reinsures all or a portion of such business to insurance subsidiaries of the clients." *See* Assurant, Inc., Annual Report (Form 10-K) at 881 (Feb. 25, 2010).

41.     There are usually two varieties of reinsurance arrangement for force-placed insurance: (a) quota share; or (b) excess of loss.

42.    In a "quota share" reinsurance arrangement, the reinsurer assumes a fixed percentage of all of the primary insurer's insured losses so that the reinsurer experiences the primary insurer's losses in the percentage agreed upon by the reinsurance arrangement.

43.    In an "excess of loss" reinsurance arrangement, the reinsurer is liable for only a specified "band" of losses, whereby the reinsurer is liable only for claims over a set point, but subject to a ceiling. The starting point is referred to as the attachment or entry point, and the ceiling is referred to as a detachment or exit point. The reinsurer's only pays on a reinsurance policy when the force-placed insurance provider's losses and expenses are greater than or equal to the "attachment point" and less than or equal to the "detachment point."

44.    Upon information and belief, Chase entered into excess of loss captive reinsurance arrangements with its force-placed insurance provider, ASIC. Under this captive reinsurance arrangement, Defendant agreed to refer its borrowers to ASIC, which, in turn, agreed to reinsure with the servicer's captive reinsurer. Under these arrangements, ASIC returns a percentage of the borrowers' premiums to the servicer's captive reinsurer.

45.    Upon information and belief, Chase's captive reinsurance arrangement set the attachment point and detachment point at values where Chase's reinsurance affiliate would virtually never be subject to any risk of paying on a reinsurance policy. In other words, Chase entered into a reinsurance agreement in form only, to disguise a kickback of ASIC's insurance premiums to Chase.

46. The Department of Housing and Urban Development (HUD) issued a letter addressing this very issue on August 6, 1997. HUD concluded that captive reinsurance arrangements are permissible only "if the payments to the affiliated reinsurer (1) are for reinsurance services 'actually furnished or for services performed' and (2) are bona fide

compensation that does not exceed the value of such services." *See* **Exhibit 3**, HUD Letter, April 6, 1997.

47.     The April 1997 HUD Letter focused on the RESPA anti-kickback analysis and warned that "[t]he reinsurance transaction cannot be a sham under which premium payments . . . are given to the reinsurer even though there is no reasonable expectation that the reinsurer will ever have to pay claims." *Id.*

48.     According to the HUD Letter, excess of loss reinsurance arrangements can escape characterization as an unlawful referral fee or fee split only "if the band of the reinsurer's potential exposure is such that reasonable business justification would motivate a decision to reinsure that band. Unless there is a real transfer of risk, no real reinsurance services are actually being provided. In either case, the premiums paid . . . must be commensurate with the risk." *Id.*

49.     Upon information and belief, Defendants' captive reinsurance arrangements with ASIC (a) do not provide actual reinsurance services and, in any event, (b) provide for payment to the captive reinsurance provider premiums that are not commensurate with the risk, if any, assumed by the captive reinsurer.

50.     In reality, Defendants' captive reinsurance arrangements with ASIC were and are a sham for collecting illegal kickbacks. The money collected by Defendants for force-placed "reinsurance" premiums and/or commissions far exceeded the value of these services, if any, that were performed. The amounts paid were merely disguised kickbacks.

### 3.     Redundant or Otherwise Unnecessary Insurance

51.     Due to the financial incentives created by Defendants' kickback arrangements with ASIC, Defendants routinely require that borrowers pay for unnecessary insurance coverage

that is duplicative or provides greater coverage than the amounts required by a borrower's mortgage or applicable law.

52.     Defendants require unnecessary insurance where they (a) require borrowers to pay for insurance coverage exceeding Defendants' interest in the secured property (i.e. the loan balance); (b) backdate force-placed insurance policies, requiring that borrowers pay for retroactive coverage even though the time period for which they coverage protects the property has passed and there is no risk of loss for the time period; and (c) require borrowers to pay for force-placed insurance policies where a Lender's Loss Payable Endorsement on a pre-existing insurance policy already protects the Lender's interest in the property.

