UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  13-21107-CIV-MORENO

SALVATORE SACCOCCIO, *et al.*,

      Plaintiff,

vs.

JP MORGAN CHASE BANK, N.A. *et al.*,

      Defendant.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, APPLICATION FOR SERVICE AWARDS, AND CLASS COUNSEL'S APPLICATION FOR ATTORNEY'S FEES AND EXPENSES

THIS CAUSE came before the Court upon Plaintiff's Motion for Final Approval of Class Action Settlement, Application for Service Awards, and Class Counsel's Application for Attorney's Fees and Expenses **(D.E. No. 108)**, filed on **January 27, 2014**. This case stems from premiums arising out of Defendants' lender-placed insurance arrangements. Previously, on October 4, 2013 the Court preliminarily approved the settlement and certified the class for the purpose of settlement. This Court held a final fairness hearing on February 14, 2014. As discussed more fully below, Plaintiff's Motion for Final Approval of Class Settlement is GRANTED. Class Counsel's application for attorneys' fees is GRANTED. Class Counsel's Application for Service Award is GRANTED.

### I. Background

### A. Defendants' Force-Placed Insurance Practices

This action concerns force-placed hazard insurance. Defendant Chase's standard mortgage agreement required borrowers to maintain hazard and wind insurance on the property that secured

their mortgages loans. The agreements provided that the lender or servicer of the loan may force insurance coverage on the property at the homeowner's expense if there was a lapse in coverage. Under the mortgage, the lender may obtain coverage to protect itself against the risk of loss, and either advises the borrower that the cost of coverage may be significantly higher than the cost of voluntary coverage or provides that the lender may pay the necessary costs to protect itself from loss.

Plaintiff Saccoccio had hazard coverage force placed on his property by a Chase defendant. Plaintiff, on behalf of the class, questions not Chase's right to place the insurance, but rather its practice of artificially inflating the cost of coverage in a scheme with Defendant Assurant and its subsidiaries. Plaintiff alleged that Chase purchased master insurance policies from Assurant and its subsidiaries to cover its entire mortgage portfolio. In exchange for this policy, Chase granted Assurant the exclusive right to force new coverage on borrowers' properties in the event of lapse or the detection of insufficient coverage. In turn, Assurant provided with commissions or "kickbacks" on the policies and entered into exclusive reinsurance agreements with Chase. Assurant would monitor the loan portfolio, and, when a lapse was identified, one of its subsidiaries, American Security Insurance Company ("ASIC"), Standard Guaranty Insurance Company ("Standard Guaranty") or Voyager Indemnity Insurance Company, ("Voyager") would send notice to the borrower that the a new lender-placed policy will be placed on the property if the voluntary coverage is not continued. When the borrower did not correct the coverage lapse, the insurer would notify that borrower that the new coverage was being placed at the borrower's expense. Plaintiff has alleged that the letters were inaccurate, as the force-placed insurance became effective immediately and automatically on the day of the lapse under Chase's umbrella policy. Premiums for the new coverage were deducted from the borrower's escrow account or added to the balance of the mortgage loan.

## B. Procedural Background

Plaintiff Saccoccio filed suit in June 2012 challenging the Chase and Assurant defendants' force-placed hazard insurance practices. The case was styled *Barreto v. JP Morgan Chase Bank, N.A.* No. 12-cv-22053-Moore (S.D. Fla.). In that action, Plaintiffs sought to centralize all force-placed insurance litigation pending nationwide in a multidistrict proceeding. The Judicial Panel on Multidistrict Litigation, however, denied the motion. Thereafter, Plaintiffs filed *Hall v. Bank of America N.A.*, 12-cv-22700-Moreno (S.D. Fla.). That case brought nationwide forced-placed insraunce claims against five lenders and their respective forced-placed insurers. Those five lenders were (1) Bank of America, (2) JP Morgan Chase Bank, (3) Wells Fargo, (4) HSBC Bank USA, and (5) Citibank, N.A. The class-action complaint was filed on November 23, 2012. In March 2013, this Court ordered Plaintiffs to re-file in five separate pleadings so that there would be a separate action pending against each lender and its respective force-placed insurer.

This case was thus filed against the Chase and Assurant Defendants. The case was originally styled *Herrick v. JP Morgan Chase Bank, N.A.* Plaintiffs alleged breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, tortious interference with a business relationship, violations of the Florida Deceptive and Unfair Trade Practices Act, the Federal Bank Holding Company Act, and the Federal Truth in Lending Act.

Plaintiff Saccoccio's claims arose out of force-placed hazard insurance on his property; the other named plaintiffs, including Plaintiff Herrick, made claims based upon force-placed wind insurance. This Court stayed and eventually severed all claims arising out of force-placed wind insurance claims after preliminary settlement was approved as to wind claims in a companion case, *Pulley v. JP Morgan Chase Bank, N.A.* 12-cv-60936 (S.D. Fla.) (Cohn, J.).

