**In United States District Court**
**For the Southern District of Florida**
**Miami Division**

FILED by _____ D.C.

JUN 1 9 2014

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

Salvatore Saccoccio, and the class       )
similarly situated                       )       Case No. 13-cv-21107
v.                                       )
JPMorgan Chase Bank, N.A. et al          )

**Amended**
**Complaint for Intervening By Opted-Out-Claimant for False Imposition of**
**Lender Place Insurance,**
**Breach of Contract, RESPA, FDCPA , FCBA  and FCRA**

1.
**Jurisdiction**

This Court has jurisdiction under 28 USC §1332 for Diversity Citizenship and under Federal Rules of Civil Procedures Rule 23 for deciding matters under a Class Action Complaint and all other Claimants arising under the same transactions. Whereas, the Court has retained jurisdiction over the subject matter and Defendant JPMorgan Chase Bank, N.A.  and all others (hereinafter referred to as "Chase").

Plaintiff moves the Court to set aside Final Order in part, See Doc. No. 128, or any other Orders  that would prohibit the Plaintiff from exercising his motion contemporaneously attached. Mr. Davis seeks his right to intervene into the current action by permissive joinder of parties  and by intervention under the Federal Rules of Civil Procedures Rule 20 (a) and Rule  24 (a) (b) (1) and (c), respectively.  This Court has the inherent powers to grant such joinder and intervention.

Chase, a one-time owner of Plaintiff's mortgage, failed to give notice under the Security Instrument that pending judicial claims may affect the Plaintiff.

Whereas, claim matters specifically related and arises out of the same transaction of the Lender Placed-Insurance "LPI" the subject matter herein. However, Plaintiff seeks a separate trial on matters because of the tortuous conduct of Defendant goes beyond the Class claims.

**2.**

**1** | P a g e

# Introduction and Statement of Facts

Mr. Davis seeks to intervene and permissive joinder in the above action for reasons enumerated below:

On or about October 6, 2005, Mr. Davis closed on a mortgage transaction with Long Beach Mortgage Company, a wholly owned subsidiary of Washington Mutual Bank, F.A. . **See Exhibit A –Security Deed.**

On or about January 15, 2009, Chase began servicing Plaintiff loan.

It is widely known that Chase engaged in imposing Lender Placed-Insurance "LPI" for hazard insurance policies on unsuspecting consumers. Records of this court indicates that Chase routinely imposed the LPI from about 2008 through 2013 in concert with various insurance carriers.

## 3.
## First Cause of Action: Chase Imposes the LPI on Plaintiff

Notwithstanding the above facts raised in Sections 1 through 2, Plaintiff fully incorporates the above and further avers the following below:

Mr. Davis has been victimized by Chase's direct unilateral action to imposed the LPI on the Davis family home beginning on or about January 15, 2009 through December 17, 2012. Chase proffered to Mr. Davis that his current policy was deficient and where he had inadequate hazard insurance coverage. Whereas, Chase required "wind damage coverage", under the presumption that Chase would not be protected. As a result, Chase imposed the LPI which significantly increased Plaintiff's monthly payments by about $400.

The dialogue and implementation of the LPI are recanted by Mr. Davis to have occurred according to the following sequence of events:

**"On or about November 10, 2010,** Chase sent a letter writing to show their assessment that insurance policy no longer includes wind coverage. Plaintiff replied by giving Chase a written note on document, the homeowner's request for Chase to Cancel new Insurance Policy.

On or about **December 13, 2010** , a letter from Chase stating that homeowner is required to have wind insurance. Chase began to purchase the policy and impose on the homeowner.

Thereafter, Borrower carried the burden of paying for two policies until borrower was forced into default and applied for a Loan Modification.

**October 2012 through December 2012** trial payments of $1700.00 included wind insurance imposed by Chase.

**On or about January 9, 2013** Loan Modification offer was rejected by borrower, whereas, no relief from LPI made the offer unattractive. Borrower requested principal reduction as a remedy."

At the time of communications, Mr. Davis had and continues to maintain a separate hazard insurance policy with State Farm Insurance Company "State Farm" under policy number 11-BJ-G132-0 since November 18, 2008. **See Exhibit D- State Farm Hazard Insurance Policy Continued Coverage.**[1]

On countless occasions, Mr. Davis called and wrote to Chase perplexed by the increased payments and where he was suffering from payment shock. Plaintiff did whatever he could to abate the LPI by submitting proof of hazard coverage and requested Chase to discuss his policy coverage with his State Farm Insurance Agent.

State Farm confirmed where there was sufficient coverage for any claims against wind damages under his current policy. The alleged wind damages deficiency was the crux of Chase's reason to impose the LPI. There was no lapse in Mr. Davis policy. Whereas, the demand by Chase, is believed to support his breach of contract and failure in good faith dealings claims.

## 4.

## Second Cause of Action: Breach of Contract

Notwithstanding the above facts raised in Sections 1 through 3, Plaintiff fully incorporates the above and further avers the following below:

---

[1] The first notice of coverage was given to Chase on or about **January 27, 2009** Proof of Insurance from Nancy Dyer Smith of Statefarm citing a renewed policy from **November 18, 2008 coverage.**

3 | P a g e

1    Whereas, Plaintiff charges Chase with specific breaches to the Security Deed Covenants

2    under Section 5 Property Insurance of page 6 of 14¶ 1 and RESPA under Covenant Section "O"

3    of page 2 of 14 ¶ 1 and Covenant Section 20 of page 11-12 of 14¶ 2, respectively.[2]

4    In support of the Security Deed breach claims, the Plaintiff's shows the plain language

5    from the contract for this court to review, as follows:

6

7    Under **Covenant Section "O"** provides: ***"RESPA"*** *means the Real*

8    *Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq. ) and its*

9    *implementing regulation Regulation X (24 C.F.R Part 3500) as they might be*

10    *amended from time to time …...As used in this Security Instrument, "RESPA"*

11    *refers to all requirements and restrictions that are imposed…." \*

12

13    In the above Section "O" breach, Plaintiff charges Chase with unfair and negligent

14    servicing performance, and errors in the escrow account by causing overpayments to an escrow

15    account or insurance accounts liable under RESPA.

16

17    Under **Covenant Section 5. Property Insurance.** *Borrower shall*

18    *keep…the Property insured against loss by fire, hazards, included within the term*

19    *"extended Coverage" and any other hazards…*

20    *If Borrower fails to maintain any of the coverages described above,*

21    *Lender may obtain insurance coverage at Lender's option and Borrower's*

22    *expense."*

23

24    In the above Section 5 breach, Plaintiff charges Chase with unfair, tortuous and

25    unnecessary billing assessed. Whereas, State Farm, Plaintiff's hazard insurance carrier had

---

[2] Under Georgia law, once the existence of a contract is established, a plaintiff may only recover damages for breach of contract by demonstrating: (1) plaintiff's performance of the contract, (2) defendant's breach of the contract, and (3) the breach caused the plaintiff harm. *Jones v. Central Builders Supply Co., 121 S.E.2d 633, 638 (Ga. 1961)* (citations omitted). Plaintiff believes that all elements exists herein.

**4** | P a g e

1  made affirmative declarations of adequate coverage for any wind damage claim on behalf of Mr.
2  Davis.

3          Under **Covenant Section 20. Sale of Note; Change of Loan Servicer;**
4      **Notice of Grievance** provides: " *Neither Borrower nor Lender may commence,*
5      *join, or be joined to any judicial action (as either an individual litigant or the*
6      *member of a class) that arises from the other party's actions pursuant to this*
7      *Security Instrument or that alleges that the other party has breached any*
8      *provision of, or any duty owed by reason of this Security Instrument, until such*
9      *Borrower or Lender has notified the other party (with such notices given in*
10     *compliance with the requirements of Section 15) of such alleged breach and*
11     *afforded the other party hereto a reasonable period after giving of such notice to*
12     *take corrective actions.*

14     In the above Section 20 breach, Plaintiff charges Chase with failing to give him notice
15 where judicial actions had commenced for allegations relevant to the LPI. Mr. Davis has not
16 been given the opportunity at corrective measures even though he has written Chase and SPS
17 directly about the servicing complaints. As a result, Mr. Davis charges Chase at failing at its
18 contractual duties and good faith dealings.[3]

20     As a direct result, after more than a year of making the increased payments, Plaintiff fell
21 into default and had to enter into loan modification negotiations with Chase. Mr. Davis could not
22 afford his regular payment nor the amount offered under a loan modification without the
23 removal of the artificially imposed LPI. Mr. Davis did not breach his contract, *but for* the

---

[3] Under Georgia law, "[i]t is clear that a **security deed** which includes a power of sale is a **contract** and its provisions are controlling as to the rights of the parties thereto and their privies." (Citations and punctuation omitted.) *Druid Assoc. v. Nat. Income Realty Trust,* 210 Ga. App. 684, 685 (436 SE2d 721) (1993). See also *Giordano v. Stubbs,* 228 Ga. 75, 77 (184 SE2d 165) (1971) Also see, " An unambiguous contract must be read and enforced according to the plain meaning of its terms." See Begner v. United States, 428 F.3d 998, 1005 (11th Cir. 2005) (stating that if the contract "language is clear and unambiguous," the court "simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning").

**5** | P a g e

1   increased hazard insurance coverage. The LPI harmed his ability to sustain his original

2   payments. Mr. Davis was victimized by Chase's erroneous demands for the LPI. Apparently,

3   Chase was not concerned with any amount of due diligence offered by the consumer, his agents

4   or Chase's duty in fair dealings.

5       At all times, Chase refused to acknowledge where their accounting and servicing were

6   erroneous. Chase offered no refunds for any payments, even though the Plaintiff made verbal and

7   written assertions to his facts. The accounts exceed the threshold requirements under the 15 USC

8   § **1666d**(C) in which Chase should have preferred a refund. Whereas, Mr. Davis requested for

9   both  payments to be returned and the policy cancelled, but to no avail.

