## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 13-CV-21107-FAM

SALVATORE SACCOCCIO, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,
individually and as successor in interest to
CHASE HOME FINANCE, LLC; CHASE
HOME FINANCE, LLC, CHASE
INSURANCE AGENCY, INC.;
ASSURANT INC.; AMERICAN
SECURITY INSURANCE COMPANY;
STANDARD GUARANTY INSURANCE
COMPANY; and VOYAGER
INDEMNITY INSURANCE COMPANY,

Defendants.

_____

### JPMORGAN CHASE BANK, N.A. AND AMERICAN SECURITY INSURANCE COMPANY'S MOTION FOR AN ORDER TO SHOW CAUSE WHY SETTLEMENT CLASS MEMBER SHELIA K. LEWIS SHOULD NOT BE HELD IN CIVIL <u>CONTEMPT AND SUPPORTING MEMORANDUM OF LAW</u>

## <u>TABLE OF CONTENTS</u>

**Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................3

    A.   The *Saccoccio* Action Brought Claims Relating To Movants' Hazard LPI Practices. .......................................................................................................................3

    B.   The *Saccoccio* Action Was Settled And Class Members Released All Claims Relating To Hazard LPI Policies Placed On Residential Property Between January 1, 2008 And October 4, 2013. ...........................................................................4

    C.   Lewis Did Not Object To Or Opt Out Of The Settlement And, Instead, Submitted Three Claim Forms For Compensation. .....................................................5

    D.   The Court Approved The Settlement And Entered A Final Judgment .......................6

    E.   Despite Not Opting Out Of The Settlement, Lewis Has Violated The Final Judgment By Asserting Released Claims In Her State Court Foreclosure Action. .....................................................................................................................7

    F.   Chase Informed Lewis That She Is Asserting Released Claims, But Lewis Refused To Drop Them And Threatened To File A Lawsuit Against Chase's Counsel For Even Suggesting That The Claims Were Released. ...............................9

III. LEGAL ARGUMENT ..........................................................................................................9

    A.   Lewis Is A Member Of The Settlement Class ........................................................11

    B.   Movants Are Released Persons Under The Settlement ............................................12

    C.   Lewis' "Unclean Hands" Defense And Her Counterclaims In The State Court Action Have Been Released. ..................................................................................12

    D.   Lewis' Arguments To Avoid Application Of The Settlement And The Court's Final Judgment Lack Merit. ......................................................................15

IV. CONCLUSION ...................................................................................................................18

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Adams v. S. Farm Bureau Life Ins. Co.*,
  493 F.3d 1276 (11th Cir. 2007)........................................................................ 10, 16

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) .............................................................................. 10

*Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers,
  Dist. Lodge No. 57*,
  778 F.2d 750 (11th Cir. 1985) .................................................................................. 18

*Battle v. Liberty Nat'l Life Ins. Co.*,
  877 F.2d 877 (11th Cir. 1989)................................................................................... 11

*Elkins v. Equitable Life Ins. of Iowa*,
  CIVA96-296-CIV-T-17B, 1998 WL 133741 (M.D. Fla. 1998) ............................. 16

*Faught v. Am. Home Shield Corp.*,
  660 F.3d 1289 (11th Cir. 2011)............................................................................ 9, 10

*Horton v. Metro. Life Ins. Co.*,
  459 F. Supp. 2d 1246 (M.D. Fla. 2006) .................................................................. 11

*In re Managed Care Litig.*,
  00-01334-MD-MORENO, 2011 WL 1522561 (S.D. Fla. March 8, 2011) ............ 11

*In re Managed Care Litig.*,
  No. 00-1334-MD, 2009 WL 413510 (S.D. Fla. 2009) .................................. 9, 11, 17

*In re Managed Care Litig.*,
  No. 00-MD-1334-MORENO, 2010 WL 6532985 (S.D. Fla. Aug 15, 2010), *aff'd*............... 10

*In re Nat'l Life Ins. Co.*,
  247 F. Supp. 2d 486 (D. Vt. 2002) .......................................................................... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998).................................................................................... 16

*In re Wachovia Corp. Pick-A-Payment Mortg. Mktg. & Sales Practices Litig.*,
  5:09-MD-02015-JF, 2012 WL 5868931 (N.D. Cal. Nov. 19, 2012) ................... 15, 3

*Love v. Blue Cross & Blue Shield Ass'n*,
  No. 03-21296-CLV, 2014 WL 1028938 (S.D. Fla. March 17, 2014) ............... 11, 17

*Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*,
    768 F.3d 1320 (11th Cir. 2014) .......................................................................................... 9

*Matsushita Elec. Indus. Co., Ltd. v. Epstein*,
    516 U.S. 367 (1996) ......................................................................................................... 10

*Thomas v. Blue Cross & Blue Shield Ass'n*,
    594 F.3d 823 (11th Cir. 2010) .................................................................................... 9, 10

*Thompson v. Edward D. Jones & Co.*,
    992 F.2d 187 (8th Cir. 1993) ...................................................................................... 17, 18

*V & M Erectors, Inc. v. Middlesex Corp.*,
    867 So. 2d 1252 (Fla. 4th DCA 2004) ............................................................................. 10

**FEERAL RULES OF CIVIL PROCEDURE AND OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a) ............................................................................................................ 17

12 C.F.R. § 1024.37 ............................................................................................................ 16

JPMorgan Chase Bank, N.A. ("Chase") and American Security Insurance Company ("American Security") (collectively "Movants"), move the Court for the entry of an order to show cause why settlement class member Shelia Lewis ("Lewis") should not be held in civil contempt for violating the Court's Final Order and Judgment ("Final Judgment") by continuing to assert and pursue released claims in her pending foreclosure action in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida, Case No. 013-CA-0118 ("State Court Action").