53.     Insurance is "prospective in nature." *See* Jeff Horowitz, *Ties to Insurers Could Land Mortgage Servicers in Trouble*, American Banker (Nov. 10, 2010), available at: http://www.americanbanker.com/issues/175_216/ties-to-insurers-servicers-in-trouble-1028474-1.html. Requiring that borrowers pay for backdated insurance coverage to cover periods during which there is no loss is improper and egregious.

54.     Hazard insurance policies contain a Lender's Loss Payable Endorsement that typically protects the lender for a period of at least ten days after the termination of the insurance policy. Accordingly, force-placed insurance policies effective immediately after the termination of the borrower's policy and charging borrowers for the cost of premiums for such policies is unlawful because borrowers are charged for needless and duplicative insurance coverage.

**B.**     ***RESPA***

55.     RESPA was enacted, in part, to curb the problem of kickbacks between real estate agents, lenders, and other real estate settlement service providers. RESPA states that its purpose is "to effect certain changes in the settlement process for residential real estate that will result . . .

12

in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b).

56.     A key part of RESPA is its prohibition of referral fees and fee-splitting between persons involved in real estate settlement services.

57.     The term "settlement services" includes the provision of services, including hazard insurance. 24 C.F.R. § 3500.2(b).

58.     Section 8(a) of RESPA provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally regulated loan shall be referred to any person." 12 U.S.C. § 2607(a).

59.     Section 8(b) of RESPA further provides that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally regulated mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b).

60.     Regulation X further explains that "[a] charge by a person for which no or nominal services are performed or for which duplicative fees are charged is an unearned fee and violates [RESPA]." 24 C.F.R. § 3500.14(c).

61.     RESPA prohibits mortgage servicers from accepting "commissions" from force-placed insurance providers and from splitting insurance premiums with the insurer other than for services actually performed.

## V.     CLASS ALLEGATIONS

62.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2) and 23(b)(3) on behalf of the following Class:

All United States residents with mortgages owned or serviced by JPMorgan Chase Bank, N.A., Chase Bank USA, or Chase Home Finance, LLC who, during the applicable statute of limitations, were charged for a force-placed hazard insurance policy, and who, at any time, paid, or who still owe, premiums for such force-placed policies.

63.     Excluded from the Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and employees, and Plaintiff's counsel.

64.     Plaintiff reserves the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

65.     Defendants subjected Plaintiff and Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendants' standard and undisputed business practice.

**A.     *Numerosity***

66.     The individual class members are so numerous that joinder of all members is impracticable. The Defendants sell and service millions of mortgage loans and insurance policies nationwide. The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants. The exact number of Class Members cannot be ascertained without discovery, but the number is certainly in the thousands. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**B.     *Commonality***

67.     There are numerous common questions of law and fact. These common questions of law and fact predominate over any questions going only to any particular Class Member. Common questions include, but are not limited to:

a.  Whether Defendants manipulated the force-placed mortgage purchases in order to maximize its own profits to the detriment of Plaintiff and Class Members;

b.  Whether Defendants received commission payments from force-placed insurance providers;

c.  Whether Defendants received payments from force-placed insurance providers that exceeded the value of any services actually performed;

d.  Whether the premiums charged to Plaintiff and Class Members are illegal and excessive because they include kickbacks and unearned "commissions;"

e.  Whether Defendants have captive reinsurance arrangements with force-placed insurance providers, and if so, whether such arrangements involved sufficient transfer of risk and whether premiums ceded under such arrangements were bona fide compensation and solely for services actually performed;

f.  Whether Defendants wrongfully backdated force-placed insurance policies;

g.  Whether Defendants required and/or force-placed insurance that was unnecessary or duplicative;

h.  Whether Defendants' conduct constitutes an unfair business practice;