The parties began mediating the hazard insurance claims in May 2013. The parties participated in three in-person mediation sessions overseen by Rodney Max between May and July 2013. They also continued to exchange documents and negotiate outside of formal meeting sessions with the participation of the mediator. On July 12, 2013, Plaintiff Saccoccio announced the settlement with Defendants of all nationwide hazard claims.

## II. The Settlement Agreement

The settlement agreement covers all borrowers nationwide who had a hazard insurance policy force-placed on residential property by Chase Defendants between January 1, 2008 and October 4, 2013, the preliminary approval date, who either paid the premium of the policy to Chase or were charged a premium and still owe at least some portion of the premium. The settlement class included approximately 762,390 people. The class will receive monetary relief on a "claims-made" basis. Any class member who submits a valid claim form will recovery 12.5% of the net premium charged to the class member during the class period, less any refund credited to them, regardless of whether the class member paid the premium to Chase. Under the settlement agreement, class members can receive more than $300 million in monetary relief.

To provide notice to class members, the Settlement Administrator, Garden City Group, established a website in both English and Spanish and set up a 24/7 toll-free telephone number. Class members were also sent information on the settlement through the mail. Settlement Administrator Garden City Group obtained 1,468,929 class member records from Assurant, including names, current or last-known addresses, and policy numbers for all people meeting the class definition. The Settlement administrator mailed 1,454,658 notice packets to class members. It further remailed notice packets to any class member for whom it received a change of address form from the U.S.

postal service. Finally, notice was published in the November 14, 2013 print edition of *USA Today*.

The settlement agreement also provides injunctive relief. The Chase and Assurant Defendants are enjoined from inflating premiums imposed on mortgagors for a period of six years. During those six years, Chase will accept no financial interest in the placement of force-placed hazard insurance policies outside of the premium itself and the protection of the policy. Chase Defendants and affiliated companies are prohibited from accepting commission on force-placed hazard insurance, entering into quota-share reinsurance arrangements with Assurant or any other insurer, accepting payments from any force-placed insurer or vendor for administrative or other service related to force-placed insurance, and from accepting below-cost or free outsourced services provided by force-placed insurers or vendors.

Similarly, Assurant Defendants are prohibited from providing force-placed hazard insurance commissions to Chase-affiliated agents or brokers, hazard quota-share reinsurance agreements, payments for any administrative or other service associated with force-placed hazard insurance policies for a period of six years. They are further prohibited from accepting from Chase payments for below-cost or free outsourced services.

Under the terms of the settlement agreement, Chase must establish force-placed insurance coverage at the last known coverage amount or the unpaid balance on a borrower's loan. Chase must advance funds in the event of a lapse to continue coverage under the borrower's voluntary policy, and must refund any amounts due to the borrower once voluntary insurance is put back within 15 days of the receipt of evidence of voluntary coverage.

In exchange for the relief provided in the settlement, members of the class release the Chase and Assurant Defendants, as well as their former and current subsidiaries, affiliates, divisions,

parents and other affiliated companies, among others, from all claims, obligations or damages that were or could have been sought in this litigation or that relate to, concern, arise from or pertain in any way to Defendants' conduct, policy or practices concerning force-placed hazard insurance polices placed by Chase during the class period. This release includes Chase subsidiary Banc One, which is named in the settlement agreement as a released Chase subsidiary.

Under the agreement, Class Counsel shall receive $20 million for their representation of the Class in this matter. That amount shall be paid by Defendants in addition to the $300 million available to the class. Plaintiff Saccoccio shall recive a Case Contribution Award of $5,000 to be paid by the Defendants. The deadline to opt-out of or object to the settlement was January 15, 2014. As of January 23, 2014, the Plaintiffs indicate that the settlement administrator had received only 122 valid opt-out requests. Additionally, eight objections filed on behalf of 16 objectors have been filed. The Court held a final fairness hearing on February 14, 2014.

## III. Legal Analysis

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).

The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opprotunity to request exclusion but did not do so

(5)Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval

Fed. R. Civ. P. 23(e).

The parties in this case settled prior to the certification of the class. "A class may be certified solely for the purposes of settlement where settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1313-1314 (S.D. Fla. 2005). Where the district court need only certify the class for the purpose of settlement it "need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Nevertheless, other requirements of Rule 23, "those designed to protect absentees by blocking unwarranted or overbroad class definition-demand undiluted, even heightened, attention in the settlement context." *Id.*

This Court held a final fairness hearing on February 14, 2014. The parties have filed a statement identifying the settlement agreement. The Class was preliminarily certified for settlement under Fed. R. Civ. P. 23(a) and 23(b)(3). The purported class members were given until January 15, 2014 to object to the class or opt out of the class. Thus, all requirements of Rule 23(e) will be found to be present if this Court determines that (1) the notice to the class was reasonable, (2) the settlement is fair, reasonable, and adequate. The Court will also address the merits of the objections in part IV.