10      As a result, Plaintiff has been directly injured by Chase. Mr. Davis assesses where he

11  paid out a minimum amount of  $7200.00.  Plaintiff paid the LPI for about 18 months at $400 per

12  month in additional payments. The extra financial burden caused Mr. Davis to go into payment

13  default.

## 5.

## Third Cause of Action: RESPA Claims

16      Notwithstanding the above facts raised in Sections 1 through 4, Plaintiff fully

17  incorporates the above and further avers the following below:

18      Mr. Davis tried to remedy his default by researching other facts related to his mortgage.

19  On or about March 1, 2013, Plaintiff sent a RESPA QWR Complaint Resolution Notice under 12

20  USC §2605 and TILA notices requesting information of new Owner under section 1641 (g) and

21  (f), respectively. Upon information and belief Plaintiff had reasons to believe that Chase was his

22  Owner by successor in interest to the original Lender of his contract.  Plaintiff was unaware of

23  Chase purportedly assigned his mortgage to a REMIC Trust.  However, upon belief, the TILA

24  disclosure is applicable to servicers who were one time owner's of the debt to comply under the

25  statute. See **Exhibit C- Assignment Dated on 11/29/2011.**

26      Upon receipt of Mr. Davis's legal notices, Chase failed or refused to comply fully to the

27  applicable RESPA and TILA notices. Chase provided no facts and evaded certain questions in

28  which the Plaintiff could ascertain the "New Owner" and gave inadequate or unspecific facts

**6** | P a g e

1    regarding challenges to the escrow account and hazard insurance investigation required under

2    billing practices by statute.[4]

3        Thereafter,  on or about April 12, 2013, Chase sold its servicing rights to  Select

4    Portfolio Servicing, "SPS". Upon belief, because of Plaintiff persistent allegations of billing and

5    servicing torts relevant to LPI, Chase  conveniently sold the  servicing rights of Mr. Davis loan

6    to SPS. See **Exhibit B-Transfer of Servicing Notice.**  Coincidently, the April transfer notice

7    was executed within one month after this Court entered it's March  ordered for separate

8    pleadings by the class action against each Lender affecting the instant action.

9        Whereas, Chase, a one-time owner of Plaintiff's mortgage, failed to give notice under the

10   Security Instrument that pending judicial claims may affect the Plaintiff.

11       Thereafter, SPS became the successor interests to Chase's service liabilities and refused

12   to correct Chase's erroneous servicing and account billing practices relevant to the LPI action.

13       Plaintiff seeks recovery  from Chase under the common laws of Georgia and its agent for

14   damages from the misrepresentation  of the LPI, negligently performing its Servicing duties

15   under RESPA[5] and the duty implied under the Security Deed,  failure to comply under TILA,

16   damages from malicious false billing under the Fair Credit Billing Act,[6]  malicious unfair credit

---

[4]  See  15 USC § **1666d**(C).

[5]  See ***Whittaker v. WELLS FARGO BANK, NA*, Dist. Court, MD Florida 2014,** <u>Case No. 6:12-cv-98-Orl-28GJK.</u>, a similar case involves escrow and insurance tort claims. Defendant  challenge if Plaintiff had satisfied the QWR requirements  to the Defendant pursuant to  12 **U.S.C.** § 2605(e), which provides that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20[2] days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." Id. § 2605(e)(1)(A). The statute also requires a servicer that receives a qualified written request ("QWR") to make appropriate corrections to the account, provide a written explanation or clarification to the borrower regarding why the servicer believes the account is correct, or provide information requested by the borrower and the name of a contact person. Id. § 2605(e)(2).

[6]  In *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368 - Dist. Court, ND Georgia 2004, the court found Fair Credit Billing violations akin to common law conversion. Wherefore, the court cited, " [C]onversion involves an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to [her] rights. The very essence of conversion is that the act of dominion is wrongfully asserted. Thus, if a party has a right to assert ownership, the act of dominion is not wrongful and does not constitute conversion. <u>Kilburn v. Patrick</u>, 241 Ga.App. 214, 525 S.E.2d 108 (1999) (punctuation and footnotes omitted). "To make out a prima facie case, in an action for damages for conversion of personal property, the plaintiff must show title to the property, possession by the defendant, demand for

**7** | P a g e

1   reporting under the Fair Credit Reporting Act 15 USC §1681 et seq, by a Furnisher of

2   Information to the Credit Bureau Agencies[7], FDCPA violations and breach of contract from

3   failure in good faith and fair dealings.

4       Additionally, Plaintiff seeks breach of contract claims against Chase for inducing Mr.

5   Davis into a payment default. It is believed where SPS intends to continue the torts.

6       Additionally, Mr. Davis seeks the Court to enjoin Chase and SPS to remove any

7   derogatory credit bureau reports directly related to the false billing and false credit reporting

8   covering the period that the LPI was imposed and under the period in which the QWR were

9   presented under RESPA 12 USC §2605 Complaint Resolution. After damages, Mr. Davis seeks

10  to fully reinstatement of his mortgage.

11      Furthermore, Plaintiff seeks additional compensation for negligence per se relevant to

12  Chase's Agreement under the National Mortgage Settlement (NMS) and failure to comply to

13  federal statutes and regulations. Whereas, Georgia's Tort Code OCGA §51-1-6 allows for

14  compensable tort claims for failure to perform legal duties required under federal statutes as

15  averred, herein. With respect to the NMS, Chase agreed to improve or abate from "unsafe and

16  unsound business practices" which effected consumers in loan servicing and debt collection

17  activities. This court may view where Chase's LPI activities fits a pattern of "unsafe and

---

possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." *Atlantic Coast Line R. Co. v. McRee*, 12 Ga.App. 137, 76 S.E. 1057 (1913). Any distinct act of dominion and control wrongfully asserted over another's personal property, in denial of his right or inconsistent with his right, is a conversion of such property."

[7] In *Johnson v. Citimortgage, Inc.*, the court opined, "To state it otherwise, Defendant undertook the performance of servicing Plaintiff's mortgage loan, which, if negligently performed, would obviously cause loss to the Plaintiff. The Court finds, therefore, that negligence is a cognizable claim under the facts alleged." Also see, *Riley v. General Motors Acceptance Corp.*, 226 F. Supp. 2d 1316 - Dist. Court, SD Alabama, 2002, "When Congress enacted the FCRA in 1970, it recognized the "vital role" that **credit** reporting agencies assume in our economic system. **15** U.S.C.A. §**1681**(a)(3) (West 1997). The FCRA reflects Congress's concern with the "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." **15**U.S.C.A. § **1681**(a)(4). The 1319*1319 FCRA seeks to promote the **credit** reporting industry's responsible dissemination of accurate and relevant **information**. See15 U.S.C.A. § **1681**(b). . . . The willful or negligent **failure** to comply with any of the FCRA's requirements may give rise to civil liability. See **15** U.S.C.A. §§ 1681n-1681p."

**8** | P a g e

1  unsound business practices" applicable under the Rules of Evidence Rule 405 (A), (B) and 406,

2  respectively.[8]

3      In the instant matter, Chase has failed at its legal duties under the Consumer Protection

4  Acts where its servicing practices harmed the consumer.  Mr. Davis seeks to sufficiently pleasd

5  where he was coerced into unjustifiable payments and pending foreclosure due to his payment

6  shock.  Upon information and belief, Chase's LPI directly jeopardized the Plaintiff's

7  homeownership rights.

**6.**

**SPS, Co-Defendant for Servicing Breaches, Debt Collection Breaches, and Breach of Contract**

11      Notwithstanding the above facts raised in Sections 1 through 5, Plaintiff fully

12  incorporates the above and further avers the following below:

13      Plaintiff seeks to add SPS as the co-conspirer and debt collector.

14      Chase effectuated to the Borrower a Transfer of Notice disclosing where SPS would

15  succeed in servicing Mr. Davis' loan.

16      As a result of Chase's actions and upon belief, SPS enters into the servicing of Mr. Davis

17  mortgage as a debt collector. Mr. Davis loan was already in default arising from of Chase's LPI

18  actions.

19      SPS knew or should have known that when it purchased the servicing rights, Mr. Davis

20  mortgage account was in default.  Wherefore, FDCPA §1692 a et seq., defines and regulates

---

[8] The Federal Rules of Evidence provides; Under Rule 405 (a) In all cases in which evidence of character of a person is admissible, proof may be made by testimony or from opinion, as to the reputation of a person.

Under  Rule 405(b) Specific instances of character or a trait of character is an essential element a charge, claim or defense proof may be made of specific instances of that person's conduct.

Under Rule 406 Habit; Routine Practices:  Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

1  whether the entity is servicing their own debt or servicing the debt belonging to another and is
2  held liable accordingly for any misrepresentations.

3      In the instant action, the transfer notice given to Mr. Davis supports where SPS may have
4  liability as a debt collector. Plaintiff sought SPS to authenticate the debt, reconcile the exact
5  nature of the debt, and to correct any servicing and accounting errors relevant to the LPI.  See
6  **Exhibits E1 and E2, respectively**.

7      SPS has refused to comply or acknowledge accounting and billing errors and made no
8  adjustments to the erroneous billing imposed by Chase. Upon belief, SPS knowingly continued
9  the torts established by Chase.

10     SPS received Mr. Davis's legal notices, but maintained where the REMIC TRUST, are
11 the present owner's of Mr. Davis loan. Mr. Davis contests that matter as factual, but the matter of
12 the deceptive servicing and billing practices are unresolved before the court. See **Exhibits F, F2**
13 **and F3, respectively, SPS QWR  Responses**.
14     Plaintiff seeks to prosecute SPS under FDPCA violations,  RESPA violations, FCBA
15 Violations, jointly and severally, accordingly.

16     Plaintiff asserts that a loan modification offers would not work until the basic accounting
17 issues relevant to the LPI are settled. Also, Plaintiff seeks his credit bureau reports are restored to
18 pre-LPI payment history.