## I.    INTRODUCTION

In exchange for $300 million in monetary relief made available to hundreds of thousands of settlement class members, injunctive relief valued at $690 million, and $20 million in attorney's fees, Movants settled all claims concerning any hazard LPI policies placed on residential property between January 1, 2008 and October 4, 2013 (the "Settlement").  Chase and American Security (as "Released Persons") obtained a broad release of claims ("Release"), and the Court entered a Final Judgment, which bars and enjoins class members ("Settlement Class Members") from asserting any claims:

> that were or could have been sought or alleged in the [*Saccoccio*] Litigation or that relate, concern, arise from, or pertain in any way to Released Persons' conduct, policies, or practices concerning hazard LPI Policies placed or charged by Chase [between January 1, 2008 and October 4, 2013].

(Final Judgment, ECF No. 130, at ¶ 7(b); Stipulation and Settlement Agreement ("Settlement"), ECF No. 59-1, at § 10.1).

Shelia Lewis ("Lewis") is a Settlement Class Member who has taken full advantage of the Settlement.  She received notice of the Settlement and did not object or opt out.  Instead, she submitted three claim forms for reimbursement, based upon hazard LPI policies placed on her property between January 1, 2008 and October 4, 2013.  Lewis even declared ***under penalty of perjury*** that she is a member of the Settlement Class.

Chase filed a state foreclosure action against Lewis.  Ignoring the Settlement and Final Judgment, Lewis has asserted the defense of "unclean hands," based upon Chase's placement of hazard LPI on Lewis' property, and has filed numerous counterclaims against Movants that are barred by the Release.[1]  Lewis' "unclean hands" allegations and nearly all of her counterclaims complain about charges for hazard LPI policies placed on her property between January 1, 2008 and October 4, 2013—the very foundation of the Settlement.[2]  Indeed, Lewis alleges that Movants improperly placed hazard LPI on her property at an inflated price, which "directly" led to accounting errors regarding her mortgage loan.  Lewis seeks, among other things, a refund of "all force-placed insurance charges" applied to her escrow account.  Lewis' "unclean hands" allegations and Counts II-VIII of her counterclaims have been released by the Settlement and Final Judgment, and Lewis should be enjoined from continuing to assert them.

Prior to bringing this motion, Movants separately explained to Lewis' counsel that her counterclaims violate the Court's Final Judgment.  Lewis refused to dismiss them.  Instead, Lewis' counsel threatened to file a separate lawsuit against Chase's counsel for simply sending the letter.

---

[1]     The counterclaims barred by the Release include: (a) a violation of the lender-placed insurance procedures set forth in Regulation X of the Real Estate Settlement And Procedures Act ("RESPA") (Count II); (b) a negligence claim (Count III), based in part upon Chase's alleged failure to account for Lewis' mortgage payments due to the placement of hazard LPI; (c) a declaratory judgment claim (Count IV), which alleges that Chase violated "force-placed insurance provisions" by placing hazard LPI on Lewis' property; (d) a negligence claim (Count V), based on American Security's purported "force-placement" of insurance on Lewis's account; (e) a violation of § 626.9551(1)(a) of Florida's Unfair Insurance Trade Practices Act ("FUITPA") (Count VI), based on "overpriced force-placed insurance"; (f) a violation of § 626.9551(1)(d) of FUITPA (Count VII), based on the use of Lewis' insurance information to obtain hazard LPI; and (g) a declaratory judgment claim (Count VIII), which like Count VII is based on the purported retention of Lewis' insurance information to monitor the need for hazard LPI .  While it is clear that Counts I-IV are only against Chase, and Count V is only against American Security, Counts VI-VIII do not specify in the heading to which Movant the Counts apply.  In any event, Counts II-VIII are barred by the Release.

[2]     Lewis also complains about Chase allegedly failing to properly respond to a "Notice of Error" letter that Lewis sent about, among other things, the placement of LPI on her property.  Chase does not seek to enjoin Lewis' claim (Count I) based upon the manner by which Chase responded to this particular letter.  Nonetheless, as described herein, all claims arising out of the alleged conduct described in the letter—that is, any alleged damages from the placement of hazard LPI on her property—have been released.

-2-

By refusing to dismiss those claims that arise from the placement of hazard LPI on her property, Lewis continues to violate the Final Judgment and the Settlement.

Put simply, Lewis has taken advantage of the benefits of the Settlement and now must abide by its terms.  The Court should enforce its injunction prohibiting Lewis from pursuing her "unclean hands" defense and Counts II-VIII of her counterclaims in the State Court Action.

## II.   FACTUAL BACKGROUND

### A.   The *Saccoccio* Action Brought Claims Relating To Movants' Hazard LPI Practices.

In June 2012, Plaintiff Salvatore Saccoccio ("Plaintiff") and several other individuals brought a putative class action against Chase, Assurant Inc. ("Assurant"), and other affiliated parties (including American Security), challenging their hazard LPI practices.[3]  Plaintiff asserted that Chase entered into an arrangement with American Security to improperly place and charge borrowers for hazard LPI.  (Am. Compl., ECF No. 74-1, at ¶¶ 1-54).  Plaintiff further alleged that, in exchange for the exclusive right to lender-place coverage on borrowers in Chase's mortgage portfolio, Assurant and its subsidiaries (including American Security) provided "kickbacks" to and entered into exclusive reinsurance agreements with Chase.  (*Id.* ¶¶ 2-3, 31-46).  Plaintiff contended that as a result of this scheme, he and other putative class members were charged "exorbitant" premiums for hazard LPI, had unnecessary coverage placed on their properties, and were required to pay other allegedly improper costs and fees.  (*Id.* ¶¶ 1-54, 73, 81, 88, 96, 105, 124, 130).