i.  Whether Defendants breached the terms of Class Member's form mortgage documents by failing to seek competitive bids on the open market, and instead purchased high-cost insurance from an affiliate for self-dealing purposes;

j.  Whether Defendants breached the implied covenant of good faith and fair dealing;

    k.  Whether Defendants were unjustly enriched at the expense of Plaintiff and Class Members;

    l.  Whether Defendants actions were unconscionable;

    m.  Whether Defendants wrongfully converted Plaintiff and Class Members' funds through its force-placed insurance practices; and

    n.  Whether Defendants are liable to Plaintiff and Class Members for damages, and, if so, the measure of damages.

**C.** *Typicality*

68.    Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants. Each class member has sustained and will continue to sustain damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

**D.** *Adequacy of Representation*

69.    Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiff and the unnamed class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

70.    The law firms representing Plaintiff are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**E.** *Requirements of Fed. R. Civ. P. 23(b)(3)*

71.     The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All claims by Plaintiff and the unnamed Class Members are based on the force-placed insurance policies that Defendants unlawfully secured from the same company under the same common scheme, and their deceptive and egregious actions involved in securing the force-placed policy.

72.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

73.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and, if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

74.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

        a.  Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the United States;

        b.  Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions, yet if the action is not prosecuted, Defendants will continue their wrongful actions;

        c.  There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

    d.  The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

    e.  Individual suits would not be cost effective or economically maintainable as individual actions; and

    f.  The action is manageable as a class action.

**F.**    ***Requirements of Fed. R. Civ. P. 23(b)(1) & (2)***

75.    Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

76.    Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## VI.   CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF RESPA, 12 U.S.C. § 2607

77.    Plaintiff restates and realleges the preceding paragraphs of this Complaint as if they were fully set forth herein.

78.    Throughout the Class Period, Defendants provided "settlement services" in connection with "federally-regulated mortgage loans" as such terms are defined by RESPA §§ 2602(1) and (3).

79.    The commissions, reinsurance premiums, and other fees received by Defendants through their arrangements with force-placed insurers constituted "things of value" as defined in RESPA § 2602(2).

80.    Pursuant to captive reinsurance arrangements, Defendants arranged for an unlawfully excessive split of borrowers' insurance premiums to be paid to Defendants' captive reinsurer under excess of loss reinsurance arrangements.

81.    Pursuant to a prearranged commission agreement with ASIC, Defendants arranged for and received commissions for force-placed insurance policies. Upon information and belief, such commissions were based on a flat percentage of the premium charged to borrowers for force-placed insurance coverage.

82.    The reinsurance premiums and commissions received by Defendants violated RESPA because (a) such amounts were not for services actually performed or furnished; and (b) such amounts exceeded the value of such services.

83.    Additionally, Defendants violated RESPA, 12 U.S.C. § 2607(a) because the amounts collected by Defendants in connection with force-placed insurance constituted fees, kickbacks, or things of value pursuant to agreements with force-placed insurance providers whereby business incident to real estate settlement services involving federally-regulated mortgage loans would be referred to such insurers.

84.    Plaintiff and Class Members were harmed by Defendants' unlawful kickback scheme.

85.    Plaintiff and Class Members were entitled, under RESPA, to purchase settlement services from providers who did not participate in unlawful kickback and fee splitting schemes.

86.    Plaintiff's allegations that Defendants violated RESPA by accepting unlawful kickbacks and an unearned portions of settlement service charges is separate and distinct from Plaintiff's claims that he and Class Members paid an excessive price for such services. Pursuant to RESPA § 8(d)(2), Plaintiff's and Class Members' damages are based on the settlement service

amount, without regard to whether Plaintiff and Class Members were overcharged for such insurance.

87.     Additionally, Defendants force-placed excessively-priced insurance on Plaintiff and Class Members' properties. Kickbacks and unlawful fee-splitting arrangements artificially inflate the cost of force-placed insurance. As a result, Plaintiff and Class Members paid insurance premiums that included both (a) the cost of actual insurance services and (b) the cost of payments unlawfully kicked back to Defendants' captive reinsurer. These costs far exceeded the value of any services performed by Defendants.