## A. Reasonableness of the Notice to the Class

"For a court to exercise jurisdiction over the claims of absent Class members, there must be minimal procedural due process protection." *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377

(S.D. Fla. 2007). In actions certified under 23(b)(3), class members should receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "Regardless of the category under which a class suit may be or potentially may be certified, however, rule 23(e) requires that absent class members be informed when the lawsuit is in the process of being voluntarily dismissed or compromised." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012). The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985).

After the class was certified for the purpose of settlement, the Settlement Administrator mailed 1.4 million notice packets to 762,390 apprising them of the settlement, identifying the class, notifying them of the nature of the actions and the class claims, providing that class members may enter appearance through counsel if they choose, notifying them of the binding effect of the settlement and steps that must be taken to ensure recovery, and alerting them to their rights to be excluded from the settlement and the deadline to do so. This packet also contained the claims form necessary to submit a claim. The Settlement Administrator also established a website and a hotline for class members with questions. The website linked to a copy of the Claims form. This Court thus finds that the notice was reasonable under Rule 23(e) and that the notice was the best practicable under Rule 23(c)(2)(B).

## B. Fairness, Adequacy and Reasonableness of the Settlement

The Court should approve a proposed class action settlement where it is "fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The factors the Court should consider in determining

whether a settlement is fair, adequate, and reasonable are

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which settlement was achieved.

*Bennett v. Behring Corp.*, 737 F.2d at 986. The Court "should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991). In class action cases, the trial judge must weigh "the overriding public interest in favor of settlement" when reviewing the settlement agreement. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)[1]; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988).

This Court must thus determine whether the settlement was a product of collusion. It will then turn to an analysis of the *Bennett* factors.

### 1. The Settlement was not the Product of Collusion

There is a presumption of good faith in the negotiation process. *See Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004). Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. *See, e.g. See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 470 (S.D. Fla. 2002). Further, where the case proceeds adversarially, this counsels against a finding of collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001).

The Court finds that the settlement is not the product of collusion. The parties worked extensively with a mediator, Rodney Max. They participated in three in-person sessions as well as

---

[1]All Fifth Circuit decisions handed down prior to the close of business on September 30, 1981, are binding precedent upon the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981)(en banc).

numerous telephone and email communications. The mediator was involved in all steps in the process. Further, this case was intensively litigated. Defendants filed numerous dispositive motions that could have completely absolved themselves of liability throughout the time that this case has been active. It is clear that the negotiations between the parties proceeded at arms' length.

Because the Court finds that the settlement was not the product of collusion, it will now assess the *Bennett* factors.

### 2. Likelihood of Success at Trial

The Plaintiff's likelihood of success at trial is "weighed against the amount and form of relief contained in the settlement." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at 1319. Here, it is not at all clear that Plaintiff would have succeeded at trial. The complaint alleged numerous claims including breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duty, tortious interference with a business relationship, violations of the Florida Deceptive and Unfair Trade Practices Act, the Federal Bank Holding Company Act, and the Federal Truth in Lending Act.

Many of the claims presented by Plaintiff were highly complex, and there is strong authority to suggest that Plaintiff may not have prevailed. For example, in *Kunzelmann v. Wells Fargo Bank, N.A.*, a recent decision from this district, Judge Middlebrooks declined to certify a nationwide class for forced-placed insurance claims. *Kunzelmann v. Wells Fargo Bank, N.A.* 2013 WL 139913 at *13 (S.D. Fla. Jan. 10 2013). The Court in that case noted that claims for unjust enrichment and breach of implied covenant of good faith and fair dealing require "individualized scrutiny incompatible with class treatment." *Id.* at *10. The court also noted that unjust enrichment claims vary from state to state, and that "Plaintiff has failed to carry his burden that there are no material variations in state

-10-

law." *Id.* at *11.

Similarly, Defendants have some strong affirmative defenses. For example, Assurant Defendants have made arguments based upon the filed-rate doctrine. "The filed-rate doctrine recognizes that where a legislature has established a scheme for rate-making, the rights of the rate-payer in regard to the rate he paid are defined by that scheme." *Id.* (*citing Taffet v. Southern Co.*, 967 F.2d 1483, 1491-92 (11th Cir. 1992). In *Kunzelmann*, the Court again declined to certify the class due to the differences in state law on the doctrine. *Id.* at *12.