19     Plaintiff never consented to SPS to be his loan servicer. The arrangement and agreements
20 were made between Chase and SPS. However, upon information and knowledge, SPS has failed
21 to resolved any accounting, billing and credit reports resulting from the LPI damages.

22     Plaintiff believes that SPS has joint liability to the LPI, because SPS has access to the
23 servicing and accounting records but, failed to correct any errors or apply the reasonable care by
24 due diligence to ascertain the truth.

25                                   **7.**

26                          **Recoverable Damages**
27     Notwithstanding the above facts raised in Sections 1 through 6, Plaintiff fully
28 incorporates the above and further avers the following below:

**10** | P a g e

1   Plaintiff seeks recoverable damages from the unfairly imposed LPI. Plaintiff suffered
2   $7200.00 from overpayments.

3   Plaintiff seeks recovery from Chase and SPS, jointly and severally.

4   Plaintiff seeks RESPA violations damages because the servicing and accounting were
5   erroneous and negligently performed. Plaintiff seeks statutory damages and any attorney fees.
6   Plaintiff asserts 18 incident of counts of RESPA violations for each month in which he overpaid
7   for the LPI.

8   Plaintiff seeks  Fair Debt Collection Practices Act ("FDCPA") violations damages
9   because the accounting were erroneous and unverified.  Plaintiff seeks statutory damages and
10   any attorney fees under Section K of the FDCPA. Plaintiff asserts 18 counts of FDCPA
11   violations. Each count is relevant for each month in which the mortgage was overpaid and where
12   Chase falsely collected on the LPI.

13   Plaintiff seeks Fair Credit and Billing Act ("FCBA") violations damages because the
14   billing were erroneous due to the imposition of the LPI and never returned. Plaintiff seeks
15   statutory damages and any attorney fees accordingly. Plaintiff asserts a minimum 18 counts of
16   FCBA violations.  Each count is relevant for each month in which the mortgage was overpaid
17   and where Chase falsely billed on the LPI.

18   Plaintiff seeks Fair Credit Reporting Act ("FCRA") violations of legal duty where the
19   damages arises from reporting of derogatory payments caused by a furnisher of information who
20   falsely imposed the LPI which induced defaults.  Misleading derogatory reporting began
21   monthly between December 2010 and June 2014. Plaintiff seeks common law statutory damages
22   and any attorney fees, accordingly.

23   **8.**

24   **Relief Sought**
25
26   Plaintiff seeks, by Motion to Set Aside the Final Order entered on February 28, 2014, or
27   any other Order, in part, affecting Mr. Davis for the Opted-Out Claimant, Mr. Davis, to exercise
28   his intervention and joinder into the present action. His Motion is within six months of the action

**11** | P a g e

1   final order and therefore, it is believed that Rule 60 (b) which should  accommodate his request
2   for relief.

3        Plaintiff seeks recoupment of all damages presented herein.  Plaintiff contends that with
4   false reporting to the credit bureaus, his claims should exceed $150,000 including actual
5   damages.

6        Plaintiff seeks the court to grant the intervention and thereafter a separate trial on matters
7   asserted.

8        Plaintiff seeks to enjoin Chase and SPS from further debt collection activities until the
9   matters are fully discharged herein.

10       Plaintiff seeks jury trial under rule 38.

11       Plaintiff seeks all costs to be cast upon defendants.

12       Plaintiff seeks joinder of SPS as an indispensible party and agent for Chase's torts.

13       Plaintiff seeks leave of the court to Supplement his claims, for more definite statements,
14   after the Court Grants entry into the current action.

15       Plaintiff sayeth not more.

16   Respectfully entered on June 12, 2014
17
18
19   Christopher Davis
20   340 Crane Creek Drive
21   Stockbridge, GA 30281
22    Tel: 678-539-7519
23
24

# Certificate of Service

I, the undersigned, do certify under the penalty of perjury that the ongoing matters have been sent to parties relevant to the action by U.S. First Class Mail or equivalent with delivery confirmation to the following persons:

**Saccoccio v. JPMorgan Chase Bank, N.A.**
C/O GCG
P.O. Box 35103
Seattle, WA 98124-5103
1-877-308-3773

**Aaron Samuel Podhurst**
Podhurst Orseck, P.A.
Attorneys for Plaintiff
City National Bank Building
25 W Flagler Street, Suite 800
Miami, FL 33130-1780
Bus: 305-358-2800
Fax: 305-358-2382
Email: apodhurst@podhurst.com

**Robert Mark Brochin**
Morgan Lewis & Bockius
Attorneys for JPMorgan Chase Bank, N.A,
200 S Biscayne Boulevard, Suite 5300 Wachovia Financial Center
Miami, FL 33131-2339
Bus: 305-415-3456
Fax: 305-415-3001
Email: rbrochin@morganlewis.com

Clerk of the Court
U.S. District Court
For the Southern District of Florida
Miami Division
C. Clyde Atkins United States Courthouse
301 North Miami Avenue
Miami, FL 33128

Respected Submitted on June 12, 2014

Christopher Davis
340 Crane Creek Drive
Stockbridge, GA 30281
678-539-7519

**13** | P a g e

# TABLE OF EXHIBITS

**I.    Exhibit A- Security Deed**

**II.   Exhibit B- Transfer of Servicing Notice**

**III.  Exhibit C – Chase Execution of Assigment**

**IV.  Exhibit D- State Farm Hazard Insurance Policy Continued Coverage**

**V.    Exhibit E- QWR and Debt Validation Notice to Chase**

**VI.  Exhibit E1- QWR and Debt Validation Notice to SPS**

**VII. Exhibit F-  SPS QWR RESPONSE**

**VIII.   Exhibit- F2- SPS QWR RESPONSE**

**VII. Exhibit- F3-  SPS QWR  RESPONSE.**

EXHIBIT A

000675 0124

Return To:

LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA 95201

Prepared By:

Archer Land Title, Inc.
555 North Point Center East Suite 325
Alpharetta, GA 30022

LOAN NO. 6610189-7893

DOC# 056889
FILED IN OFFICE
11/16/2005   11:06 AM
BK:8675   PG:124-142
JUDITH A LEWIS
CLERK OF SUPERIOR COURT
HENRY COUNTY

———————————————— [Space Above This Line For Recording Data] ————————————————

## SECURITY DEED

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated       October    26,    2005                  ,
together with all Riders to this document.
**(B) "Borrower" is**
CHRISTOPHER T DAVIS and DEBORAH A DAVIS, HUSBAND AND WIFE AS JOINT
TENANTS

GEORGIA INTANGIBLE
TAX PAID
$540.00
DATE 11/14/2005



CLERK OF SUPERIOR COURT
HENRY COUNTY

Borrower is the grantor under this Security Instrument.
**(C) "Lender" is**       LONG BEACH MORTGAGE COMPANY

Lender is a corporation
organized and existing under the laws of  the State of Delaware

+18

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3011  1/01

(VMP) -6(GA) (0005).01
Page 1 of 14                Initials:

VMP MORTGAGE FORMS - (800)521-7291
TDGA01 (04/0204) PC

008575 0125

Lender's address is 1400 S. DOUGLASS RD., SUITE 100,
ANAHEIM, CA 92806
Lender is the grantee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated   October   26,   2005   .
The Note states that Borrower owes Lender

One Hundred Eighty Thousand and no/100------------------------------------------------ Dollars
(U.S. $ 180,000.00            ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   November   1,   2035   .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: _____

-6(GA) (0006).01                     Page 2 of 14                                                Form 3011   1/01
TDGA02 (04/02/04) PC

Loan No. 6610189-7893

008675 0128



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.



Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.



The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.



If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

-6(GA) (0005).01

TDGA06 (040204) PC

Page 5 of 14

Initials:

Form 3011   1/01

Loan No. 6610189-7893

P9

008575 0129

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(GA) (0005).01                 Page 6 of 14                 Initials: _____     Form 3011   1/01
TDGA06 (040204) PC                                                               Loan No. 6610189-7893

IP4

000375 0135

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

VMP -6(GA) (0005).01
TDGA12 (040204) PC

Page 12 of 14

Initials:

Form 3011   1/01
Loan No. 6610189-7893

008575 0134

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

-6(GA) (0005).01

Page 11 of 14

TDGA11 (040204) PC

Form 3011  1/01

Loan No. 6610189-7893

008575 0137

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)
CHRISTOPHER T DAVIS          -Borrower

_____ (Seal)
DEBORAH A DAVIS              -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

**STATE OF GEORGIA,**                    Henry      County ss:
   Signed, sealed and delivered in the presence of:

_____
Unofficial Witness        Tim Collins

_____
Notary Public,          Fulton County
State of Georgia



VMP -6(GA) (0006).01                Page 14 of 14            Form 3011  1/01
TDGA14 (040204) PC                                          Loan No. 6610189-7893

EXHIBIT B



**Chase (OH4-7382)**
P.O. Box 24696
Columbus, OH 43224-0696

April 12, 2013

006751 - 1 of 2 NSP0GMC5-Z1 V540387. 000000000000
CHRISTOPHER T DAVIS
DEBORAH A DAVIS
340 CANE CREEK DR
STOCKBRIDGE, GA 30281-5959

## CHASE

**Important information about your mortgage:**
Notice of Assignment, Sale or Transfer of Servicing Rights

**Chase loan number: 0696905629**

Dear CHRISTOPHER T DAVIS and DEBORAH A DAVIS,

We are writing to let you know that the servicing of your mortgage loan referenced above will transfer from JPMorgan Chase Bank, N.A. (Chase) to Select Portfolio Servicing, Inc. (SPS), effective May 1, 2013.

The servicing of your mortgage loan includes:

- Collecting and processing payments
- Sending account statements and annual tax forms
- Notifying borrowers of account-related issues and updates

This transfer does not affect any of the terms of your loan, other than the terms directly related to the servicing of your loan.