Based on these allegations, Plaintiff brought numerous claims against Movants (among others), including claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, breach of fiduciary duties, tortious interference with business relationships, and violations of Florida's Deceptive and Unfair Practices Act, the Federal Bank Holding Company Act, and the Federal Truth in Lending Act.  (*Id.* ¶¶ 69-147).  Plaintiff asserted

---

[3]   The complaint was later amended to assert claims only on behalf of Plaintiff.   (ECF No. 74-1).

claims on behalf of a nationwide class of borrowers who had hazard LPI placed on their property. (*Id.* ¶ 55).

### B.      The *Saccoccio* Action Was Settled And Class Members Released All Claims Relating To Hazard LPI Policies Placed On Residential Property Between January 1, 2008 And October 4, 2013.

On August 26, 2013, the parties reached a nationwide settlement regarding all claims concerning hazard LPI on loans serviced or owned by Chase.  (Settlement, ECF No. 59-1).  The Settlement covers all borrowers nationwide who had a hazard LPI policy placed on their residential property between January 1, 2008 and October 4, 2013, the preliminary approval date, and who either paid a portion of the premium to Chase or were charged that premium and still owe at least a portion of it.  (Settlement, ECF No. 59-1, at § 2.47); *Saccoccio v. JP Morgan Chase Bank*, N.A., 297 F.R.D. 683, 689 (S.D. Fla. 2014).  As this Court recognized in approving the Settlement, the Settlement Class includes approximately 762,390 individuals who are eligible to receive more than $300 million in monetary relief merely by filling out a claim form.  *Id.*  The Court valued the injunctive relief alone at over $690 million.  *Id.*  While Movants agreed to the terms of the Settlement, neither admitted to any liability or wrongdoing.  (Settlement, ECF No. 59-1, at ¶¶ 1.12, 18.5).

In exchange for this substantial consideration (and to achieve finality over all hazard LPI claims by all borrowers who did not opt out), Movants negotiated and obtained a broad release for them and their respective affiliates (the "Release").  The Release provides that each member of the Settlement Class shall:

> [B]y operation of the final Judgment, be deemed to have fully, conclusively, irrevocably, forever, and finally released, relinquished, and discharged the Released Persons from any and all claims, actions, causes of action, suits, debts, sums of money, payments, obligations, promises, damages, penalties, attorney's fees and costs, liens, judgments, and demands of any kind whatsoever that each member of the Settlement Class may have on or before the Final Settlement Date or may have had in the past, whether in arbitration, administrative, or

-4-

judicial proceedings, whether as individual claims or as claims
asserted on a class basis, whether past or present, mature or not yet
mature, known or unknown, suspected or unsuspected, whether based
on federal, state, or local law, statute, ordinance, regulations, contract,
common law, or any other source, ***that were or could have been
sought or alleged in the [Saccoccio] Litigation or that relate,
concern, arise from, or pertain in any way to the Released Persons'
conduct, policies, or practices concerning hazard LPI Policies
placed or charged by Chase during the Class Period [between
January 1, 2008 and October 4, 2013].***

(Settlement, ECF No. 59-1, at § 10.1) (emphasis added).   Movants are each specifically defined as

"Released Persons."  (*Id.* at § 2.43).

To remove all doubt, the Settlement also provides a non-exhaustive list of examples of

conduct covered by the Release.  Such examples include, but are not limited to, "all claims related

to [the] placement of hazard LPI Policies" between January 1, 2008 to October 4, 2013; any claims

based upon "the amount, duration, and alleged excessiveness of any hazard LPI Policies placed or

charged by Chase"; any claims related to any alleged "kickbacks"; any claims concerning the

"payment or receipt of commissions, expense reimbursements, alleged 'kickbacks,' or any other

compensation under any hazard LPI Policies placed or charged by Chase;" any claims related to any

"relationship, whether contractual or otherwise, between Chase and the Assurant Defendants

regarding hazard LPI, including, but not limited to, the procuring, underwriting, placement,

tracking, or costs of hazard LPI Policies;" and "the content, manner, or accuracy of any

communications regarding the placement of any hazard insurance policy by the Chase."

(Settlement, ECF No. 59-1, at § 10.1.1).

### C. Lewis Did Not Object To Or Opt Out Of The Settlement And, Instead, Submitted Three Claim Forms For Compensation.

On November 15, 2013, in accordance with the procedures established in the Court's

Preliminary Approval Order (ECF No. 77), the Settlement Administrator mailed a Settlement

Notice, Claim Form Instructions, and Claim Forms (the "Notice Packet") to Lewis for at least three

separate hazard LPI policies.  (Declaration of Settlement Administrator ("Declaration"), attached hereto as Ex. A, at ¶ 4).  Lewis did not object to, or opt-out of the Settlement.  Instead, she submitted three claim forms to recover money for three hazard LPI policies placed on her property on December 21, 2009, October 9, 2010, and July 12, 2011 respectively.  (*Id.* ¶¶ 5-7).  For each of these claim forms, Lewis declared under penalty of perjury that she is a Settlement Class Member.  (*See* Lewis Claim Forms, attached as Exhibits A-C to the Declaration).