88.     The amounts kicked back to Defendants were illegal referral fees.

89.     Pursuant to RESPA, 12 U.S.C. § 2607(d), Defendants are liable to Plaintiff and Class Members in an amount at least equal to three times the amounts they paid or will pay for force-placed insurance as of the date of final judgment.

90.     Plaintiff also seeks attorneys' fees pursuant to 12 U.S.C. § 2607(d).

**COUNT TWO**
**BREACH OF CONTRACT**

91.     Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

92.     Plaintiff and Class Members' mortgages are written on substantially similar form mortgage contracts.

93.     Section five of Plaintiff's mortgage requires that the borrower maintain hazard insurance "in the amounts . . . and for the periods that Lender requires." It further provides that "[i]f borrower fails to maintain any of the coverages [that Lender requires], Lender may obtain insurance coverage at Lender's option and Borrower's expense" and that "such coverage shall cover Lender." *See* **Exhibit 1**, § 5.

94.     To the extent that Plaintiff and Class Members' mortgage contracts permit Defendants to unilaterally force-place insurance, Defendants are permitted to do so only to the extent reasonably necessary to "cover" Defendants' interest in the secured property.

95.     Defendants breached Plaintiff's and Class Member's mortgages when it imposed or collected charges for insurance coverage that exceeded the amounts necessary to protect its interest in the property. Such practices include, but are not limited to:

    a.  Requiring that borrowers pay for insurance coverage that exceeds the amount necessary to protect Defendants' interest in the property;

    b.  Requiring borrowers to pay for high-cost force-placed insurance policies when part of the "cost" was returned to Chase as a kickback, either under the guise of a "commission" for the force-placed policy itself or as a "reinsurance premium" paid to a Chase affiliate;

    c.  Backdating force-placed insurance policies, requiring that the borrower pay for retroactive coverage despite the fact that the coverage period has lapsed and there is no risk of loss;

    d.  Requiring that borrower pay for force-placed insurance policies despite the Lender's Loss Payable Endorsement that already protect the lender's interest in the property.

96.     Plaintiff and Class Members have been damaged as a direct and proximate result of Defendants' breach of their mortgage contracts and are entitled to damages as a result. Plaintiff and Class Members are entitled to compensatory damages to the extent they have been damaged, and injunctive and declaratory relief to prohibit Chase from continuing to breach their mortgages.

## COUNT THREE
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

97.     Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

98.     Every contract contains an implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing provides that, where one party is given discretion to act under a contract, that party must not exercise that discretion capriciously and in bad faith. One party may not act for its own financial gain at the expense of the other party.

99.     Pursuant to the covenant of good faith and fair dealing, Defendants were bound to perform their obligations under Plaintiff's and Class Members' mortgages in good faith and to deal fairly with Plaintiff and Class Members.

100.    To the extent that Plaintiff's and Class Members' mortgages authorized Defendants to force-place insurance, the implied covenant of good faith and fair dealing limited Defendants' ability to act capriciously and in bad faith in contravention of Plaintiff's and Class Members' reasonable expectations.

101.    Section 5 of Plaintiff's mortgage authorizes Chase to force-place hazard insurance to "cover" Chase's interest in the property. Section 5 also warns that the "cost" of such force-placed policy "might significantly exceed the cost of insurance that Borrower could have obtained."

102.    A reasonable borrower would interpret this provision as allowing Chase to force-place a higher-cost policy if necessary to "cover" Chase's interests. What is not reasonable is that Chase imposes a higher "cost" for force-placed insurance due to the self-dealing and profiteering arrangement between Chase and ASIC set up so that Chase borrowers fund the prearranged kickback scheme. The term "cost" should not be construed to include kickbacks.