A recent Eleventh Circuit decision further demonstrates the potential peril Plaintiff faced. In *Feaz v. Wells Fargo*, the Eleventh Circuit affirmed a dismissal of a claims arising from a force-placed insurance scheme that was similar to the one in the case at bar. *Feaz v. Wells Fargo Bank, N.A.*, 2014 WL 503149 (11th Cir. Feb. 10, 2014). In that case, the Eleventh Circuit stated that plaintiff "alleges that Wells Fargo's use of escrow funds to pay for the force-placed insurance breached fiduciary duties, but this assumes, without a legal basis, that a lender's administration of such "escrow funds" creates a fiduciary relationship." *Id.* at *10. In affirming the dismissal, the Eleventh Circuit stated that:

> We agree with the Seventh Circuit that simply calling a commission a kickback doesn't make it one. The defining characteristic of a kickback is divided loyalties. But [the lender] was not acting on behalf of [the borrower] or her interests. The loan agreement makes it clear that the insurance requirement is for the *lender's* protection.

*Id.*(*citing Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 611 (7th Cir. 2013)). While Plaintiff's class counsel expressed confidence that it could distinguish these cases and rise above the adversity, it is obvious that the headwinds created by these decisions are significant. Indeed, there exists a potential that the class could endure a long and expensive trial only to come away with nothing that is impossible to ignore. *See e.g. Enter. Energy Corp. v. Columbia Gas. Transmission Corp.*, 137

F.R.D. 240, 248 (S.D. Ohio 1991).

In the face of these headwinds then, the settlement is a favorable one. Class members who return a claim form will receive 12.5% of the yearly premium charged, not just of the excess charged above the actual or competitive cost of coverage. The class members will receive this regardless whether they paid any portion of the premium to Chase. Further, the injunctive relief prevents the Defendants from engaging in similar schemes for six years. Thus, the strength of the settlement in light of the many potential pitfalls present in the case weighs in favor of accepting the settlement.

### 3. *The Range of Possible Recovery and the Point on Which or Below the Range of Recovery is Fair.*

The next *Bennett* factors the Court should consider are the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable. These factors are "easily combined." *Behrens v. Wometco Enters. Inc.*, 118 F.R.D. at 541. The range of possible recovery spans from a finding of non-liability to a varying range of monetary and injunctive relief. *See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 468 (S.D. Fla. 2002). "In considering the question of a possible recovery, the focus is on the possible recovery at trial." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at 1322. The Court should evaluate the "proposed settlement in its totality." *Id.* at 1323.

Based on the evidence, the maximum rate that the premium would fall without the "commissions" between Assurant and Chase is 12.5%. Additionally, evidence in the record suggests that regulators in 45 of the 50 states have approved an Assurant lender-placed product that would reduce the premiums charged to lenders and passed through to borrowers by 12.5%. Thus, from this perspective, the Class recovery is 50-100% of the damages. Factoring in the injunctive relief, which prohibits practices that earned Chase and its subsidiaries over $690 million over the class period, the

settlement very likely exceeds what Plaintiffs could have won at trial. Even assuming that the monetary figure represents only 12.5% of Plaintiff's damages, which the Court is satisfied they do not, this recovery would still be adequate. *See In re Checking Account Overdraft Lit.*, 830 F.Supp.2d 1330, 1346 (S.D. Fla. 2011) (a recovery of between 9% and 45% was an "exemplary result"). These factors favor approval of the settlement.

### 4. The Complexity, Expense, and Duration of the Case Weigh in Favor of Approval

The next factor the Court should consider is the complexity, expense, and duration of the litigation. As discussed above, the issues raised in this case are indeed quite complex. Nationwide, Courts with cases stemming from lender-placed insurance are coming to different conclusions regarding the issues before them. *Compare, e.g. Feaz v. Wells Fargo Bank, N.A.*, 2014 WL 503149 (11th Cir. Feb. 10, 2014) *with Cannon v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 11163 (N.D. Cal. Jan. 29, 2014). The parties have already expended significant energy and money litigating this case and propounding discovery, and, absent settlement, would have had to expend significant resources in litigating a protracted trial and appeal. Therefore, these factors weigh in favor of approving the settlement. *See  See Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. at 469.

### 5. The Substance and Amount of Opposition to Settlement is Light

The next *Bennett* factor the Court must consider is the substance and amount of opposition to the settlement. "[T]he reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at 1324. Thus, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable. *See id.*

-13-

Despite establishing a website in both English and Spanish, setting up a toll-free hotline, placing notice in *USA Today*, and sending over 1.4 million notice packets to 762,390 class members, as of the objections deadline there were only eight objections filed representing 16 class members. Additionally, 122 members of the class opted out of the settlement. Combined, this opposition represents just .018% of the settlement class. Because of the low resistance to the settlement, this factor weighs in favor of approving the settlement. *See id.* (1,159 opt-outs and 41 objections is "infinitesimal" compared to 8,822,803 notices mailed).