**What this means to you**

After May 1, 2013:

- Your loan number will change. SPS will send you a letter with your new account number.
- You will need to send your mortgage payments to your new servicer.
- You will need to contact your new servicer for any questions about your account.

Over, Please

LC- AS083


©2013 JPMorgan Chase & Co. JPMorgan Chase Bank, N.A.

P.1

## Payments and contact information

| | Before<br>May 1, 2013 | On or after<br>May 1, 2013 |
|---|---|---|
| **Send payments* to:** | Chase<br>P.O. Box 78420<br>Phoenix, AZ 85062-8116 | Select Portfolio Servicing, Inc.<br>P.O. Box 65450<br>Salt Lake City, UT 84165-0450 |
| **Contact for questions:** | Chase Customer Service Center<br>800-848-9136<br>800-582-0542 TDD/Text Telephone<br>Mon-Fri 8 a.m. to 12 a.m. ET<br>Saturday 8 a.m. to 8 p.m. ET | Select Portfolio Servicing, Inc.<br>Customer Service<br>1-800-258-6802<br>Mon-Fri 7 a.m. to 8 p.m. ET<br>Saturday 8 a.m. to 12 p.m. ET |
| **Send written correspondence to:** | Chase<br>Attn: Customer Support<br>Mail Code: OH4-7302<br>P.O. Box 24696<br>Columbus, OH 43224-0696 | Regular Mail:<br>Select Portfolio Servicing, Inc.<br>3815 South West Temple<br>Salt Lake City, UT 84115-4412<br><br>Overnight mail<br>Select Portfolio Servicing, Inc.<br>P.O. Box 65277<br>Salt Lake City, UT 84165-0277 |

*Please Note: Chase will no longer accept payments after the loan is transferred on May 1, 2013. Please send your payments to SPS, which will begin accepting your payments on May 1, 2013.

If your monthly payment is automatically deducted from your bank account through Automatic Mortgage Payments, this service will be cancelled as of the effective date. You can call your new servicer and ask if they offer a similar service.

SPS will send you a transfer letter with additional information within 15 days after the effective transfer date. If you have any questions before May 1, 2013, please call the Chase Customer Service Center at one of the telephone numbers listed below.

Sincerely,

Chase
800-848-9136
800-582-0542 TDD / Text Telephone
www.chase.com

**Please read the additional information
and frequently asked questions on the following page.**

- A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.
- Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated.

## Frequently Asked Questions

**Why is my loan being transferred?**
Another bank or financial institution (the new servicer) has purchased your loan from us. Transferring mortgage loans is a normal business practice.

**Is my loan changing?**
No, this transfer does not affect the terms and conditions of your existing loan. Your payment amount, due date and loan term will remain the same.

**I am in the middle of a loan modification with Chase. Will my modification be completed first?**
No, your new servicer will continue the modification process of your loan. For more information about your current modification status, please call your dedicated Customer Assistance Specialist.

**When should I begin making payments to my new servicer?**
As of the effective transfer date listed in the enclosed letter, Chase can no longer accept or process your loan payments. Any payments we receive after this date will be forwarded to your new servicer for up to 60 days.

If you mail your payments or make your payments online, and:

- Your payment due date falls **before** the effective date, please send the payment to us.
- Your payment due date falls **on or after** the effective date, please send the payment to your new servicer.

Please refer to the **Payments and contact information** section in the enclosed letter for payment addresses and additional payment information.

**I currently have paperless statements. Can I continue to have my statements sent to me electronically?**
Please contact your new servicer's customer service department listed on the enclosed letter for information on paperless statements.

**What will happen to my escrow account?**
Your escrow account is not changing—the new servicer will maintain your account, as part of the transfer.

**Do I need to notify my insurance company about this change?**
No, we will notify your insurance company that the servicing of your loan is being transferred.

### Additional Information

**Year-End Statement**

You will receive two year-end statements in January 2014; one from Chase and one from SPS. The statement from Chase will show the mortgage interest and taxes paid for the period of time that we serviced your loan. The statement from SPS will show the interest and taxes paid for the period of time that it serviced your loan. For tax purposes, add the amounts on both statements to get the total interest and taxes paid for the year.



**Bill Payment Service or Military Allotment**

If you make your payments through a bank or other bill-payment service (such as Equity Accelerator Service®), chase.com, another bank's bill payment service or military allotment, you must let your provider know that SPS is your new servicer as soon as you receive their transfer letter and give them the following information:

- The new loan number (which your new servicer will send you)
- The new servicer's full legal name
- The new payment mailing address listed above

**Optional Insurance Products**

Optional insurance products, such as mortgage life, disability and accidental death insurance, will not transfer to the new servicer. You will have to call or visit your optional services provider to discuss your alternatives.

**Chase Relationship Discounts**

After the transfer, your mortgage will no longer be included in any Chase relationship (i.e., checking or savings account) discounts. If you have a Chase checking or savings account, please contact your Personal Banker for more information.

**The federal government requires us to share the following information, which is detailed in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):**

- Except in limited circumstances, the law requires that we send you this notice at least 15 days before the effective date of the transfer. Your new servicer also must send you this notice no later than 15 days after the effective date of the transfer.

- During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old servicer before its due date may not be treated by the new loan servicer as late, and a late fee may not be imposed on you.

- Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 business days of receipt of your request. A "qualified written request" is written correspondence relating to the servicing of your loan, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" to Chase regarding the servicing of your loan, it must be sent to our separate and exclusive address for handling these requests, which is: P.O. Box 183166, Columbus, OH 43218-3166.

No later than 60 business days after receiving your request, your servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute. During this 60-business day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage document/security instruments.

EXHIBIT C

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #: 696905629

Doc ID: 018204650001 Type: ASGN
Recorded: 11/29/2011 at 03:26:04 PM
Fee Amt: $7.00 Page 1 of 1
Henry, GA Clerk of Superior Court
Barbara Harrison Clerk of Court

BK 12316 PG 94

## ASSIGNMENT OF SECURITY DEED

--- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, S/B/M TO WASHINGTON MUTUAL HOME LOANS, INC. S/B/M TO LONG BEACH MORTGAGE CO., WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203, (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described Security Deed together with the certain Note(s) described therein together with all interest secured thereby, all liens and any rights due or to become due thereon to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR LONG BEACH MORTGAGE LOAN TRUST 2006-2, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Security Deed is executed by CHRISTOPHER T. DAVIS AND DEBORAH A. DAVIS to LONG BEACH MORTGAGE COMPANY and recorded in Deed Book 8675, Page 124, and/or as Instrument # 056889 in the office of the Clerk of the Superior Court of HENRY County, Georgia.

In witness whereof, the undersigned has hereunto set their hands on  11 / 08 / 2011  (MM/DD/YYYY).

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, S/B/M TO WASHINGTON MUTUAL HOME LOANS, INC. S/B/M TO LONG BEACH MORTGAGE CO.

By: _____     _____
Brigitte Kist                             Vice President

And: _____     _____
Alta Laird                               Vice President

_____
Witness  Tina Rickard

_____
Witness  Natasha Price

STATE OF LOUISIANA   PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on  11 / 08 / 2011  (MM/DD/YYYY) by
Brigitte Kist _____ and  Alta Laird _____ as
Vice President _____ and  Vice President _____, respectively
of JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, S/B/M TO WASHINGTON MUTUAL HOME LOANS, INC. S/B/M TO LONG BEACH MORTGAGE CO., who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_____
Cynthia H. Caccio
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

CYNTHIA H. CACCIO, NOTARY PUBLIC
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 41632

Document Prepared By: R. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 14841318 ~ WAMU DP3343268 FRMGA1

*14841318*

# EXHIBIT D

 **StateFarm**

June 12, 2014

To whom it may concern:

Please be aware that our customer, Christopher Davis, residing at 340 Cane Creek Drive Stockbridge, GA

30281 has been insured with State Farm under policy number 11-BJ-G132-0 since November 18, 2008

and has had no gaps in his coverage since its inception. This policy also includes wind damage so no

other insurance for this property has been needed.

Please feel free to call with any questions.

Thanks,

Sarah Nobles

Clyde Hill, Agent

State Farm Insurance

770-452-1485

EXHIBIT E

# QUALIFIED WRITTEN REQUEST

**PURSUANT TO THE REAL ESTATE SETTLEMENT PROCEDURES ACT UNDER 12 USC§ 2605 (6) & Debt Validation Notice Under 15 USC §1692 (g), Truth In Lending Liability on Assignee under 15 USC §1641(c ) and Under Title 42 USC §1981 et seq.**
## THIS IS NOT A PUBLIC
## COMMUNICATION
**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**
Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor
*This is self-executing contract.*

Sent via Certified Mail With Proof of Service to: _____

JP Morgan Chase & Co.
Jamie Dimon, CEO and Chairman
270 Park Avenue
NEW YORK, NY 10017
212-2706000 (Phone)
212-2701648 (Fax)

and

David B. Lowman CEO Home Lending
**3415 Vision Drive**
**Columbus, Ohio 43219**
Phone: 636-735-2121
Fax: 314-256-2800

**Re:**

**Alleged Borrower: Christopher T. Davis**
**For Subject Property: 340 Cane Creek Drive,**  Stockbridge, GA 30281
**WaMu Bank's  Original Loan Number: 6610189-7893  JP Morgan Chase  altered**
**Loan No. 696905629**

**To Whom It May Concern:**

**Background:**
       We  are consumers and we are sending to you, your companies, and to your  legal agents our reply to your attempt to collect a debt including the processing of our loan modification. This is a "Qualified Written Request Notice" per Section 6 of RESPA 12 USC 2605, Debt Validation Notice under Fair Debt Collection Practice Act  (FDCPA) 15 USC 1692 (g), and a Truth-In-Lending Act Rescission Demand upon the Assignee of WaMu Bank, the former parent company for Long Beach Mortgage Company , under Truth –in-Lending Act for  applicable sections  and  15 USC §1641(c), respectively.  This Notice is being sent due to ongoing communications and research made about the event that occurred on September 25,  2008 where the failed bank, Washington Mutual Bank

1

(WaMu), was taken over by FDIC under 12 USC §1821 et seq. regulation and jurisdiction. Simply stated, I had no outstanding loan contracted loan number associated with your loan number that you are servicing.   Upon information and belief, Mr. Davis denies your allegations  that there was  any outstanding debt or asset associated with the above loan number arising out of  an obligation for your companies to service.