> **D.      The Court Approved The Settlement And Entered A Final Judgment.**

On March 3, 2014, after holding a final approval hearing, the Court entered a Final Order and Judgment ("Final Judgment") certifying the Settlement Class and approving the Settlement.  (Final Judgment, ECF No. 130).   The Final Judgment incorporates the terms of the Release.  (*Id.* ¶ 7).  The Final Judgment makes clear that all Settlement Class Members who did not opt out (like Lewis) are "permanently barred and enjoined" from "filing commencing, prosecuting, intervening in, or participating in . . . any lawsuit in any jurisdiction based on or relating to the claims or causes of action . . . in the Saccoccio Litigation and/or the Released Claims."  (*Id.* ¶ 8).  In fact, the Final Judgment makes clear that after the "Final Settlement Date" (which is December 9, 2014),[4] all Settlement Class Members must "dismiss with prejudice all claims, actions, or proceedings that have been brought by any Settlement Class Member in any other jurisdiction and that have been released . . ."  (*Id.* ¶ 9).  The Court also retained jurisdiction to enforce the Settlement and the injunction in the Final Judgment.  (*Id.* ¶ 1).  In particular, the Court stated that it would "retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but not limited to, enforcement of the Releases."  (*Id.* ¶ 7(h)).

---

[4]      The "Final Settlement Date" is the "date on which the Judgment in this case becomes Final"—meaning, the date when all appeals have been exhausted.  (Settlement, ECF No. 59-1, at § 2.24).

The Final Judgment was appealed by certain Objectors.  The last appeal was voluntarily dismissed on December 9, 2014.  Thus, the Settlement became final on December 9, 2014. (Settlement, ECF No. 59-1, at § 2.24).

      **E.**      **Despite Not Opting Out Of The Settlement, Lewis Has Violated The Final Judgment By Asserting Released Claims In Her State Court Foreclosure Action.**

On January 9, 2013, Chase filed a foreclosure action against Lewis, which is pending in the Circuit Court in and for Collier County, Florida, Case No. 013-cv-0118 ("State Court Action"), for failure to make payments on her $193,997 mortgage loan.  (*See* Foreclosure Compl., attached hereto as Ex. B).  On June 20, 2014, Lewis filed a Second Amended Answer, raising an "unclean hands" defense, asserting counterclaims against Chase, and adding American Security as an additional "counter-claim defendant."  (Pl.'s Second Am. Answer Asserting Counterclaims ("Counterclaims"), attached hereto as Ex. C).

As in the *Saccoccio* Action, Lewis makes sweeping allegations concerning Movants' hazard LPI practices and contends that she has been harmed by these practices.  Lewis' "unclean hands" defense rests exclusively upon the allegation that Chase improperly "force-placed insurance on Borrower's account under circumstances where it was not contractually or legally authorized to do so" and "inflate[d] the premiums" charged to Lewis.  (Counterclaims, Ex. C, at ¶ 18).  Lewis further contends that those charges gave "rise to the alleged default."  (*Id.*).

As in the *Saccoccio* Action, Lewis further claims that Chase "entered into an arrangement" with American Security, whereby American Security monitors and tracks Chase's mortgage loan portfolio to determine whether to place hazard LPI.  (Counterclaims, Ex. C, at ¶ 23).  Lewis claims that American Security entered into "a quota share reinsurance agreement," whereby 75% of the premium was "kicked back" to a Chase subsidiary (*id.* ¶ 25), and that, because of this arrangement, American Security "performs these services as part of a quid-pro-quo arrangement, for which it is

rewarded with the exclusive right to provide force-placed insurance" for Chase loans.  (*Id.* ¶ 26).

Lewis then asserts that this "cost of force-placed insurance is placed upon the affected borrowers,"

increasing the premiums owed for the hazard LPI.  (*Id.* ¶ 27).

Each of Lewis' counterclaims incorporates these allegations by reference.  (*Id.* ¶¶ 42, 47, 53,

57,  60, 65, 73).  In addition, while Lewis has incorrectly numbered the counterclaims (and has not

specified whether each one is brought against Chase or American Security),[5] each of these claims

(other than Count I) is based, at least in part, on the placement of hazard LPI policies on Lewis'

property (between January 1, 2008 and October 4, 2013) and on the premiums that Chase charged

Lewis for those policies:

- Count II asserts a violation of the lender-placed insurance procedures in RESPA's regulations, based upon Chase's alleged failure "to cancel and refund the force-placed insurance premiums that it has applied to [Lewis'] account." (Counterclaims, Ex. C at ¶ 45);

- Count III asserts a negligence claim, contending that Chase negligently handled mortgage payments due to the placement of hazard LPI (*id.* ¶ 50);

- Count IV seeks a declaratory judgment that Chase violated "force-placed insurance provisions" by placing hazard LPI on Lewis' property (*id.* ¶ 56);

- Count V asserts a negligence claim, contending that American Security "had a duty to use reasonable care in order to make sure it did not obtain force-placed insurance on her account when she had appropriate voluntary coverage" and American Security breached that duty (*id.* ¶¶ 58-89);

- Count VI asserts a claim under FUITPA for arranging for the purchase of hazard LPI, even though Plaintiff purportedly had insurance, and assessing the amount of the premium (*id.* ¶ 61); and

- Count VII asserts a claim under FUITPA for providing "insurance" information to American Security "so that it will have the opportunity to sell force-placed insurance" on Lewis' property (*id.* ¶ 70);

- Count VIII seeks a declaratory judgment against American Security based on the providing of insurance information relating to the placement of hazard insurance on Lewis' property (*id.* ¶ 76).

Each of these claims falls squarely within the Release.

---

[5]     Any reference to a specific counterclaim in this brief refers to the counterclaims as if they were consecutively numbered.