22

103.    Additionally, a reasonable interpretation of Section 5 of Plaintiff's mortgage does not lead to the conclusion that Chase may backdate force-placed insurance policies when there is absolutely no risk of loss. No insurance is needed to retroactively "cover" Chase's interests when Chase already knows that no loss has occurred.

104.    Although Section 5 of the standardized residential mortgage authorizes Chase to charge Plaintiff for force-placed insurance, this provision is not a license to steal. It is not a license for Chase to pay itself a kickback under the guise of a "commission" (in an amount or percentage that is never disclosed to the borrower) when the "agent" receiving this "commission" does nothing to earn it.

105.    Chase's actions described in this Complaint constitute a breach of the implied covenant of good faith and fair dealing because Chase exercised its discretion under Plaintiff's and Class Members' mortgages in bad faith by imposing excessive, unauthorized, and unnecessary insurance on Class Members' property in contravention of the borrower's reasonable expectations.

106.    Specifically, Defendants breached the implied covenant when they:

a.  Failed to make any effort whatsoever to maintain borrowers' existing insurance policies and, instead forced borrowers to pay for insurance policies from providers of Defendants' choice, for the sole purpose of maximizing Defendants' profits;

b.  Forced borrowers to pay for both the actual cost of the policy plus the cost of the commissions/reinsurance premiums returned to Chase and failed to disclose these amounts to the borrower;

23

c.   Failed to seek competitive bids on the open market and instead chose force-placed insurance providers pursuant to prearranged secret arrangements so that Chase could maximize its profits;

d.   Assessed excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiff and Class Members and misrepresented the reason for the cost of such policies;

e.   Accepted purported reinsurance premiums and/or commissions in return for force-placing borrowers' insurance with ASIC, despite the fact that Defendants actually incur little, if any, expense because the force-placed insurance policies are automatically issued by ASIC pursuant to prearranged contracts and Defendants' captive reinsurance agreements provide for little or no actual transfer of risk;

f.   Backdated force-placed insurance policies to cover time periods which have already passed and for which no risk of loss exists;

g.   Misrepresented in their force-placed insurance notices that borrowers must pay for backdated insurance coverage for periods when the lender had no risk of loss due to the passing of time or a Lender's Loss Payable Endorsement covering the lender;

h.   Procured force-placed insurance policies to cover periods during which the lender is already covered pursuant to the Lender's Loss Payable Endorsement;

i.   Failed to provide borrowers with any opportunity whatsoever to opt out of having force-placed insurance policies provided by an insurer with whom Defendants had a kickback and/or captive reinsurance arrangement; and

24

j.   Withdrew premiums from Class Members' escrow accounts or added the cost of the premiums to Class Members' loan balances such that the premium amount became part of the borrower's loan obligation.

107.   As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered damages. Plaintiff and Class Members are entitled to compensatory damages to the extent they have been damaged, and injunctive and declaratory relief to prohibit Chase from continuing its bad faith exercise of discretion under their mortgages.

## COUNT FOUR
## UNJUST ENRICHMENT/RESTITUTION

108.   Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

109.   Plaintiff's and Class Members' mortgages do not directly address commissions for force-placed insurance or reinsurance premiums paid to Chase for force-placed insurance policies. Further, many Class Members have mortgages serviced, but not owned, by Chase. Thus, to the extent that any harm Chase's actions caused Plaintiff or any Class Member is not governed by express contract, Chase's enrichment at Plaintiff's and Class Member's expense constitutes unjust enrichment.

110.   As a result of Defendants' improper scheme alleged herein, Plaintiff and Class Members have conferred a benefit on Defendants, and Defendants have knowledge of this benefit, Defendants voluntarily accepted and retained the benefit.

111.   Defendants will be unjustly enriched if permitted to retain the benefit.

112.   Plaintiff and Class Members have conferred a substantial benefit upon Defendants in the form of overcharges for force-placed insurance policies that are excessive and unreasonable, and are the result of overreaching by Defendants.