### 6. The Stage of the Proceedings at Which Settlement was Achieved Favors Dismissal

The stage of the proceedings at which settlement is achieved is "evaluated to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Id.* Early settlements are favored. *See id.* Indeed, "vast formal discovery need not be taken." *Id.*

According to class counsel, significant discovery had occurred prior to settlement. While this action was filed on March 28, 2013 and settlement was announced on July 12, 2013, the case has been proceeding for some time. As discussed above, this case was originally part of the *Hall v. Bank of America* matter, which was filed on July 24, 2012. Class counsel has spent over 1.5 years litigating against Assurant and Chase, and during that time has propounded discovery, including deposing witnesses and reviewing documents as to the forced-placed insurance plan as to satisfy itself as to its probability of success on the merits, the possible range of recovery, and the likely expense and duration of the litigation. Under these circumstances, the stage of the proceedings at which settlement was achieved favors dismissal.

For the above combined reasons, the Court finds that the settlement is fair, adequate, and

-14-

reasonable and not the product of collusion.

## C. The Reasonableness of Class Counsel's Attorney's Fees

Class Counsel has filed an Application for attorneys' fees in the amount of $20 million. As discussed more fully below, Class Counsel's Application is GRANTED.

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The "common fund" analysis is appropriate even where the fee award will be paid separately by Defendants. *See David v. American Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n.14 (S.D. Fla. April 15, 2010) (*citing Duhaime v. John Hancock Mut. Life. Ins. Co.*, 183 F.3d 1, 4 (1st Cir. 1999). "Attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999). The typical common fund fee awarded is between 20% and 30% of the fund. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d at 775.

The nonexclusive factors the Court should consider in determining the reasonableness of the attorneys' fees are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and

length of the professional relationship with the client; and (12)awards in similar cases. *Id.* at 772 n.8

(*citing Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974); *Walco Invs. v.*

*Thenen*, 975 F.Supp. 1468, 1471-72 (S.D. Fla. 1997).

The fee requested by Class Counsel is $20 million, which represents 6.7% of the total class

award. This falls well below the range of 20-30% fee that is customary in common fund cases. *See*

*e.g.Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d at 775. Additionally, the fee was entirely

contingent. Thus, Class counsel would have recovered nothing had it not recovered for the class. For

a complex and sophisticated case such as this one, class counsel took a considerable financial risk

in pursuing the case. The results obtained here are some of the most favorable that have yet come

for Plaintiffs in lender-placed insurance cases. In addition to $300 million monetary recovery, the

class has scored injunctive relief valued by class counsel at over $650 million. Indeed, the results

achieved should play a major part in the determination of the fee award. *See Hensley v. Eckerhart*,

461 U.S. 424, 436 (1983).

Regarding time and labor, Class Counsel has provided evidence that it spent numerous hours

investigating claims in this case and arranged daily meetings. Class counsel attended three separate

mediation hearings and negotiated this settlement between May 2013 and July 2013. Class counsel

has interviewed class members and will maintain a role in the settlement after final approval, and

will handle all appeals. Regarding the novelty and difficulty of the matter, suits based upon practices

arising out of lender-placed insurance are relatively new. Courts are coming to different conclusions

concerning these actions, and it was not at all clear that the class would have obtained a better

recovery at trial. Indeed, it is entirely possible that the class would have come away with nothing.

It is worth noting that, to achieve a favorable result in these circumstances would require a high

degree of skill. Additionally, class counsel has been at the forefront of lender-placed insurance litigation.

Taken together, the factors above strongly weigh in favor of Class Counsel's application for attorneys' fees. As such, this Court finds that $20 million is a reasonable amount for attorneys' fees. Class Counsel's application for attorney's fees in the amount of $20 million is GRANTED.

### D. Lead Plaintiff's Service Award

Lead Plaintiff Salvatore Saccoccio has applied for a service award of $5,000. In instituting litigation, representative plaintiffs act "as private attorneys general seeking a remedy for what appeared to be a public wrong." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334, 1344 (S.D. Fla. 2007). Class Counsel has stated that the Class Representative aided in the investigation of the claims, discovery requests, and settlement. Under similar circumstances, "Courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred." *Id; Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.supp.2d 1185, 1218-19 (S.D. Fla. 2006). No objections have been filed against Saccoccio's application. Therefore, Plaintiff Salvatore Saccoccio's application for a $5,000 service award is GRANTED.

## IV. Objections to the Settlement

As discussed above, 16 total objectors filed eight objections. The objections will be discussed below.

### A. Garry Mitchell Varnes, *et. al.*

On behalf of seven of other objectors (collectively "Varnes Objectors") Garry Mitchell Varnes objected to the settlement. The Varnes objectors are the principle objectors in this matter.