Upon information and belief, there has never been any Note  and mortgage instruments transferred by FDIC to JPMC involving the loan no. **696905629** .  Nor do we believe that there were servicing agreements  made by FDIC for your companies to specifically  to service the underlying loan which would not match up with a security instrument by the operation of contract and accounting law.

Upon information and belief, my loan was securitized by WaMu Asset Acceptance Corporation back in 2005.  On or about August 14, 2012, WaMu Asset Acceptance Corporation (WAAC) filed with the Security and Exchange Commission their Form ABS 15 Asset -Backed Securitizer Report pursuant to Rule 15 G under the Exchange Act 17 CFR 240.15. Ga-1(c) et seq. covering reporting periods from January 1 2009 through June 30, 2012, Commission File Number of securitizer: 025-01131  and Central Index Key Number of Securitizer: 0001317069  by Eric Senzon (813) 881-8307. The reports expressly states  where WAAC's  might hold the right to hold all outstanding mortgages in which were securitized by the Securitizer, on behalf of  WaMu Bank and its subsidiary, Long Beach Mortgage Company for their originated loans. This applies to all underlying mortgages which were originated before the FDIC takeover. Therefore, your records must show where either FDIC transferred to you their interests in my note, or where WAAC should have transferred to you by their requisite interests.

In light of the above stated facts by WAAC, it appears to be consistent with court rulings across the country. The most recent ruling was made by the Supreme Court of Michigan, on December 21, 2012. In that ruling, the high court requires that JPMC must prove that you are holding the mortgage asset before any foreclosure proceeding can commence.  See *Kim v. JP Morgan Chase, N.A.*, Docket No. 144690, Supreme Court of Michigan.

### Real Estate Settlement Procedures Act Complaint Resolution Under 12 USC 2605 Section 6.

Therefore, We reject your allegations that we owe any debt under the loan account number  **696905629 where you are entitled to service that loan number as a valid account**. Clearly, we state for record that there are many outstanding and unresolved matters as stated below and under the National Mortgage Settlement. The details follow below:

*False Attempt to Seize Private Property*

Your Bank has been represented by the law firm of Martin & Brunavs to try and seize or made an attempt for my property beginning around August 14th, 2012. At first, the law firm said that they were attempting to collect $23, 399.61 related to the above JP Morgan Chase loan number. There was no attempt to merge or reconcile the balances, payments from the original WaMu loan account number **6610189-7893**.

2

However, around about August, 2012, Your company initiated recent loan modification attempts, but you have failed to give me either principal reduction or the HAMP program which would satisfy our requirements. We are beginning to doubt that JP Morgan Chase Bank, N.A. is the successor-in-interests to Washington Mutual Bank as the land record assignments were entered indicating that Long Beach and WaMu Bank conveyed over to JP Morgan Chase the deed to secure on 11/29/2011. We doubt this to be bona fide for the following reasons:

On or about November 29th, 2011, Henry Count, Georgia land records show that the underlying assignment was made involving purported officers of WaMu or FDIC permitted the assignment without the corporate seal of the corporations in Deed Book 12316 Page 94 (See Exhibit A- Assignment of Security Deed).

The most interesting thing, is that neither FDIC nor WaMu Bank nor WAAC have filed any prior assignment of interests over to JPMC into the county land records. Upon information, research and belief, your records must be faulty. The actions were not done with careful consideration of the consumer's property rights. Therefore, I am sending you the copy of the Rescission Demand Notice under 42 USC 1981 et seq. where my instrument has been impaired. We are a protected class of people and we have a right to enforce our contract against impairment. Please have your legal department check that statutes and my rights to enforce the voidness of the note and security instrument under the precedent conditions pursuant to Title 42. We request that you use the statutory 20 days under Regulation Z guidelines where the lender or assignee must "unwind" the transaction. "Unwinding" is defined under the TILA statute as a requirement for the Lender or Assignee to pay back all fees, payments, and give a full accounting timely within and the 20 days and then wait for a tendered offer or other negotiations. A failure to "unwind" time bars any affirmative defenses and voids the instruments accordingly. Additionally, the Assignee is as liable as the original lender if you are claiming to be the successor-in-interests. Here, JPMC purchase of certain asset was not by merger. Therefore, any purchase of my asset would have been as a debt collector subject to debt collection actions as defined under 15 USC §1692 et. Seq.

The above issue is resolvable and I believe that the National Mortgage Settlement requires you to take this notice seriously. Therefore, I am making certain requests with an "Opportunity to cure". Please review my offer. I believe that it requires a legal duty for you to respond to the following, as an operation of law:

### *Please Provide Copies of all Servicing Records*

Please provide adequate copies of verified accounting records which shows your servicing activities relate to the above loan number, copies of mortgage contracts held in your possession and financial accounting related to payments, invoices received entered against the underlying property. Include all records of title insurance hazard insurance, tax records and assignments cross-referenced to the above loan number in any years since September 25th, 2008. Please explain your role to the alleged loan and details to the interrogatories below-

3

a. Are you the loan originator of a transaction between the homeowner and your companies?

b. Are you the loan servicer of a transaction arising from an original debt with owning the Note and Security Instrument with the above original loan number **6610189-7893**?

c. Have you purchased a debt obligation for the above loan number? If yes, from whom and when did this transaction occur?

d. Was the debt obligation outstanding at the time when you purchased the instruments?

e. Has your company recently obtained title? If yes, by whom was the original Note transferred from as the holder and owner of the obligation.

f. What dates did you begin communicating with the homeowner about your rights servicing the debt?

g. When were the last three billing statements  used the original loan number **6610189-7893**  to service under before changing to your referenced loan number **696905629**?

h. Please explain and provide the details of the following:
   i. Escrow balances- What was escrowed, insurance, taxes, PMI or other and how many months outstanding?
   ii. Unpaid late charges-What was late, what amount of charges and how many months outstanding?
   iii. Please provide a 1099C, 1099A or any other reports that you may have filed with the Internal Revenue Service associated with the above account numbers?

i. Do you have the tax identification number of Mr. Davis? How did you acquire his private information?

j. Do you service any loans on behalf of a Real Estate Mortgage Investment Conduit Trust (REMIC) also known as a Mortgage Backed-Security Trust securitized by WaMu Asset Acceptance Corporation and with Deutsche Bank National Trust Company?

k. If the answer is yes to question related to the REMIC, then please provide the relevant Pooling and Servicing Agreement indicating where updated service agreements conforms to the Exchange Act Form 15 Ga-1.

l. Has the REMIC retain a registration under a Secretary of State in good standing? If yes, which state is holds the certificate of registration, with details related to registration number, corporate address and the address of the Registered Agents?

You may send your written responses to my address and to the CFPB  as proof of delivery and to avoid litigation.

I reiterate that based on relevant facts and research made with personal knowledge, we are asserting that Your Companies and the agents have omitted or failed to disclose material information and facts during the course of your debt collection activities with me.

4

### Discrepancy with Creditor, Servicing and Note Holder Status

Notwithstanding the concerns raised above, the house was last refinanced by the lender who's parent company is in bankruptcy court in Delaware. Has the parent company, WaMu Inc., delivered a notice of transfer evidencing their authority over the original lender's affairs?

Please be aware that the statute of limitation for collecting and servicing  may have expired, as an operation of law. *Please explain the discrepancies where the original lender has not delivered a timely RESPA transfer of servicing notice under this QWR Notice.*

*Please explain the discrepancies and confusion with respect to the holder, creditor status and change in loan servicer and change in account numbers in your response to me under this QWR Notice.*

We offer you an opportunity to cure by staying the foreclosure sale and honor your legal duty to address the QWR remaining questions, hereinto. You shall have 48 hours to retract the public sale notification.

### Mortgage Notification Bill of 2010 Disclosure Required

Many concerns have been expressed in the above preceding section. We offer you the opportunity to rebut the veracity of the fact findings.  We are adding you and your companies to our list where we demand by the use of interstate mail carried for your sworn representation about the knowledge of the "true" Note Holder and their status.

Under the 2009 Congressional Shelby-Boxer Amendment No. 1035 to the Truth-In Lending Act, 15 USC §1601 et seq. Mortgage Notification Bill of 2010 became effective as of January 1, 2010. The creditor or note holder [owner] is required to be known to the borrower/mortgagor/homeowner upon request.  Among other things, We are confused on how you became the current Note Holder of my original loan number. *Please explain the discrepancies and confusion with respect to the holder, creditor and loan number changed in your response to me as required under this QWR Notice and the Mortgage Notification Bill of 2010.*

We expect the complete identification and specifically who is the Note Holder [owner] and a verified copy of any mortgage contract with complete address and contact information conforming to above federal law. We expect that communications should meet the threshold information as mandated by the above mentioned Congressional Amendment. Therefore, you must provide me with such precise information, including the address, phone numbers where the Holder may be reached. *Please explain the discrepancies and confusion with respect to the holder and creditor information and your statutory standing to respond to me under this QWR Notice, Debt Validation Notice and under the Mortgage Notification Bill Amendment to the Truth-In-Lending Act.*

5

*Do you possess the original mortgage as the Holder and Owner and is prepared to provide evidence accordingly?*

### Securitization and Servicing Concerns under the Pooling and Servicing Agreements

**We restate our demand, so that, everyone is clear to our position:**

Please send to me a certified copy the Prospectus, Pooling and Servicing Agreement and the CUSIP indentifying a loan or my property into any securitization investment. If a loan may have been deposited into a Real Estate Mortgage Investment Conduit (REMIC ) or commonly known as, a Mortgage Backed Security Trust (MBST), then I want specific information to ascertain the veracity of the Trust and all administrators in the Trust including the closing and cut off dates for all mortgages. This would mean that JPMC must show that they are sub servicer or Master Servicer to the underlying mortgage loan pool. If purchased recently, then it may have been purchased as a delinquent non-performing asset.