**F.      Movants Informed Lewis That She Is Asserting Released Claims, But Lewis Refused To Drop Them And Threatened To File A Lawsuit Against Chase's Counsel For Even Suggesting That The Claims Were Released.**

Prior to filing this motion, Movants separately corresponded with Lewis' counsel, explaining that her counterclaims were subject to the Release and violated the Settlement and Final Judgment.  (*See* Letter dated November 25, 2014, attached hereto as Ex. D; Letter dated August 26, 2014, attached hereto as Ex. E).  Lewis' counsel responded to both letters by refusing to drop these claims and, in response to Chase's letter, threatened to file a lawsuit against Chase's counsel for making "false statements in collection of a consumer debt" and for explaining why the counterclaims were barred by the Final Judgment.   (*See* Email from Lewis' Counsel dated November 25, 2014 attached as Ex. F).  As explained below, Lewis' "unclean hands" defense and her counterclaims are barred by the Release, and her arguments to the contrary ignore settled law, the plain language of the Release, and this Court's Final Judgment.

## III.   LEGAL ARGUMENT

This Court should enforce the Settlement by finding Lewis in civil contempt for asserting claims relating to the placement of hazard LPI on her property between January 1, 2008 and October 4, 2013.  It is well-settled that "[t]he All Writs Act gives federal courts the power to issue injunctions in aid of their jurisdiction," like the injunction in the Final Judgment.  *In re Managed Care Litig.*, No. 00-1334-MD, 2009 WL 413510, at *7 (S.D. Fla. 2009) (Moreno, J.).  This Court has broad authority to enforce that injunction through its "civil contempt power."  *Faught v. Am. Home Shield Corp.*, 660 F.3d 1289, 1293 (11th Cir. 2011); *Mamma Mia's Trattoria, Inc. v. Original Brooklyn Water Bagel Co.*, 768 F.3d 1320, 1325 (11th Cir. 2014); *Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 829 (11th Cir. 2010).

The Eleventh Circuit has made clear that when claims brought by a settlement class member are barred by or would interfere with an approved class settlement, the class action defendant

-9-

should move for an order to show cause why the settlement class member "should not be held in contempt for violating the injunction against the prosecution of released claims." *Faught*, 660 F.3d at 1293.  On a contempt motion, the movant bears the initial burden of proving, by clear and convincing evidence, the alleged contemnor's noncompliance with a court order. *Thomas*, 594 F.3d at 821.  After the movant satisfies this burden, the burden shifts to the alleged contemnor to explain her noncompliance. *Id.*

The Supreme Court has recognized the value and importance of class-action settlements. *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516 U.S. 367, 376 (1996).  At the center of these settlements are class releases, which "are both common and presumptively valid." *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 471 (S.D. Fla. 2002).  These releases may be, and typically are, "broad in scope," so that the settling defendant can achieve the desired peace and finality associated with a class action settlement. *Id.*; *see also In re Managed Care Litig.*, No. 00-MD-1334-MORENO, 2010 WL 6532985, at *8 (S.D. Fla. Aug 15, 2010), *aff'd and adopted*, 2011 WL 1522560 (S.D. Fla. 2011).

To that end, a release in a class settlement bars claims when: (1) the party asserting those claims is a member of the settling class; (2) the party defending against those claims is a released party; and (3) the claims at issue fall within the scope of the release.  *See Managed Care Litig.*, 2010 WL 6532985, at *3.  The plain language of the release is controlling in analyzing these three elements. *Id.* (citing *V & M Erectors, Inc. v. Middlesex Corp.*, 867 So. 2d 1252, 1253-54 (Fla. 4th DCA 2004)).

Applying this rule, federal courts routinely enjoin class members from pursuing released claims in state court, ordering them to withdraw those claims or risk being held in contempt of court.  *See Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1290 (11th Cir. 2007) (affirming enjoining of released claims asserted in state court where the class settlement "clearly

-10-

encompasse[d] the appellant's pending claims."); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877,

882 (11th Cir. 1989); *Love v. Blue Cross & Blue Shield Ass'n*, No. 03-21296-CLV, 2014 WL

1028938, at *4 (S.D. Fla. March 17, 2014) (Moreno, J.) (enjoining settlement member from

asserting released counterclaims in state court and explaining that, if the party "fails to voluntarily

withdraw these claims, [he] may be held in contempt by this Court"); *In re Managed Care Litig.*,

00-01334-MD-MORENO, 2011 WL 1522561, at *1 (S.D. Fla. March 8, 2011) (Moreno, J.)

(enjoining claims and explaining that, "[i]f the claims are not withdrawn and/or dismissed, the

Court will Order that Plaintiffs be deemed to be in contempt of the court"); *In re Managed Care

Litig.*, 00-1334-MD, 2009 WL 413510, at *7 (S.D. Fla. Feb. 19, 2009) (Moreno, J.) (granting

motion to enforce settlement and compelling withdrawal of state court complaint or face being held

in contempt of court); *Horton v. Metro. Life Ins. Co.*, 459 F. Supp. 2d 1246, 1252 (M.D. Fla. 2006)

(enjoining class member from asserting released claims in state court action).

Here, applying these well-settled principles, the Settlement's plain language makes clear

that:  (1) Lewis is a Settlement Class Member; (2) Movants are parties to the Settlement and have

been released; and (3) Lewis has asserted an "unclean hands" defense and counterclaims that were

released under the Settlement, in direct violation of the Settlement and this Court's injunction in its

Final Judgment.

### A.    Lewis Is A Member Of The Settlement Class.

There is no doubt that Lewis is a member of the Settlement Class, which encompasses all

borrowers who:

> [W]ithin the Class Period [January 1, 2008 and October 4, 2013], were charged by
> Chase Defendants as insureds or additional insureds under a hazard LPI Policy for
> residential property and who, [between January 1, 2008 and October 4, 2013],
> either (i) paid to the Chase Defendants the Net Premium for that hazard LPI
> Policy or (ii) did not pay to and still owe the Chase Defendants the Net Premium
> for that hazard LPI Policy.