113.   Defendants have appreciated this benefit. During the Class Period, Defendants have wrongfully collected millions of dollars in purported commissions and reinsurance premiums derived from the force-placed insurance premiums paid by Plaintiff and Class Members where such policies do not benefit Plaintiff or Class Members in any way and serve only to enrich Defendants.

114.   Defendants accepted and retained these payments under circumstances such that it would be inequitable for Defendants to retain the benefit without paying Plaintiff and Class Members. Defendants entered into secret agreements with ASIC whereby ASIC provides all force-placed insurance policies for Chase borrowers at a cost that far exceeds the market rate for similar policies. Defendant knew that these charges were unnecessary, excessive and were the result of bad faith business practices. Defendants profited substantially from the commissions and other compensation made possible by these overcharges and kickbacks.

115.   Additionally, Defendants improperly backdated force-placed insurance policies for Plaintiff and Class Members, such that Plaintiff and Class Members were forced to pay insurance premiums for retroactive insurance that could not ever provide any benefit for Plaintiff or Class Members. These policies, therefore, wholly lacked consideration.

116.   As a result of Defendants' unjust enrichment, Plaintiff and Class Members have sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of Defendants' enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful or wrongful conduct alleged herein.

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY

117.   Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

118.   Defendants hold funds in escrow for borrowers for payment of taxes and insurance. Defendants owed Plaintiff a fiduciary duty with respect to the funds held in his escrow account.

119.   In their capacity as escrow agent, Defendants had a duty to be impartial as to the interests of Plaintiff and Class Members and Defendants' own interest when dealing with the funds in escrow accounts.

120.   Defendants breached their fiduciary duty to Plaintiff and Class Members when they paid from escrow accounts for force-placed insurance at exorbitant rates solely for the purpose of maximizing Defendants' own profit and the profits of their agents and affiliates.

121.   Defendants acted contrary to Plaintiff's and Class Members' mortgage agreements and breached its fiduciary duty to its borrowers when it used escrow funds to purchase unnecessary hazard insurance.

122.   Plaintiff and Class Members have suffered and continue to suffer damages in the form of unnecessary and excessive escrow charges and loss of escrow accounts as a result of Defendants' described self-dealing and wasteful application of their escrow funds.

123.   Defendants' serious breach of its fiduciary duty has had the effect of pushing many nationwide Class Members to the brink of foreclosure and causing related costs and fees charged to their escrow accounts, as well as damage to Class Members' credit reports.

124.   Plaintiff and Class Members are entitled to punitive damages resulting from Defendants' breach of their fiduciary duty and misappropriation of escrow funds. In addition,

Plaintiff and Class Members are entitled to punitive damages because Defendants acted in bad faith and in deliberate and/or reckless disregard of Plaintiff's and Class Member's rights and Defendants' obligation to hold escrow account funds in trust.

## COUNT SIX
## CONVERSION

125.   Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

126.   Defendants had and continue to have a duty to maintain and preserve borrower's mortgage and escrow accounts and to prevent diminishment or alteration of such accounts through Defendants' own wrongful acts.

127.   Plaintiff's and Class Members' mortgages do not explicitly address commissions for force-placed insurance, or reinsurance premiums paid to Chase for force-placed insurance policies. Further, many Class Members have mortgages serviced, but not owned, by Chase. So, to the extent that any harm Chase's actions caused Plaintiff or any Class Member is not governed by express contract, Chase's usurpation of Plaintiff's and Class Member's money constitutes the tort of conversion.

128.   Defendants wrongfully converted funds in Plaintiff's and Class Members' escrow accounts when it intentionally collected force-placed insurance premiums from borrowers' escrow accounts or added such payments to borrowers' mortgage accounts.

129.   Defendants collected these premiums by intentionally taking the specific and identifiable funds held in Chase borrowers' escrow accounts or by misappropriating funds paid to borrowers' mortgage accounts.

130.   Without legal justification, Defendants have assumed and exercised an ownership right over Class Members' funds without authorization to do so and in hostility of Class Members' rights.