#### 1. The Requirement that All Class Members Submit Claims Forms in This Action is Reasonable

The Varnes Objectors first argue that the requirement that class members submit claims forms in order to receive compensation is an unfair and unreasonable impediment to recovery. The Varnes Objectors argue that the process is unfair because (1) federal law requires servicers to maintain records describing the amount paid from a mortgage escrow account for lender-placed insurance premiums, (2) Defendants were able to successfully identify class members, and (3) the Claims-form does not require detailed loan information.

"There is nothing inherently suspect about requiring class members to submit claim forms in order to receive payment." *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 593 (N.D. Ill. 2011). Numerous Courts in this district have required claims forms to be submitted by class members. *See, e.g. Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298; *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1377-79 (S.D. Fla. 2007).

The settlement provides relief to class members who actually paid or who were charged and still owe some portion of the force-placed insurance premium. Defendants admit that the Varnes objectors are correct in their assertion that Defendants record lender-placed insurance charges and payments made by class members to the class members escrow accounts. Defendants also have class members loan information. Nevertheless, Defendants have presented evidence that they cannot, on a systemwide basis, determine which class members paid the lender-placed insurance premium or what they paid or what portion of the lender-placed insurance premium was paid without going individually through each of the 762,390 files. Each escrow account includes different items such as voluntary insurance and taxes, as well as the lender-placed insurance premium. The Defendants presented evidence that, had they been required to manually review all files, "[i]t would take a thousand people to do that every month." Jeff Nack Dep. 69:3-5, Aug. 14, 2013.

-18-

Additionally, the size of the class contrasts sharply with the cases cited by Varnes objectors where a file-by-file review was possible. *Compare Pulley v. JPMorgan Chase Bank*, 12-cv-60936-Cohn, D.E. 80 (S.D. Fla. 2013) (approximately 13,000 class members). For the above reasons, the Varnes Objectors objection to the Claims-made process is OVERRULED.

### 2. This Court May Properly Approve the Settlement Without Knowing the Exact Number of Claims Filed

The Varnes Objectors next argue that this Court cannot approve the settlement without assuring itself that the claims rate is sufficiently high. First, this Court notes that courts in this district have approved claims-made settlements where the participation rate was very low. *See Perez v. Asurion Corp.*, 501 F.Supp.2d at 1377 (1.1% of class members returned claims forms). Secondly, the period to submit a claim form does not conclude until June 14, 2014. Thus, it would be inappropriate to sustain the objection. As such, the objection is OVERRULED.

### 3. The Objection that Defendants can Unilaterally Audit all Claims Received and Reject them as Insufficient as They See Fit is Meritless

The Varnes Objectors next argue that the settlement is unfair because it gives Defendants a unilateral right to audit and reject claims. This argument is meritless. First, under the provision, the Settlement Administrator, not the Defendants, have a discretion to deny claims. Factually, the rejection "right" that Objectors take issue with only gives the Defendants the limited ability to notify the Settlement Administrator of an inaccurate claim while also providing written notice to Class Counsel. Thus, Class Counsel will have the ability to protect members of the class at all stages of the audit, and can intervene should there be any abuse. *See generally Nguyen v. BMW of N. Am, LLC*, 2012 WL 1677054 at *3 (N.D. Cal. Apr. 20, 2012). Therefore, this Objection is OVERRULED.

### 4. Chase Subsidiary Banc One is Covered and Released by the Settlement Agreement

The Varnes Objectors next argue that the settlement is insufficient because Banc One, a Chase subsidiary that was involved in reinsurance, is not a defendant and is not covered by the agreement. Objectors present numerous arguments to support this contention. The Court accepts none of them.

The Objectors first argue that the settlement must be rejected because Banc One is not a signator to the settlement agreement or a defendant. They further that the reinsurance portion of the scheme that Banc One participated in is not covered by the case or by the settlement, stating instead that the case only covers improper commissions.

It is "well established law that class actions may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at 1317 (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 106 (2d Cir. 2005). Indeed, "class action settlements have in the past released claims against non-parties where, as here, the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled." *Id.* (*citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d at 109).

It is the same in this case. The claims being released against Banc One involve identical lender-placed insurance transactions. The Complaint even explicitly mentions Banc One's reinsurance affiliation with Chase. Indeed, the Complaint alleges that Chase Defendants force-placed insurance in order to receive kickbacks in the form of commissions from and reinsurance arrangements with the Assurant defendants. Finally, Ron Brusky, the Assurant Defendants' chief actuary, explained that reinsurance coverage costs were included in the premium charged by the

force-placed insurance. Ron Brusky Dep. 17:2-18:2, 18:20-22, August 23, 2013. Thus, this argument is meritless. Despite the Varnes Objectors concerns about the well-being of the class, the objection is misplaced.