Please disclose any information with the names of the Custodian, Securitizer, Master Loan Servicer, Sub Servicers or Note Holder for the MBST. Provide enough information to establish that the Loan Trust is in good standing and currently registered by a Secretary of State of competent jurisdiction. Show where the CUSIP No# Pooling and Servicing Agreement and Prospectus applies to my original loan number. Also, indicate if the REMIC is defunct or if there is loan servicing agreement exists between the servicer or Master Servicer with respect to JPMC. Please provide where an addendum was filed with the SEC under Form 15 Ga-1, under the Dodd-Frank Wall Street Financial Reforms Act as of 2010, in which the described disclosures are relevant notifications for all investors.

If you decide not to respond, then we do not accept responses that would lack important information related to servicing our loan. You must act for purposes full disclosure to fulfill the intent under the all legal notices.

### Request for Clarification of Debt Collection Discrepancies

**We restate our demand, so that, everyone is clear to our position:**

1. Since you are purportedly servicing the loan as the Note Holder, please indicate to us who Note Holder [owner] of the obligation with your loan number and where are signatures on underlying instruments attributable to Mr. Davis?
2. We requesting a full validated accounting by a complete independent auditor of the original loan account number along with original closing documents, loan application, disclosure notices and Security Deed which would contain the loan no. **696905629** .
3. We are requesting complete information about any securitization of an alleged loan including the complete knowledge of the Master Servicer, Sub servicer and the veracity of the Statutory Standing of the REMIC trust. Please provide certified copies of the Prospectus and the Pooling and Servicing Agreement.

6

4. My objective is to ensure that all payments, escrows, double book entries, under General Accepted Accounting Practices (GAAP) and General Accounting of Financial Board Standard (FSB) has been completely adhered to.

The issues outstanding are: the information identifying the "true" Note Holder, a complete reconciled accounting of all accounts used, the correct identification of which securitization loan pool that my loan is contained in, your response to being the Assignee with liabilities under Regulation Z and TILA with sufficient data to support and verify your answer or response. Your silence or inactions may be in violation of the Federal Trade Commission Interstate Commerce laws and the Department of H.U.D. RESPA Complaint Resolution statutes.

*We will consider withdrawing any litigation, or further investigation, if we are granted adequate assurances and acknowledgment of mistakes and compensate us accordingly. Please express your willingness to settled or reach a good faith agreement on record mistakes.*

You are reminded that this is a **Self Executing Contract**. Thereby, you have agreed to the terms by your presentment to collect a debt or take possession of an asset. Wherefore, it is binding for you to respond in your communications in writing as required under the covenant Section 15 of the Security Instrument and by the applicable laws described and stated herein. Your recent actions, as outlined above, shows that you are seeking to collect on a debt. We categorically reject all statements or inferences made on that you attempted to provide us with a Monthly Billing Statement.

We understand that under RESPA Complaint Resolution 12 USC §2605 Section 6, you have 20 business days to acknowledge and 60 business days to resolve..

Under Regulation Z, you have 20 business days  in which to unwind the transaction by returning all payments and fees made in pursuit of the rescission notice under 42 USC §1981 et seq.  By invoking my consumer rights under Regulation Z and under Title 42 for protected class of citizens, the Note and Security Deed may become void within 30 business days. Therefore any attempt to conduct a non-judicial foreclosure sale or claim the asset without honoring the rescission notice shall be met with claims of torts under abusive litigation.

You must suspend any credit reporting activities until the 60 business days have terminated as required under RESPA.

Govern yourself accordingly.

*(Execution Attestation Page)*

/s/ Christopher Davis

Executed on this __ day of March, 2013

_____

**Christopher T. Davis**
340 Cane Creek Dr.,
Stockbridge, GA 30281

_____
Unofficial Witness

Notary

_____
Signature                    Seal

7

'14/6/12     6:20 PM
'14/6/12     6:21 PM

## Certificate of Service

I, Christopher Davis, certify that I have delivered the foregoing document by first class U.S. mail and by facsimile to the following persons below and to the above persons listed to witness the communications as per the right of Giving of Notice to the Lender/Note Holder or to their agents under terms within our Promissory Note and Security Deed to the addresses below:

Consumer Finance Protection Bureau
P.O. Box 4509
Iowa City, Iowa 52244
Phone: (855) 411-2372

Sam Olens, Attorney General
C/0 LaRonica Lightfoot, Asst. Attorney General
Office of Attorney General
40 Capitol Square, SW                    Certified Mail No._____
Atlanta, GA 30334

Sharie Scales II, Esq.
2330 Scenic Highway, Suite 200
Snellville, Georgia 30078
(678) 252-2173 (office)


OCC Customer Assistance Group (CAG)
1301 McKinney Street, Suite 3450
Houston , Texas  77070
Fax: (713) 336-4301
Toll Free: 1-800-613-6743

Executed on this 7th day of  March, 2013

                                        /s/ Christopher Davis
                                        _____
                                        **Christopher T. Davis**
                                        340 Cane Creek Dr.,
                                        Stockbridge, GA 30281

8

EXHIBIT E1

# QUALIFIED WRITTEN REQUEST
**PURSUANT TO THE REAL ESTATE SETTLEMENT PROCEDURES ACT UNDER 12 USC§ 2605 (6) & Debt Validation Notice Under 15 USC §1692 (g), Truth In Lending Liability on Assignee under 15 USC §1641(c ) (g) and Under Title 42 USC §1981 et seq.**
## THIS IS NOT A PUBLIC COMMUNICATION
**Notice to Agent is Notice to Principle. Notice to Principle is Notice to Agent**
Applicable to all successors and assigns. Silence is Acquiescence/Agreement/Dishonor
*This is self-executing contract.*

Sent via Certified Mail With Proof of Service to: _____

Select Portfolio Servicing, Inc.
Matt Hollingsworth, CEO and President
3815 South West Temple
Salt Lake City, UT 84115
Tel: 801-293-1883
FAX: 801-293-3936

**Re: 1st QWR, Debt Validation and TILA Request for More Definite Statements**

**Alleged Borrower: Christopher T. Davis**
**For Subject Property: 340 Cane Creek Drive,** Stockbridge, GA 30281
**WaMu Bank's Original Loan Number: <u>6610189-7893</u>** JP Morgan Chase altered
**Loan No. <u>696905629</u> and Select Portfolio's Altered Loan No. 0014664619**

**To Whom It May Concern:**

**Background:**
        We are consumers and we are sending to you, your companies, and to your legal agents our reply to your attempt to collect a debt including the processing of our loan modification. This is our "Second Qualified Written Request Notice" for more definite statements per Section 6 of RESPA 12 USC 2605, Debt Validation Notice under Fair Debt Collection Practice Act (FDCPA) 15 USC 1692 (g), and a Truth-In-Lending Act upon the Assignee of WaMu Bank, the former parent company for Long Beach Mortgage Company , under Truth –in-Lending Act for applicable sections and 15 USC §1641(c)(g), respectively. This Notice is being sent due to ongoing communications and research made about the event that occurred on September 25, 2008 where the failed bank, Washington Mutual Bank (WaMu), was taken over by FDIC under 12 USC §1821 et seq. regulation and jurisdiction. Simply stated, we did not receive clear and concise acknowledgement that Chase was the obligee of our mortgage. We are confused by statements made in your letters dated on May 12, 2013 and JP Morgan Chase's last letter dated on April 12, 2013. We were informed that the loan servicing would be transferred to your company in their Transfer of Servicing Notice. Chase's letter indicated that Select Portfolio (SPS) would begin servicing our loan as of May 1, 2013.

1

Upon information and belief after a careful review of all the facts, Mr. Davis denies your allegations that there was any outstanding debt or asset associated with the above loan number arising out of an obligation that was contracted with Long Beach Mortgage Company (LBMC) a subsidiary of Washington Mutual Bank. We believe that the applicable laws and our contract makes it binding for Select Portfolio Servicing (SPS) to provide us with adequate proof to us that Long Beach Mortgage Loan Trust 2006-2 is our secured creditor.

### Concerns over Chase's Statements in April 13, 2013 Response Letter

Chase indicated in their letter, the following statements which appears to contradict your letter sent to us on or about May 13, 2013, entitled "Debt Validation Notice". Your letter appears to be inaccurate and misleading. We share the following extracted statement made by Chase for you to address the following:

> "...you have undertaken a valid binding and legally enforceable obligation with Chase."