(Settlement, ECF No. 59-1, at § 2.47).  In the State Court Action, Lewis alleges that she was charged for hazard LPI on her property and did not pay all of the LPI premiums.  (Counterclaims, Ex. C, at ¶¶ 5-6, 18, 56, 59, 61, 63; *see also* Ex. A to Counterclaims, at 2).  Lewis was also identified from Chase's records as a class member and received notice of the Class Settlement. (Declaration, Ex. A, at ¶¶ 3-4).  Lewis did not submit a request for exclusion from the Settlement Class and the Settlement is now final.  (*Id.* ¶¶ 8-9).

In fact, Lewis has affirmatively acknowledged that she is a Settlement Class Member because she ***has participated*** in the settlement process by completing and submitting three claim forms for hazard LPI Policies issued on December 21, 2009, October 9, 2010, and July 12, 2011 for which she did not pay all of the premiums.  (Declaration, Ex. A, at ¶¶ 5-7).  For each claim form, she stated under penalty of perjury that she is a Settlement Class Member.  (*See* Claim Forms, attached as Exs. A-C to Declaration).

### B.      Movants Are Released Persons Under The Settlement.

Movants are "Released Persons" under the Settlement, which includes any named Defendant in the *Saccoccio* Litigation.  (Final Judgment, ECF No. 130, at ¶ 7(a)(v); Settlement, ECF No. 59-1, at § 2.43).  Because Chase and American Security were both named Defendants in the *Saccoccio* Litigation, both are entitled to enforce the Release.

### C.      Lewis' "Unclean Hands" Defense And Her Counterclaims In The State Court Action Have Been Released.

Counts II-VIII of Lewis' counterclaims in the State Court Action have been resolved by the Final Judgment and the Release.  The Release provides that all Settlement Class Members, which includes Lewis, have discharged, waived, and released any and all "claims, actions, causes of action, suits, debts, sums of money, payments, obligations promises . . . and demands of any kind whatsoever . . . whether past or present, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state, or local law, statute, ordinance, regulations, contract,

common law, or any other source, *that were or could have been sought or alleged in the*

*[Saccoccio] Litigation or that relate, concern, arise from, or pertain in any way to the Released*

*Persons' conduct, policies, or practices concerning hazard LPI Policies placed or charged by*

*Chase during the Class Period [between January 1, 2008 and October 4, 2013]."*  (Final

Judgment, ECF No. 130, at ¶ 7(b); Settlement, ECF No. 59-1, at § 10.1 (emphasis added)).  The

Settlement and Final Judgment even provide examples of conduct covered by the Release, which

includes, but is not limited to, "all claims related to charges for Chase's placement of hazard LPI

Policies" between January 1, 2008 and October 4, 2013, among the many other examples listed in

the Settlement.  (Final Judgment, ECF No. 130, at ¶ 7(b)(i); Settlement, ECF No. 59-1, at § 10.1.1).

Here, nearly all of Lewis' counterclaims are covered by the Release.  Other than a claim

(Count I) that Chase failed to timely respond to a "Notice of Error" from Lewis (which itself

complained about the placement of hazard LPI),[6] Lewis' claims against Movants all stem from the

alleged improper placement of hazard LPI on her property.  In her "General Allegations," Lewis

makes this crystal clear by purporting to describe (incorrectly) Chase's lender-placed insurance

arrangement with American Security and alleging that:

- Chase "has entered into an arrangement" with American Security whereby American Security monitors and tracks Chase's mortgage loan portfolio to determine whether to place hazard LPI.  (Counterclaims, Ex. C, at ¶ 23).

- American Security entered into "a quota share reinsurance agreement" whereby 75% of the premium was "kicked back" to a Chase subsidiary.  (*Id.* ¶ 25).

- American Security "performs these [LPI] services as part of a quid-pro-quo arrangement, for which it is rewarded with the exclusive right to provide force-placed insurance" for Chase loans.  (*Id.* ¶ 26).

- As a result of this arrangement, the "cost of force-placed insurance is placed upon the affected borrowers," thereby improperly increasing the premiums owed for the hazard LPI.  (*Id.* ¶ 27).

---

[6]     To the extent Lewis' other claims are also based in part upon the manner by which Chase responded to Lewis' February 3, 2014 "Notice of Error" letter (as opposed to the substantive complaints in that letter), Chase does not contend that they are barred.

These allegations mirror those in the *Saccoccio* Complaint (*see* Am. Compl., ECF. No 74-1, at ¶¶ 2-3, 32-34, 69-147), and Lewis incorporates these allegations into each of her counterclaims. (Counterclaims, Ex. B, at ¶¶ 31, 42, 47, 53, 57, 60, 65, 73).

The allegations in Counts II-VIII further confirm that those claims are based (at least in part) on hazard LPI policies placed on Lewis' property:

- Lewis' RESPA claim (Count II) is barred because it is based on Chase allegedly "fail[ing] to cancel and refund" the premiums charged for hazard LPI placed on Lewis' property (Counterclaims, Ex. C, at ¶ 45);

- Lewis' negligence claim (Count III) is barred because it is based in part on Chase allegedly misapplying Lewis' payments to her account because of outstanding charges for hazard LPI (*id.* ¶ 50);

- Lewis' declaratory judgment claim (Count IV) is barred because it seeks a declaration that Chase violated "force-placed insurance provisions" by placing hazard LPI on Lewis' property (*id.* ¶ 56);

- Lewis' negligence claim (Count V) is barred because it is based on the purportedly incorrect LPI charges to Lewis' account; (*id.* ¶¶ 58-59);

- Lewis' claim under § 626.9551(1)(a) (Count VI) is barred because it is based on the claim that "there was never any adequate basis for any purchase" of hazard LPI (*id.* ¶ 61); and

- Lewis' claim under § 626.9551(1)(d) (Count VII) is barred because it is based on Chase improperly providing "insurance information" to American Security so that it can place hazard LPI on Lewis' property (*id.* ¶ 70);

- Lewis' declaratory judgment claim (Count VIII) is barred because it seeks a declaration based on the providing of insurance information relating to the placement of hazard insurance on Lewis' property (*id.* ¶ 76).