131.   Defendants have retained these funds without the consent of Plaintiff or Class Members and have deprived Plaintiff and Class Members from exercising control over the funds.

132.   Defendants intend to permanently deprive Plaintiff and Class Members of these funds.

133.   Plaintiff and Class Members properly own these funds. Although Defendants now claim that they are entitled to ownership of Plaintiff's and Class Members' funds, this claim is contrary to the ownership rights of Plaintiff and Class Members.

134.   Plaintiff and Class Members are entitled to immediate possession of the funds wrongfully converted by Defendants.

135.   Defendants' wrongful conduct is continuing in nature.

136.   As a direct and proximate result of Defendants' wrongful conversion, Plaintiff and Class Members have suffered and continue to suffer damages. Plaintiff and Class Members are entitled to recover all damages and costs, including all amounts that Defendants wrongfully converted.

## DECLARATORY AND INJUNCTIVE RELIEF

137.   Plaintiff restates and realleges the preceding paragraphs of this Complaint as if fully set forth herein word for word.

138.   Plaintiff will be irreparably injured in the future by Defendants' misconduct in connection with each cause of action alleged above.

139.   Plaintiff, individually and on behalf of all Class Members, seeks a judgment declaring that Defendants must cease the activities described herein, provide Class Members with adequate remedies, including, without limitation, refunds and/or credits of all unfair, unlawful, or otherwise improper force-placed insurance premiums and provide for adequate procedures and policies to ensure that Defendants' unlawful conduct does not continue. Such policies and procedures include, but are not limited to, a declaration that Defendants:

   a.   Are prohibited from force-placing insurance when the servicer knows or has reason to know that the borrower has a policy in effect that meets the minimum requirements of the borrower's mortgage loan;

   b.   Cannot force-place insurance that is in excess of the replacement cost of the improvements on the mortgaged property;

   c.   Are prohibited from purchasing force-placed insurance from a subsidiary, affiliate, or any entity in which they have an ownership interest;

   d.   Are prohibited from splitting fees, giving or accepting kickbacks or referral fees, or accepting anything of value in relation to the purchase or placement of the force-placed insurance;

   e.   Must make reasonable efforts to continue or reestablish the borrower's existing insurance policy if there is a lapse in coverage; and

   f.   Must purchase any force-placed insurance for a commercially reasonable price.

140.   Plaintiff and Class Members do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of Defendants' misconduct unless injunctive and declaratory relief is granted.

141.   Plaintiff and Class Members seek declaratory and injunctive relief as a form of relief pursuant to each and every cause of action pled above allowing for injunctive or declaratory relief, including, but not limited to, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, as well as any other form of equitable relief that the Court deems necessary and proper.

142.   As a result of the foregoing allegations, Plaintiff and Class Members are entitled to the declaratory and injunctive relief sought herein.

## VII.   PLAINTIFF'S AND CLASS MEMBERS' RESPA CLAIMS ARE TIMELY

143.   Plaintiff Edward Isom, Jr.'s RESPA claim is timely because Defendants subjected him to a force-placed insurance policy on or about October 11, 2011, within RESPA's statute of limitations.

144.   To the extent that any of the Class Members' RESPA claims accrued outside the applicable statute of limitations, Class Members' RESPA claims are subject to equitable tolling.

145.   Class Members' claims are subject to equitable tolling because they could not, despite the exercise of due diligence, have discovered the underlying basis for their claims against Chase. Defendants actively and knowingly concealed the basis for Class Members' claims by engaging in a scheme that was self-concealing by its very nature and design. Any delay by putative Class Members in raising claims against Chase was therefore excusable.

146.   Due to the complex, undisclosed and self-concealing nature of Defendants' scheme to collect kickbacks from ASIC, Class Members whose claims accrued outside the statute of limitations under RESPA did not possess sufficient information or the requisite expertise to enable them to discover the true nature of Defendants' unlawful kickback scheme.