Objectors next argue that the Notice issued to the class does not identify Banc One as a defendant or as a party which the class will lose the right to sue. Nevertheless, the Notice directs the Class to "carefully read" the Release detailed in Section 10 of the Settlement Agreement. That release explicitly releases Banc One. The Eleventh Circuit has interpreted rule 23 to require class members to be given "information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Cor.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

In this case, the notice has provided class members with enough information to determine whether to remain a class member. It specifically directs them to the portion of the Settlement Agreement where claims against Banc One will be released. This is sufficient to comply with the requirements of Rule 23.

Finally, the Varnes Objectors argue that the Court should not approve the settlement because class counsel did not take discovery of reinsurance claims involving Banc One and can thus not be informed in the settlement discussion. This argument likewise fails to persuade. As discussed, this case was originally subsumed in the *Hall v. Bank of America* action. Incredibly, the Varnes Objectors now argue that any discovery taken in that case does not and should not count to inform Class Counsel - which is the same in both cases. Ignoring the actual level of discovery in this case, it is clear that "vast formal discovery need not be taken." *Lipuma v. Am. Express Co.*, 406 F.Supp.2d at

1325. This particular objection is, at best, laughable. Thus, it is denied. For the above reasons, the objections relating to Banc One are OVERRULED.

### 5. The Notice, Claim Form, and Instructions are not Deficient

The Varnes Objectors next argue that the Notice, Claim form and Instructions are deficient. The Objectors state that the information required on the claims form is something that many class members no longer have, and thus a bar to recovery. They argue that because borrowers do not choose their force-placed insurance providers, and because the class period goes back several years, "a significant number of Claimants certainly will not have copies of their policies available to verify such information and will not risk penalties of perjury to submit a claim when they are unsure of what is being asked." This argument is specious. The class members are asked to provide a very minimum amount of information. If they cannot immediately recall the answer, they are free to consult their escrow statements or other documents. As the Court in *Mangone v. First USA Bank* stated "[t]hese objections ignore the rule that a plaintiff in a civil lawsuit bears the burden of proving liability and damages in his or her own case. Class action status does not alter this basic principle." *Mangone v. First USA Bank*, 206 F.R.D. 222, 234 (S.D. Ill. 2001). In other words, the Varnes Objectors cannot derail a settlement because the members of the class are being asked to provide a tiny fraction of the information they would be required to prove at trial in a claims form.

This same rationale applies the Varnes Objectors worry that the "ambiguities" over whether they should check the "paid" or "unpaid" box on the Claim form will frighten and paralyze class members such that they will not return the claims form. Therefore, this objection is OVERRULED.

### 6. Class Counsel's Usage of Injunctive Relief as Support for Fees is not Improper

Finally, the Varnes Objectors argue that Class Counsel's usage of the injunctive relief, which

class counsel values at approximately $690 million, is improper to support its application for attorney's fees. They argue that the injunctive relief is duplicative of the rules of and consent agreements with State Attorneys General, forbidden by federal regulations and Fannie Mae Servicing Guides, and unnecessary because of Defendants' assertions that they have voluntarily ceased the practices complained of. None of these arguments has the slightest hint of merit.

First, and most obviously, the Varnes Objectors conveniently ignore that, in addition to the injunctive relief, Class Counsel has *also* returned monetary relief in the approximate amount of $300 million. This monetary award alone more than justifies Class Counsel's application for an award of attorney's fees in the amount of $20 million, or 6.7% of the monetary recovery. *See e.g.Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d at 775 (attorneys' fees typically in the 20-30% range). Additionally, the injunctive relief guarantees the cessation of the commissions for lender-placed insurance and other practices that were the subject of this litigation for a period of six years. Plaintiff's voluntary termination of the practice could be reversed tomorrow, as could, at least in theory, rules propounded by outside regulators. Additionally, the settlement was executed months before most of the regulations took place. Thus, this final objection by the Varnes Objectors is OVERRULED.

### B. Leigh Aquino

Objector Leigh Aquino also has objected to the settlement. She has objected to certification of the class, the claims process, the amount of attorney's fees, and she has argued that the settlement motion schedule violates Rule 23(h).

As discussed above and in the Court's October 4, 2013 Order, which, among other things, certified the class for settlement, this Court has already found that certification of the class is

warranted and appropriate. Likewise, the Court has explained why a Claims-made settlement is appropriate in this case. Therefore, these objections are OVERRULED for the reasons already stated.

Similarly, the Court has already found that $20 million is an appropriate amount for class counsel to recover. Thus, the objections related to the amount of attorney's fees is OVERRULED.

Finally, Aquino objects that the timing of the application for attorney's fees violates rule 23(h). Under the Court's October 4, 2013 preliminary approval Order, objections must have been filed by January 15, 2014. Class Counsel filed its application for attorney's fees on January 27, 2014. Aquino argues that this violates Rule 23(h). She points to *In re Mercury Interactive Corp. Secs. Litig.* to support her argument that the Court violated Rule 23(h). Indeed, in that case, the Ninth Circuit held that it was an abuse of discretion to require the submission of written objections before the deadline for class counsel to file its application for attorney's fees. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 888, 993 (9th Cir. 2010). Nevertheless, that rule is not universal, and the rule has been rejected by at least one other Circuit. *See Cassese v. Williams*, 503 Fed.Appx 55, 57 (2d Cir. 2012). The Eleventh Circuit has not decided this issue.

This Court finds that Class Counsel complied with Rule 23(h). The Court's October 4, 2013 Order stated that Class Counsel would apply for attorney's fees not to exceed $20 million dollars. The notice sent to class member likewise stated that the attorneys would apply for fees not to exceed $20 million. Class counsel applied for fees and expenses in the amount of $20 million. The Court held a final fairness hearing on February 14, 2014.

This set of facts follows the path worn by class attorneys in *Cassese*. In that case, the Notice of Class Action and Proposed Settlement, dated June 27, 2011, stated that class counsel would apply for attorneys' fees not to exceed $3,900,000. *Id.* at 58. Class members were permitted to object prior

-24-

to August 31, 2011, and the final fairness hearing would be held on September 15, 2011. The court reasoned that "[a]ny objectors then had two weeks to crystallize their objections and request further information before attending the fairness hearing." *Id.* Because that process was availed of, the Court found no due process denial or abuse of discretion.

Like in *Cassese*, objectors here had over two weeks between the application for fees and the final fairness hearing. Aquino was represented by an attorney who stated his intention to appear. While Aquino's representation did not ultimately appear at the final fairness hearing, other objectors did. Thus, this Court finds that there were no due process violations and that Rule 23(h) was complied with. As such, this objection is OVERRULED.

### C. Theodore and Efstathia Stout

Objectors Theodore and Efstathia Stout object on the grounds that the settlement is not fair, reasonable or adequate; the settlement benefits patently fail to approximate the point on the range of recovery that would be fair, adequate, and reasonable; the class unfairly releases claims they may have asserted against Defendants; the release is overbroad, unfair, and unreasonable; the notice program is deficient and does not meet due process requirements; the Notice does not fairly advise proposed class members of all material terms and is misleading or deceptive; the claims process is confusing, ambiguous, and deficient; and the attorneys' fees are excessive and unreasonable. Despite being represented by counsel, the Stout Objectors provide no reasoning behind their objections. Rather, they provide cursory objections in list form. Their objections have been discussed above. Thus, the objections are OVERRULED.

### D. Leigh Tiller Pearson

Objector Leigh Tiller Pearson has filed an objection. The Objection makes three arguments:

(1) Class Counsel violated rule 23(h) by failing to file motion for attorney's fees before the objection deadline; (2) Attorney's fees are too high; (3) the claims process is unfair and overly burdensome. These objections have all been discussed above. Therefore, Objector Leigh Tiller Pearson's objections are OVERRULED.

### E.*Pro Se* **Objectors**

Finally, five *pro se* class members filed objections. These Objectors are Steve Wimmer, Michael Narkin, Amos Morsby, and Corey and Ann Dawley. Michael Narkin attended and spoke at length at the final fairness hearing. Their objections can be grouped into two categories (1) the recovery was too low, and (2) the attorney's fees were too high. Both objections have been discussed above. Thus, the *Pro Se* objectors' objections are overruled. Further, to the extent that these objectors believe that they are entitled to additional relief due to unique cases, they were entitled to opt out of the settlement. They chose not to do so. *See In re Worldcom Inc. Sec. Litig.*, 388 F.Supp.2d 319, 343 (S.D.N.Y. 2005).

## V. Conclusion

THIS CAUSE came before the Court upon Plaintiff's Motion for Final Approval of Class Action Settlement, Application for Service Awards, and Class Counsel's Application for Attorney's Fees and Expenses **(D.E. No. 108)**, filed on **January 27, 2014**.

THE COURT has considered the motion, response, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

 **ADJUDGED** that the motion is GRANTED. This Court hereby

(1) APPROVES the Final Class Action Settlement

(2) GRANTS Class Counsel's Application for attorneys' fees in the amount of $20 million

(3) GRANTS Lead Plaintiff Salvatore Saccoccio's application for a service award in the amount of $5,000

(4) OVERRULES all Objections to the Settlement.


DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of February, 2014.



_____

FEDERICO A. MORENO

UNITED STATES DISTRICT JUDGE



Copies provided to:


Counsel of Record