With respect to the above extracted statement, we believe that our fact finding is more accurate and relates to our position where we are questioning below:

1.  We have no loan number associated with 0014664619 that you seek to collect and service. How did SPS come up with this account number.
2.  LBMC was a subsidiary of WaMu Bank as their subprime lender. The two were taken over by the Federal Deposit Insurance Corporation (FDIC) on September 25, 2008. Is Long Beach Mortgage still active or its subsidiaries after the FDIC take over? *Please explain in details.*
3.  We have never been told that our Note or mortgage instruments were transferred by FDIC to JPMC involving our original loan no. **696905629**.
4.  Are there servicing agreements between FDIC for Chase to specifically service our underlying loan which would match up with our security instrument by the operation of contract and accounting law under Financial Accounting Standard Board (FASB)? *Please explain in details.*
5.  We have not signed any agreement between the Davis' and Chase, nor have we received consideration from Chase. We have no agreement with Select Portfolio Servicing, either. Furthermore, we require conclusive proof that the LBM Loan Trust 2006-2 exists as a statutory regulated entity. We have never received any correspondence, address or phone numbers to locate the principal address for the business entity. Without our requested disclosure on the above contact information, then it might be a breach in the terms in our mortgage contract by failure to give notice. *Please explain in details.*
6.  We believe that there if there is Loan Trust or another entity that may hold the rights to our mortgage, then there is a questionable link related to our mortgage with Chase as the Master Service for that TRUST. *Please explain if Select Portfolio Servicing is the sub servicer or Master Servicer r with the*

2

*said trust? **Please address our concerns about the trusts and affiliations with the Loan Trust which is purported to hold our note.***

7. Is there any legal or contract provision which allows SPS reason to change our loan number? Quite oppositely, we find Georgia commercial codes laws should prevent the unilateral action by a Servicer or non-principals to change our loan number without consent. ***Please explain how our loan number has changed two times without any reconcilement of the accounting records*?** **We do not consent to any change or alteration to our original contract.**

8. Chase purportedly gave reasons to deny us a loan modification. We believe that the calculations used by Chase were erroneous. We believe that Chase did not consider of our debt obligations, therefore our debt ratios would have allowed us to qualify for Home Affordable Modification Program (HAMP). Certainly, any denial was not due to our ability to pay due to lack of income. If you have any authority to make a loan modification with a principal reduction, then we would consider a serious proposal to resolve our mortgage conflicts. Have SPS received TARP funds from the Department of Treasury? ***Please explain in details.***

### Real Estate Settlement Procedures Act Complaint Resolution Under 12 USC 2605 Section 6.

Therefore, We reject your allegations that we owe any debt under the loan account number  **0014664619 where you are entitled to service that loan number as a valid account.** Clearly, we state for record that there are many outstanding and unresolved matters as stated below and under the applicable RESPA, FDCPA and TILA statutes. More details are cited and follows below:

*Attempt to Transfer Loan Servicing to Select Portfolio*

Chase represented to us that Select Portfolio would commence servicing our loan as of May 1, 2013. Noticeably, there was no attempt to merge or reconcile the balances, payments from the original WaMu loan account number **6610189-7893**.

Chase has failed to state conclusively, how we were ever obligated to Chase on our mortgage. Now, Select Portfolio Servicing (SPS) brings assertions that LBM Loan Trust 2006-2 is the creditor absence of any proof that the trust exist. We reject the attempt to transfer and the suggestion of who might be our creditor. In our opinion, there is a "cloud" with respect to our servicing and creditor concerns. Georgia controlling law by the Supreme Court of Georgia, requires that the payor is careful about obtaining the accurate knowledge of who the payee should be.

Wherefore, we doubt that JP Morgan Chase Bank, N.A. is the successor-in-interests to Washington Mutual Bank. Conflicts exist in the land records were an assignment was entered indicating that Long Beach and WaMu Bank conveyed over to JP Morgan Chase the deed to secure on 11/29/2011. We doubt that LBM Loan Trust is a bona fide Creditor for the following reasons:

a. On or about November 29th, 2011, Henry County, Georgia land records show that the underlying assignment was made involving purported officers of

3

WaMu or FDIC permitted the assignment without the corporate seal of the corporations in Deed Book 12316 Page 94.

b.  The most interesting, we see where neither FDIC nor WaMu Bank nor WAAC have filed any prior assignment of interests over to JPMC into the county land records. Upon information, research and belief, your records must be faulty. Apparently, LBM Loan Trust 2006-2 must have sold or assigned over their interests.

c.  Chase has failed to deny or state where we are not entitled to rescind our loan pursuant to our Rescission Demand Notice under 42 USC 1981 et seq. where my instrument has been impaired. We are a protected class of people and we have a right to enforce our contract against impairment.

d.  We requested that you use the statutory 20 days under Regulation Z guidelines where the lender or assignee must "unwind" the transaction. "Unwinding" is defined under the TILA statute as a requirement for the Lender or Assignee to pay back all fees, payments, and give a full accounting timely within and the 20 days and then wait for a tendered offer or other negotiations. Chase has failed to "unwind" and statutes of limitations may time bars any affirmative defenses by Chase. We now believe that our instruments might be void by an operation of law.

*Please explain all of the above in addressing our concerns.*

### Failure to Comply Under RESPA

Chase has failed to address our questions in the Second QWR. We are questioning SPS to address the details as stated below:

a.  Was the debt obligation outstanding at the time when LMB Loan Trust 2006-2 purchased the instruments?

b.  Has your company recently obtained servicing rights agreement from LMB Loan TRUST 2006-2 and from Chase? *Please explain.*

c.  What is the complete corporate address, certificate of authority to  conduct business in the state where the trust operates, and the officers contact information?

d.  When has the reconciliation performed conforming to financial accounting standards, where it can be verified that the outstanding debt amount equals to 208, 551.04. Please provide us with a verified accounting report  that would show all payments, credits, escrows related to the original loan number **6610189-7893**  and the subsequent loan numbers **696905629 used by Chase and SPS recent account 0014664619**?

e.  Please explain and provide the details of the following:

i.  Escrow balances- What was escrowed, insurance, taxes, PMI or other and how many months outstanding?

ii.  Unpaid late charges-What was late, what amount of charges and how many months outstanding?

4

  iii. Please provide a 1099C, 1099A or any other reports that you may have filed with the Internal Revenue Service associated with the above account numbers?

  iv. Does our mortgage contract permit Corporate Advances to be tacted on to a purported debt obligation? We believe that this is a violation under the Georgia Fair Lending Act to attach fees that are not contained in the mortgage contract terms.

f. Do you have the tax identification number of Mr. Davis? How did you acquire his private information?

g. Do you service any loans on behalf of a Real Estate Mortgage Investment Conduit Trust (REMIC) also known as a Mortgage Backed-Security Trust securitized by WaMu Asset Acceptance Corporation and with Deutsche Bank National Trust Company?

h. If the answer is yes to question related to the REMIC, then please provide the relevant Pooling and Servicing Agreement indicating where updated service agreements conforms to the Securities and  Exchange Act Form 15 Ga-1.

i. Has the REMIC retain a registration under a Secretary of State in good standing? If yes, which state is holds the certificate of registration, with details related to registration number, corporate address and the address of the Registered Agents?

  We do not consider any of the above questions or request to be trade secrets or confidential especially when the information involves your usage of our private names, real property rights, and tax identification numbers.

  We  reiterate that based on relevant facts and research made with personal knowledge, we are asserting any failure to disclose material information and facts during the course of your servicing and  debt collection activities might be a violation under the applicable laws. We do not approve of any loan transfer activities until our issues are resolved.

**Mortgage Notification Bill of 2010 Disclosure Requirement Failure**

  Many concerns have been expressed in the above preceding section.

  Your letters have failed under the 2009 Congressional Shelby-Boxer Amendment No. 1035 to the Truth-In Lending Act, 15 USC §1601 et seq. Mortgage Notification Bill to clarify the Creditor status.  The bill was signed into law on July 1, 2009, by President Obama. The creditor or note holder [owner] is required to be known to the borrower/mortgagor/homeowner upon request to the servicer.  We are confused on how you the current Note Holder. *Please explain the discrepancies and confusion with respect to the holder, creditor for our loan and how we may contact them directly.*

  *We will consider withdrawing any litigation, or further investigation, if we are granted adequate assurances and acknowledgment of mistakes and compensate us accordingly.  Please express your willingness to settled or reach a good faith agreement on record mistakes.*

You are reminded that this is a **Self Executing Contract**. Thereby, you have agreed to the terms by your presentment to collect a debt or take possession of an asset. Wherefore, it is binding for you to respond in your communications in writing as required under the covenant Section 15 of the Security Instrument and by the applicable laws described and stated herein. Your recent actions, as outlined above, shows that you are seeking to collect on a debt. We categorically reject all statements or inferences made on that you attempted to provide us with a Monthly Billing Statement.

You must suspend any credit reporting activities until the 60 business days have terminated as required under RESPA.

Govern yourself accordingly.

*(Execution Attestation Page)*

Executed on this ___ day of  June, 2013

_____

**Christopher T. Davis**
340 Cane Creek Dr.,
Stockbridge, GA 30281

_____

Unofficial Witness

Notary

_____

Signature                                    Seal

6

**Certificate of Service**

I, Christopher Davis, certify that I have delivered the foregoing document by first class U.S. mail and by facsimile to the following persons below and to the above persons listed to witness the communications as per the right of Giving of Notice to the Lender/Note Holder or to their agents under terms within our Promissory Note and Security Deed to the addresses below:

Consumer Finance Protection Bureau
P.O. Box 4509
Iowa City, Iowa 52244
Phone: (855) 411-2372

Sam Olens, Attorney General
C/0 LaRonica Lightfoot, Asst. Attorney General
Office of Attorney General
40 Capitol Square, SW       Certified Mail No._____
Atlanta, GA 30334

Sharie Scales II, Esq.
2330 Scenic Highway, Suite 200
Snellville, Georgia 30078
(678) 252-2173 (office)

Executed on this _____ day of June, 2013

_____
**Christopher T. Davis**
340 Cane Creek Dr.,
Stockbridge, GA 30281

7

**SPS** SELECT
Portfolio
SERVICING, inc.          EXHIBIT F

June 21, 2013

Christopher Davis
Deborah Davis
340 Cane Creek Drive
Stockbridge, GA 30281

**Customer's Name:**   Christopher and Deborah Davis
**Account Number:**    0014664619
**Property Address:**  340 Cane Creek Drive, Stockbridge, GA 30281

Dear Mr. and Ms. Davis,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer of the above referenced account, acknowledges receipt of your correspondence which we received on June 10, 2013, entitled "Qualified Written Request." We have reviewed the issues raised in the letter and will respond below.

In your correspondence you request numerous documents, many of which you were given at origination. Many of the documents requested are not relevant to the servicing of this loan, are proprietary and not specific to your loan. SPS has many controls in place, and is audited regularly to ensure that the account is serviced in accordance with the terms of the original Note, Mortgage and applicable law.

SPS encloses copies of the Note, Security Deed, Assignment of Security Deed, Payment History, escrow account history, loan level advance history, HUD1 Settlement Statement, origination Loan Application, and various correspondence sent to you regarding your account.

In your correspondence you request the original loan documents to prove that SPS is authorized to service your account. SPS acquired the servicing of this loan from JP Morgan Chase Bank N.A., effective May 1, 2013. We enclose a copy of the Notice of Assignment, Sale or Transfer of Servicing Rights, sent to you on April 16, 2013. SPS is a third party mortgage loan servicer and services loans on behalf of the Note holder, Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2, which includes enforcing the mortgage and note provisions. The original Note is a legally negotiable instrument and is retained in a secure facility offsite. SPS will not release those documents to you; however, as noted above we enclosed true and correct copies of your Deed of Trust and Note. If you wish to view the original documents, please contact me at the number below to schedule a time to view those documents at our Salt Lake City, Utah office.

Your correspondence requests details of the changing of the loan number on the loan. When the servicing of the loan is transferred to a new servicer, a new loan number is assigned to the loan so that the loan can be placed on the new servicers' system.

Your correspondence requests transactions details regarding your escrow account and any loan level advances on his account. As requested, enclosed are copies of your escrow account history and loan level advance history.

0014664619

**SPS** | SELECT
*Portfolio*
SERVICING, inc.

As of the date of this letter, your account is due for the December 1, 2011 contractual payment. SPS' records indicate that we are reviewing your loan for a possible loan modification and are in need of a Request for Modification Assistance, 4506-T, Proof of Income, 2 recent bank statements, 2 years W-2 forms and 2 years signed tax returns.

SPS appreciates the opportunity to research and respond to your inquiry.  If you have any questions or concerns, please contact the Ombudsman Department.  Our toll-free number is (866) 662-0035, option 3, and representatives are available Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m., Mountain Time.

Sincerely,


Lorna Paden
Consumer Ombudsman Specialist
Direct Phone (801) 594-6281
Fax (801) 293-3943


Enclosures as stated

0014664619



**SPS** | SELECT
*Portfolio*
SERVICING, inc.

EXHIBIT F2

May 10, 2013

CHRISTOPHER T DAVIS
DEBORAH A DAVIS
340 CANE CRK DR
STOCKBRIDGE, GA 30281

Re: Account Number:   0014664619
Property Address:   340 CANE CRK DR
STOCKBRIDGE, GA 30281

### VALIDATION OF DEBT NOTICE

Dear Customer(s):

We recently sent you a letter advising you that the servicing of your mortgage loan was transferred to Select Portfolio Servicing, Inc. (SPS) effective 05/01/2013. As the servicer for your mortgage loan, SPS is collecting the debt on behalf of Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2, the investor who currently owns your mortgage loan. SPS is responsible for sending your monthly mortgage statements, accepting your monthly mortgage payments, collecting any amount due caused by your default under the terms of your Note and Mortgage and generally administering the terms of your mortgage loan.

As of May 10, 2013, our records show that the amount of debt you owe is $208,551.04.

| | |
|---|---|
| Unpaid Principal Balance | $184,014.33 |
| Interest | $20,450.76 |
| Corporate Advances | $1,576.88 |
| Escrow Advance | $2,509.07 |

Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your payment, in which event we will inform you before depositing the check for collection. For further information about your account or to request a payoff quote, please contact us at 800-258-8602 or at the address listed below. While you may request information or a payoff quote over the telephone or in writing, any disputes about the validity of the debt must be in writing.

You may write to us at the following address (please note that this address is different from the address to which you should send your monthly payments):

Select Portfolio Servicing, Inc.
Customer Service Department
PO Box 65250 Salt Lake City, UT 84165-0250

Federal law gives you thirty (30) days after you receive this letter to dispute the validity of the debt, or any part of it, in writing. If you don't dispute it within that period, we will assume that it is valid. If you do dispute it, by notifying us in writing to that effect, we will, as required by law, obtain and mail to you, proof of the debt. And if, within the same period, you request in writing, the name and address of your original creditor, if the original creditor is different from the current investor, we will furnish that information as well.



At SPS, any of our trained servicing representatives can assist you with answers to your questions about the status or history of your account, document requirements, or any of our available loan resolution options. If you have any questions or concerns, please contact our Customer Service Department. Our toll-free number is 800-258-8602, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.



SPS Portfolio SERVICING, inc.

**EXHIBIT F3**

August 23, 2013

Christopher Davis
Deborah Davis
340 Cane Crk. Dr.
Stockbridge, GA 30281

**File Number:** 130724-001109
**Account Number:** 0014664619
**Property Address:** 340 Cane Crk. Dr.
Stockbridge, GA 30281

Dear Mr. and Ms. Davis,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, received your correspondence forwarded to us by the Consumer Financial Protection Bureau (CFPB) on July 29, 2013. We are also in receipt of your correspondence dated July 15, 2013. We have reviewed the issues raised in your letter and will respond below. A copy of this letter will be sent to the CFPB.

Your complaint through the CFPB is similar to prior complaints that were responded to on June 21, 2013 (enclosed). In addition to our response, we want to further explain that the loan number is a way for SPS to identify your information in our system. Any time a loan transfers to another servicer, the loan number will change; however, the terms of the Note and Mortgage remain the same.

SPS services the loan on behalf of the Note holder, *Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2.* In your correspondence you reference TARP funds. We have not received any TARP funds regarding your loan.

As of the date of this letter, your loan is due for December 1, 2011 or 21 payments. SPS is committed to the prevention of foreclosure and offers many loan resolution options at no cost to our customers. SPS is a participating servicer in the U.S. Treasury's Home Affordable Modification Program (HAMP). We may be able to review you for this program once we receive current financial information from you. Please contact our Loan Resolution Department at the number stated below to provide financial information, and discuss the options which you may be eligible for. For your convenience, we enclose a financial package that you may fill out and return by fax to (801) 293-3936. You may also visit our website at www.spservicing.com to learn more about loan resolution options that may be available to you, or to enter your current financial information online.

Please note your account has been assigned a relationship manager, to assist you through the resolution process. If you have any questions or concerns please contact your assigned relationship manager, James Shaeffer, at (888) 818-6032, extension 36287.

SPS appreciates the opportunity to research and respond to your inquiry. If you have any questions or concerns, you may contact our Loan Resolution Department. Our toll-free number

0014664619

**SPS** *Portfolio* SELECT
SERVICING, inc.

is (888) 818-6032, and representatives are available Monday through Thursday between the hours of 8:00 a.m. and 11:00 p.m., Friday from 8:00 a.m. to 9:00 p.m., and Saturday from 8:00 a.m. to 2:00 p.m., Eastern Time.

Sincerely,

Mark Syphus
Consumer Ombudsman Specialist
Direct Phone (801) 594-6194
Fax (801) 293-3943

cc: CFPB

Enclosures as stated

0014664619



June 21, 2013

Christopher Davis
Deborah Davis
340 Cane Creek Drive
Stockbridge, GA 30281

**Customer's Name:**   Christopher and Deborah Davis
**Account Number:**   0014664619
**Property Address:**   340 Cane Creek Drive, Stockbridge, GA 30281

Dear Mr. and Ms. Davis,

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer of the above referenced account, acknowledges receipt of your correspondence which we received on June 10, 2013, entitled "Qualified Written Request." We have reviewed the issues raised in the letter and will respond below.

In your correspondence you request numerous documents, many of which you were given at origination. Many of the documents requested are not relevant to the servicing of this loan, are proprietary and not specific to your loan. SPS has many controls in place, and is audited regularly to ensure that the account is serviced in accordance with the terms of the original Note, Mortgage and applicable law.

SPS encloses copies of the Note, Security Deed, Assignment of Security Deed, Payment History, escrow account history, loan level advance history, HUD1 Settlement Statement, origination Loan Application, and various correspondence sent to you regarding your account.

In your correspondence you request the original loan documents to prove that SPS is authorized to service your account. SPS acquired the servicing of this loan from JP Morgan Chase Bank N.A., effective May 1, 2013. We enclose a copy of the Notice of Assignment, Sale or Transfer of Servicing Rights, sent to you on April 16, 2013. SPS is a third party mortgage loan servicer and services loans on behalf of the Note holder, Deutsche Bank National Trust Company, as Trustee, in trust for registered Holders of Long Beach Mortgage Loan Trust 2006-2, Asset-Backed Certificates, Series 2006-2, which includes enforcing the mortgage and note provisions. The original Note is a legally negotiable instrument and is retained in a secure facility offsite. SPS will not release those documents to you; however, as noted above we enclosed true and correct copies of your Deed of Trust and Note. If you wish to view the original documents, please contact me at the number below to schedule a time to view those documents at our Salt Lake City, Utah office.

Your correspondence requests details of the changing of the loan number on the loan. When the servicing of the loan is transferred to a new servicer, a new loan number is assigned to the loan so that the loan can be placed on the new servicers' system.

Your correspondence requests transactions details regarding your escrow account and any loan level advances on his account. As requested, enclosed are copies of your escrow account history and loan level advance history.

0014664619



As of the date of this letter, your account is due for the December 1, 2011 contractual payment. SPS' records indicate that we are reviewing your loan for a possible loan modification and are in need of a Request for Modification Assistance, 4506-T, Proof of Income, 2 recent bank statements, 2 years W-2 forms and 2 years signed tax returns.

SPS appreciates the opportunity to research and respond to your inquiry.  If you have any questions or concerns, please contact the Ombudsman Department.  Our toll-free number is (866) 662-0035, option 3, and representatives are available Monday through Friday between the hours of 8:00 a.m. and 5:00 p.m., Mountain Time.

Sincerely,

Lorna Paden
Consumer Ombudsman Specialist
Direct Phone (801) 594-6281
Fax (801) 293-3943

Enclosures as stated

0014664619