Indeed, Lewis expressly alleges that she was damaged by the failure to cancel and refund hazard LPI premiums and seeks a declaration requiring Chase to "refund all force-placed insurance charges." (*Id.* at Wherefore Clause (Count IV)).

Likewise, Lewis is barred from pursuing her "affirmative defense" of unclean hands to the state foreclosure action. The sole basis for this defense is what was at issue in the *Saccoccio* Action and the very foundation for the Settlement—that Chase directed American Security to purportedly "force-placed insurance on Borrower's account under circumstances where it was not contractually

-14-

or legally authorized to do so, while it was engaged in illegal practices involving paying kickbacks to mortgage servicers . . . to inflate the premiums at the expense of . . . mortgage borrowers . . . ." (Counterclaims, Ex. C, at ¶ 18).  Lewis further contends that the "wrongful force-placed insurance charges are directly responsible for [Chase's purported] accounting errors that give rise to the alleged default."  (*Id.*).  Because this defense is based entirely upon Movants' placement of hazard LPI and relates to the facts and circumstances of this action, it has been released and is barred by the injunction in the Final Judgment.  *See In re Wachovia Corp. Pick-A-Payment Mortg. Mktg. & Sales Practices Litig.*, 5:09-MD-02015-JF, 2012 WL 5868931, at *6 (N.D. Cal. Nov. 19, 2012) (granting bank's motion to enforce settlement agreement to bar borrower's affirmative defenses raised in a judicial foreclosure pending in Florida, where the language of the release was broad enough to encompass the affirmative defenses and "it would eviscerate the settlement agreement if class members could stop paying on their mortgages, wait until the lender institutes proceedings, and then raise as an affirmative defense" the alleged misconduct that was released).

Put simply, Lewis' "unclean hands" defense and Counts II-VIII of Lewis' counterclaims in the State Court Action are all based on Lewis' contention that Chase improperly placed, charged for, and provided information to American Security about hazard LPI.  Each of these claims has been resolved by the Final Judgment and the Release.  Thus, this Court should enforce its Final Judgment and require Lewis to dismiss those claims, subject to contempt sanctions.

> **D.    Lewis' Arguments To Avoid Application Of The Settlement And The Court's Final Judgment Lack Merit.**

In response to communications from Movants concerning this Court's Final Judgment, Lewis has refused to drop her claims and has threatened to file a separate lawsuit against Chase if it pursues its right to enforce the Settlement.  (Lewis' Email, Ex. F).  In support of this threat, Lewis' counsel contends that: (1) Lewis is bringing claims based on a violation of a federal RESPA regulation that was enacted after the Class Period; and (2) the claims "are based on wrongful force-

-15-

placement that affected her loan only, not on class wide kickbacks." (*Id.*).  Both of these arguments

lack merit.

First, the fact that Lewis is bringing a claim under a newly-enacted RESPA regulation is not

controlling on the scope of the Release.  To start, only Count II is based on that alleged regulatory

violation.[7]  Plus, Lewis' counterclaims make clear that any purported injury to Lewis took place

when hazard LPI was placed on her property, which occurred during the Class Period—that is,

between January 1, 2008 and October 4, 2013.  (*See* Claim Forms attached as Exs. A-C to the

Declaration).  Most fundamentally, the Release applies to claims that Lewis "may have ***on or before***

the Final Settlement Date," which is the date that any appeals of the Final Judgment are resolved.

(Final Judgment, ECF No. 130, at ¶ 7(b); ECF No. 59-1, at § 2.24).  The Eleventh Circuit

terminated all appeals of the Final Judgment on December 9, 2014, yet Lewis asserted her

counterclaims on June 20, 2014—***before*** the Final Settlement Date.  (*See* Counterclaims, Ex. C).

It is well-settled that the "terms of settlement of a class action may even bind class members

whose claims have not yet ripened at the time the judgment is entered."  *In re Nat'l Life Ins. Co.*,

247 F. Supp. 2d 486, 494 (D. Vt. 2002).  Because Lewis' alleged injuries occurred as a result of

hazard LPI being placed on her property during the Class Period and her claims arose, and were

asserted, before the Final Settlement Date, Lewis cannot avoid the Final Judgment and the

Settlement.  *See, e.g.*, *Adams*, 493 F.3d at 1291 n.8 (rejecting similar "future injury" argument

because any injury suffered by the class member occurred at the time of the alleged wrongdoing,

not when the class member decided to assert the claim); *see also In re Prudential Ins. Co. Am. Sales*

*Practice Litig. Agent Actions*, 148 F.3d 283, 313 (3d Cir. 1998) (applying rule); *Elkins v. Equitable*

*Life Ins. of Iowa,* CIVA96-296-CIV-T-17B, 1998 WL 133741, at *17 (M.D. Fla. 1998) (applying

rule).

---

[7]      Count II asserts a claim for a violation of Regulation X's force-placed insurance provisions under 12
C.F.R. § 1024.37, which has an effective date of January 10, 2014.

Equally meritless is Lewis' contention that her claims are not barred because they "are based on wrongful force-placement *that affected her loan only*, not on class wide kickbacks." (Lewis' Email, Ex. F (emphasis added)). This makes no sense. Lewis' allegations *are* based on alleged kickbacks and Movants' relationship. (Counterclaims, Ex. C, at ¶ 25). Worse, Lewis is attempting to improperly narrow the Release, which broadly applies to claims "that relate, concern, arise from, or pertain *in any way to* [Chase's] conduct, policies, or practices concerning hazard LPI Policies placed or charged by Chase[.]" (Release, ECF No. 59-1, at § 10.1 (emphasis added)). In particular, Lewis ignores that the Release applies to *all* released claims, whether they are asserted "*as individual claims or as claims asserted on a class basis*[.]" (*Id.* (emphasis added)). The Release is unambiguous, and Lewis cannot rewrite it. *See In re Managed Care Litig.*, 2009 WL 413510, at *5 (holding class member's claims were barred under a similarly worded release and rejecting class member's attempt "to read the nature of the *Love* lawsuit very narrowly, contrary to the intent of the Final Approval Order.").

Lewis contends that her counterclaims based on the Florida Insurance Code could not have been asserted in *Saccoccio*, because the insurance code "expressly" prohibits such claims from "be[ing] litigated in a class action." (Lewis Email to American Security, attached hereto as Ex. G). This is a red herring. As stated above, the Release applies to *all* claims, whether they are asserted "as individual claims or as claims asserted on a class basis[.]" (Settlement, ECF No. 59-1, at § 10.1). Moreover, this very argument has been repeatedly rejected. In *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 190 (8th Cir. 1993), for instance, the appellant argued that settlement did not cover "her suitability claims," because they "are inherently individual in nature and could not have been brought in the class action without destroying the commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure." *Id.* The Eighth Circuit disagreed, finding that the class settlement barred all claims related to certain

-17-

investments, "including those which an individual class member may have had, but knowingly chose to relinquish by remaining a member of the class." *Id.* at 190-91. "There is no exception for those individual claims a class member could have brought at that time if the class member had chosen to opt out of the class prior to settlement." *Id.* at 190.

Just as in *Thompson*, each of Lewis' counterclaims and her "unclean hands" defense in the State Court Action concern the same subject matter as the Settlement—the placement of LPI on her property. The issuance, placement, and circumstances of Lewis' LPI hazard policies fall within the scope of the Release, which includes individual claims. Inasmuch as the Release was expressly incorporated into the Final Judgment, it has both claim-and issue-preclusive effect, and the class members were specifically advised of this. *See Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Dist. Lodge No. 57*, 778 F.2d 750, 758 (11th Cir. 1985) (holding that parties "clear contractual intent" to give the release preclusive effect on "all claims and causes of action raised or for which could have been raised" was binding).

In short, Lewis' counterclaims (Counts II-VIII) and her "unclean hands" defense have been released by the Settlement and are barred by the Final Judgment. Thus, this Court should enforce its Final Judgment and preclude Lewis from pursuing those counterclaims and the "unclean hands" defense in the State Court Action, subject to contempt sanctions.

## IV.    CONCLUSION

Lewis could have opted out of the Settlement, but she did not. Instead, she filed three separate claim forms for reimbursement. Chase and American Security are therefore entitled to the benefit of the Release in the Settlement that they paid and bargained for and that this Court approved. Accordingly, Chase and American Security respectfully request that the Court enter the attached proposed Order that finds Lewis in civil contempt for violating the Final Judgment by pursuing Counts II-VIII and her "unclean hands" defense against Movants in the State Court Action

and that imposes contempt sanctions if Lewis does not dismiss them within 14 days from the date of the Court's Order.

Dated:  April 6, 2015                          Respectfully submitted,


                                               */s/ Brian M. Ercole* _____
                                               Robert M. Brochin
                                               Florida Bar No. 319661
                                               rbrochin@morganlewis.com
                                               Brian M. Ercole
                                               Florida Bar No. 0102189
                                               bercole@morganlewis.com
                                               Morgan, Lewis & Bockius LLP
                                               200 South Biscayne Boulevard, Suite 5300
                                               Miami, Florida 33131-2339
                                               Telephone:  305.415.3312
                                               Facsimile:   305.415.3001

                                               *Counsel for Defendants JPMorgan Chase
                                               Bank, N.A. (on its own and as successor by
                                               merger to Chase Home Finance LLC)*



                                               */s/ Frank G. Burt* _____
                                               Frank G. Burt (Fla. Bar No. 197963)
                                               fburt@cfjblaw.com
                                               Carlton Fields Jorden Burt, P.A.
                                               1025 Thomas Jefferson Street, N.W.
                                               Suite 400 East
                                               Washington, D.C. 20007
                                               Telephone:    202.965.8140
                                               Facsimile:    202.965.8104

                                               *Counsel for Defendant
                                               American Security Insurance Company*

-19-

**CERTIFICATE OF ELECTRONIC FILING AND SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed electronically and served on all counsel of record on April 6, 2015 via the Court's ECF system.  In addition, on April 6, 2015, the foregoing was served by electronic mail and Federal Express on the following counsel for Settlement Class Member Shelia Lewis:

> Jeffrey N. Golant, Esq.
> jgolant@jeffreygolantlaw.com
> The Law Offices of Jeffrey N. Golant, P.A.
> 1000 W. McNab Rd. Ste 150
> Pampano Beach, FL  33069
>
> *Counsel for Settlement Class Member Shelia Lewis*

*s/ Brian M. Ercole*
Brian M. Ercole