Plaintiff and Class Members had no basis upon which to investigate the validity of any of Chase's commissions and/or reinsurance fees.

147.   Additionally, Chase engaged in affirmative acts to conceal the facts and circumstances giving rise to the claims asserted herein. In fact, Chase's form letters to borrowers regarding force-placed insurance affirmatively misled borrowers about Chase's relationship with ASIC and misrepresented that the so-called commissions paid to Chase were for services actually performed and that these commissions had no impact on the cost that the borrower paid for force-placed insurance. As stated above, these "commissions" were in fact unearned and they in fact drove up the cost of force-placed insurance significantly.

148.   Plaintiff and Class Members did not possess sufficient information to put them on notice of the true nature of Defendants' captive reinsurance arrangements with ASIC. Simply being told that Chase's selected force-placed insurer may "reinsure" the property with an affiliate does not put the average borrower on notice that any improper or actionable conduct may occur or that his rights under RESPA may be violated by such arrangement. Defendants intentionally designed the force-placed insurance disclosure to conceal this information from borrowers and to mislead borrowers into believing that this practice is lawful.

149.   Additionally, information regarding Defendants' kickback scheme has not been publicly available. Upon information and belief, "commissions" for force-placed insurance is not often reported by banks and captive companies do not have to file the detailed annual reports usually required of commercial insurance companies. *See*, Janis Mara, *Industry News, Wells Fargo, Citibank Under Investigation in Alleged Kickback Schemes*, Mar. 7, 2005, http://www.atla.org/indynews/news.cfm?newsID=2571 ("The annual reports and actuarial reports of Vermont's captives are protected by the state's confidentiality laws and cannot be

accessed without a court order by anyone other than a regulator.") Thus, even the most sophisticated borrower could not obtain such information even if he wanted to do so, absent filing a lawsuit and obtaining a subpoena.

150.   The Court should excuse the delay of any Class Members whose claims arose outside RESPA's statute of limitations because they did not and could not discover Defendants' wrongful conduct absent specialized knowledge and/or assistance of counsel. As such, it would be inequitable to apply RESPA's statute of limitations so as to preclude any Class Member's RESPA claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendants JPMorgan Chase Bank, N.A. and Chase Bank USA, N.A. in favor of Plaintiff and Class Members and award the following relief:

A.   That this action be certified as a class action pursuant to Federal Rule of Civil Procedure 23, and that this Court declare Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel;

B.   That the conduct alleged herein be declared, adjudged and decreed unlawful;

C.   Statutory damages pursuant to RESPA § 8(d)(2), 12 U.S.C. § 1207(d)(2);

D.   Compensatory, consequential, and general damages in an amount to be determined at trial;

E.   Costs and disbursements of this action;

F.   Restitution and/or disgorgement of Defendants' ill-gotten gains, and the imposition of an equitable constructive trust over all such amounts for the benefit of Class Members;

G.     Pre-judgment interest and post-judgment interest;

H.     Reasonable attorneys' fees; and

I.     All other relief that this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims and on all issues so triable in this action.


Dated: July 12, 2012                    Respectfully submitted,

                                        Matthew S. Wild
                                        **WILD LAW GROUP PLLC**
                                        121 Reynolds Village, Suite M
                                        Winston-Salem, NC 27106
                                        Telephone: (914) 630-7500
                                        Email:  mwild@wildlawgroup.com

                                        Max Wild
                                        **WILD LAW GROUP PLLC**
                                        98 Distillery Road
                                        Warwick, NY 10990
                                        Telephone: (914) 630-7500
                                        Email: max.wild@wildlawgroup.com

                                        Brent Walker
                                        Carter Walker, PLLC
                                        2171 West Main, Ste 200
                                        P.O. Box 628
                                        Cabot, AR  72023
                                        Telephone:  (501) 605-1346
                                        Facsimile:  (501) 605-1348
                                        Email:  bwalker@carterwalkerlaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS**